No._____

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

IN RE INVESTORS WARRANTY OF AMERICA, LLC
Petitioner.

---

From the United States District Court for
the District of Maryland
Civil Action 8:20-cv-01502

---

## PETITION FOR WRIT OF MANDAMUS

---

Rebecca A. Davis
ARNALL GOLDEN GREGORY, LLP
171 17th Street, Suite 2100
Atlanta, Georgia 30363
(404) 873-8768

*Counsel for Investors Warranty of America, LLC*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................1

RELIEF SOUGHT .................................................................................4

ISSUES PRESENTED.............................................................................5

    (1)    Whether following the Court's grant of the First
Mandamus Petition, the district court has erred in ordering the
production of IWA's privileged *ex parte* materials submitted at
the direction of the district court for the sole purpose of
evaluating IWA's claim of privilege;........................................................5

    (2)    Whether the district court erred in ordering briefing on
and in the Second Production Order reserving ruling on whether
that Plaintiff may use IWA's the privileged information as
substantive or impeachment evidence at trial or in briefings;
and    ................................................................................................5

    (3)    Whether the case should be reassigned on remand. ................5

STATEMENT OF FACTS .......................................................................5

    I.    Factual Background........................................................................5

    II.    Procedural History ........................................................................5

ARGUMENT ..........................................................................................9

    I.    Standard of Review .......................................................................9

    II.    IWA's Right to Mandamus is Clear and Indisputable.......................... 11

        A.    The District Court's Order Contradicts the Letter and Spirit of
the Fourth Circuit's Writ of Mandamus .................................12

        B.    The Court Never Ordered the Release of All Sealed
Information................................................................................14

        C.    The Contents of IWA's *Ex Parte* Letter Brief and the *Ex Parte*
Hearing Transcript Are Protected by the Attorney-Client
Privilege ...................................................................................16

        D.    Plaintiff Cannot Use IWA's Privileged Materials ....................19

i

E.    The Mandamus Relief IWA Requests Is Appropriate Under the Circumstances. ...........................................................................22

III.    IWA Has No Other Adequate Means of Redress and It Would Be Irreparably Harmed by Disclosure. ....................................... 23

IV.    The District Court's Erroneous Ruling Will have a Destabilizing Effect and a Widespread Impact on an Important Area of Law. ................................................................. 24

V.    The Case Should Be Reassigned on Remand ........................................... 25

A.    The District Court has Already Demonstrated an Unwillingness to Acknowledge Error ...............................................................25

B.    Reassignment is Advisable to Preserve the Appearance of Justice ..........................................................................................27

C.    Reassignment Will Not Result in an Unreasonable Duplication. ........................................................................... 27

CONCLUSION .........................................................................................28

4894-4593-6062.v2

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*100 Harborview Drive Condo. Council of Unit Owners v. Clark*,
224 Md. App. 13, 61 n.16 (2015) .......................................................16, 17, 18, 19

*Bryan v. BellSouth Telecomm., Inc.*,
No. CIV. 1:02-CV-00228, 2006 WL 1540644 (M.D.N.C. May 31, 2006) ...........................18

*Carter v. State*,
149 Md. App. 509 (2003) ............................................................................20

*Chase Manhattan Bank v. Turner & Newall, PLC*,
964 F.2d 159 (2d Cir. 1992)...................................................................11, 19, 24

*Doe v. Chao*,
511 F.3d 461 (4th Cir. 2007) .........................................................................12, 13

*In re EchoStar Commc'ns*,
448 F.3d 1294 (Fed. Cir. 2006).........................................................................22

*Eshelman v. Puma Biotechnology, Inc.*,
2 F.4th 276 (4th Cir. 2021) .........................................................................4, 20

*In re Fluor Intercontinental, Inc.*,
803 F. App'x 697 (4th Cir. 2020)......................................................................10, 11

*In re Hakim*,
244 B.R. 820 (Bankr. N.D. Cal. 1999) ...................................................................19

*Haley v. State*,
398 Md. 106 (2007) ...................................................................................21

*Hanson v. United States Agency for Int'l Dev.*,
372 F.3d 286 (4th Cir. 2004) .........................................................................13

*Harrison v. State*,
276 Md. 122 (1975) ...................................................................................20

*Hutto v. Davis*,
454 U.S. 370 (1982)....................................................................................3

*In re Investors Warranty of America, LLC*,
No. 23-1928 ...........................................................................................2, 5

4894-4593-6062.v2

*In re Itron, Inc.*,
  883 F.3d 553 (5th Cir. 2018) ..................................................11, 23

*JTH Tax, Inc. v. Aime*,
  984 F.3d 284 (4th Cir. 2021) ..................................................10, 12

*In re Kellogg Brown & Root, Inc.*,
  756 F.3d 754 (D.C. Cir. 2014) ............................................11, 23, 24

*Koon v. United States*,
  518 U.S. 81 (1996) ...........................................................................9

*In re Lott*,
  434 F.3d 446 (6th Cir. 2005) ...........................................................11

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100, 110-11 (2009) .....................................................11, 23

*In re Murphy-Brown, LLC*,
  907 F.3d 788 (4th Cir. 2018) ...........................................................10

*Newman v. State*,
  384 Md. 285 (2004) .........................................................................20

*NLRB v. Goodless Bros. Elec. Co.*,
  285 F.3d 102 (1st Cir. 2002) ...........................................................19

*In re Pioneer Hi-Bred Int'l, Inc.*,
  238 F.3d 1370 (Fed. Cir. 2001) .......................................................22

*Rice v. Alpha Sec., Inc.*,
  556 F. App'x 257 (4th Cir. 2014) ....................................................18

*In re Search Warrant Issued June 13, 2019*,
  942 F.3d 159 (4th Cir. 2019) ...........................................................23

*SEC v. Rajaratnam*,
  622 F.3d 159 (2d Cir. 2010) ............................................................24

*South Atl. Ltd. P'ship of Tenn., LP v. Riese*,
  356 F.3d 576 (4th Cir. 2004) .........................................................9, 13

*In re Spalding Sports Worldwide, Inc.*,
  203 F.3d 800 (Fed. Cir. 2000) .........................................................22

*United States v. Bell*,
  5 F.3d 64 (4th Cir. 1993) .................................................................10

iv

*United States v. Henry,*
    709 F.2d 298 (5th Cir. 1983) ................................................. 10

*United States v. Jenkins,*
    22 F.4th 162 (4th Cir. 2021) ................................................. 15

*United States v. McCall,*
    934 F.3d 380 (4th Cir. 2019) .............................................. 25, 27, 28

*United States v. Philip Morris,*
    314 F.3d 612 (D.C. Cir. 2009) ............................................... 24

*United States v. Zolin,*
    491 U.S. 554 (1989) .......................................................... 16

*Upjohn Co. v. United States,*
    449 U.S. 383 (1981) .......................................................... 24

## Other Authorities

16 Charles Alan Wright, *et al.*, Fed. Practice & Proc. § 3935.3 ................................. 11

## PRELIMINARY STATEMENT

This is the second Petition for Writ of Mandamus Order filed by Investors Warranty of America, LLC ("IWA") seeking to protect its attorney-client privileged information. Last August, the district court ordered IWA to produce three privileged documents under the crime-fraud exception. This Court granted IWA's first mandamus petition and vacated the district court's order. Then, the district court ordered IWA to produce the *same privileged information* a second time and plans to allow plaintiff to use the privileged information at trial. IWA thus files this second mandamus petition to prevent the district court from contravening this Court's earlier decision and to protect its attorney-client privileged information from tainting the upcoming trial.

\*\*\*

On February 21, 2024, the Fourth Circuit Court of Appeals issued an order (the "Mandamus Order") granting in part and denying in part IWA's First Petition for Writ of Mandamus (the "First Petition"). Specifically, the Court vacated the district court's order (the "Production Order") requiring IWA to produce three privileged communications between IWA and its lawyers to Plaintiff Rock Spring Plaza II, LLC ("Plaintiff"). This decision effectively reversed the district court's decision that the crime-fraud exception applied. The Mandamus Order also denied IWA's request to direct the "district court to maintain certain information under seal

1

and to reassign the case on remand." (*See* Ex. A, 2/21/2024 Judgment, *In re Investors Warranty of America, LLC*, No. 23-1928 [Dkt. 35-2]; Ex. B, 2/21/2024 Order, *In re Investors Warranty of America, LLC*, No. 23-1928 [Dkt. 34].)

The district court has erroneously concluded that the Fourth Circuit's Mandamus Order is "murky," and has ordered IWA to produce (i) IWA's *ex parte* brief on the crime-fraud exception, which describes and includes excerpts of the privileged materials; and (ii) the transcript of an *ex parte* hearing that includes counsel's description of the contents of the privileged documents and testimony by one of IWA's lawyers who authored one of the three privileged documents subject to the Mandamus Order. (*See* Ex. C, 5/1/2024 "Second Production Order") [Dkt. No. 405]; Ex. D, 5/01/2024 Hr'g Tr. at 4:1-3, 17:17-19.)

During briefing of the First Petition, this Court ordered IWA to provide Plaintiff with a copy of the then-sealed and *ex parte* Memorandum Opinion for purposes of a response. (Ex. C at ¶ 1.) The Memorandum Opinion is inextricably intertwined and contains the reasoning for the now-vacated Production Order. The Court did so even though the Memorandum Opinion itself contained privileged information. In the Second Production Order, the district court has reserved ruling on Plaintiff's use of the Memorandum Opinion and the *ex parte* materials as evidence. Indeed, the court has contemplated that Plaintiff will use "the contents or gist" of IWA's privileged information at trial. (*Id.* at ¶1(d).) Relevant here, the

Second Production Order suggests that the district court has already decided that Plaintiff *can* use this information at trial, although it has not decided exactly *how*. The Second Production Order reserved ruling on "the extent to which, if at all, the contents or gist of certain communications between Defendants and their counsel may be introduced as evidence at trial" and provides that this "decision will depend on the manner in which [Plaintiff] seeks to use such evidence at trial (for example, by way of impeachment)." (*Id.*) In other words, the privileged nature of the documents will not affect district court's anticipated evidentiary ruling, only the manner in which they are introduced at trial.

"Ours is a hierarchical judiciary, and judges of inferior courts must carry out decisions they believe mistaken." *Hutto v. Davis*, 454 U.S. 370, 375 (1982). The district court violated the letter and spirit of the Court's Mandamus Order by ordering the production of IWA's privileged information for a second time and contemplating its use by Plaintiff at trial.

IWA requests again that the Court reassign this case upon remand, given the district court's refusal to enforce this Court's Mandamus Order. Troubling is that some or all of this case will be decided by the judge and not a jury and that the district court contemplates allowing Plaintiff to use IWA's privileged information to, at a minimum, impeach witnesses. Whether for its case in chief or for impeachment, the district court cannot permit Plaintiff to use IWA's privileged information at trial.

3

*Eshelman v. Puma Biotechnology, Inc.*, 2 F.4th 276, 285 n.3 (4th Cir. 2021) (privileged document "is not admissible evidence, even for the purposes of impeachment.").

Moreover, since reviewing the First Petition and the Mandamus Order, rather than confirming that it could put IWA's privileged information out of its mind when acting as the factfinder on the merits of this case, the district court could only say that it would "try and give [IWA] a fair trial" and would do "the best [it could] to be impartial." (Ex. D, Hr'g Tr. at 29:8-30:18; *see also id.* at 11:1-14, 12:25-13:7, 26:10-27:6 (expressing opinion about import of IWA's privileged information on merits).) The Second Production Order violates the mandate rule. This violation, along with the district court's lack of impartiality, requires reversal for a second time and reassignment.

## **RELIEF SOUGHT**

IWA respectfully requests a writ of mandamus (i) vacating the district court's Second Production Order requiring the production of the *ex parte* materials to Plaintiff; (ii) directing that Plaintiff is not entitled to receive IWA's privileged information, directly or indirectly, in any manner and is not entitled to use IWA's privileged information, directly or indirectly, in any way, including in briefing, argument to the court or to the jury, or trial, and (iii) to reassign the case upon remand to the district court.

## ISSUES PRESENTED

(1) Whether following the Court's grant of the First Mandamus Petition, the district court has erred in ordering the production of IWA's privileged *ex parte* materials submitted at the direction of the district court for the sole purpose of evaluating IWA's claim of privilege;

(2) Whether the district court erred in failing to deny Plaintiff's motion seeking to use IWA's privileged information as substantive or impeachment evidence at trial or in briefings; and

(3) Whether the case should be reassigned on remand.

## STATEMENT OF FACTS

### I.    Factual Background

The relevant factual background and procedural history of the underlying dispute is contained in IWA's first Petition. *See In re Investors Warranty of America, LLC*, No. 23-1928 (4th Cir., filed Sept. 6, 2023). IWA updates only the procedural history since the Fourth Circuit issued its writ of mandamus on February 21, 2024.

### II.    Procedural History

On February 21, 2024, this Court granted in part and denied in part IWA's Petition for Writ of Mandamus. Specifically, the Court vacated the Production Order, effectively ruling that Plaintiff could not receive IWA's privileged documents in discovery pursuant to the crime-fraud exception. The Court denied, however,

IWA's request to direct the district court to "maintain certain information under seal and to reassign the case upon remand." (*See* Exs. A and B). Notably, the Fourth Circuit did not direct the district court to unseal anything, nor is there any reason to believe that the Fourth Circuit addressed the scope of other materials containing privileged information that could later be unsealed.[1]

That same day, the district court entered an order acknowledging that the Production Order was vacated, but stating that "the Fourth Circuit's order is ambiguous as to precisely what next steps this Court should take." (Ex. G, 2/21/2024 Memorandum Order at 1 [Dkt. No. 386]; *see also* Ex. H, 2/22/2024 Hr'g Tr. at 4:24-25, 11:13-17 (characterizing the Fourth Circuit's decision as "murky").) Following a telephone conference the next day, the court directed Plaintiff to file a motion addressing "what 'certain information,' if any, the Court may or may not unseal as a result of the Fourth Circuit's decision, and whether Plaintiff may use as evidence any such information or information contained in the Court's Memorandum Opinion and Order addressing the crime-fraud issue." (Ex. I, 2/22/2024 Memorandum Order

---

[1] Although this Court did not direct that any document should remain sealed or be unsealed, Plaintiff has argued the Mandamus Order requires the production and unsealing of privileged information. (Ex. D, Hr'g Tr. at 4:16-19; *see also* Ex. E, Pl.'s Mot. to Unseal [Dkt. 392] at 4 (arguing that the Court's refusal to direct the district court on sealing was actually a substantive ruling that certain documents must be unsealed); Ex. F, IWA's Resp. in Opp'n to Pl's Mot. to Unseal [Dkt 396] at 2, 10 (noting that granting Plaintiff's motion to unseal is an end run around the Fourth Circuit's decision and violates the mandate rule).

[Dkt. No. 389].) Stated differently, notwithstanding the Mandamus Order, the court *sua sponte* requested that Plaintiff file a motion as to what documents containing IWA's privileged information the court could unseal and provide to Plaintiff and how Plaintiff might use this privileged information as evidence at trial.

In response to the district court's invitation, Plaintiff moved to unseal "all information supplied to or generated by the district court relating to IWA's privileged documents" and to "make such information available for use by Plaintiff." (Ex. E at 3.) Plaintiff argued that even though this Court vacated the Production Order, the district court's Memorandum Opinion accompanying the Production remains law of the case and its contents may be used as evidence against IWA. (*Id.* at 5.) IWA opposed the motion (Ex. F), and Plaintiff filed a reply. On April 24, 2024, the district court issued an order noting that it had "concerns related to Plaintiff's Motion that [were] not fully addressed by the parties' briefing." (Ex. J, 4/24/2024 Memorandum Order [Dkt. 404].) Rather than deny Plaintiff's motion for failing to satisfy the district court's concerns, the court scheduled another conference. (*Id.*)

On May 1, 2024, the district court heard argument from the parties. The district court opened the hearing by asking Plaintiff if it intended to "publish the [Memorandum Opinion] to the jury." (Ex. D, Hr'g Tr. 4:4-10.) Plaintiff (and, ultimately, the district court) recognized that a court's order is rarely admissible evidence, but Plaintiff nevertheless argued that it could introduce the "evidence

7

recited in the [M]emorandum [O]pinion," which are the district court's descriptions of the privileged documents that this Court has said Plaintiff cannot have. (*Id.* at 4:12-5:5; *see also id.* 9:1-22.) Indeed, during the hearing, the Court paraphrased IWA's privileged documents and asked, "Is that the kind of thing that you say might be extracted and presented to the jury?" (*Id.* at 5:6-17.) Plaintiff answered affirmatively that it wants to use IWA's privileged information—as extracted from the Memorandum Opinion that accompanied the now-vacated Production Order— as either impeachment or direct evidence, depending on the circumstances. (*Id.* at 5:14-6:6.) The court stated that since the Fourth Circuit had not directly ordered the district court to maintain IWA's privileged information under seal, it had the "discretion to make that decision and make certain information available" to Plaintiff and therefore the discretion to allow Plaintiff to use the privileged information in some way at trial. (*Id.* at 8:3-7; *see also id*. 7:19-8:18, 18:2-19:8, 20:11-21:9.) More acutely, Plaintiff argued—and the district court agreed—that because this Court did not vacate the Memorandum Opinion and did not direct the district court to maintain the Memorandum Opinion under seal, IWA's privileged information "within the memorandum opinion . . . [is] available" for Plaintiff's use at trial because "the Fourth Circuit didn't vacate the evidence." (*Id.* at 14:24-15:13.) Despite this Court's vacatur of the Production Order, the trial court stated that it was "not prepared to say that . . . all the communication between counsel and [IWA] is off the table for all

8

purposes." (*Id.* at 19:3-8; *see also id.* at 20:6-10.) Those "communications" are the exact documents that this Court said were not to be produced.

After the telephone hearing, the district court memorialized its ruling in the Second Production Order. It directed that IWA produce to Plaintiff (i) "IWA's *ex parte* letter brief opposing the court's preliminary determination that" IWA's privileged documents fell within the crime-fraud exception, and (ii) the June 20, 2023 *ex parte* hearing transcript "at which IWA presented evidence on the issue of the crime-fraud exception." It also stayed such production if IWA files a second petition for a writ of mandamus. Then, it reserved ruling, "for the time being, any decision with respect to the extent to which, if at all, the contents or gist of certain communications between [IWA] and their counsel may be introduced as evidence at trial. That decision will depend on the manner in which Plaintiff seeks to use such evidence (for example, by way of impeachment)." (Ex. C at ¶ 1.)

## ARGUMENT

### I.     Standard of Review

A "district court's interpretation of an appellate court's mandate is reviewed de novo." *South Atl. Ltd. P'ship of Tenn., LP v. Riese*, 356 F.3d 576, 583 (4th Cir. 2004). Mandamus review is typically limited to determining whether the district court abused its discretion, and "[a] district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996). The

9

mandate rule "requires a lower court to faithfully apply the mandate of a higher court, which is controlling as to all matters within its scope." *JTH Tax, Inc. v. Aime*, 984 F.3d 284, 291 (4th Cir. 2021); *see also United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (the mandate rule "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court"); *United States v. Henry*, 709 F.2d 298, 306 (5th Cir. 1983) ("The principle that a district court may not violate the mandate of a circuit court of appeals and may not alter the law of the case so established is basic.").

Mandamus relief is also again warranted here for the same reasons it was warranted for IWA's First Petition. Mandamus is proper where: (1) the petitioner's right to the writ is "clear and indisputable"; (2) there is "no other adequate means to attain the relief [the petitioner] desires"; and (3) the "writ is appropriate under the circumstances." *In re Murphy-Brown, LLC*, 907 F.3d 788, 795 (4th Cir. 2018) (citing *Cheney v. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380- 81 (2004) (quotation marks omitted); *see also In re Fluor Intercontinental, Inc.*, 803 F. App'x 697, 699 (4th Cir. 2020). The Supreme Court has squarely held that mandamus is an appropriate vehicle for securing review of orders requiring the production of documents that raise "novel" and "injurious" issues of attorney-client privilege. *See*

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009).[2] "Writ review is . . . frequently provided [in this context] because of the desire to protect against discovery of information that is claimed to be protected by [the attorney-client] privilege [or] work product." 16 Charles Alan Wright *et al*., Fed. Practice & Proc. § 3935.3 (3d ed. 2014); *see, e.g.*, *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014); *In re Itron, Inc*., 883 F.3d 553, 567-68 (5th Cir. 2018); *In re Lott*, 434 F.3d 446, 450-51 (6th Cir. 2005); *In re Fluor*, 803 F. App'x at 699-703. Mandamus review of discovery orders involving the privilege is proper where: "(i) an issue of importance and of first impression is raised; (ii) the privilege will be lost in the particular case if review must await a final judgment; and (iii) immediate resolution will avoid the development of discovery practices or doctrine undermining the privilege." *Chase Manhattan Bank v. Turner & Newall, PLC*, 964 F.2d 159, 163 (2d Cir. 1992).

## II.     IWA's Right to Mandamus is Clear and Indisputable

Mandamus is necessary to prevent the district court from violating the

---

[2] In *Mohawk*, the United States Supreme Court noted that erroneous disclosure orders can be remedied through: (i) writ of mandamus; (ii) final judgment review; (iii) a certification for immediate, interlocutory appeal; or (iv) by taking a contempt order and appealing as a direct order when the contempt citation can be characterized as a criminal punishment. 558 U.S. at 101, 110-11. As before, mandamus is the only option to avoid the unwarranted production and potential use of IWA's privileged communications by its adversary in litigation. And, the trial court has expressly contemplated this filing in its order. (Ex C at ¶ 1(c).)

Mandamus Order and making available or unsealing matters of record that would further invade IWA's privilege and allowing Plaintiff to improperly use such materials as evidence at trial.

### A. The District Court's Order Contradicts the Letter and Spirit of the Fourth Circuit's Writ of Mandamus

"The mandate rule is a 'more powerful version' of the law of the case doctrine." *JTH Tax*, 984 F.3d at 291 (quoting *Invention Submission Corp. v. Dudas*, 413 F.3d 411, 414 (4th Cir. 2005)). It "requires a lower court to faithfully apply the mandate of a higher court, which is controlling as to all matters within its scope." *Id.* Indeed, the Fourth Circuit has held that "[i]t is axiomatic that in our judicial hierarchy, the decisions of the circuit courts of appeals bind the district courts just as decisions of the Supreme Court bind the circuit courts." *Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007) (citing 28 U.S.C. § 2106 ("The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.")).

As *Doe v. Chao* explained, the mandate rule "prohibits lower courts, with limited exceptions, from considering questions that the mandate of a higher court has laid to rest." 511 F.3d at 465. A lower court must "implement both the letter and

12

the spirit of the . . . mandate, taking into account [the] opinion and the circumstances it embraces." *South Atl.*, 356 F.3d at 584. "[T]he mandate rule 'forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Id.* Indeed, courts cannot "alter *rulings impliedly made* by the appellate court." *Id.* (emphasis added.)

The "letter" of the Fourth Circuit Order is that the Production Order is vacated and IWA's privileged documents must not be produced to Plaintiff. That decision would have no force if Plaintiff or the Court could nonetheless disclose and rely on the information in those privileged documents in this litigation. Thus, under the mandate rule, the Court should find that the *ex parte* materials should not be produced and that the information contained in those documents and the Memorandum Opinion may not be used for any purpose by the Court or Plaintiff, whether at summary judgment or at trial.

Moreover, the "spirit" of the Fourth Circuit's order is that the crime-fraud exception did not vitiate IWA's privilege. If the attorney-client privilege applies, the "privilege affords all communications between attorney and client absolute and complete protection from disclosure." *Hanson v. United States Agency for Int'l Dev.*, 372 F.3d 286, 291 (4th Cir. 2004). The Fourth Circuit's mandate is that Plaintiff is not entitled to receive IWA's privileged communications, and thus may not otherwise use the privileged information derived from those privileged documents.

13

The district court avoids both the letter and spirit of the Mandamus Order, instead finding some hidden meaning in the Fourth's Circuit's summary reversal of the Production Order without a detailed description of the Court's reasoning. The district court's interpretation of the Fourth Circuit's restraint is unreasonable as a matter of law because its interpretation directly contradicts the writ of mandamus that the Fourth Circuit did issue and the briefing and Memorandum Opinion on which the decision was based.

**B.      The Court Never Ordered the Release of All Sealed Information.**

Neither IWA, Plaintiff, nor the district court can purport to know the Court's motivation for not directing the district court to maintain "certain" documents under seal. But the Mandamus Order certainly did not direct the district court to unseal, or in this instance provide, anything to Plaintiff. Rather, the Mandamus Order stated only that it "denies [IWA's] request for an order directing the district court to maintain certain information under seal." The district court's interpretation that all documents containing privileged information should now be released is a leap too far, especially given that First Petition did not rely on any document containing privileged information other than the Memorandum Opinion, and this Court did not review the *ex parte* brief, which was one of nine briefs filed on the crime-fraud exception, or the *ex parte* hearing transcript with testimony from an attorney that drafted one of the privileged documents.

14

This Court ordered IWA to produce the Memorandum Opinion (which contained descriptions of the privileged documents). Thus, a reasonable interpretation of the Court's order was that IWA's request to keep "all" documents sealed was partially mooted because IWA had already produced the full, unredacted Memorandum Opinion to Plaintiff so that Plaintiff could oppose the Petition. Thus, the Court's reference to maintaining "certain information" under seal could have simply referred to the fact that subset of IWA's "*all*" information, meaning the Memorandum Opinion, had already been provided to Plaintiff.

Moreover, the Court's ruling as to the Memorandum Opinion makes sense because the Production Order and the Memorandum Opinion underlying it are inextricably intertwined. *See, e.g.*, *United States v. Jenkins*, 22 F.4th 162, 167 (4th Cir. 2021) (finding that opinion was part of an order where they were signed on the same day, the order referenced a separate accompanying memorandum, and the memorandum opinion incorporated the order by reference). Once the Court vacated the Production Order, it impliedly vacated—or rejected the reasoning of—the Memorandum Opinion so that opinion is no longer the law of the case.

Regardless of the Court's reason, however, the district court seems to believe that the Court intended to vacate the Production Order, but also intended to permit Plaintiff to *receive* the same privileged information and then *use* the same privileged information at trial. In other words, this Court's decision that Plaintiff cannot obtain

15

IWA's privileged information *directly* does not prevent Plaintiff from obtaining the same privileged information *indirectly*. This is error. It would be akin to permitting a prosecutor to use the description of evidence in a motion to suppress as evidence at trial—even though the court granted the motion to suppress the evidence.

### C.     The Contents of IWA's *Ex Parte* Letter Brief and the *Ex Parte* Hearing Transcript Are Protected by the Attorney-Client Privilege

In discovery, Plaintiff sought to invade IWA's privilege under the crime-fraud exception. To evaluate IWA's assertion of privilege and Plaintiff's contentions that the privileges should be disregarded, the district court conducted an *in camera* inspection of the privileged documents and heard *ex parte* argument and evidence, including from the attorney that authored one the documents, regarding the preservation of the privilege. Such "*in camera* inspection is [itself] an intrusion on . . . [the] attorney-client privilege and the work product doctrine." *100 Harborview Drive Condo. Council of Unit Owners v. Clark*, 224 Md. App. 13, 61 n.16 (2015) (*quoting Ehrlich v. Grove*, 396 Md. 550, 571 (2007)). But on sufficient showing, this minimal intrusion is justified to appropriately balance the protection of the privilege against the risk of abuse. Participating in that exercise, however, does not compromise the privilege. *United States v. Zolin*, 491 U.S. 554, 568-69 (1989) ("[T]he disclosure of allegedly privileged materials to the district court for purposes of determining the merits of a claim of privilege does not have the legal effect of

16

terminating the privilege. . . . [I]*n camera* review does not destroy the privileged nature of the contested communications.").

If submitting to *in camera* inspection does not erode the protection of IWA's privileged communications, then anything the district court required IWA to do to defend its privilege, including submitting *ex parte* briefing and participating in an *ex parte* hearing to defend the privilege, should also not erode the privilege, nor should such proceedings be discoverable by IWA's adversary in litigation.

There is a reason that *in camera* review, particularly for materials that are protected by the attorney-client privilege and that are not merely confidential, is conducted *ex parte*. Courts have recognized that it is "often an unsatisfactory resolution" to allow opposing counsel to participate in the *in camera* process before it is determined whether the privilege applies. "[C]learly, expanded *in camera* review is a more serious intrusion on those privileges because opposing counsel is being made privy to allegedly privileged information." *100 Harborview*, 224 Md. App. at 61 n.16 (*quoting Ehrlich*, 396 Md. at 571). "If opposing counsel is allowed access to information arguably protected by the privilege before an adjudication as to whether the privilege applies, a pertinent aspect of confidentiality will be lost, even though the communications later deemed to be privileged will be inadmissible at trial." *Id.* (*quoting Chase*, 964 F.2d at 165).

Insofar as it is generally inappropriate to allow opposing counsel to participate in *in camera* proceedings *before* a determination of privilege has been made and where the materials are merely "arguably protected," there is no logical reason for the district court to allow opposing counsel access to the *in camera* proceedings *after* it has been determined that the underlying materials are privileged and not discoverable. *See 100 Harborview*, 224 Md. App. at 61 n.16. No authority supports exposing the substance of the *ex parte in camera* process to opposing counsel. Moreover, no authority supports exposing it once an appellate court has determined that the documents remain privileged and are not to be produced. Indeed, any finding to the contrary would render meaningless the purpose of *in camera* review and *ex parte* communications if the final outcome is release of the information even where the documents are themselves maintained as privileged.

It is error if the district court decides, after the Fourth Circuit ordered that documents must not be produced pursuant to the crime-fraud exception, that the same information may be used regardless of the purpose. The notion defies the intent of "vacation of [a] judgment or order," which means the higher court "generally deprives such judgment or order of any effect." *Bryan v. BellSouth Telecomm., Inc.*, No. CIV. 1:02-CV-00228, 2006 WL 1540644, at *5 (M.D.N.C. May 31, 2006), *aff'd sub nom. Bryan v. BellSouth Commc'ns, Inc.*, 492 F.3d 231 (4th Cir. 2007); *see Rice v. Alpha Sec., Inc.*, 556 F. App'x 257, 259 (4th Cir. 2014) (The term "vacate" means

"to nullify or cancel; make void; invalidate[.]"); *see also NLRB v. Goodless Bros. Elec. Co.*, 285 F.3d 102, 110 (1st Cir. 2002) (defining "vacate" as "to render inoperative; deprive of validity; void; annul" and that an order to vacate "wipes the slate clean"); *In re Hakim*, 244 B.R. 820, 821-22 (Bankr. N.D. Cal. 1999) (noting that when an order of dismissal is vacated, all of its effects are vacated). With this Court having vacated the Production Order, the district court has erred in resurrecting and expanding it.

### D.    Plaintiff Cannot Use IWA's Privileged Materials

Because the Fourth Circuit preserved the privilege over IWA's documents, then, contrary to Plaintiff's argument and the trial court's plan, IWA's privileged information cannot be used at summary judgment or trial.[3] *100 Harborview*, 224 Md. App. at 61 n.16 (*quoting Chase*, 964 F.2d 165 and noting that "communications later deemed to be privileged will be inadmissible at trial"); *Chase*, 964 F.2d at 164 ("The attorney-client privilege prohibits disclosure to adversaries as well as the use of confidential communications as evidence at trial."); *id.* at 165. Indeed, if IWA's

---

[3] Independently, the court's excerpting, paraphrasing, and characterization of IWA's privileged documents in the Memorandum Opinion or in the *ex parte* hearing is not admissible. The best evidence of IWA's privileged documents are the documents themselves, and since this Court has denied Plaintiff those documents, Plaintiff cannot use bits and pieces of those documents from other sources. This Court has already rejected the district court's interpretation of the legal significance of the privileged documents, and it is not clear who would testify that the district court's description of the privileged documents are accurate or complete.

privileged documents are not even *discoverable*, it is simply not possible that they could be *admissible* in evidence despite the court's making them available to Plaintiff in an end-run around this Court's mandate. *See Carter v. State*, 149 Md. App. 509, 513, 519-20 (2003) (holding that it was prejudicial error to admit into evidence two privileged and work-product protected documents, that the failure to designate the documents "privileged" did not render them admissible, and that "[t]he exhibits should not have been received into evidence" in part because of the "protections afforded by the attorney-client privilege and the attorney-work product privilege"); *Newman v. State*, 384 Md. 285, 304-05, 312-13 (2004) (noting that attorney-client privileged information is "inadmissible at a judicial proceeding" and holding that admission of testimony in violation of privilege was reversible error).

Not only is IWA's privileged information inadmissible as direct or substantive evidence, but it is also inadmissible for the reason Plaintiff and the trial court envision using it or allowing it to be used: *i.e.*, for impeachment of a witness' credibility or of IWA's claim that it acted in good faith when it followed the parties' contract when it assigned the underlying Ground Lease. Attorney-client privileged and work-product protected information is not admissible for either purpose. *See Eshelman*, 2 F.4th at 285 n.3; *Harrison v. State*, 276 Md. 122, 152 (1975) (holding it was prejudicial error to allow defendant to be impeached with privileged information after finding defendant did not waive attorney-client privilege); *Haley*

20

*v. State*, <u>398 Md. 106, 130</u> (2007) (holding it was prejudicial error to allow defendant's credibility to be impeached by invading the attorney-client privilege). The trial court clearly plans to allow Plaintiff to use the information at trial in some way, particularly for impeachment. Indeed, the court laid out the line of cross examination and impeachment it envisioned at trial *using* its knowledge of the privileged materials. (Ex. D, Hr'g Tr. at 11:1-23.). And the court stated only that it would be up to Plaintiff's counsel as to how he intended to use IWA's privileged information:

> I would remind you that you asked me to be removed from the case, and that was denied, so I am in the case whether you like it or not, and I am going to try and give you a fair trial. But put that off the table if you are worried about my thinking. I will do the best I can to be impartial about this, but that to sort of say that somehow my thinking is already tainted, the evidence is and will be what it is, and I will make the judgment, insofar as I am the one authorized to do so, I will make it. But put it out of mind as far as whether I know or don't know something. If it's off the table entirely, and, as I say, unless that issue is accepted by way of a petition for cert., you know, that's a decision that Mr. Bosch [counsel for Plaintiff] is going to have to make about the extent to which it comes in. But, again, it may just be something he wants to do by way of impeachment and not in his case in chief. I don't know. I don't know that he knows right now.

(*Id.* at 30:2-18.) Thus, in addition to vacating the Second Production Order requiring the production of the *ex parte* materials to Plaintiff, it is also necessary for the Court to further direct that Plaintiff may not use excerpts or summaries of IWA's privileged materials from the Memorandum Opinion, which it has only because this Court

ordered production of the unredacted opinion to permit Plaintiff to respond to the First Mandamus Petition.

### E.    The Mandamus Relief IWA Requests Is Appropriate Under the Circumstances.

The mandate of the Fourth Circuit was to vacate the Production Order such that IWA's *privileged documents* were not to be produced to Plaintiff. It is therefore axiomatic that the information contained in IWA's privileged documents, as well as *the materials submitted in defense of IWA's privilege that describe the privileged documents*, are not to be used for any purpose by the court or Plaintiff. Indeed, by vacating the Production Order, the Fourth Circuit implicitly rejected the district court's application of the crime-fraud exception and ruled that the documents are not discoverable. Therefore, in keeping with the spirit of that mandate, which established the law of this case, there can be no other reasonable conclusion other than that the trial court has erred in finding a way to make these materials available to Plaintiff.

Although mandamus is an extraordinary form of relief, courts consistently rule that mandamus is appropriate "to correct a clear abuse of discretion or usurpation of judicial power" in ordering the disclosure of privileged documents. *In re EchoStar Commc'ns*, 448 F.3d 1294, 1297-98 (Fed. Cir. 2006); *see also In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 804 (Fed. Cir. 2000); *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1374 (Fed. Cir. 2001). Disclosure of attorney-

22

client privileged communications is itself irreparable harm. *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 175 (4th Cir. 2019) (holding that compelled disclosure of privileged information causes "harm [that] is plainly irreparable in that [disclosure] of those privileged materials cannot be undone."). Losing the privilege, and having to disclose confidential strategy discussions to one's adversary in a pending litigation, could not constitute a more fundamental harm to a litigant. For this reason, mandamus is appropriate here. *Mohawk*, 558 U.S. at 110-11 (mandamus is appropriate for certain privilege rulings).

### III.    IWA Has No Other Adequate Means of Redress and It Would Be Irreparably Harmed by Disclosure.

Typically, a petitioner demonstrates irreparable harm when it "claims that a district court erroneously ordered disclosure of attorney-client privileged communications. *Itron*, 883 F.3d at 567 (*citing Kellogg Brown*, 756 F.3d at 754, 760-61 (hereinafter "*KBR I*"). "That is because (i) an interlocutory appeal is not available in attorney-client privilege cases (absent district court certification) and (ii) appeal after final judgment will come too late because the privileged communications will already have been disclosed pursuant to the district court's order." *KBR I*, 756 F.3d at 760-61.

Post-disclosure review is generally "inadequate" because "the very purpose of [privilege] is to prevent the release" of confidential information.  *Id.* at 761. (citation omitted); *Itron*, 883 F.3d at 567-68 (similar). Once a party's confidential

communications have been disclosed, they cannot be taken back: the bell simply cannot be un-rung. *See SEC v. Rajaratnam*, 622 F.3d 159, 170 (2d Cir. 2010). "[A]ttorneys cannot unlearn what has been disclosed to them in discovery," and privileged disclosures "may alert adversary counsel to evidentiary leads or give insights regarding various claims and defenses." *Chase*, 964 F.2d at 265; *see United States v. Philip Morris*, 314 F.3d 612, 622 (D.C. Cir. 2009) (granting a stay because opposing counsel "would be able to use the [putatively privileged document] to pursue new leads"), *abrogated on other grounds by Mohawk*, 558 U.S. 100.

### IV.    The District Court's Erroneous Ruling Will have a Destabilizing Effect and a Widespread Impact on an Important Area of Law.

"An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981). Mandamus therefore will lie where a district court's decision "generate[s] substantial uncertainty about the scope of the attorney-client privilege in the business setting." *KBR I*, 756 F.3d at 756. If the district court's order stands, it would undermine and jeopardize the important function of participating in *in camera* review to evaluate the assertion of the privilege to protect the integrity of the adversarial process. And, as before, allowing the district court's order to stand would signal that there is no protection for either lawyers or clients who seek legal counsel to determine the meaning of contracts and minimize litigation risk, including what should be routine real estate and lender contracts. It

24

would likewise signal that materials produced for an *in camera* review remain at risk of disclosure, thus inviting varied abuses, including refusing to log privileged documents, by litigants who want to avoid the risk of participating in them.

### V.     The Case Should Be Reassigned on Remand

Upon remand, this Court may "reassign it to a different judge when the appearance of fairness and impartiality is best advanced by reassignment." *United States v. McCall*, 934 F.3d 380, 384 (4th Cir. 2019) (internal citations omitted). Factors that the Court considers are "(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous . . .; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *Id*. Each of the forgoing factors weigh heavily towards reassignment.

### A.     The District Court has Already Demonstrated an Unwillingness to Acknowledge Error

The district court has already demonstrated an unwillingness to recognize error, and to "put[] out of his  . . . mind" his prior findings in favor of fact and law. *See McCall*, 934 F.3d at 384. Indeed, the court never stated it could put IWA's privileged information out of its mind, instead noting that his interpretation of the evidence is what it is, and that he will be the decision maker (Ex. D, Hr'g Tr. 30:6-

12), but then stated on the record the court's settled view that IWA's privileged information cuts against IWA's claim of good faith (*id.* at 11:10-22). Notably, in response to counsel's concern with the court's stated view that IWA's privileged communications colored its claim of good faith and expressing concerns about proceeding into summary judgment without knowing if this evidence is admissible, the district court did responded by raising the fact that IWA requested reassignment in the First Petition, demonstrating that the district court's offense at the request. The court further committed only that he would "try" to provide IWA a fair trial and would do his "best" to be impartial. (*Id.* at 30:2-5) ("Well, I would remind you that you asked me to be removed from the case, and that was denied, so I am in the case whether you like it or not, and I am going to try and give you a fair trial.)

Long ago, the district court blurred the lines of impartial arbiter and advocate. The district court has historically directed Plaintiff to file certain motions so they could be granted, and to assert certain claims not previously asserted against IWA. After the Fourth Circuit's writ of mandamus the district court did so again and directed Plaintiff to file a motion to unseal IWA's privileged information and invited avenues through which Plaintiff may use and exploit IWA's privileged information at trial. (*See, e.g.*, Ex. I.) Moreover, the district court's treatment of the mandamus and violation of the mandate rule further demonstrate the court's inability to remain fair and impartial and to apply the law in this case. Indeed, even in the face of the

26

Fourth Circuit's *vacatur* of the Production Order, the district court has taken the position that its conclusion about the crime-fraud exception was correct and simply found another way to achieve its desired ends. Reassignment is appropriate.

**B.     Reassignment is Advisable to Preserve the Appearance of Justice**

Second, "reassignment is advisable to preserve the appearance of justice." *See McCall*, 934 F.3d at 384. The district court has all but admitted that it has pre-judged this case even before hearing all of the evidence, and has invented law (such as by allowing Plaintiff to proceed on a non-existent cause of action called, "Wrongful, Invalid Assignment") and suggested inapplicable remedies for the contractual assignment of a ground lease. Building on the issues raised in the First Petition, the court's refusal to honor the spirit of this Court's mandate sends a loud message about the appearance of justice and impartiality: there is none. To prevent manifest injustice, to maintain public faith in the integrity of the judicial system, and to limit the errors that will be brought up on appeal, reassignment is again warranted.

**C.     <u>Reassignment Will Not Result in an Unreasonable Duplication.</u>**

Third, this Court "will more freely reassign a case when it will not require substantial duplication of effort." *McCall*, 934 F.3d at 384.  Notwithstanding that this case has been in litigation for over three years, allowing the case to remain in a court where remand for a new trial is likely is not efficient – indeed, to avoid reassignment now is likely to result in a duplication of all efforts later. Thus,

"reassigning this case will [not] requires disproportionate effort from the new presiding judge." *See id*. at 385. Yet, even if there is some *de minimis* duplication of some effort, such duplication would be significantly outweighed by the other two factors that the Court should consider.

## CONCLUSION

For the foregoing reasons, IWA respectfully requests that the Court: (i) grant this petition; (ii) direct the district court to vacate Second Production Order requiring the production of the *ex parte* briefing and *ex parte* hearing transcript; (iii) direct the district court that Plaintiff is not to receive IWA's privileged information, directly or indirectly in any manner, and is not entitled to use IWA's privileged information, including to the extent it is referenced or excerpted in the Memorandum Opinion at summary judgment or at trial; and (iv) direct that the case be reassigned on remand.

Dated: May 13, 2024                Respectfully submitted,

                                   */s/Rebecca A. Davis*
                                   Rebecca A. Davis
                                   ARNALL GOLDEN GREGORY LLP
                                   171 17th Street NW, Suite 2100
                                   Atlanta, GA 30363
                                   (404) 873-8768
                                   rebecca.davis@agg.com

                                   *Counsel for Investors Warranty of America, LLC*

## CERTIFICATE OF COMPLIANCE

1.      This petition complies with the type-volume limitation of <u>Federal Rule of Appellate Procedure 21(d)(1)</u> because this petition contains 7,242 words.

2.      This petition complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure because this petition has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman Font.

Dated: May 13, 2024

*/s/Rebecca A. Davis*
Rebecca A. Davis
ARNALL GOLDEN GREGORY LLP
171 17th Street NW, Suite 2100
Atlanta, GA 30363
(404) 873-8768
rebecca.davis@agg.com

*Counsel for Investors Warranty of America, LLC*

4894-4593-6062.v2

## CERTIFICATE OF SERVICE

I certify that on this 13th day of May, 2024, a copy of the foregoing Petition for Writ of Mandamus and the Record in Support of Petition for Writ of Mandamus, and all exhibits, were served by third party commercial carrier (Federal Express) and scheduled for overnight delivery:

The Honorable Peter J Messitte
United State District Courthouse
6500 Cherrywood Lane, Suite 475
Greenbelt, MD 20770

On this day, copy of the foregoing Petition for Writ of Mandamus and the Record in Support of Petition for Writ of Mandamus, and all exhibits, were served electronically and via U.S. Mail on the counsel below:

William Bosch
Katherine Danial
Alvin Dunn
Anthony Cavanaugh
Nicole Steinberg
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, DC 20036
william.bosch@pillsburylaw.com
katherine.danial@pillsburylaw.com
alvin.dunn@pillsburylaw.com
nicole.steinberg@pillsburylaw.com

*Counsel for Rock Spring Plaza II, LLC*

Sara E. Kropf
KROPF MOSELEY PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
sara@kmlawfirm.com

*Counsel for Rock Springs Drive, LLC*

*/s/Rebecca A. Davis*
Rebecca A. Davis