NO. 24-1434

# United States Court of Appeals

*for the*

# Fourth Circuit

---

In re: INVESTORS WARRANTY OF AMERICA, LLC,

*Petitioner*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT GREENBELT

## RESPONDENT'S APPENDIX

## VOLUME ONE (Pages 1-265)

WILLIAM M. BOSCH
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington DC 20036
(202) 663-8000
william.bosch@pillsburylaw.com

JEFFREY P. METZLER
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019
(212) 858-1000
jeffrey.metzler@pillsburylaw.com

*Attorneys for Respondent*

# TABLE OF CONTENTS

**VOLUME ONE**

District of Maryland Case Docket Sheet Dated June 13, 2024, *Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC et al*, Case No. 8:20-cv-01502-PJM ....................................................................... A1

IWA's Motion to Dismiss [ECF No. 13]
    Filed June 29, 2020 ........................................................................ A44

    Memorandum in Support .............................................................. A47

    Exhibit 1 – Amended and Restated Ground Lease ...................... A71

    Exhibit 2 – Estoppel Agreement ................................................. A140

District Court Memorandum Order [ECF. 151]
    Filed August 3, 2022 ................................................................... A156

Plaza's Second Amend Complaint [ECF No. 196]
    Filed December 8, 2022 ............................................................... A177

District Court Order [ECF No. 227]
    Filed January 17, 2023 ................................................................ A190

Plaza's Notice of Filing its Motion to Compel and Request for *In Camera* Review [ECF No. 238]
    Filed January 25, 2023 ................................................................ A191

    Plaza's Motion to Compel ........................................................... A194

    Exhibit A – Letter to R. Davis from K. Danial ........................... A209

    Exhibit B – Letter to K. Danial from R. Davis ........................... A212

    Exhibit C – Letter to R. Davis from K. Danial ........................... A215

    Exhibit D – Letter to K. Danial from R. Davis ........................... A219

i

Exhibit E – Email to R. Davis from K. Danial............................................ A223

Exhibit F – Letter to R. Davis from K. Danial............................................ A225

Exhibit G – Letter to K. Danial from R. Davis........................................... A229

Exhibit K – RSD Registration Information................................................. A236

Exhibit M – Excerpt of IWA's Privilege Log for *In Camera* Review........ A238

Exhibit N – IWA's Second Amended Privilege Log................................... A244

Exhibit O – Email to G. Van Gorp and T. Taylor from P. Rubin............... A259

Exhibit P – Memorandum to T. Taylor from P. Rubin............................... A261

District Court Memorandum Order [ECF No. 290]
     Filed March 15, 2023 .........................................................................A263

IWA's Response re: March 15, 2023, Memorandum Order [ECF No. 292]
     Filed March 20, 2023 .........................................................................A265

## VOLUME TWO

Plaza's Response to IWA's Brief Seeking Reconsideration of the Applicability of the
Crime-Fraud Exception [ECF No. 310]
     Filed April 18, 2023 ...........................................................................A266

Declaration of K. Danial ...........................................................................A300

Exhibit A – D. Feltman Deposition Transcript Excerpts............................A302

Exhibit B – R. Barron Deposition Transcript Excerpts..............................A322

Exhibit C – T. Taylor Deposition Transcript Excerpts ..............................A350

IWA's Reply in Support of its Brief, Pursuant to the Court's March 15, 2023 Order, in Support of Reconsideration of the Applicability of the Crime-Fraud Exception [ECF No. 312]

  Filed April 25, 2023 .......................................................................A368

  Exhibit A – February 16, 2023, Hearing Transcript Excerpts ....................A363

  Exhibit B – Declaration of R. Davis ...........................................................A397

  Exhibit 1 – P. Rubin Deposition Transcript Excerpts..................................A400

  Exhibit 2 – R. Barron Deposition Transcript Excerpts ...............................A405

  Exhibit 3 – T. Taylor Deposition Excerpts..................................................A435

  Exhibit 4 – R. Barron Resume ....................................................................A449

  Exhibit 5 – D. Feltman Deposition Transcript Excerpts .............................A456

  Exhibit 6 – M. Pithan Deposition Transcript Excerpts ...............................A473

  Exhibit C – Trustee's Deed of Assignment .................................................A476

District Court Order [ECF No. 314]
  Filed May 25, 2023 .......................................................................A484

District Court Order [ECF No. 340]
  Filed August 17, 2023 ...................................................................A485

District Court Memorandum [ECF No. 341]
  Filed August 17, 2023 ...................................................................A487

District Court Order [ECF No. 346]
  Filed August 23, 2023 ...................................................................A488

Memorandum Order [ECF No. 386]
  Filed February 21, 2024.................................................................A489

iii

February 22, 2024 Hearing Transcript ...................................................A490

Memorandum Order [ECF No. 389]
    Filed February 22, 2024..................................................................A515

Plaza's Motion to Unseal Crime-Fraud Information [ECF No. 392]
    Filed March 4, 2024........................................................................A517

Memorandum Order [ECF No. 404]
    Filed April 24, 2024........................................................................A526

May 1, 2024 Hearing Transcript.............................................................A527

Memorandum Order [ECF No.405]
    Filed May 2, 2024...........................................................................A571

## VOLUME THREE (SEALED)

Plaza's Motion for Partial Summary Judgment [ECF No. 127]
    Filed September 13, 2021 ...............................................................A574

    Memorandum in Support ................................................................A577

    Exhibit A – December 1, 2020 Transcript...................................... A609

    Exhibit C – Ground Lease...............................................................A666

    Exhibit F – Letter to Landlord from D. Feltman..........................A732

    Exhibit Q – IWA Value Consultation ...........................................A734

Exhibits to Plaza's Motion to Compel and Request for *In Camera* Review Filed January 25, 2023 [ECF No. 238.1]
    Exhibit H – Email Correspondence, N. Hutchinson, D. Wirtjes,
    M. Pithan, and D. Feltman............................................................A775

    Exhibit I – Email to D. Feltman from N. Koluch .........................A779

    Exhibit J – Email to R. Barron and J. Guso from D. Feltman ....................A782

iv

Exhibit L – RSD Operating Agreement .......................................................A784

Plaza's Reply in Support of its Motion to Compel Against IWA and Request for *In Camera* Review [ECF No. 238.3]
    Filed January 25, 2023 ................................................................. A838

    Exhibit A – Email J. Sowka Forwarded to G. Snitker .................................. A847

    Exhibit B – RSD Term Sheet ......................................................... A850

    Exhibit C – Email N. Hutchinson to D. Wirtjes, J. Gilmore ......................... A857

    Exhibit D – Email N. Hutchinson to M. Pithan, G. Van Gorp...................... A861

Memorandum Opinion [ECF No. 339]
    Filed August 17, 2023 .................................................................A863

Query    Reports    Utilities    Help    Log Out

CASREF

# U.S. District Court
## District of Maryland (Greenbelt)
## CIVIL DOCKET FOR CASE #: 8:20-cv-01502-PJM

| | |
|---|---|
| Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC et al | Date Filed: 06/05/2020 |
| Assigned to: Judge Peter J. Messitte | Jury Demand: Defendant |
| Referred to: Magistrate Judge Gina L Simms | Nature of Suit: 290 Real Property: Other |
| Cause: 28:1332 Diversity-Real Property | Jurisdiction: Diversity |

**Plaintiff**

**Rock Spring Plaza II, LLC**                 represented by **Alvin Dunn**
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW
Washington, DC 20036
12026638000
Fax: 12026638007
Email: alvin.dunn@pillsburylaw.com
*ATTORNEY TO BE NOTICED*

**Anthony F Cavanaugh**
Pillsbury Winthrop Shaw Pittman
Litigation
1200 17th Street, NW
Washington, DC 20036
202-663-8142
Email:
anthony.cavanaugh@pillsburylaw.com
*ATTORNEY TO BE NOTICED*

**John Robinson**
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave NW
Washington, DC 20009
732-939-2537
Email: john.robinson@apks.com
*TERMINATED: 09/02/2020*
*ATTORNEY TO BE NOTICED*

**Katherine Theresa Danial**
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW
Washington, DC 20036
202-663-8105
Fax: 202-354-5220
Email: katherine.danial@pillsburylaw.com
*ATTORNEY TO BE NOTICED*

**A1**

**Nicole Steinberg**
Pillsbury Winthrop Shaw Pittman LLP
1200 17th St NW
Washington, DC 20036
202-663-8151
Email: nicole.steinberg@pillsburylaw.com
*ATTORNEY TO BE NOTICED*

**Preston Smith**
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave NW
Washington, DC 20001
9194758361
Email: preston.smith@arnoldporter.com
*TERMINATED: 05/18/2021*

**William M Bosch**
Pillsbury Winthrop Shaw Pittman
1200 Seventeenth Street, NW
Washington, DC 20036
12026638761
Fax: 12026638007
Email: william.bosch@pillsburylaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Investors Warranty of America, LLC**              represented by  **Anne V Dunne**
Seyfarth Shaw LLP
Suite 300
2 Seaport Lane
Boston, MA 02210
6179464800
Fax: 6179464801
Email: adunne@seyfarth.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony Joseph LaPlaca**
Seyfarth Shaw LLP
2 Seaport Lane
Boston, MA 02110
617-946-8324
Fax: 802-558-8579
Email: alaplaca@seyfarth.com
*ATTORNEY TO BE NOTICED*

**Edward Victor Arnold**
Seyfarth Shaw LLP
975 F St NW
Washington, DC 20004
2028283597
Fax: 2028285393

Email: earnold@seyfarth.com
*TERMINATED: 01/04/2023*

**Jennifer L Shelfer**
Arnall Golden Gregory LLP
171 17th St. BW Ste. 2100
Atlanta, GA 30363
4048737004
Fax: 4048737005
Email: jennifer.shelfer@agg.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rebecca Allison Davis**
Arnall Golden Gregory
171 17th Street NW
Suite 2100
Atlanta, GA 30363
404-873-8500
Email: rebecca.davis@agg.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Renee Beth Appel**
Seyfarth Shaw Llp
975 F Street Nw
Washington, DC 20006
2028285371
Fax: 2028285393
Email: rappel@seyfarth.com
*ATTORNEY TO BE NOTICED*

**William B. Hill , Jr.**
Seyfarth Shaw LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, GA 30309
4048851500
Fax: 4048927056
Email: wbhill@seyfarth.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Rock Springs Drive, LLC**          represented by **Sara Kropf**
Kropf Moseley PLLC
1100 H Street NW
Suite 1220
Washington, DC 20005
2026276900
Email: sara@kmlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jaime Rosenberg**

**A3**

Vedder Price
1401 New York Avenue NW
Ste 500
Washington, DC 20005
202-312-3323
Email: jrosenberg@vedderprice.com
*TERMINATED: 01/24/2023*
*PRO HAC VICE*

**Rebecca Guiterman**
Kropf Moseley PLLC
1100 H Street NW #1220
Washington, DC 20005
2026276900
Email: rebecca@kmlawfirm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Transamerica Corporation**                    represented by    **Anthony L Meagher**
*TERMINATED: 01/17/2023*                                          DLA Piper LLP (US)
                                                                 6225 Smith Ave
                                                                 Baltimore, MD 21209-3600
                                                                 14105803000
                                                                 Fax: 14105803001
                                                                 Email: anthony.meagher@dlapiper.com
                                                                 *LEAD ATTORNEY*

                                                                 **Alexa Pauline Ain**
                                                                 DLA Piper LLP (US)
                                                                 650 S. Exeter Street
                                                                 Suite 1100
                                                                 Baltimore, MD 21202
                                                                 410-806-4033
                                                                 Email: alexa.ain@us.dlapiper.com
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Nicole Marie Kozlowski**
                                                                 DLA Piper LLP
                                                                 6225 Smith Avenue
                                                                 Baltimore, MD 21209
                                                                 410-580-4106
                                                                 Email: nicole.kozlowski@us.dlapiper.com

**Defendant**

**Jane Does**

**Counter Claimant**

**Investors Warranty of America, LLC**          represented by    **Anne V Dunne**
                                                                 (See above for address)
                                                                 *PRO HAC VICE*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Anthony Joseph LaPlaca**

**A4**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward Victor Arnold**
(See above for address)
*TERMINATED: 01/04/2023*

**Rebecca Allison Davis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Renee Beth Appel**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

<u>**Counter Defendant**</u>

**Rock Spring Plaza II, LLC**                  represented by  **John Robinson**
(See above for address)
*TERMINATED: 09/02/2020*
*ATTORNEY TO BE NOTICED*

**Preston Smith**
(See above for address)
*TERMINATED: 05/18/2021*

**William M Bosch**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Counter Claimant**</u>

**Rock Springs Drive, LLC**                  represented by  **Sara Kropf**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jaime Rosenberg**
(See above for address)
*TERMINATED: 01/24/2023*
*PRO HAC VICE*

V.

<u>**Counter Defendant**</u>

**Rock Spring Plaza II, LLC**                  represented by  **John Robinson**
(See above for address)
*TERMINATED: 09/02/2020*
*ATTORNEY TO BE NOTICED*

**Preston Smith**
(See above for address)
*TERMINATED: 05/18/2021*

**A5**

**William M Bosch**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Rock Springs Drive, LLC**                    represented by    **Sara Kropf**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jaime Rosenberg**
(See above for address)
*TERMINATED: 01/24/2023*
*PRO HAC VICE*

V.

**Counter Defendant**

**Rock Spring Plaza II, LLC**                   represented by    **John Robinson**
(See above for address)
*TERMINATED: 09/02/2020*
*ATTORNEY TO BE NOTICED*

**Preston Smith**
(See above for address)
*TERMINATED: 05/18/2021*

**William M Bosch**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Investors Warranty of America, LLC**          represented by    **Anne V Dunne**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Anthony Joseph LaPlaca**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward Victor Arnold**
(See above for address)
*TERMINATED: 01/04/2023*

**Rebecca Allison Davis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Renee Beth Appel**
(See above for address)
*ATTORNEY TO BE NOTICED*

**A6**

V.

**Counter Defendant**

| | | |
|---|---|---|
| **Rock Spring Plaza II, LLC** | represented by | **John Robinson** |

(See above for address)
*TERMINATED: 09/02/2020*
*ATTORNEY TO BE NOTICED*

**Preston Smith**
(See above for address)
*TERMINATED: 05/18/2021*

**William M Bosch**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

| | | |
|---|---|---|
| **Elizabethean Court Associates I LLC** | represented by | **William M Bosch** |

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alvin Dunn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Theresa Danial**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

| | | |
|---|---|---|
| **Elizabethean Court Associates II LLC** | represented by | **Katherine Theresa Danial** |

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William M Bosch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alvin Dunn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

| | | |
|---|---|---|
| **Elizabethean Court Associates III LLC** | represented by | **William M Bosch** |

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alvin Dunn**
(See above for address)

**A7**

USCA4 Appeal: 24-1434     Doc: 26-1     Filed: 06/18/2024     Pg: 14 of 271

*ATTORNEY TO BE NOTICED*

**Katherine Theresa Danial**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Elizabethean Court Associates IV LLC**      represented by    **William M Bosch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alvin Dunn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Theresa Danial**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Rock Spring Plaza I, LLC**      represented by    **William M Bosch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alvin Dunn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Theresa Danial**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Rock Spring Properties**      represented by    **William M Bosch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alvin Dunn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Theresa Danial**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Rockledge Associates LLC**      represented by    **William M Bosch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**A8**

**Alvin Dunn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Theresa Danial**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**Transamerica Life Insurance Company**     represented by    **Anthony L Meagher**
DLA Piper LLP (US)
650 S. Exeter Street
Suite 1100
Baltimore, MD 21202-4537
United Sta
14105803000
Fax: 14105803001
Email: anthony.meagher@dlapiper.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexa Pauline Ain**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**Transamerica Financial Life Insurance Company**     represented by    **Anthony L Meagher**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexa Pauline Ain**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**

**Transamerica Corporation**     represented by    **Anthony L Meagher**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexa Pauline Ain**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 06/05/2020 | 1 | COMPLAINT against Rock Springs Drive, LLC, Investors Warranty of America, LLC ( Filing fee $ 400 receipt number 0416-8686330.), filed by Rock Spring PLaza II, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Civil Cover Sheet)(Bosch, William) (Entered: 06/05/2020) |
| 06/05/2020 | 2 | NOTICE by Rock Spring PLaza II, LLC re 1 Complaint, *Summons to Investors Warranty of America, LLC* (Attachments: # 1 Summons to Rock Springs Drive, LLC)(Bosch, |

USCA4 Appeal: 24-1434    Doc: 26-1    Filed: 06/18/2024    Pg: 16 of 271

| | | |
|---|---|---|
| | | William) (Entered: 06/05/2020) |
| 06/05/2020 | 3 | Deficiency Notice: Rock Spring Plaza II, LLC -- Your Local Rule 103.3 disclosure statement has not been filed. The Statement must be filed by 6/12/2020 (dg3s, Deputy Clerk) (Entered: 06/05/2020) |
| 06/05/2020 | 4 | Summons Issued 21 days as to Investors Warranty of America, LLC, Rock Springs Drive, LLC.(dg3s, Deputy Clerk) (Entered: 06/05/2020) |
| 06/05/2020 | 5 | Local Rule 103.3 Disclosure Statement by Rock Spring Plaza II, LLC identifying Other Affiliate The Gregory S. Camalier 2015 Trust u/a dated November 1, 2016, Other Affiliate Rock Spring Plaza II Sub-Entity LLC, Other Affiliate The Lori D. Camalier 2015 Trust u/a dated November 1, 2016, Other Affiliate The Lisa A. Camalier 2015 Trust u/a dated November 1, 2016, Other Affiliate The F. Davis Camalier 2015 Trust u/a dated November 1, 2016, Other Affiliate The Charles A. Camalier, III 2015 Trust u/a dated November 1, 2016, Other Affiliate The Deborah C. Walker 2015 Trust u/a dated November 1, 2016, Other Affiliate 1994 Trust Asset LLC for Rock Spring Plaza II, LLC.(Bosch, William) (Entered: 06/05/2020) |
| 06/05/2020 | 6 | NOTICE of Appearance by John Robinson on behalf of Rock Spring Plaza II, LLC (Robinson, John) (Entered: 06/05/2020) |
| 06/09/2020 | 7 | SUMMONS Returned Executed by Rock Spring Plaza II, LLC. Rock Springs Drive, LLC served on 6/8/2020, answer due 6/29/2020.(Bosch, William) (Entered: 06/09/2020) |
| 06/09/2020 | 8 | SUMMONS Returned Executed by Rock Spring Plaza II, LLC. Investors Warranty of America, LLC served on 6/8/2020, answer due 6/29/2020.(Bosch, William) (Entered: 06/09/2020) |
| 06/12/2020 | 9 | MOTION to Appear Pro Hac Vice for Rebecca Davis (Filing fee $100, receipt number 0416-8700394.) by Investors Warranty of America, LLC(Arnold, Edward) (Entered: 06/12/2020) |
| 06/16/2020 | 10 | PAPERLESS ORDER granting 9 Motion to Appear Pro Hac Vice on behalf of Rebecca Allison Davis. Directing attorney Rebecca Allison Davis to use the attorney's existing CM/ECF login and password previously issued in this Court. The account password can be reset at http://www.mdd.uscourts.gov/electronic-case-filing-password-reset. Signed by Clerk on 6/16/2020. (srds, Deputy Clerk) (Entered: 06/16/2020) |
| 06/29/2020 | 11 | NOTICE of Appearance by Sara Kropf on behalf of Rock Springs Drive, LLC (Kropf, Sara) (Entered: 06/29/2020) |
| 06/29/2020 | 12 | MOTION for Extension of Time *to Respond to Complaint* by Rock Springs Drive, LLC (Attachments: # 1 Text of Proposed Order)(Kropf, Sara) (Entered: 06/29/2020) |
| 06/29/2020 | 13 | MOTION to Dismiss , MOTION to Dismiss for Failure to State a Claim by Investors Warranty of America, LLC (Attachments: # 1 Memorandum in Support, # 2 Exhibit, # 3 Exhibit)(Arnold, Edward) (Entered: 06/29/2020) |
| 06/29/2020 | 14 | [FILED IN ERROR] MOTION for Disclosure - *Corporate Disclosure Statement* by Investors Warranty of America, LLC(Arnold, Edward) Modified on 7/2/2020 (dg3s, Deputy Clerk). (Entered: 06/29/2020) |
| 06/30/2020 | 15 | RESPONSE in Opposition re 12 MOTION for Extension of Time *to Respond to Complaint* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Bosch, William) (Entered: 06/30/2020) |
| 06/30/2020 | 16 | MEMORANDUM/ORDER granting 12 Motion for Extension of Time. Signed by Judge Peter J. Messitte on 6/30/2020. (jf3s, Deputy Clerk) (Entered: 06/30/2020) |

| 07/02/2020 | 17 | QC NOTICE: 14 Motion for Disclosure filed by Investors Warranty of America, LLC was filed incorrectly. <br> **Wrong event used. When docketing the Local Rule 103.3 Disclosure Statement please use the correct event (Other Filings -> Other Documents -> Local 103.3 Disclosure Statement). Corporate parent and/or affiliates MUST be entered when prompted by CM/ECF to do so if needed. It has been noted as FILED IN ERROR, and the document link has been disabled. (dg3s, Deputy Clerk) (Entered: 07/02/2020)** |
| --- | --- | --- |
| 07/02/2020 | 18 | Local Rule 103.3 Disclosure Statement by Investors Warranty of America, LLC (Arnold, Edward) (Entered: 07/02/2020) |
| 07/06/2020 | 19 | Local Rule 103.3 Disclosure Statement by Rock Springs Drive, LLC (Kropf, Sara) (Entered: 07/06/2020) |
| 07/06/2020 | 20 | MOTION to Dismiss by Rock Springs Drive, LLC (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Kropf, Sara) (Entered: 07/06/2020) |
| 07/13/2020 | 21 | RESPONSE in Opposition re 13 MOTION to Dismiss MOTION to Dismiss for Failure to State a Claim, 20 MOTION to Dismiss filed by Rock Spring Plaza II, LLC.(Bosch, William) (Entered: 07/13/2020) |
| 07/23/2020 | 22 | NOTICE of Appearance by Preston Smith on behalf of Rock Spring Plaza II, LLC (Smith, Preston) (Entered: 07/23/2020) |
| 07/27/2020 | 23 | REPLY to Response to Motion re 20 MOTION to Dismiss filed by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 07/27/2020) |
| 07/27/2020 | 24 | REPLY to Response to Motion re 13 MOTION to Dismiss MOTION to Dismiss for Failure to State a Claim - *Defendant Investors Warranty of America, LLC's Reply Brief* filed by Investors Warranty of America, LLC.(Arnold, Edward) (Entered: 07/27/2020) |
| 08/03/2020 | 25 | PAPERLESS NOTICE OF SCHEDULING OF MOTIONS HEARING and advising counsel/parties of record that argument on 13 Defendant Investors Warranty of America, LLCs Motion to Dismiss and 20 Defendant Rock Springs Drive LLCs Motion to Dismiss will be heard before Judge Peter J. Messitte on Tuesday, December 1, 2020 at 2:00 p.m. (Courtroom To Be Determined). (The hearing will also include any other ripe and/or pending motions as of that date.) The parties will be allotted one and one-half (1 1/2) hours for total argument. Counsel should advise in writing immediately if they expect oral argument to exceed the allotted time frame. PLEASE ALSO NOTE: Counsel should bring copies for both the Court and opposing counsel of the principal cases on which they intend to rely during oral argument. Please also highlight the appropriate text.(jmhs, Chambers) (Entered: 08/03/2020) |
| 09/01/2020 | 26 | MOTION to Withdraw as Attorney by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Robinson, John) (Entered: 09/01/2020) |
| 09/02/2020 | 27 | PAPERLESS ORDER GRANTING 26 Motion to Withdraw as Attorney. Attorney John Robinson withdrawn. Signed by Judge Peter J. Messitte on 9/2/2020. (jmhs, Chambers) (Entered: 09/02/2020) |
| 12/01/2020 | 28 | NOTICE of Appearance by Anthony Joseph LaPlaca on behalf of Investors Warranty of America, LLC (LaPlaca, Anthony) (Entered: 12/01/2020) |
| 12/01/2020 | 29 | Motions Hearing held on 12/1/2020 re 13 MOTION to Dismiss for Failure to State a Claim filed by Defendant Investors Warranty of America, LLC and 20 MOTION to Dismiss filed by Defendant Rock Springs Drive, LLC - both Argued - Oral Ruling of the Court DENYING 13 and 20 Motions to Dismiss for reasons stated on the record by and before Judge Peter J. Messitte. (Scheduling Order to be entered by the Court) (Court Reporter: Rebecca Stonestreet - via Zoom) (tds, Deputy Clerk) (Entered: 12/01/2020) |

**A11**

| 12/01/2020 | 30 | ORDER denying 13 MOTION to Dismiss, MOTION to Dismiss for Failure to State a Claim; denying 20 MOTION to Dismiss. Signed by Judge Peter J. Messitte on 12/1/2020. (dg3s, Deputy Clerk) (Entered: 12/02/2020) |
| 12/01/2020 | 31 | SCHEDULING ORDER: Status Report due by 4/15/2021. Signed by Judge Peter J. Messitte on 12/1/2020. (dg3s, Deputy Clerk) (Entered: 12/02/2020) |
| 12/15/2020 | 32 | *Defendant Investors Warranty of America's* ANSWER to 1 Complaint, *and Affirmative and Other Defenses*, COUNTERCLAIM against Rock Spring Plaza II, LLC by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit, # 2 Exhibit)(Arnold, Edward) (Entered: 12/15/2020) |
| 12/15/2020 | 33 | ANSWER to 1 Complaint, , COUNTERCLAIM against Rock Spring Plaza II, LLC by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 12/15/2020) |
| 12/15/2020 | 34 | NOTICE by Rock Spring Plaza II, LLC (Smith, Preston) (Entered: 12/15/2020) |
| 01/05/2021 | 35 | [FILED IN ERROR - PER COUNSEL] ANSWER to 32 Answer to Complaint,, Counterclaim, by Rock Spring Plaza II, LLC.(Smith, Preston) Modified on 1/5/2021 (dg3s, Deputy Clerk). (Entered: 01/05/2021) |
| 01/05/2021 | 36 | ANSWER to 33 Answer to Complaint, Counterclaim by Rock Spring Plaza II, LLC. (Smith, Preston) (Entered: 01/05/2021) |
| 01/05/2021 | 37 | MOTION to Strike 33 Answer to Complaint, Counterclaim, 32 Answer to Complaint,, Counterclaim, by Rock Spring Plaza II, LLC (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Smith, Preston) (Entered: 01/05/2021) |
| 01/05/2021 | 38 | ANSWER to 32 Answer to Complaint,, Counterclaim, by Rock Spring Plaza II, LLC. (Smith, Preston) (Entered: 01/05/2021) |
| 01/15/2021 | 39 | MOTION for Leave to File *Amended Complaint & Joinder* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order, # 2 Attachment 1st Amended Complaint, # 3 Attachment Blackline of Original Complaint, # 4 Exhibit Ex. A to 1st Am. Complaint, # 5 Exhibit Ex. B to 1st Am. Complaint, # 6 Exhibit Ex. C to 1st Am. Complaint, # 7 Exhibit Ex. D to 1st Am. Complaint, # 8 Exhibit Ex. E to 1st Am. Complaint, # 9 Exhibit Ex. F to 1st Am. Complaint)(Smith, Preston) (Entered: 01/15/2021) |
| 01/15/2021 | 40 | Memorandum re 39 MOTION for Leave to File *Amended Complaint & Joinder* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit, # 2 Exhibit)(Smith, Preston) (Entered: 01/15/2021) |
| 01/15/2021 | 41 | NOTICE by Rock Spring Plaza II, LLC re 39 MOTION for Leave to File *Amended Complaint & Joinder* (Attachments: # 1 Attachment Proposed First Amended Complaint) (Smith, Preston) (Entered: 01/15/2021) |
| 01/19/2021 | 42 | AMENDED ANSWER to 1 Complaint,, COUNTERCLAIM against All Plaintiffs by Rock Springs Drive, LLC. (Kropf, Sara) (Entered: 01/19/2021) |
| 01/19/2021 | 43 | RESPONSE in Opposition re 37 MOTION to Strike 33 Answer to Complaint, Counterclaim, 32 Answer to Complaint,, Counterclaim, filed by Rock Springs Drive, LLC. (Kropf, Sara) (Entered: 01/19/2021) |
| 01/19/2021 | 44 | AMENDED ANSWER to 1 Complaint,, COUNTERCLAIM against Rock Spring Plaza II, LLC by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit, # 2 Exhibit) (Arnold, Edward) (Entered: 01/19/2021) |
| 01/19/2021 | 45 | RESPONSE to Motion re 37 MOTION to Strike 33 Answer to Complaint, Counterclaim, 32 Answer to Complaint,, Counterclaim, filed by Investors Warranty of America, LLC. (Arnold, Edward) (Entered: 01/19/2021) |

**A12**

USCA4 Appeal: 24-1434     Doc: 26-1     Filed: 06/18/2024     Pg: 19 of 271

| | | |
|---|---|---|
| 01/27/2021 | 46 | NOTICE by Rock Spring Plaza II, LLC re 37 MOTION to Strike 33 Answer to Complaint, Counterclaim, 32 Answer to Complaint,, Counterclaim, (Smith, Preston) (Entered: 01/27/2021) |
| 01/28/2021 | 47 | Joint MOTION for Extension of Time *to Extend Discovery and Modify Scheduling Order* by Investors Warranty of America, LLC (Attachments: # 1 Text of Proposed Order) (Arnold, Edward) (Entered: 01/28/2021) |
| 01/28/2021 | 48 | ORDER granting 47 Joint MOTION for Extension of Time to Extend Discovery and Modify Scheduling Order; Status Report due by 6/15/2021. Signed by Judge Peter J. Messitte on 1/28/2021. (dg3s, Deputy Clerk) (Entered: 01/28/2021) |
| 01/29/2021 | 49 | RESPONSE in Opposition re 39 MOTION for Leave to File *Amended Complaint & Joinder* filed by Investors Warranty of America, LLC.(Arnold, Edward) (Entered: 01/29/2021) |
| 02/09/2021 | 50 | MOTION to Strike 42 Amended Answer to Complaint, Counterclaim, 44 Amended Answer to Complaint, Counterclaim by Rock Spring Plaza II, LLC (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Smith, Preston) (Entered: 02/09/2021) |
| 02/12/2021 | 51 | RESPONSE in Support re 39 MOTION for Leave to File *Amended Complaint & Joinder* filed by Rock Spring Plaza II, LLC.(Smith, Preston) (Entered: 02/12/2021) |
| 02/23/2021 | 52 | RESPONSE in Opposition re 37 MOTION to Strike 33 Answer to Complaint, Counterclaim, 32 Answer to Complaint,, Counterclaim, , 50 MOTION to Strike 42 Amended Answer to Complaint, Counterclaim, 44 Amended Answer to Complaint, Counterclaim filed by Investors Warranty of America, LLC.(Arnold, Edward) (Entered: 02/23/2021) |
| 02/23/2021 | 53 | RESPONSE in Opposition re 50 MOTION to Strike 42 Amended Answer to Complaint, Counterclaim, 44 Amended Answer to Complaint, Counterclaim filed by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 02/23/2021) |
| 02/24/2021 | 54 | STIPULATION *Confidentiality Order* by Investors Warranty of America, LLC(Arnold, Edward) (Entered: 02/24/2021) |
| 02/25/2021 | 55 | PAPERLESS ORDER APPROVING 46 Plaintiff Rock Spring Plaza II, LLC's Notice of Withdrawal of 37 Motion to Strike. Signed by Judge Peter J. Messitte on 2/25/2021. (jmhs, Chambers) (Entered: 02/25/2021) |
| 02/25/2021 | 56 | STIPULATED CONFIDENTIALITY ORDER. Signed by Judge Peter J. Messitte on 2/25/2021. (dg3s, Deputy Clerk) (Entered: 02/25/2021) |
| 02/25/2021 | 57 | PAPERLESS ORDER DENYING AS MOOT 37 Motion to Strike. Signed by Judge Peter J. Messitte on 2/25/2021. (jmhs, Chambers) (Entered: 02/25/2021) |
| 02/25/2021 | 58 | ORDER granting 39 MOTION for Leave to File Amended Complaint & Joinder; adding Transamerica Corporation as a defendant; directing the clerk to docket the First Amended Complaint. Signed by Judge Peter J. Messitte on 2/25/2021. (dg3s, Deputy Clerk) (Entered: 02/25/2021) |
| 02/25/2021 | 59 | AMENDED COMPLAINT against Jane Does, Investors Warranty of America, LLC, Rock Springs Drive, LLC, Transamerica Corporation, filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Redline Version, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F)(dg3s, Deputy Clerk) (Additional attachment(s) added on 2/25/2021: # 8 CORRECTED First Amended Complaint) (dg3s, Deputy Clerk). (Entered: 02/25/2021) |

**A13**

| 02/25/2021 | 60 | QC NOTICE: 59 Amended Complaint, filed by Rock Spring Plaza II, LLC was filed incompletely.<br>**The following attachments or exhibits are missing - Summons as to Transamerica Corporation. To correct this problem, file the Summons using the event Notice (Other) and link the Summons to 59 . (dg3s, Deputy Clerk) (Entered: 02/25/2021) |
| 02/25/2021 | 61 | NOTICE by Rock Spring Plaza II, LLC re 59 Amended Complaint, (Attachments: # 1 Exhibit 1)(Smith, Preston) (Entered: 02/25/2021) |
| 02/26/2021 | 62 | Summons Issued 21 days as to Transamerica Corporation.(dg3s, Deputy Clerk) (Entered: 02/26/2021) |
| 03/04/2021 | 63 | MEMORANDUM/ORDER denying as Moot 50 Motion to Strike Defendants' Amended Answer to Complaint. Signed by Judge Peter J. Messitte on 3/3/2021. (jf3s, Deputy Clerk) (Entered: 03/04/2021) |
| 03/11/2021 | 64 | *Defendant Investors Warranty of America's Answer and Affirmative Defenses to the First Amended Complaint* ANSWER to 59 Amended Complaint, by Investors Warranty of America, LLC.(Arnold, Edward) (Entered: 03/11/2021) |
| 03/11/2021 | 65 | ANSWER to 59 Amended Complaint, by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 03/11/2021) |
| 03/19/2021 | 66 | NOTICE of Appearance by Anthony L Meagher on behalf of Transamerica Corporation (Meagher, Anthony) (Entered: 03/19/2021) |
| 03/19/2021 | 67 | NOTICE of Appearance by Nicole Marie Kozlowski on behalf of Transamerica Corporation (Kozlowski, Nicole) (Entered: 03/19/2021) |
| 03/19/2021 | 68 | Consent MOTION for Extension of Time *to Respond to Plaintiff's Amended Complaint* by Transamerica Corporation (Attachments: # 1 Text of Proposed Order)(Kozlowski, Nicole) (Entered: 03/19/2021) |
| 03/19/2021 | 69 | PAPERLESS ORDER GRANTING 68 Consent Motion for Extension of Time to Respond to Plaintiffs Amended Complaint (until April 12, 2021). Signed by Judge Peter J. Messitte on 3/19/2021. (jmhs, Chambers) (Entered: 03/19/2021) |
| 03/19/2021 | 70 | Local Rule 103.3 Disclosure Statement by Transamerica Corporation identifying Corporate Parent Aegon, N.V., Corporate Parent The AEGON Trust, Corporate Parent AEGON International, B.V. for Transamerica Corporation.(Kozlowski, Nicole) (Entered: 03/19/2021) |
| 03/22/2021 | 71 | Consent MOTION for Extension of Time to Complete Discovery by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Smith, Preston) (Entered: 03/22/2021) |
| 03/23/2021 | 72 | ORDER granting 71 Consent MOTION for Extension of Time to Complete Discovery; status report due September 15, 2021. Signed by Judge Peter J. Messitte on 3/23/2021. (jf3s, Deputy Clerk) (Entered: 03/23/2021) |
| 04/01/2021 | 73 | MOTION to Strike 65 Answer to Amended Complaint, 64 Answer to Amended Complaint by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Smith, Preston) (Entered: 04/01/2021) |
| 04/01/2021 | 74 | Memorandum re 73 MOTION to Strike 65 Answer to Amended Complaint, 64 Answer to Amended Complaint filed by Rock Spring Plaza II, LLC.(Smith, Preston) (Entered: 04/01/2021) |
| 04/12/2021 | 75 | MOTION to Dismiss for Failure to State a Claim by Transamerica Corporation (Attachments: # 1 Memorandum in Support Memorandum In Support, # 2 Exhibit Exhibit 1, # 3 Text of Proposed Order Proposed Order)(Kozlowski, Nicole) (Entered: 04/12/2021) |

**A14**

| 04/15/2021 | 76 | RESPONSE in Opposition re 73 MOTION to Strike 65 Answer to Amended Complaint, 64 Answer to Amended Complaint filed by Investors Warranty of America, LLC.(Arnold, Edward) (Entered: 04/15/2021) |
| 04/15/2021 | 77 | RESPONSE in Opposition re 73 MOTION to Strike 65 Answer to Amended Complaint, 64 Answer to Amended Complaint filed by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 04/15/2021) |
| 04/26/2021 | 78 | RESPONSE in Opposition re 75 MOTION to Dismiss for Failure to State a Claim filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit)(Smith, Preston) (Entered: 04/26/2021) |
| 04/29/2021 | 79 | RESPONSE in Support re 73 MOTION to Strike 65 Answer to Amended Complaint, 64 Answer to Amended Complaint filed by Rock Spring Plaza II, LLC.(Smith, Preston) (Entered: 04/29/2021) |
| 05/07/2021 | 80 | MOTION for Leave to File *Sur-Reply Related to Plaintiff's Motion to Strike Affirmative Defenses* by Rock Springs Drive, LLC (Attachments: # 1 Exhibit Exhibit A (proposed sur-reply), # 2 Text of Proposed Order)(Kropf, Sara) (Entered: 05/07/2021) |
| 05/07/2021 | 81 | NOTICE of Change of Address by William M Bosch (Bosch, William) (Entered: 05/07/2021) |
| 05/07/2021 | 82 | MOTION for Leave to File *Sur-Reply to Plaintiff's Motion to Strike the Affirmative Defenses* by Investors Warranty of America, LLC (Attachments: # 1 Exhibit Proposed Sur-Reply, # 2 Text of Proposed Order)(Arnold, Edward) (Entered: 05/07/2021) |
| 05/10/2021 | 83 | REPLY to Response to Motion re 75 MOTION to Dismiss for Failure to State a Claim filed by Transamerica Corporation.(Kozlowski, Nicole) (Entered: 05/10/2021) |
| 05/13/2021 | 84 | MOTION to Appear Pro Hac Vice for Anne Dunne (Filing fee $100, receipt number 0416-9276486.) by Investors Warranty of America, LLC(LaPlaca, Anthony) (Entered: 05/13/2021) |
| 05/14/2021 | 85 | MOTION to Withdraw as Attorney by Rock Spring Plaza II, LLC(Smith, Preston) (Entered: 05/14/2021) |
| 05/14/2021 | 86 | QC NOTICE: 84 Motion to Appear Pro Hac Vice filed by Investors Warranty of America, LLC needs to be modified. See attachment for details and corrective actions needed regarding the signature(s) on the motion. (dm4s, Deputy Clerk) (Entered: 05/14/2021) |
| 05/14/2021 | 87 | NOTICE of Appearance by Katherine Theresa Danial on behalf of Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 05/14/2021) |
| 05/17/2021 | 88 | CORRECTED MOTION to Appear Pro Hac Vice for Anne Dunne by Investors Warranty of America, LLC. The fee has already been paid.(LaPlaca, Anthony) (Entered: 05/17/2021) |
| 05/18/2021 | 89 | PAPERLESS ORDER GRANTING 85 Motion to Withdraw as Attorney. Attorney Preston Smith withdrawn. Signed by Judge Peter J. Messitte on 5/18/2021. (jmhs, Chambers) (Entered: 05/18/2021) |
| 05/18/2021 | 90 | PAPERLESS ORDER granting 88 Corrected Motion to Appear Pro Hac Vice on behalf of Anne V Dunne. Directing attorney Anne V Dunne to register online for CM/ECF at http://www.mdd.uscourts.gov/electronic-case-filing-registration. Signed by Clerk on 5/18/2021. (dm4s, Deputy Clerk) (Entered: 05/18/2021) |
| 05/18/2021 | 91 | NOTICE of Appearance by Alvin Dunn on behalf of Rock Spring Plaza II, LLC (Dunn, Alvin) (Entered: 05/18/2021) |

**A15**

6/13/24, 3:53 PM                    District of Maryland (CM/ECF Live NextGen 1.7.1.1)

| 06/02/2021 | 92 | ORDER denying 73 MOTION to Strike 65 Answer to Amended Complaint, 64 Answer to Amended Complaint ; denying as moot 80 MOTION for Leave to File Sur-Reply Related to Plaintiff's Motion to Strike Affirmative Defenses ; denying as moot 82 MOTION for Leave to File Sur-Reply to Plaintiff's Motion to Strike the Affirmative Defenses. Signed by Judge Peter J. Messitte on 6/1/2021. (dg3s, Deputy Clerk) (Entered: 06/02/2021) |
|---|---|---|
| 06/02/2021 | 93 | PAPERLESS NOTICE OF SCHEDULING OF MOTIONS HEARING and advising counsel/parties of record that oral argument on 75 Defendants Motion to Dismiss will be heard before Judge Peter J. Messitte on Tuesday, July 6, 2021 at 2:30 p.m. via ZoomGov. The parties will be allotted one and one-half (1 1/2) hours for total argument. Counsel should advise in writing immediately if they expect oral argument to exceed the allotted time frame. PLEASE ALSO NOTE: Counsel should mail or hand deliver copies of the principal cases on which they intend to rely during oral argument to the Courthouse by no later than Friday, July 2, 2021. Please also highlight the appropriate text(jmhs, Chambers) (Entered: 06/02/2021) |
| 07/01/2021 | 94 | -SEALED- MOTION for Leave to File *Sur-Reply* by Rock Spring Plaza II, LLC (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Text of Proposed Order)(Danial, Katherine) (Entered: 07/01/2021) |
| 07/01/2021 | 95 | MOTION to Seal *Motion for Leave to File Sur-Reply* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Danial, Katherine) (Entered: 07/01/2021) |
| 07/01/2021 | 96 | -SEALED-ORDER granting 94 MOTION for Leave to File Sur-Reply. Signed by Judge Peter J. Messitte on 7/1/2021. (dg3s, Deputy Clerk) (Entered: 07/02/2021) |
| 07/02/2021 | 97 | SURREPLY filed by Rock Spring Plaza II, LLC to 75 MOTION to Dismiss for Failure to State a Claim. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(dg3s, Deputy Clerk) (Entered: 07/02/2021) |
| 07/02/2021 | 98 | MOTION to Compel by Investors Warranty of America, LLC (Attachments: # 1 Memorandum in Support, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit) (Arnold, Edward) (Entered: 07/02/2021) |
| 07/02/2021 | 99 | Correspondence re: Discovery Dispute (Arnold, Edward) (Entered: 07/02/2021) |
| 07/06/2021 | 101 | Motion Hearing held on 7/6/2021 re 75 MOTION to Dismiss for Failure to State a Claim filed by Transamerica Corporation before Judge Peter J. Messitte.(Court Reporter: Renee Ewing) (nrms, Deputy Clerk) (Entered: 07/07/2021) |
| 07/07/2021 | 100 | ORDER denying without prejudice 75 MOTION to Dismiss for Failure to State a Claim; directing parties to submit a proposed joint scheduling order within 30 days. Signed by Judge Peter J. Messitte on 7/7/2021. (dg3s, Deputy Clerk) (Entered: 07/07/2021) |
| 07/12/2021 | 102 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 07/06/2021, before Judge Messitte. Court Reporter/Transcriber Renee A Ewing, Telephone number 301-344-3227. Total number of pages filed: 57. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 8/2/2021. Redacted Transcript Deadline set for 8/12/2021. Release of Transcript Restriction set for 10/12/2021.(re, Court Reporter) (Entered: 07/12/2021) |
| 07/16/2021 | 103 | RESPONSE in Opposition re 98 MOTION to Compel filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit)(Danial, Katherine) (Entered: 07/16/2021) |
| 07/20/2021 | 104 | ANSWER to 59 Amended Complaint, by Transamerica Corporation.(Kozlowski, Nicole) (Entered: 07/20/2021) |

**A16**

| 07/30/2021 | 105 | REPLY to Response to Motion re 98 MOTION to Compel filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit 1 - Camalier0004126, # 2 Exhibit 2 - Camalier0004146)(Arnold, Edward) (Entered: 07/30/2021) |
| 08/03/2021 | 106 | ORDER REFERRING CASE to Magistrate Judge Gina L Simms for Discovery, specifically, ECF 98, Motion to Compel. Signed by Judge Peter J. Messitte on 8/3/2021. (hmls, Deputy Clerk) (Entered: 08/03/2021) |
| 08/03/2021 | 107 | PAPERLESS ORDER: scheduling a telephonic conference call related to ECF No. 98 for Friday, August 6, 2021 at 10:00 am. Conference call-in instructions have been provided to counsel. Signed by Magistrate Judge Gina L Simms on 8/3/2021. (bh5s, Chambers) (Entered: 08/03/2021) |
| 08/04/2021 | 108 | MOTION for Leave to File by Rock Spring Plaza II, LLC (Attachments: # 1 Exhibit Exhibit A, # 2 Text of Proposed Order Proposed Order, # 3 Exhibit Certificate of Service) (Danial, Katherine) (Entered: 08/04/2021) |
| 08/06/2021 | 109 | PAPERLESS ORDER granting ECF No. 108 for the reasons stated on the record at the 8/6/2021 discovery dispute hearing. Signed by Magistrate Judge Gina L Simms on 8/6/2021. (bh5s, Chambers) (Entered: 08/06/2021) |
| 08/06/2021 | 110 | Telephone conference related to a discovery dispute held on 8/6/2021 before Magistrate Judge Gina L Simms. (dps, Chambers) (Entered: 08/06/2021) |
| 08/06/2021 | 111 | NOTICE by Rock Spring Plaza II, LLC *Proposed Joint Scheduling Order* (Danial, Katherine) (Entered: 08/06/2021) |
| 08/06/2021 | 112 | ORDER granting in part and denying in part 98 MOTION to Compel. Signed by Magistrate Judge Gina L Simms on 8/6/2021. (dg3s, Deputy Clerk) (Entered: 08/06/2021) |
| 08/09/2021 | 113 | MOTION to Compel by Investors Warranty of America, LLC (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D) (Arnold, Edward) (Entered: 08/09/2021) |
| 08/11/2021 | 114 | ORDER REFERRING CASE to Magistrate Judge Gina L Simms for Discovery, specifically, ECF 113, Motion to Compel. Signed by Judge Peter J. Messitte on 8/11/2021. (hmls, Deputy Clerk) (Entered: 08/11/2021) |
| 08/11/2021 |  | MOTIONS REFERRED: 113 MOTION to Compel . (hmls, Deputy Clerk) (Entered: 08/11/2021) |
| 08/12/2021 | 115 | PAPERLESS ORDER DIRECTING the Plaintiff to file a response to ECF No. 113 by no later than August 24, 2021, and the Defendant to file a Reply by no later than August 30, 2021. Signed by Magistrate Judge Gina L Simms on 8/12/2021. (dps, Chambers) (Entered: 08/12/2021) |
| 08/12/2021 | 116 | Telephone Conference (re 99 Correspondence re: Discovery Dispute) held on 8/12/2021 for 15 minutes before Judge Peter J. Messitte.(Court Reporter: Patricia Klepp) (jmhs, Chambers) (Entered: 08/12/2021) |
| 08/12/2021 | 117 | MEMORANDUM ORDER temporarily staying all discovery; directing the Plaintiff to file a Motion for Summary Judgment within 30 days and setting a briefing schedule for the Motion. Signed by Judge Peter J. Messitte on 8/12/2021. (dg3s, Deputy Clerk) (Entered: 08/12/2021) |
| 08/12/2021 | 118 | ORDER granting 95 MOTION to Seal Motion for Leave to File Sur-Reply. Signed by Judge Peter J. Messitte on 8/12/2021. (dg3s, Deputy Clerk) (Entered: 08/12/2021) |
| 08/13/2021 | 119 | Correspondence re: Stay of Discovery (Davis, Rebecca) (Entered: 08/13/2021) |

**A17**

6/13/24, 3:53 PM     District of Maryland (CM/ECF Live NextGen 1.7.1.1)

| | | |
|---|---|---|
| 08/17/2021 | 120 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 8-12-2021, before Judge Messitte. Court Reporter/Transcriber Patricia Klepp, Telephone number 301-344-3228. Total number of pages filed: 16. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 9/7/2021. Redacted Transcript Deadline set for 9/17/2021. Release of Transcript Restriction set for 11/15/2021.(pk4, Court Reporter) (Entered: 08/17/2021) |
| 08/23/2021 | 121 | MOTION to Appear Pro Hac Vice for Jaime Rosenberg *for Defendant/Counter-Plaintiff Rock Springs Drive LLC* (Filing fee $100, receipt number 0416-9450295.) by Rock Springs Drive, LLC(Kropf, Sara) (Entered: 08/23/2021) |
| 08/24/2021 | 122 | PAPERLESS ORDER granting 121 Motion to Appear Pro Hac Vice on behalf of Jaime Rosenberg. Directing attorney Jaime Rosenberg to register online for CM/ECF at http://www.mdd.uscourts.gov/electronic-case-filing-registration. Signed by Clerk on 8/24/2021. (dm4, Deputy Clerk) (Entered: 08/24/2021) |
| 08/24/2021 | 123 | Correspondence re: Stay of Discovery (Danial, Katherine) (Entered: 08/24/2021) |
| 09/02/2021 | 124 | Recording of telephone conference related to a discovery dispute held before Magistrate Judge Gina L Simms on August 6, 2021 ( ECF No. 110 ) uploaded to FTR on September 2, 2021, 10:29:25 a.m. - 11:37:42 a.m. (Courtroom 3A)(dps, Chambers) (Entered: 09/02/2021) |
| 09/09/2021 | 125 | Correspondence re: Clarification of Discovery Stay (Attachments: # 1 Exhibit Email corrrespondence)(Kropf, Sara) (Entered: 09/09/2021) |
| 09/09/2021 | 126 | Correspondence re: Nonparty Discovery (Danial, Katherine) (Entered: 09/09/2021) |
| 09/13/2021 | 127 | -SEALED- MOTION for Partial Summary Judgment by Rock Spring Plaza II, LLC (Attachments: # 1 Memorandum in Support, # 2 Exhibit Exhibit A, # 3 Exhibit Exhibit B, # 4 Exhibit Exhibit C, # 5 Exhibit Exhibit D, # 6 Exhibit Exhibit E, # 7 Exhibit Exhibit F, # 8 Exhibit Exhibit G, # 9 Exhibit Exhibit H, # 10 Exhibit Exhibit I, # 11 Exhibit Exhibit J, # 12 Exhibit Exhibit K, # 13 Exhibit Exhibit L, # 14 Exhibit Exhibit M, # 15 Exhibit Exhibit N, # 16 Exhibit Exhibit O, # 17 Exhibit Exhibit P, # 18 Exhibit Exhibit Q, # 19 Exhibit Exhibit R, # 20 Exhibit Exhibit S, # 21 Exhibit Exhibit T, # 22 Exhibit Exhibit U, # 23 Exhibit Exhibit V, # 24 Text of Proposed Order Proposed Order)(Danial, Katherine) (Entered: 09/13/2021) |
| 09/13/2021 | 128 | MOTION to Seal by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Danial, Katherine) (Entered: 09/13/2021) |
| 09/14/2021 | 129 | ORDER granting 128 Motion to Seal. Signed by Judge Peter J. Messitte on 9/14/2021. (dg3s, Deputy Clerk) (Entered: 09/14/2021) |
| 09/15/2021 | 130 | MEMORANDUM ORDER regarding Stay. Signed by Judge Peter J. Messitte on 9/15/2021. (dg3s, Deputy Clerk) (Entered: 09/15/2021) |
| 09/27/2021 | 131 | PAPERLESS ORDER DENYING ECF No. 113 as premature in light of ECF No. 117. Signed by Magistrate Judge Gina L Simms on 9/27/2021. (bh5s, Chambers) (Entered: 09/27/2021) |
| 10/13/2021 | 132 | -SEALED-RESPONSE in Opposition re 127 MOTION for Partial Summary Judgment filed by Investors Warranty of America, LLC. (Attachments: # 1 Statement of Additional Facts, # 2 Response in Opposition, # 3 Text of Proposed Order, # 4 Declaration, # 5 Exhibit 1, # 6 Exhibit 2, # 7 Exhibit 3, # 8 Exhibit 4, # 9 Exhibit 5, # 10 Exhibit 6, # 11 Exhibit 7, # 12 Exhibit 8, # 13 Exhibit 9, # 14 Exhibit 10, # 15 Exhibit 11, # 16 Exhibit 12, # 17 Exhibit 13, # 18 Exhibit 14, # 19 Exhibit 15, # 20 Exhibit 16, # 21 Exhibit 17, # 22 |

**A18**

| | | |
|---|---|---|
| | | Exhibit 18, # [23] Exhibit 19, # [24] Exhibit 20, # [25] Exhibit 21, # [26] Exhibit 22, # [27] Exhibit 23, # [28] Exhibit 24, # [29] Exhibit 25, # [30] Exhibit 26, # [31] Exhibit 27)(Davis, Rebecca) (Entered: 10/13/2021) |
| 10/13/2021 | [133] | MOTION to Seal by Investors Warranty of America, LLC (Attachments: # [1] Text of Proposed Order)(Davis, Rebecca) (Entered: 10/13/2021) |
| 10/13/2021 | [134] | ORDER granting [133] Motion to Seal; effective 14 days from the date the Motion was filed. Signed by Judge Peter J. Messitte on 10/13/2021. (mg3s, Deputy Clerk) (Entered: 10/13/2021) |
| 10/13/2021 | [135] | Consent MOTION to Seal *Opposition to Motion for Partial Summary Judgment* by Rock Springs Drive, LLC (Attachments: # [1] Text of Proposed Order)(Kropf, Sara) (Entered: 10/13/2021) |
| 10/13/2021 | [136] | -SEALED-RESPONSE in Opposition re [127] MOTION for Partial Summary Judgment filed by Rock Springs Drive, LLC. (Attachments: # [1] Response to Pls. Statement of Facts and RSD Statement of Material Facts, # [2] Affidavit by Sara E. Kropf, # [3] Exhibit Nos. DX 1 - DX 23)(Kropf, Sara) (Entered: 10/13/2021) |
| 10/13/2021 | [137] | RESPONSE to Motion re [127] MOTION for Partial Summary Judgment filed by Transamerica Corporation.(Kozlowski, Nicole) (Entered: 10/13/2021) |
| 10/14/2021 | [138] | ORDER granting [135] Motion to Seal; effective 14 days from the date the Motion was filed. Signed by Judge Peter J. Messitte on 10/14/2021. (mg3s, Deputy Clerk). (Entered: 10/14/2021) |
| 10/28/2021 | [139] | -SEALED-REPLY to Response to Motion re [127] MOTION for Partial Summary Judgment filed by Rock Spring Plaza II, LLC.(Danial, Katherine) (Entered: 10/28/2021) |
| 10/28/2021 | [140] | MOTION to Seal *Reply* by Rock Spring Plaza II, LLC (Attachments: # [1] Text of Proposed Order)(Danial, Katherine) (Entered: 10/28/2021) |
| 11/03/2021 | [141] | ORDER granting [140] MOTION to Seal Reply. Signed by Judge Peter J. Messitte on 11/3/2021. (dg3s, Deputy Clerk) (Entered: 11/03/2021) |
| 11/11/2021 | [142] | MOTION for Leave to File *Sur-Reply to Plaintiff's Motion for Partial Summary Judgment* by Investors Warranty of America, LLC (Attachments: # [1] Exhibit A - Proposed Sur-Reply, # [2] Text of Proposed Order)(Davis, Rebecca) (Entered: 11/11/2021) |
| 11/15/2021 | [143] | RESPONSE in Opposition re [142] MOTION for Leave to File *Sur-Reply to Plaintiff's Motion for Partial Summary Judgment* filed by Rock Spring Plaza II, LLC.(Danial, Katherine) (Entered: 11/15/2021) |
| 11/16/2021 | [144] | ORDER granting [142] MOTION for Leave to File Sur-Reply to Plaintiff's Motion for Partial Summary Judgment. Signed by Judge Peter J. Messitte on 11/15/2021. (dg3s, Deputy Clerk) (Entered: 11/16/2021) |
| 11/18/2021 | 145 | PAPERLESS NOTICE OF SCHEDULING OF MOTIONS HEARING and advising counsel/parties of record that oral argument on [127] Plfs Rock Spring Plaza II, LLCs Motion for Partial Summary Judgment will be heard before Judge Peter J. Messitte on Thursday, January 13, 2022 at 11:00 a.m. via ZoomGov. The parties will be allotted one and one-half (1 1/2) hours for total argument. Counsel should advise in writing immediately if they expect oral argument to exceed the allotted time frame. PLEASE ALSO NOTE: Counsel should mail or hand deliver copies of the principal cases on which they intend to rely during oral argument to the Courthouse by no later than Friday, January 7, 2022. Please also highlight the appropriate text.(jmhs, Chambers) (Entered: 11/18/2021) |
| 11/23/2021 | [146] | Defendants' Joint SUR-REPLY re [127] MOTION for Partial Summary Judgment filed by Investors Warranty of America, LLC.(Davis, Rebecca) Modified on 11/23/2021 (dg3s, |

**A19**

| | | |
|---|---|---|
| | | Deputy Clerk). (Entered: 11/23/2021) |
| 12/16/2021 | 147 | PAPERLESS NOTICE ADVISING COUNSEL that the Motions Hearing scheduled for January 13, 2022 at 11:00 a.m. will now proceed IN-PERSON (Courtroom To Be Determined). Counsel should bring copies for both the Court and opposing counsel of the principal cases on which they intend to rely during oral argument. Please also highlight the appropriate text.(jmhs, Chambers) (Entered: 12/16/2021) |
| 12/29/2021 | 148 | PAPERLESS NOTICE ADVISING COUNSEL that the Motions Hearing scheduled for January 13, 2022 at 11:00 a.m. will now proceed virtually via ZoomGov. Counsel should mail or hand deliver copies of the principal cases on which they intend to rely during oral argument to the Courthouse by no later than Friday, January 7, 2022. Please also highlight the appropriate text.(jmhs, Chambers) (Entered: 12/29/2021) |
| 01/13/2022 | [149](#) | Motions Hearing held on 1/13/2022 before Judge Peter J. Messitte. (Court Reporter: Marlene Kerr-via Zoom) (ss5s, Deputy Clerk) (Entered: 01/13/2022) |
| 01/27/2022 | [150](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 01/13/2022, before Judge Peter J. Messitte. Court Reporter/Transcriber Marlene Kerr, Telephone number 3013443499. Total number of pages filed: 60. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 2/17/2022. Redacted Transcript Deadline set for 2/28/2022. Release of Transcript Restriction for 4/27/2022.(mmk, Court Reporter) (Entered: 01/27/2022) |
| 08/03/2022 | [151](#) | MEMORANDUM OPINION. Signed by Judge Peter J. Messitte on 8/3/2022. (jf3s, Deputy Clerk) (Entered: 08/03/2022) |
| 08/03/2022 | [152](#) | ORDER granting in part and denying in part [127](#) Motion for Partial Summary Judgment. Signed by Judge Peter J. Messitte on 8/3/2022. (jf3s, Deputy Clerk) (Entered: 08/03/2022) |
| 09/02/2022 | [153](#) | NOTICE by Rock Spring Plaza II, LLC *Consent Proposed Scheduling Order* (Attachments: # [1](#) Text of Proposed Order)(Bosch, William) (Entered: 09/02/2022) |
| 09/07/2022 | [154](#) | SCHEDULING ORDER: Status Report due by 12/23/2022. Signed by Judge Peter J. Messitte on 9/7/2022. (dg3s, Deputy Clerk) (Entered: 09/07/2022) |
| 09/19/2022 | [155](#) | Joint MOTION *for Clarification by Defendants* by Investors Warranty of America, LLC (Attachments: # [1](#) Exhibit A, # [2](#) Exhibit B, # [3](#) Exhibit C, # [4](#) Exhibit D)(Davis, Rebecca) (Entered: 09/19/2022) |
| 09/22/2022 | [156](#) | MEMORANDUM ORDER. Signed by Judge Peter J. Messitte on 9/22/2022. (mg3s, Deputy Clerk) (Entered: 09/22/2022) |
| 09/27/2022 | [157](#) | NOTICE by Rock Spring Plaza II, LLC *of Response to Dkt. No. 156 - Memorandum Order* (Danial, Katherine) (Entered: 09/27/2022) |
| 09/30/2022 | [158](#) | RESPONSE re [156](#) Memorandum and Order filed by Investors Warranty of America, LLC. (Davis, Rebecca) (Entered: 09/30/2022) |
| 10/06/2022 | 159 | PAPERLESS NOTICE OF SCHEDULING TELEPHONE CONFERENCE and advising counsel/parties of record that a telephone conference will be held on Thursday, October 13, 2022 at 11:00 a.m. Counsel were previously provided dial-in information via email.(jmhs, Chambers) (Entered: 10/06/2022) |
| 10/13/2022 | 160 | Telephone Conference (re status of case) held on 10/13/2022 for 1 hour before Judge Peter J. Messitte.(Court Reporter: Renee Ewing) (jmhs, Chambers) (Entered: 10/13/2022) |

**A20**

USCA4 Appeal: 24-1434     Doc: 26-1     Filed: 06/18/2024     Pg: 27 of 271

| 10/13/2022 | 161 | MOTION to Compel *Non-Parties' Response to Subpoena* by Rock Springs Drive, LLC (Attachments: # 1 Exhibit A-E, # 2 Text of Proposed Order)(Kropf, Sara) (Entered: 10/13/2022) |
| 10/13/2022 | 162 | Correspondence re: Non-Party Subpoena (Davis, Rebecca) (Entered: 10/13/2022) |
| 10/13/2022 | 163 | MOTION to Compel by Investors Warranty of America, LLC (Attachments: # 1 Certificate Pursuant to Rule 45 & LR 104.7, # 2 Memorandum in Support, # 3 Exhibit A - to Brief in Support, # 4 Exhibit B - to Brief in Support)(Davis, Rebecca) (Entered: 10/13/2022) |
| 10/14/2022 | 164 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 10/13/2022, before Judge Messitte. Court Reporter/Transcriber Renee Ewing, Telephone number 301-344-3227. Total number of pages filed: 48. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 11/4/2022. Redacted Transcript Deadline set for 11/14/2022. Release of Transcript Restriction set for 1/12/2023.(re, Court Reporter) (Entered: 10/14/2022) |
| 10/18/2022 | 165 | ORDER denying as moot 155 Joint MOTION for Clarification by Defendants; Plaintiff shall have 30 days from the entry of this Order to seek leave to amend its Complaint. Signed by Judge Peter J. Messitte on 10/18/2022. (mg3s, Deputy Clerk). (Entered: 10/19/2022) |
| 10/20/2022 | 166 | PAPERLESS ORDER: The Court is in receipt of ECF No. 163. The Plaintiff is to file a Response by no later than 11/3/22. The Defendant is to file a Reply by no later than 11/10/22. Signed by Magistrate Judge Gina L Simms on 10/20/2022. (dd3s, Chambers) (Entered: 10/20/2022) |
| 10/20/2022 | 167 | Correspondence re: Response to IWA Nonparty Subpoena (Danial, Katherine) (Entered: 10/20/2022) |
| 10/24/2022 | 168 | Correspondence re: Reply in Response to the Opposition Filed by Non-Party Rockledge Associates LLC (Davis, Rebecca) (Entered: 10/24/2022) |
| 10/27/2022 | 169 | RESPONSE in Opposition re 161 MOTION to Compel *Non-Parties' Response to Subpoena* filed by Rock Spring Plaza II, LLC.(Danial, Katherine) (Entered: 10/27/2022) |
| 11/03/2022 | 170 | NOTICE of Appearance by Katherine Theresa Danial on behalf of Rock Spring Plaza I, LLC, Rockledge Associates LLC, Elizabethean Court Associates I LLC, Elizabethean Court Associates II LLC, Elizabethean Court Associates III LLC, Elizabethean Court Associates IV LLC, Rock Spring Properties (Danial, Katherine) (Entered: 11/03/2022) |
| 11/03/2022 | 171 | RESPONSE to Motion re 163 MOTION to Compel filed by Rock Spring Properties. (Danial, Katherine) (Entered: 11/03/2022) |
| 11/03/2022 | 172 | NOTICE of Appearance by Alvin Dunn on behalf of Elizabethean Court Associates I LLC, Elizabethean Court Associates II LLC, Elizabethean Court Associates III LLC, Elizabethean Court Associates IV LLC, Rock Spring Plaza I, LLC, Rock Spring Properties, Rockledge Associates LLC (Dunn, Alvin) (Entered: 11/03/2022) |
| 11/04/2022 | 173 | QC NOTICE: 171 Response to Motion filed by Rock Spring Properties was filed incorrectly. *\*\*The following attachments or exhibits are missing - Proposed Order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 171* . (ols, Deputy Clerk) (Entered: 11/04/2022) |
| 11/04/2022 | 174 | NOTICE by Rock Spring Properties re 171 Response to Motion *attaching Proposed Order* (Danial, Katherine) (Entered: 11/04/2022) |

6/13/24, 3:53 PM                    District of Maryland (CM/ECF Live NextGen 1.7.1.1)

| | | |
|---|---|---|
| 11/07/2022 | 175 | -FILED IN ERROR- NOTICE by Investors Warranty of America, LLC *of Serving Discovery* (Davis, Rebecca) Modified on 11/8/2022 (ols, Deputy Clerk). (Entered: 11/07/2022) |
| 11/08/2022 | 176 | QC NOTICE: 175 Notice (Other) filed by Investors Warranty of America, LLC was filed incorrectly. <br> **\*\*Discovery should not be filed with the Court pursuant to Local Rule 104. It has been noted as FILED IN ERROR, and the document link has been disabled.* (ols, Deputy Clerk) (Entered: 11/08/2022) |
| 11/08/2022 | 177 | NOTICE of Appearance by William M Bosch on behalf of Elizabethean Court Associates I LLC, Elizabethean Court Associates II LLC, Elizabethean Court Associates III LLC, Elizabethean Court Associates IV LLC, Rock Spring Plaza I, LLC, Rock Spring Properties, Rockledge Associates LLC (Bosch, William) (Entered: 11/08/2022) |
| 11/10/2022 | 178 | REPLY to Response to Motion re 161 MOTION to Compel *Non-Parties' Response to Subpoena* filed by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 11/10/2022) |
| 11/10/2022 | 179 | -FILED IN ERROR- RESPONSE in Support re 163 MOTION to Compel *Nonparty Rock Spring Properties* filed by Investors Warranty of America, LLC.(Davis, Rebecca) Modified on 11/10/2022 (ols, Deputy Clerk). (Entered: 11/10/2022) |
| 11/10/2022 | 180 | QC NOTICE: 179 Response in Support of Motion filed by Investors Warranty of America, LLC was filed incorrectly. <br> **\*\*Incorrect even used. Please refile using the correct event under Responses and Replies > Reply to Response to Motion. It has been noted as FILED IN ERROR, and the document link has been disabled.* (ols, Deputy Clerk) (Entered: 11/10/2022) |
| 11/10/2022 | 181 | REPLY to Response to Motion re 163 MOTION to Compel *Nonparty Rock Spring Properties* filed by Investors Warranty of America, LLC.(Davis, Rebecca) (Entered: 11/10/2022) |
| 11/10/2022 | 182 | NOTICE by Investors Warranty of America, LLC *of Filing of its Motion to Compel* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E) (Davis, Rebecca) (Entered: 11/10/2022) |
| 11/11/2022 | 183 | NOTICE by Investors Warranty of America, LLC re 182 Notice (Other) *Regarding Filing of Certificate of Conference Relating to Motion to Compel Filed Against Rock Spring Plaza II, LLC* (Davis, Rebecca) (Entered: 11/11/2022) |
| 11/17/2022 | 184 | MOTION to Amend/Correct *Second Amended Complaint* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order, # 2 Exhibit Ex. A Second Amended Complaint, # 3 Exhibit Ex. B Redline, # 4 Exhibit Ex. G to Second Amended Complaint)(Dunn, Alvin) (Entered: 11/17/2022) |
| 11/17/2022 | 185 | Memorandum re 184 MOTION to Amend/Correct *Second Amended Complaint* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit Ex. A Hearing Transcript)(Dunn, Alvin) (Entered: 11/17/2022) |
| 11/18/2022 | 186 | NOTICE by Investors Warranty of America, LLC re 182 Notice (Other) *Amended Notice Regarding Filing of Certificate of Conference Relating to Motion to Compel Filed Against Rock Spring Plaza II, LLC* (Davis, Rebecca) (Entered: 11/18/2022) |
| 11/18/2022 | 187 | Local Rule 104.7 Certificate (Attachments: # 1 Exhibit 1 (Motion to Compel Plaintiff), # 2 Exhibit 2 (Plaintiff Opposition), # 3 Exhibit 3 (Reply), # 4 Text of Proposed Order)(Kropf, Sara) (Entered: 11/18/2022) |
| 11/21/2022 | 188 | ORDER REFERRING CASE to Magistrate Judge Gina L Simms for Discovery, specifically ECF Nos. 161 & 163 Motions to Compel. Signed by Judge Peter J. Messitte |

**A22**

| | | on 11/21/2022. (kns, Deputy Clerk) (Entered: 11/21/2022) |
|---|---|---|
| 11/29/2022 | 189 | PAPERLESS ORDER SCHEDULING a telephonic discovery dispute hearing related to ECF Nos. 161 , 162 ,and 163 for December 5, 2022 at 1:45 p.m. Conference call-in information provided. Signed by Magistrate Judge Gina L Simms on 11/29/2022. (dps, Chambers) (Entered: 11/29/2022) |
| 12/01/2022 | 190 | RESPONSE in Opposition re 184 MOTION to Amend/Correct *Second Amended Complaint* filed by Rock Springs Drive, LLC. (Attachments: # 1 Exhibit A)(Kropf, Sara) (Entered: 12/01/2022) |
| 12/01/2022 | 191 | QC NOTICE: 190 Response in Opposition to Motion filed by Rock Springs Drive, LLC was filed incorrectly. ***The following attachments or exhibits are missing - Proposed Order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 190* . (ols, Deputy Clerk) (Entered: 12/01/2022) |
| 12/01/2022 | 192 | NOTICE by Rock Springs Drive, LLC re 190 Response in Opposition to Motion *(Proposed Order)* (Kropf, Sara) (Entered: 12/01/2022) |
| 12/05/2022 | 193 | Telephone Conference related to a discovery dispute held on 12/5/2022 before Magistrate Judge Gina L Simms.(FTR- Johnson- 3B) (jj2s, Deputy Clerk) (Entered: 12/05/2022) |
| 12/06/2022 | 194 | ORDER denying as premature 161 RSD's Motion to Compel; denying as premature 162 IWA's Letter; denying as moot in part and premature in part 163 IWA's Motion to Compel. Signed by Magistrate Judge Gina L Simms on 12/6/2022. (ols, Deputy Clerk) (Entered: 12/06/2022) |
| 12/08/2022 | 195 | MEMORANDUM ORDER granting 184 Plaintiff's Motion for Leave to File Second Amended Complaint. Signed by Judge Peter J. Messitte on 12/8/2022. (ols, Deputy Clerk) Modified on 12/8/2022 (ols, Deputy Clerk). (Entered: 12/08/2022) |
| 12/08/2022 | 196 | SECOND AMENDED COMPLAINT against Jane Does, Investors Warranty of America, LLC, Rock Springs Drive, LLC, Transamerica Corporation, filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Redline Copy, # 2 Exhibit G) (ols, Deputy Clerk) (Entered: 12/08/2022) |
| 12/15/2022 | 197 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 12/05/2022, before Judge Gina L. Simms. Court Reporter/Transcriber Marlene Kerr, Telephone number 3013443499. Total number of pages filed: 69. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 1/5/2023. Redacted Transcript Deadline set for 1/17/2023. Release of Transcript Restriction set for 3/15/2023.(mmk, Court Reporter) (Entered: 12/15/2022) |
| 12/19/2022 | 198 | Consent MOTION for Extension of Time to File Answer re 196 Amended Complaint by Transamerica Corporation (Attachments: # 1 Text of Proposed Order)(Kozlowski, Nicole) (Entered: 12/19/2022) |
| 12/19/2022 | 199 | RESPONSE re 195 Order on Motion to Amend/Correct filed by Transamerica Corporation.(Kozlowski, Nicole) (Entered: 12/19/2022) |
| 12/19/2022 | 200 | RESPONSE re 195 Order on Motion to Amend/Correct filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit Placeholder Notice of Filing of Document Under Seal, # 2 Exhibit Placeholder Notice of Filing of Document Under Seal, # 3 Exhibit Placeholder Notice of Filing of Document Under Seal, # 4 Exhibit Placeholder Notice of Filing of Document Under Seal)(Davis, Rebecca) (Entered: 12/19/2022) |

**A23**

6/13/24, 3:53 PM                                   District of Maryland (CM/ECF Live NextGen 1.7.1.1)

| 12/19/2022 | 201 | MOTION to Seal *Exhibits to Investors Warranty of America, LLC's Brief in Response to the Court's December 8, 2022 Memorandum Order* by Investors Warranty of America, LLC(Davis, Rebecca) (Entered: 12/19/2022) |
| 12/19/2022 | 202 | -SEALED - NOTICE of Filing Under Seal Exhibit A-D to Brief in Response by Investors Warranty of America, LLC re 200 Response, (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Davis, Rebecca) (Entered: 12/19/2022) |
| 12/19/2022 | 203 | RESPONSE re 195 Order on Motion to Amend/Correct filed by Rock Springs Drive, LLC. (Kropf, Sara) (Entered: 12/19/2022) |
| 12/20/2022 | 204 | QC NOTICE: 201 Motion to Seal filed by Investors Warranty of America, LLC was filed incorrectly.<br>***The following attachments or exhibits are missing - Proposed Order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 201 .* (ols, Deputy Clerk) (Entered: 12/20/2022) |
| 12/20/2022 | 205 | NOTICE by Investors Warranty of America, LLC re 201 MOTION to Seal *Exhibits to Investors Warranty of America, LLC's Brief in Response to the Court's December 8, 2022 Memorandum Order --- PROPOSED ORDER* (Davis, Rebecca) (Entered: 12/20/2022) |
| 12/20/2022 | 206 | ORDER granting 198 Defendant Transamerica Corporation's Consent Motion for Extension of Time to Answer re 196 Second Amended Complaint; Transamerica Corporation answer due 1/6/2023. Signed by Judge Peter J. Messitte on 12/20/2022. (ols, Deputy Clerk) (Entered: 12/20/2022) |
| 12/21/2022 | 207 | ORDER GRANTING 201 Motion to Seal. Signed by Judge Peter J. Messitte on 12/21/2022. (hmls, Deputy Clerk) (Entered: 12/21/2022) |
| 12/21/2022 | 208 | MOTION to Dismiss *Count I of Plaintiff's Second Amended Complaint* by Investors Warranty of America, LLC (Attachments: # 1 Memorandum in Support)(Davis, Rebecca) (Entered: 12/21/2022) |
| 12/22/2022 | 209 | ANSWER to 196 Amended Complaint by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 12/22/2022) |
| 12/23/2022 | 210 | Joint MOTION for Extension of Time to File Response/Reply by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Dunn, Alvin) (Entered: 12/23/2022) |
| 12/27/2022 | 211 | QC NOTICE: 208 Motion to Dismiss filed by Investors Warranty of America, LLC was filed incorrectly.<br>***The following attachments or exhibits are missing - Proposed Order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 208 .* (ols, Deputy Clerk) (Entered: 12/27/2022) |
| 12/27/2022 | 212 | NOTICE by Investors Warranty of America, LLC re 208 MOTION to Dismiss *Count I of Plaintiff's Second Amended Complaint -- Proposed Order* (Davis, Rebecca) (Entered: 12/27/2022) |
| 12/27/2022 | 213 | ORDER granting 210 Joint Motion for Briefing Schedule as to 208 MOTION to Dismiss *Count I of Plaintiff's Second Amended Complaint.* Signed by Judge Peter J. Messitte on 12/27/2022. (ols, Deputy Clerk) (Entered: 12/27/2022) |
| 12/30/2022 | 214 | RESPONSE re 203 Response, 200 Response, *of Defendants to Court's Order dated December 8, 2022* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B Notice of Filing Under Seal, # 3 Exhibit C)(Dunn, Alvin) (Entered: 12/30/2022) |
| 12/30/2022 | 215 | -SEALED - NOTICE of Filing Under Seal Exhibit B to Plaintiff's Response to Defendants' Briefs re Court's Order dated December 8, 2022 by Rock Spring Plaza II, LLC re 214 |

USCA4 Appeal: 24-1434     Doc: 26-1     Filed: 06/18/2024     Pg: 31 of 271

| | | |
|---|---|---|
| | | Response, (Dunn, Alvin) (Entered: 12/30/2022) |
| 12/30/2022 | 216 | MOTION to Seal *Exhibit to its Response to Defendants' Briefs re Court's Order dated December 8, 2022* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Dunn, Alvin) (Entered: 12/30/2022) |
| 01/03/2023 | 217 | MOTION to Withdraw as Attorney by Investors Warranty of America, LLC (Attachments: # 1 Text of Proposed Order)(Arnold, Edward) (Entered: 01/03/2023) |
| 01/04/2023 | 218 | ORDER granting 217 Motion to Withdraw as Attorney. Attorney Edward Victor Arnold terminated. Signed by Judge Peter J. Messitte on 1/3/2023. (ols, Deputy Clerk) (Entered: 01/04/2023) |
| 01/05/2023 | 219 | Consent MOTION for Extension of Time *to Respond to Plaintiff's Second Amended Complaint* by Transamerica Corporation (Attachments: # 1 Text of Proposed Order) (Kozlowski, Nicole) (Entered: 01/05/2023) |
| 01/05/2023 | 221 | ORDER granting 219 Defendant Transamerica Corporation's Consent Motion for Extension of Time to Respond to Plaintiff's Second Amended Complaint. Signed by Judge Peter J. Messitte on 1/5/2023. (ols, Deputy Clerk) (Entered: 01/06/2023) |
| 01/06/2023 | 220 | RESPONSE re 214 Response, *to Court's December 8 Order* filed by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 01/06/2023) |
| 01/06/2023 | 222 | RESPONSE re 200 Response, *To Court's December 8, 2022 Memorandum Order* filed by Investors Warranty of America, LLC.(Davis, Rebecca) (Entered: 01/06/2023) |
| 01/11/2023 | 223 | RESPONSE in Opposition re 208 MOTION to Dismiss *Count I of Plaintiff's Second Amended Complaint* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Text of Proposed Order)(Dunn, Alvin) (Entered: 01/11/2023) |
| 01/13/2023 | 224 | STIPULATION of Dismissal *Without Prejudice as to Transamerica Corp.* by Rock Spring Plaza II, LLC(Bosch, William) (Entered: 01/13/2023) |
| 01/16/2023 | 225 | MOTION to Intervene *as Defendant in Count I of Second Amended Complaint* by Rock Springs Drive, LLC (Attachments: # 1 Text of Proposed Order)(Kropf, Sara) (Entered: 01/16/2023) |
| 01/16/2023 | 226 | MOTION for Protective Order by Investors Warranty of America, LLC (Attachments: # 1 Exhibit A - Response to Motion, # 2 Exhibit B - Response to Motion, # 3 Exhibit C - 30(b) (6) Notice, # 4 Text of Proposed Order Proposed Order)(Davis, Rebecca) (Entered: 01/16/2023) |
| 01/17/2023 | 227 | MARGINAL ORDER approving 224 Stipulation of Dismissal Without Prejudice as to Transamerica Corp. filed by Rock Spring Plaza II, LLC. Signed by Judge Peter J. Messitte on 1/17/2023. (ols, Deputy Clerk) (Entered: 01/17/2023) |
| 01/19/2023 | 228 | RESPONSE to Motion re 225 MOTION to Intervene *as Defendant in Count I of Second Amended Complaint* filed by Rock Spring Plaza II, LLC.(Dunn, Alvin) (Entered: 01/19/2023) |
| 01/20/2023 | 229 | MOTION to Determine the Sufficiency of Defendant Investors Warranty of America LLC's Responses and Objections to Plaintiff's Request for Admissions by Rock Spring Plaza II, LLC (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit Placeholder Notice of Filing Document Under Seal, # 6 Text of Proposed Order)(Dunn, Alvin) (Entered: 01/20/2023) |
| 01/20/2023 | 230 | -SEALED - NOTICE of Filing Under Seal Exhibit D to Plaintiff's Motion to Determine Sufficiency by Rock Spring Plaza II, LLC re 229 MOTION to Determine the Sufficiency |

**A25**

| | | |
|---|---|---|
| | | of Defendant Investors Warranty of America LLC's Responses and Objections to Plaintiff's Request for Admissions (Dunn, Alvin) (Entered: 01/20/2023) |
| 01/20/2023 | 231 | MOTION to Seal *Exhibit D to Its Motion to Determine Sufficiency of Defendant Investors Warranty of America LLC's Responses and Objections to Plaintiff's Request for Admissions* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order) (Dunn, Alvin) (Entered: 01/20/2023) |
| 01/23/2023 | 232 | Emergency MOTION for Extension of Time to Complete Discovery by Rock Springs Drive, LLC (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Kropf, Sara) (Entered: 01/23/2023) |
| 01/23/2023 | 233 | RESPONSE in Opposition re 232 Emergency MOTION for Extension of Time to Complete Discovery filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Text of Proposed Order)(Danial, Katherine) (Entered: 01/23/2023) |
| 01/24/2023 | 234 | REPLY to Response to Motion re 232 Emergency MOTION for Extension of Time to Complete Discovery filed by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 01/24/2023) |
| 01/24/2023 | 235 | MOTION to Withdraw as Attorney by Rock Springs Drive, LLC (Attachments: # 1 Proposed Order)(Rosenberg, Jaime) (Entered: 01/24/2023) |
| 01/24/2023 | 236 | REPLY to Response to Motion re 208 MOTION to Dismiss *Count I of Plaintiff's Second Amended Complaint* filed by Investors Warranty of America, LLC.(Davis, Rebecca) (Entered: 01/24/2023) |
| 01/24/2023 | 237 | ORDER granting 235 Motion to Withdraw as Attorney. Attorney Jaime Rosenberg terminated. Signed by Judge Peter J. Messitte on 1/24/2023. (ols, Deputy Clerk) (Entered: 01/25/2023) |
| 01/25/2023 | 238 | NOTICE by Rock Spring Plaza II, LLC *of Filing its Motion to Compel, Defendant's Opposition and Plaintiff's Reply* (Attachments: # 1 Plaintiff's Motion to Compel, # 2 Defendant IWA's Opposition to Motion to Compel, # 3 Plaintiff's Reply ISO Motion to Compel)(Danial, Katherine) (Entered: 01/25/2023) |
| 01/25/2023 | 239 | -SEALED - NOTICE of Filing Under Seal SEALED - Exhibit H to Plaintiff's Motion to Compel and In Camera Request to IWA by Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 01/26/2023) |
| 01/26/2023 | 240 | -SEALED - NOTICE of Filing Under Seal SEALED - Exhibit I to Plaintiff's Motion to Compel and In Camera Request to IWA by Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 01/26/2023) |
| 01/26/2023 | 241 | -SEALED - NOTICE of Filing Under Seal SEALED - Exhibit J to Plaintiff's Motion to Compel and In Camera Request to IWA by Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 01/26/2023) |
| 01/26/2023 | 242 | -SEALED - NOTICE of Filing Under Seal SEALED - Exhibit L to Plaintiff's Motion to Compel and In Camera Request to IWA by Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 01/26/2023) |
| 01/26/2023 | 243 | -SEALED - NOTICE of Filing Under Seal SEALED - Exhibit A to Plaintiff's Reply to Motion to Compel by Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 01/26/2023) |
| 01/26/2023 | 244 | -SEALED - NOTICE of Filing Under Seal SEALED - Exhibit B Plaintiff's Reply to Motion to Compel by Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 01/26/2023) |

**A26**

| 01/26/2023 | 245 | -SEALED - NOTICE of Filing Under Seal SEALED - Exhibit C to Plaintiff's Reply to Motion to Compel by Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 01/26/2023) |
|---|---|---|
| 01/26/2023 | 246 | -SEALED - NOTICE of Filing Under Seal SEALED - Exhibit D to Plaintiff's Reply to Motion to Compel by Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 01/26/2023) |
| 01/26/2023 | 247 | MOTION to Seal by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Danial, Katherine) (Entered: 01/26/2023) |
| 01/26/2023 | 248 | NOTICE by Rock Spring Plaza II, LLC re 238 Notice (Other), *Text of Proposed Order* (Danial, Katherine) (Entered: 01/26/2023) |
| 01/26/2023 | 249 | ORDER granting 216 231 247 Plaintiffs' Motions to Seal. Signed by Judge Peter J. Messitte on 1/26/2023. (ols, Deputy Clerk) (Entered: 01/26/2023) |
| 01/26/2023 | 250 | Telephone Conference held on 1/26/2023 before Judge Peter J. Messitte. (FTR - 4A) (dhs, Deputy Clerk) (Entered: 01/26/2023) |
| 01/27/2023 | 251 | ORDER denying 208 MOTION to Dismiss Count I of Plaintiff's Second Amended Complaint; denying 225 MOTION to Intervene as Defendant in Count I of Second Amended Complaint ; denying as moot 232 Emergency MOTION for Extension of Time to Complete Discovery. Signed by Judge Peter J. Messitte on 1/26/2023. (kb3s, Deputy Clerk) (Entered: 01/27/2023) |
| 01/30/2023 | 252 | RESPONSE re 226 MOTION for Protective Order filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Text of Proposed Order)(Danial, Katherine) (Entered: 01/30/2023) |
| 02/01/2023 | 253 | MOTION to Strike 238 Notice (Other), by Investors Warranty of America, LLC (Attachments: # 1 Text of Proposed Order)(Davis, Rebecca) (Entered: 02/01/2023) |
| 02/01/2023 | 254 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 1/26/2023, before Judge Peter J. Messitte. Court Reporter/Transcriber Patricia G. Mitchell, Telephone number 410-962-3858; trish_mitchell@mdd.uscourts.gov. Total number of pages filed: 33. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 2/22/2023. Redacted Transcript Deadline set for 3/6/2023. Release of Transcript Restriction set for 5/2/2023.(pms, Court Reporter) (Entered: 02/01/2023) |
| 02/02/2023 | 255 | MOTION to Quash *Non-Party Subpoena on Counsel for Rock Springs Drive* by Rock Springs Drive, LLC (Attachments: # 1 Exhibit A-C, # 2 Text of Proposed Order)(Kropf, Sara) (Entered: 02/02/2023) |
| 02/02/2023 | 256 | RESPONSE re 253 MOTION to Strike 238 Notice (Other), filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Danial, Katherine) (Entered: 02/02/2023) |
| 02/03/2023 | 257 | RESPONSE in Opposition re 229 MOTION to Determine the Sufficiency of Defendant Investors Warranty of America LLC's Responses and Objections to Plaintiff's Request for Admissions filed by Investors Warranty of America, LLC. (Attachments: # 1 Text of Proposed Order)(Davis, Rebecca) (Entered: 02/03/2023) |
| 02/03/2023 | 258 | NOTICE by Rock Spring Plaza II, LLC *of Joint Proposal for February 16, 2023 Hearing Agenda* (Danial, Katherine) (Entered: 02/03/2023) |
| 02/07/2023 | 259 | MOTION for Protective Order *re IWA's 30(b)(6) Deposition Notice* by Rock Spring Plaza II, LLC (Attachments: # 1 Memorandum in Support, # 2 Exhibit, # 3 Exhibit, # 4 Text of |

| | | |
|---|---|---|
| | | Proposed Order)(Danial, Katherine) (Entered: 02/07/2023) |
| 02/07/2023 | 260 | MOTION for Protective Order *re Nonparty Deposition Topics* by Rock Spring Plaza II, LLC (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Danial, Katherine) (Entered: 02/07/2023) |
| 02/08/2023 | 261 | NOTICE by Rock Spring Plaza II, LLC *of Filing its Motion to Compel Supplemental Discovery* (Attachments: # 1 Exhibit Plaintiff's Motion to Compel, # 2 Exhibit Defendant IWA's Opposition to Motion to Compel, # 3 Exhibit Plaintiff's Reply ISO Motion to Compel, # 4 Text of Proposed Order)(Danial, Katherine) (Entered: 02/08/2023) |
| 02/10/2023 | 262 | ANSWER to 196 Amended Complaint by Investors Warranty of America, LLC.(Davis, Rebecca) (Entered: 02/10/2023) |
| 02/13/2023 | 263 | RESPONSE to Motion re 259 MOTION for Protective Order *re IWA's 30(b)(6) Deposition Notice* filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Text of Proposed Order)(Davis, Rebecca) (Entered: 02/13/2023) |
| 02/13/2023 | 264 | RESPONSE in Opposition re 255 MOTION to Quash *Non-Party Subpoena on Counsel for Rock Springs Drive* filed by Rock Springs Plaza II, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Dunn, Alvin) (Entered: 02/13/2023) |
| 02/13/2023 | 265 | REPLY to Response to Motion re 226 MOTION for Protective Order filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit A - Exhibit Placeholder - Notice of Filing Document Under Seal, # 2 Exhibit B, # 3 Exhibit C - Exhibit Placeholder - Notice of Document Filed Under Seal, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F - Exhibit Placeholder - Notice of Filing Document Under Seal, # 7 Exhibit G - Exhibit Placeholder - Notice of Filing of Document Under Seal, # 8 Exhibit H, # 9 Exhibit I - Exhibit Placeholder - Notice of Filing of Document Under Seal, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O)(Davis, Rebecca) (Entered: 02/13/2023) |
| 02/13/2023 | 266 | MOTION to Seal *Exhibits to Investors Warranty of America, LLC's Reply in Support of its Motion for Protective Order* by Investors Warranty of America, LLC (Attachments: # 1 Text of Proposed Order)(Davis, Rebecca) (Entered: 02/13/2023) |
| 02/13/2023 | 267 | -SEALED - NOTICE of Filing Under Seal Exhibits A, C, F, G and I to Reply in Support of Protective Order by Investors Warranty of America, LLC re 266 MOTION to Seal *Exhibits to Investors Warranty of America, LLC's Reply in Support of its Motion for Protective Order*, 265 Reply to Response to Motion,, (Attachments: # 1 Exhibit A, # 2 Exhibit C, Part 1, # 3 Exhibit C, Part 2, # 4 Exhibit F, # 5 Exhibit G, # 6 Exhibit I)(Davis, Rebecca) (Entered: 02/13/2023) |
| 02/13/2023 | 268 | REPLY to Response to Motion re 253 MOTION to Strike 238 Notice (Other), filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D - Exhibit Placeholder - Notice of Filing Document Under Seal, # 5 Exhibit E - Exhibit Placeholder - Notice of Filing Document Under Seal, # 6 Exhibit F, # 7 Exhibit G - Exhibit Placeholder - Notice of Filing of Document Under Seal, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L)(Davis, Rebecca) (Entered: 02/13/2023) |
| 02/13/2023 | 269 | MOTION to Seal *Exhibits to Investors Warranty of America, LLC's Reply in Support of its Motion to Strike* by Investors Warranty of America, LLC (Attachments: # 1 Text of Proposed Order)(Davis, Rebecca) (Entered: 02/13/2023) |
| 02/13/2023 | 270 | -SEALED - NOTICE of Filing Under Seal Exhibits D, E and G to Reply in Support of its Motion to Strike by Investors Warranty of America, LLC re 269 MOTION to Seal *Exhibits to Investors Warranty of America, LLC's Reply in Support of its Motion to Strike*, 268 |

**A28**

| | | |
|---|---|---|
| | | Reply to Response to Motion,, (Attachments: # [1] Exhibit D, # [2] Exhibit E, # [3] Exhibit G) (Davis, Rebecca) (Entered: 02/13/2023) |
| 02/13/2023 | [271] | RESPONSE in Opposition re [260] MOTION for Protective Order *re Nonparty Deposition Topics* filed by Rock Springs Drive, LLC. (Attachments: # [1] Exhibit A)(Kropf, Sara) (Entered: 02/13/2023) |
| 02/13/2023 | [272] | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 8/6/2021, before Judge Gina L. Simms. Court Reporter/Transcriber Patricia G. Mitchell, 410-962-3858; trish_mitchell@mdd.uscourts.gov. Total number of pages filed: 58. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 3/6/2023. Redacted Transcript Deadline set for 3/16/2023. Release of Transcript Restriction set for 5/15/2023.(pms, Court Reporter) (Entered: 02/13/2023) |
| 02/14/2023 | 273 | QC NOTICE: [271] Response in Opposition to Motion filed by Rock Springs Drive, LLC was filed incorrectly. <br> **\*\*The following attachments or exhibits are missing - Proposed Order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to [271]*** . (ols, Deputy Clerk) (Entered: 02/14/2023) |
| 02/14/2023 | [274] | NOTICE by Rock Springs Drive, LLC re [271] Response in Opposition to Motion *(Proposed Order)* (Kropf, Sara) (Entered: 02/14/2023) |
| 02/14/2023 | [275] | CERTIFICATE OF SERVICE by Investors Warranty of America, LLC re [270] Notice of Filing Exhibit or Attachment Under Seal, [267] Notice of Filing Exhibit or Attachment Under Seal, (Davis, Rebecca) (Entered: 02/14/2023) |
| 02/14/2023 | [276] | REPLY to Response to Motion re [229] MOTION to Determine the Sufficiency of Defendant Investors Warranty of America LLC's Responses and Objections to Plaintiff's Request for Admissions filed by Rock Spring Plaza II, LLC. (Attachments: # [1] Exhibit 1) (Dunn, Alvin) (Entered: 02/14/2023) |
| 02/14/2023 | [277] | MOTION to Compel *RSD Supplemental Privilege Log* by Rock Spring Plaza II, LLC (Attachments: # [1] Exhibit Exhibit A Pl.'s Motion to Compel, # [2] Exhibit Exhibit B RSD's Opposition, # [3] Exhibit Exhibit C Pl.'s Reply ISO Motion, # [4] Text of Proposed Order) (Dunn, Alvin) (Entered: 02/14/2023) |
| 02/14/2023 | [278] | REPLY to Response to Motion re [255] MOTION to Quash *Non-Party Subpoena on Counsel for Rock Springs Drive* filed by Rock Springs Drive, LLC. (Attachments: # [1] Exhibit D)(Kropf, Sara) (Entered: 02/14/2023) |
| 02/14/2023 | [279] | Local Rule 104.7 (Attachments: # [1] Exhibit A (motion), # [2] Exhibit B (opposition), # [3] Exhibit C (reply), # [4] Exhibit D (proposed order))(Kropf, Sara) (Entered: 02/14/2023) |
| 02/14/2023 | [280] | NOTICE by Rock Spring Plaza II, LLC *of Supplemental Hearing Agenda with Time Allocations for February 16, 2023* (Danial, Katherine) (Entered: 02/14/2023) |
| 02/14/2023 | [281] | REPLY to Response to Motion re [260] MOTION for Protective Order *re Nonparty Deposition Topics* filed by Rock Spring Plaza II, LLC.(Danial, Katherine) (Entered: 02/14/2023) |
| 02/14/2023 | [282] | REPLY to Response to Motion re [259] MOTION for Protective Order *re IWA's 30(b)(6) Deposition Notice* filed by Rock Spring Plaza II, LLC. (Attachments: # [1] Exhibit)(Danial, Katherine) (Entered: 02/14/2023) |
| 02/16/2023 | [283] | Motion Hearing held on 2/16/2023 re ECF [98] Motion to Compel Argued Denied; ECF [161] Defendant Rock Springs Drive LLCs Motion to Compel Non-Parties Response to Subpoena Argued Denied; ECF [163] Motion to Compel Argued- Denied; ECF [226] Investor |

| | | |
|---|---|---|
| | | Warranty of America, LLCs Motion for Protective Order Argued Granted in part/Denied in part; ECF 229 Plaintiff Rock Spring Plaza II, LLCs Motion to Determine the Sufficiency of the Defendant Investors Warranty of America, LLCs Response and Objections to the Plaintiffs Request for Admission Argued Denied; ECF 253 Defendant Investors Warranty of America, LLCs Motion to Strike Plaintiff Rock Spring Plaza II, LLCs Motion to Compel Against IWA and Request for in Camera Review for Failure to Comply with Local Rule 104.8 Argued Denied; ECF 255 Defendant Rock Springs Drive LLCs Motion to Quash Non-Party Deposition Subpoena on Counsel for Rock Springs Drive, or in the Alternative, for Protective Order Argued Deferred; ECF 259 Plaintiff Rock Spring Plaza II, LLCs Motion for Protective Order Regarding Defendant Investors Warranty of America, LLCs 30(B)(6) Deposition Notice Argued Granted in part/Denied in part; ECF 260 Rock Spring Plaza II, LLCs Motion for Protective Order Argued Granted in part/Denied in part; ECF 277 Plaintiff Rock Spring Plaza II, LLCs Notice of Filing its Motion to Compel Supplemental Rock Springs Drive LLC Privilege Log Argued Deferred; All for reasons stated on the record in open Court by and before Judge Peter J. Messitte. (Court Reporter: Nadine Bachmann - 4C) (dhs, Deputy Clerk) (Additional attachment(s) added on 3/3/2023: # 1 Attachment Amended Minutes) (dhs, Deputy Clerk). (Entered: 02/16/2023) |
| 02/16/2023 | 284 | ORDER granting 266 Investors Warranty of America, LLC's Motion to Seal; granting 269 Investors Warranty of America, LLC's Motion to Seal. Signed by Judge Peter J. Messitte on 2/16/2023. (ols, Deputy Clerk) (Entered: 02/17/2023) |
| 02/21/2023 | 285 | PAPERLESS ORDER APPROVING 258 Joint Proposal for February 16, 2023 Hearing. Signed by Judge Peter J. Messitte on 2/15/2023. (jmhs, Chambers) (Entered: 02/21/2023) |
| 02/21/2023 | 286 | ORDER denying 261 Plaintiff's Motion to Compel Supplemental Discovery from IWA; denying 229 Plaintiff's Motion to Determine the Sufficiency of IWA's Responses and Objections to Plaintiff's Request for Admissions; denying 253 IWA's Motion to Strike 238 Plaintiff's Motion to Compel Against IWA and Request for In Camera Review; granting in part and denying in part 238 Plaintiff's Motion to Compel Against IWA and Request for In Camera Review; granting in part and deferring rule on in part 226 IWA's Motion for Protective Order; deferring ruling on 255 RSD's Motion to Quash Non-Party Subpoena on Counsel for Rock Springs Drive, or in the Alternative, for a Protective Order; denying 279 RSD's Motion to Produce Documents from Plaintiff's Privilege Log; granting in part and denying in part 187 RSD'd Motion to Compel Plaintiff's Discovery Responses; granting in part and denying in part 182 IWA's Motion to Compel Plaintiff; denying 161 RSD's Motion to Compel Non-Parties Response to Subpoena; granting in part and denying in part 163 IWA's Motion to Compel Non-Party Rock Spring Properties; denying 98 IWA's Motion to Compel Rockledge Associates LLC; deferring ruling on 277 Plaintiff's Motion to Compel Supplemental RSD Privilege Log; granting 259 Plaintiff's Motion for Protective Order Regarding Defendant Investors Warranty of America, LLC's 30(B)(6) Deposition Notice; granting in part and denying in part 260 Plaintiff's Motion for Protective Order Regarding Non-Party Depositions;. Signed by Judge Peter J. Messitte on 2/21/2023. (ols, Deputy Clerk) (Entered: 02/22/2023) |
| 02/23/2023 | 287 | NOTICE of Appearance by Anthony F Cavanaugh on behalf of Rock Spring Plaza II, LLC (Cavanaugh, Anthony) (Entered: 02/23/2023) |
| 03/02/2023 | 288 | Sealed Document (Attachments: # 1 Attachment) (c/em as directed ols, Deputy Clerk) (Entered: 03/02/2023) |
| 03/13/2023 | 289 | -SEALED-RESPONSE re 288 Sealed Document filed by Investors Warranty of America, LLC.(Davis, Rebecca) (Entered: 03/13/2023) |
| 03/15/2023 | 290 | MEMORANDUM ORDER. Signed by Judge Peter J. Messitte on 3/15/2023. (ols, Deputy Clerk) (Entered: 03/16/2023) |

**A30**

| 03/20/2023 | 291 | -PER COUNSEL, FILED IN ERROR. REFILED AT 292 - -SEALED-RESPONSE re 290 Memorandum and Order filed by Investors Warranty of America, LLC.(Davis, Rebecca) Modified on 3/20/2023 (ols, Deputy Clerk). (Entered: 03/20/2023) |
|---|---|---|
| 03/20/2023 | 292 | RESPONSE re 290 Memorandum and Order filed by Investors Warranty of America, LLC. (Davis, Rebecca) (Entered: 03/20/2023) |
| 03/22/2023 | 293 | PAPERLESS ORDER APPROVING 292 Correspondence from Investors Warranty of America, LLC. Signed by Judge Peter J. Messitte on 3/21/2023. (jmhs, Chambers) (Entered: 03/22/2023) |
| 03/27/2023 | 294 | MOTION *Regarding March 15, 2023, Order* by Investors Warranty of America, LLC(Davis, Rebecca) (Entered: 03/27/2023) |
| 03/28/2023 | 295 | QC NOTICE: 294 Motion for Miscellaneous Relief filed by Investors Warranty of America, LLC was filed incorrectly.<br>**The following attachments or exhibits are missing - Proposed Order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 294* . (ols, Deputy Clerk) (Entered: 03/28/2023) |
| 03/28/2023 | 296 | NOTICE by Investors Warranty of America, LLC re 294 MOTION *Regarding March 15, 2023, Order* (Davis, Rebecca) (Entered: 03/28/2023) |
| 03/28/2023 | 297 | MEMORANDUM ORDER directing that Plaintiff Rock Spring Plaza may file a response to IWA's brief no later than 4/14/2023; and that IWA may file a reply brief no later than 4/21/2023. Signed by Judge Peter J. Messitte on 3/28/2023. (ols, Deputy Clerk) (Entered: 03/28/2023) |
| 04/03/2023 | 298 | NOTICE of Appearance by Renee Beth Appel on behalf of Investors Warranty of America, LLC (Appel, Renee) (Entered: 04/03/2023) |
| 04/05/2023 | 299 | MOTION to Quash *Rock Spring Plaza II, LLC's Subpoena for Deposition Testimony of Attorney James Sowka* by Investors Warranty of America, LLC (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Davis, Rebecca) (Entered: 04/05/2023) |
| 04/05/2023 | 300 | MOTION for Leave to File *Amended Counterclaim* by Investors Warranty of America, LLC (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Davis, Rebecca) (Entered: 04/05/2023) |
| 04/12/2023 | 301 | Request for Conference (Kropf, Sara) (Entered: 04/12/2023) |
| 04/12/2023 | 302 | PAPERLESS NOTICE OF SCHEDULING TELEPHONE CONFERENCE and advising counsel/parties of record that a telephone conference will be held on Thursday, April 13, 2023 at 11:00 a.m. Counsel were previously provided dial-in information via email.(jmhs, Chambers) (Entered: 04/12/2023) |
| 04/12/2023 | 303 | Correspondence re: Response to ECF 301 (Danial, Katherine) (Entered: 04/12/2023) |
| 04/13/2023 | 304 | NOTICE by Investors Warranty of America, LLC re 299 MOTION to Quash *Rock Spring Plaza II, LLC's Subpoena for Deposition Testimony of Attorney James Sowka* (Davis, Rebecca) (Entered: 04/13/2023) |
| 04/13/2023 | 305 | Telephone Conference (re status of case) held on 4/13/2023 for 1 hour before Judge Peter J. Messitte.(Court Reporter: Ronda Thomas) (jmhs, Chambers) (Entered: 04/13/2023) |
| 04/13/2023 | 306 | PAPERLESS ORDER APPROVING 304 Notice of Withdrawal of Motion to Quash, without Prejudice; and WITHDRAWING 299 Motion to Quash. Signed by Judge Peter J. Messitte on 4/13/2023. (jmhs, Chambers) (Entered: 04/13/2023) |

**A31**

| 04/13/2023 | 307 | ORDER re: Depositions. Signed by Judge Peter J. Messitte on 4/13/2023. (ols, Deputy Clerk) (Entered: 04/13/2023) |
|---|---|---|
| 04/17/2023 | 308 | MOTION to Appear Pro Hac Vice for Rebecca Guiterman (Filing fee $100, receipt number AMDDC-10548432.) by Rock Springs Drive, LLC(Kropf, Sara) (Entered: 04/17/2023) |
| 04/18/2023 | 309 | PAPERLESS ORDER granting 308 Motion to Appear Pro Hac Vice on behalf of Rebecca Guiterman. Directing attorney Rebecca Guiterman to register for pro hac vice filing in the District of Maryland through PACER at https://pacer.uscourts.gov/ if attorney has not already done so. The *Pro Hac Vice* option must be selected when registering. Signed by Clerk on 4/18/2023. (mh4s, Deputy Clerk) (Entered: 04/18/2023) |
| 04/18/2023 | 310 | RESPONSE re 294 MOTION *Regarding March 15, 2023, Order* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit Declaration, # 2 Exhibit Exhibit A, # 3 Exhibit Exhibit B, # 4 Exhibit Exhibit C, # 5 Text of Proposed Order)(Danial, Katherine) (Entered: 04/18/2023) |
| 04/19/2023 | 311 | RESPONSE in Opposition re 300 MOTION for Leave to File *Amended Counterclaim* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Text of Proposed Order)(Bosch, William) (Entered: 04/19/2023) |
| 04/25/2023 | 312 | REPLY to Response to Motion re 294 MOTION *Regarding March 15, 2023, Order* filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit A to Brief, # 2 Exhibit B - Declaration to Brief, # 3 Exhibit 1 to Declaration, # 4 Exhibit 2 to Declaration, # 5 Exhibit 3 to Declaration, # 6 Exhibit 4 to Declaration, # 7 Exhibit 5 to Declaration, # 8 Exhibit 6 to Declaration, # 9 Exhibit C to Brief)(Davis, Rebecca) (Entered: 04/25/2023) |
| 05/03/2023 | 313 | REPLY to Response to Motion re 300 MOTION for Leave to File *Amended Counterclaim* filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit A - Declaration, # 2 Exhibit 1 - to Declaration, # 3 Exhibit 2 - to Declaration, # 4 Exhibit 3 - to Declaration, # 5 Exhibit 4 - to Declaration, # 6 Exhibit 5 - to Declaration)(Davis, Rebecca) (Entered: 05/03/2023) |
| 05/25/2023 | 314 | ORDER re: Hearing. Signed by Judge Peter J. Messitte on 5/18/2023. (ols, Deputy Clerk) (Entered: 05/25/2023) |
| 05/30/2023 | 315 | MEMORANDUM ORDER denying as untimely 300 IWA's Motion for Leave to Amend Counterclaim. Signed by Judge Peter J. Messitte on 5/30/2023. (ols, Deputy Clerk) (Entered: 05/30/2023) |
| 06/19/2023 | 316 | NOTICE of Change of Address by Rebecca A. Davis (Davis, Rebecca) (Entered: 06/19/2023) |
| 06/20/2023 | 317 | QC NOTICE: 316 Notice of Change of Address filed by Investors Warranty of America, LLC was filed incorrectly. <br> ***Attorneys must update their own information. Login into PACER and make address/law firm update via Manage My Account.* (ols, Deputy Clerk) (Entered: 06/20/2023) |
| 06/21/2023 | 319 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of TELECONFERENCE held on 4/13/2023, before Judge Peter J. Messitte. Court Reporter Ronda Thomas, Telephone number 410-962-4504, ronda_thomas@mdd.uscourts.gov. Total number of pages filed: 44. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 7/12/2023. Redacted Transcript Deadline set for 7/24/2023. Release of Transcript Restriction set for 9/19/2023.(rt, Court Reporter) (Entered: 06/21/2023) |
| 06/27/2023 | 320 | MEMORANDUM ORDER extending the discovery deadline in this case to 9/1/2023. Signed by Judge Peter J. Messitte on 6/27/2023. (ols, Deputy Clerk) (Entered: 06/28/2023) |

**A32**

| 06/29/2023 | 321 | MOTION to Quash *Subpoenas* by Investors Warranty of America, LLC (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order Proposed Order)(Davis, Rebecca) (Entered: 06/29/2023) |
| 06/30/2023 | 322 | Consent MOTION for Extension of Time to File Response/Reply *to Subpoenas* by Transamerica Corporation (Attachments: # 1 Text of Proposed Order)(Ain, Alexa) (Entered: 06/30/2023) |
| 07/03/2023 | 323 | Correspondence re: June 27, 2023 Order (Davis, Rebecca) (Entered: 07/03/2023) |
| 07/05/2023 | 324 | ORDER GRANTING 322 Motion for Extension of Time to File Response/Reply *to Subpoenas*. Signed by Judge Peter J. Messitte on 7/5/2023. (hmls, Deputy Clerk) (Entered: 07/05/2023) |
| 07/10/2023 | 325 | Consent MOTION for Extension of Time to File Response/Reply as to 321 MOTION to Quash *Subpoenas* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Danial, Katherine) (Entered: 07/10/2023) |
| 07/11/2023 | 326 | ORDER granting 325 Consent Motion for Extension of Time to Respond to Motion to Quash. Signed by Judge Peter J. Messitte on 7/11/2023. (ols, Deputy Clerk) (Entered: 07/12/2023) |
| 07/14/2023 | 327 | ORDER REFERRING CASE to Magistrate Judge Gina L Simms for Discovery, specifically ECF 321 , Motion to Quash Subpoenas by Investors Warranty of America, LLC. Signed by Judge Peter J. Messitte on 7/14/2023. (kns, Deputy Clerk) (Entered: 07/14/2023) |
| 07/17/2023 | 328 | NOTICE of Appearance by Nicole Steinberg on behalf of Rock Spring Plaza II, LLC (Steinberg, Nicole) (Entered: 07/17/2023) |
| 07/21/2023 | 329 | NOTICE by Transamerica Life Insurance Company - *Objections to Subpoena to Produce Documents to Non-Party Transamerica Life Insurance Company* (Ain, Alexa) (Entered: 07/21/2023) |
| 07/21/2023 | 330 | NOTICE by Transamerica Financial Life Insurance Company - *Objections to Subpoena to Produce Documents to Non-Party Transamerica Financial Life Insurance Company* (Ain, Alexa) (Entered: 07/21/2023) |
| 07/21/2023 | 331 | NOTICE by Transamerica Corporation - *Objections to Subpoena to Produce Documents to Non-Party Transamerica Corporation* (Ain, Alexa) (Entered: 07/21/2023) |
| 08/02/2023 | 332 | MOTION to Compel *the Non-Party Transamerica Entities to Respond to Document Subpoenas* by Rock Spring Plaza II, LLC (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Text of Proposed Order)(Bosch, William) (Entered: 08/02/2023) |
| 08/02/2023 | 333 | RESPONSE in Opposition re 321 MOTION to Quash *Subpoenas of Non-Parties, or in the Alternative, Motion for Protective Order* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Text of Proposed Order)(Bosch, William) (Entered: 08/02/2023) |
| 08/15/2023 | 334 | Consent MOTION for Extension of Time *to Respond to Plaintiff's Motion to Compel* by Transamerica Corporation, Transamerica Financial Life Insurance Company, Transamerica Life Insurance Company (Attachments: # 1 Text of Proposed Order)(Ain, Alexa) (Entered: 08/15/2023) |
| 08/15/2023 | 335 | PAPERLESS ORDER: This matter has been referred to the undersigned for the resolution of ECF No. 321 and the responses related thereto (see ECF Nos. 329-333). The |

| | | |
|---|---|---|
| | | undersigned will take under advisement whether further briefing from Transamerica Financial Life Insurance Company, Transamerica Corporation, and Transamerica Life Insurance Company is necessary to truly respond to ECF Nos. 332/333 (which are identical), and will advise the parties of my decision and any further briefing deadlines. Accordingly, the undersigned will defer ruling on ECF No. 334. Signed by Magistrate Judge Gina L Simms on 8/15/2023. (dd3s, Chambers) (Entered: 08/15/2023) |
| 08/16/2023 | 336 | REPLY to Response to Motion re 321 MOTION to Quash *Subpoenas of Non Parties* filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Davis, Rebecca) (Entered: 08/16/2023) |
| 08/16/2023 | 337 | MOTION to Seal *Exhbit* by Investors Warranty of America, LLC (Attachments: # 1 Text of Proposed Order)(Davis, Rebecca) (Entered: 08/16/2023) |
| 08/16/2023 | 338 | -SEALED - NOTICE of Filing Under Seal Exhibit D to Reply by Investors Warranty of America, LLC re 336 Reply to Response to Motion, 337 MOTION to Seal *Exhbit* (Davis, Rebecca) (Entered: 08/16/2023) |
| 08/17/2023 | 339 | -SEALED- MEMORANDUM OPINION. Signed by Judge Peter J. Messitte on 8/17/2023. (c/em defs 8/17/23 ols, Deputy Clerk) (Entered: 08/17/2023) |
| 08/17/2023 | 340 | ORDER denying 226 the unresolved portion of IWA's Motion for Protective Order; denying without prejudice the unresolved portions of 255 RSD's Motion to Quash Non-Party Deposition Subpoena on Counsel for Rock Springs Drive, or, in the Alternative for a Protective Order; denying without prejudice the unresolved portions of 277 Plaintiff's Motion to Compel Supplemental RSD Privilege Log; denying 294 IWA's Brief, Pursuant to the Court's March 15, 2023 Order, in Support of Reconsideration of the Applicability of the Crime Fraud Exception. Signed by Judge Peter J. Messitte on 8/17/2023. (ols, Deputy Clerk) (Entered: 08/17/2023) |
| 08/17/2023 | 341 | ORDER re: Granting of ECF 238-1. Signed by Judge Peter J. Messitte on 8/17/2023. (ols, Deputy Clerk) Modified on 8/18/2023 (ols, Deputy Clerk). (Entered: 08/17/2023) |
| 08/21/2023 | 342 | ORDER granting 337 Defendant Investors Warranty of America, LLC's Motion to Seal. Signed by Magistrate Judge Gina L Simms on 8/21/2023. (ols, Deputy Clerk) (Entered: 08/21/2023) |
| 08/22/2023 | 343 | MOTION to Take Deposition from William Bosch by Rock Springs Drive, LLC (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A through K)(Kropf, Sara) (Entered: 08/22/2023) |
| 08/22/2023 | 344 | Emergency MOTION for Extension of Time by Investors Warranty of America, LLC (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Davis, Rebecca) (Entered: 08/22/2023) |
| 08/22/2023 | 345 | MOTION to Quash *Subpoena to Nonparty Aprio LLP* by Rock Springs Drive, LLC (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A (subpoena))(Kropf, Sara) (Entered: 08/22/2023) |
| 08/23/2023 | 346 | ORDER granting 344 Investors Warranty of America, LLC's Emergency Motion for Extension of Time. Signed by Judge Peter J. Messitte on 8/23/2023. (ols, Deputy Clerk) (Entered: 08/23/2023) |
| 08/29/2023 | 347 | Joint MOTION to Compel *Deposition Testimony of Charles Camalier III* by Investors Warranty of America, LLC (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Attachment Certificate, # 7 Text of Proposed Order Proposed Order)(Davis, Rebecca) (Entered: 08/29/2023) |

**A34**

| 08/31/2023 | [348](#) | MOTION to Compel *Deposition of Non-Party Anne Camalier* by Rock Springs Drive, LLC (Attachments: # [1](#) Text of Proposed Order, # [2](#) Exhibit A to H)(Kropf, Sara) (Entered: 08/31/2023) |
|---|---|---|
| 08/31/2023 | [349](#) | MOTION to Amend/Correct [209](#) Answer to Amended Complaint by Rock Springs Drive, LLC (Attachments: # [1](#) Text of Proposed Order, # [2](#) Exhibit A to B)(Kropf, Sara) (Entered: 08/31/2023) |
| 09/04/2023 | [350](#) | MOTION to Stay re [341](#) Order, [340](#) Order on Motion for Protective Order,,, Order on Motion to Quash,,, Order on Motion to Compel,,, Order on Motion for Miscellaneous Relief,, by Investors Warranty of America, LLC (Attachments: # [1](#) Text of Proposed Order) (Davis, Rebecca) (Entered: 09/04/2023) |
| 09/05/2023 | [351](#) | ORDER granting [350](#) IWA's Motion to Stay Compliance with Production Order. Signed by Judge Peter J. Messitte on 9/5/2023. (ols, Deputy Clerk) (Entered: 09/05/2023) |
| 09/05/2023 | [352](#) | RESPONSE in Opposition re [343](#) MOTION to Take Deposition from William Bosch filed by Rock Spring Plaza II, LLC. (Attachments: # [1](#) Exhibit, # [2](#) Text of Proposed Order) (Danial, Katherine) (Entered: 09/05/2023) |
| 09/11/2023 | [353](#) | NOTICE by Rock Springs Drive, LLC re [345](#) MOTION to Quash *Subpoena to Nonparty Aprio LLP Withdrawal of Motion* (Kropf, Sara) (Entered: 09/11/2023) |
| 09/12/2023 | [354](#) | NOTICE by Rock Spring Plaza II, LLC *of Filing Motion to Compel* (Attachments: # [1](#) Exhibit 1 Plaintiff's Motion to Compel, # [2](#) Exhibit 2 Defendant IWA's Opposition to Motion to Compel, # [3](#) Exhibit 3 Plaintiff's Reply ISO Motion to Compel, # [4](#) Text of Proposed Order)(Bosch, William) (Entered: 09/12/2023) |
| 09/12/2023 | [355](#) | NOTICE by Rock Spring Plaza II, LLC *of Filing Motion to Compel* (Attachments: # [1](#) Exhibit 1 Plaintiff's Motion to Compel, # [2](#) Exhibit 2 Defendant IWA's Opposition to Motion to Compel, # [3](#) Exhibit 3 Plaintiff's Reply ISO Motion to Compel, # [4](#) Text of Proposed Order)(Bosch, William) (Entered: 09/12/2023) |
| 09/12/2023 | [356](#) | REPLY to Response to Motion re [343](#) MOTION to Take Deposition from William Bosch filed by Rock Springs Drive, LLC. (Attachments: # [1](#) Exhibit L)(Kropf, Sara) (Entered: 09/12/2023) |
| 09/12/2023 | [357](#) | RESPONSE in Opposition re [347](#) Joint MOTION to Compel *Deposition Testimony of Charles Camalier III* filed by Rock Spring Plaza II, LLC. (Attachments: # [1](#) Exhibit, # [2](#) Text of Proposed Order)(Danial, Katherine) (Entered: 09/12/2023) |
| 09/14/2023 | [358](#) | RESPONSE in Opposition re [349](#) MOTION to Amend/Correct [209](#) Answer to Amended Complaint filed by Rock Spring Plaza II, LLC. (Attachments: # [1](#) Text of Proposed Order) (Danial, Katherine) (Entered: 09/14/2023) |
| 09/14/2023 | [359](#) | -SEALED-RESPONSE in Opposition re [348](#) MOTION to Compel *Deposition of Non-Party Anne Camalier* filed by Rock Spring Plaza II, LLC. (Attachments: # [1](#) Exhibit, # [2](#) Exhibit, # [3](#) Text of Proposed Order)(Danial, Katherine) (Entered: 09/14/2023) |
| 09/15/2023 | [360](#) | MOTION to Seal *Plaintiff's Opposition and Exhibits to RSD's Motion to Compel the Deposition of Non-Party Anne D. Camalier* by Rock Spring Plaza II, LLC (Attachments: # [1](#) Text of Proposed Order)(Danial, Katherine) (Entered: 09/15/2023) |
| 09/15/2023 | [361](#) | MOTION for Leave to File *Sur-Reply to ECF 354-3* by Rock Springs Drive, LLC (Attachments: # [1](#) Exhibit A (proposed sur-reply), # [2](#) Text of Proposed Order)(Kropf, Sara) (Entered: 09/15/2023) |
| 09/15/2023 | [362](#) | MOTION to Quash *Deposition of Anne D. Camalier* by Rock Spring Plaza II, LLC (Attachments: # [1](#) Memorandum in Support, # [2](#) Exhibit, # [3](#) Exhibit, # [4](#) Text of Proposed |

**A35**

| | | |
|---|---|---|
| | | Order)(Danial, Katherine) (Entered: 09/15/2023) |
| 09/15/2023 | 363 | -SEALED - NOTICE of Filing Under Seal Memorandum in Support of Motion to Quash Deposition of Anne D. Camalier by Rock Spring Plaza II, LLC re 362 MOTION to Quash *Deposition of Anne D. Camalier* (Attachments: # 1 Exhibit, # 2 Exhibit)(Danial, Katherine) (Entered: 09/15/2023) |
| 09/15/2023 | 364 | MOTION to Seal *Plaintiff's Memorandum in Support of Motion to Quash Deposition of Anne D. Camalier and Accompanying Exhibits* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Danial, Katherine) (Entered: 09/15/2023) |
| 09/15/2023 | 365 | MOTION for Leave to File *Sur-Reply* by Investors Warranty of America, LLC (Attachments: # 1 Attachment Proposed Sur-Reply, # 2 Text of Proposed Order)(Davis, Rebecca) (Entered: 09/15/2023) |
| 09/19/2023 | 366 | ORDER deferring ruling on the parties' recently filed motions; directing that moving forward, the parties shall not file any new motions related to discovery, pending further advice from the Court. Signed by Judge Peter J. Messitte on 9/19/2023. (ols, Deputy Clerk) (Entered: 09/20/2023) |
| 09/20/2023 | 367 | ORDER granting 360 Plaintiff's Motion to Seal. Signed by Judge Peter J. Messitte on 9/20/2023. (ols, Deputy Clerk) (Entered: 09/21/2023) |
| 09/20/2023 | 368 | ORDER granting 364 Plaintiff's Motion to Seal. Signed by Judge Peter J. Messitte on 9/20/2023. (ols, Deputy Clerk) (Entered: 09/21/2023) |
| 09/26/2023 | 369 | REPLY to Response to Motion re 347 Joint MOTION to Compel *Deposition Testimony of Charles Camalier III* filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Davis, Rebecca) (Entered: 09/26/2023) |
| 09/28/2023 | 370 | REPLY to Response to Motion re 349 MOTION to Amend/Correct 209 Answer to Amended Complaint filed by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 09/28/2023) |
| 09/28/2023 | 371 | -SEALED-REPLY to Response to Motion re 348 MOTION to Compel *Deposition of Non-Party Anne Camalier* filed by Rock Springs Drive, LLC.(Kropf, Sara) (Entered: 09/28/2023) |
| 09/28/2023 | 372 | MOTION to Seal *(1) Rock Spring Drive LLC's reply in support of its motion to compel the deposition of non-party Anne D. Camalier (Dkt. 371) and (2) Rock Springs Drive LLC's opposition to Plaintiffs motion to quash the deposition subpoena served on non-party Anne D. Camalier* by Rock Springs Drive, LLC (Attachments: # 1 Text of Proposed Order Proposed order)(Kropf, Sara) (Entered: 09/28/2023) |
| 10/11/2023 | 373 | PAPERLESS ORDER SCHEDULING a telephonic discovery dispute hearing related to ECF Nos. 321 , 329 - 333 for October 19, 2023 at 12:00 p.m. Conference call-in information provided. Signed by Magistrate Judge Gina L Simms on 10/11/2023. (dps, Chambers) (Entered: 10/11/2023) |
| 10/17/2023 | 374 | ORDER granting 372 Defendant Rock Springs Drive, LLC's Motion to File Under Seal its Reply. Signed by Judge Peter J. Messitte on 10/17/2023. (ols, Deputy Clerk) (Entered: 10/17/2023) |
| 10/19/2023 | 375 | Telephonic Discovery Dispute Hearing held on 10/19/2023 before Magistrate Judge Gina L Simms. (Court Reporter: FTR Recording\2B\Solomon) (ds2s, Deputy Clerk) (Entered: 10/19/2023) |
| 10/24/2023 | 376 | ORDER granting in part and denying in part 321 329 330 331 IWA's and the Transamerica Entities' motions to quash; granting in part and denying in part 332 333 Plaintiff's Motion to Compel/opposition to the motion to quash; denying 334 Transamerica Entities' Motion |

**A36**

6/13/24, 3:53 PM                          District of Maryland (CM/ECF Live NextGen 1.7.1.1)

| | | |
|---|---|---|
| | | for Extension of Time to Respond to Plaintiff's Motion to Compel. Signed by Magistrate Judge Gina L Simms on 10/24/2023. (ols, Deputy Clerk) (Entered: 10/25/2023) |
| 10/26/2023 | 377 | Substantive legal issues - addressing (Ain, Alexa) (Entered: 10/26/2023) |
| 11/02/2023 | 378 | RESPONSE re 377 Substantive legal issues - addressing *questions raised at discovery motions hearing* filed by Rock Spring Plaza II, LLC.(Bosch, William) (Entered: 11/02/2023) |
| 11/02/2023 | 379 | RESPONSE re 376 Order on Motion to Quash,, Order on Motion to Compel,, Order on Motion for Extension of Time, filed by Investors Warranty of America, LLC. (Attachments: # 1 Exhibit A)(Davis, Rebecca) (Entered: 11/02/2023) |
| 11/02/2023 | 380 | MEMORANDUM OPINION. Signed by Judge Peter J. Messitte on 11/2/2023. (ols, Deputy Clerk) (Entered: 11/03/2023) |
| 11/02/2023 | 381 | ORDER denying 343 RSD's Motion for Leave to Take Deposition of William Bosch ; denying 347 Defendants' Joint Motion to Compel Deposition Testimony of Charles Camalier; denying 348 RSD's Motion to Compel Non-Party Anne Camalier's Deposition; denying 349 RSD's Motion for Leave to File Amended Affirmative Defenses to Plaza's Second Amended Complaint; denying 354 Plaza's Motion to Compel RSD to produce its 2022 and 2023 Financial Statements; denying 355 Plaza's Motion to Compel IWA to produce Documents Regarding its Consolidation Analysis; denying as moot 361 RSD's Motion for Leave to File a Sur-Reply to ECF No. 354-3; granting 362 Plaza's Motion to Quash Deposition of Anne D. Camalier; denying as moot 365 IWA's Motion for Leave to File Sur-Reply to ECF No. 355-3. Signed by Judge Peter J. Messitte on 11/2/2023. (ols, Deputy Clerk) (Entered: 11/03/2023) |
| 11/14/2023 | 382 | ORDER re: Outstanding Discovery Requests. Signed by Magistrate Judge Gina L Simms on 11/14/2023. (ols, Deputy Clerk) (Entered: 11/15/2023) |
| 11/21/2023 | 383 | MOTION *for Scheduling Order* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Danial, Katherine) (Entered: 11/21/2023) |
| 11/29/2023 | 384 | RESPONSE in Opposition re 383 MOTION *for Scheduling Order* filed by Rock Springs Drive, LLC. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Kropf, Sara) (Entered: 11/29/2023) |
| 12/05/2023 | 385 | MEMORANDUM ORDER denying 383 Plaintiff's Motion for Scheduling Order. Signed by Judge Peter J. Messitte on 12/4/2023. (ols, Deputy Clerk) (Entered: 12/05/2023) |
| 02/21/2024 | 386 | MEMORANDUM to Counsel Scheduling a Telephone Conference on February 22, 2024 at 2:30pm. Signed by Judge Peter J. Messitte on 2/21/2024. (ah8s, Deputy Clerk) (Entered: 02/21/2024) |
| 02/22/2024 | 387 | Telephone Conference (re status of case) held on 2/22/2024 for 35 minutes before Judge Peter J. Messitte.(Court Reporter: Patricia Klepp) (jmhs, Chambers) (Entered: 02/22/2024) |
| 02/22/2024 | 388 | Correspondence re: Petition (Davis, Rebecca) (Entered: 02/22/2024) |
| 02/22/2024 | 389 | MEMORANDUM to Counsel re: Telephone Conference. Signed by Judge Peter J. Messitte on 2/22/2024. (ols, Deputy Clerk) (Entered: 02/23/2024) |
| 02/29/2024 | 390 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 2/22/24, before Judge Peter J. Messitte. Court Reporter/Transcriber Patricia Klepp, Telephone number 3013443228. Total number of pages filed: 25. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 3/21/2024. Redacted Transcript |

**A37**

| | | |
|---|---|---|
| | | Deadline set for 4/1/2024. Release of Transcript Restriction set for 5/29/2024.(pk4, Court Reporter) (Entered: 02/29/2024) |
| 03/04/2024 | 391 | RESPONSE re 389 Memorandum to Parties filed by Rock Spring Plaza II, LLC. (Steinberg, Nicole) (Entered: 03/04/2024) |
| 03/04/2024 | 392 | MOTION to Unseal *Crime-Fraud Information* by Rock Spring Plaza II, LLC (Attachments: # 1 Exhibit)(Steinberg, Nicole) (Entered: 03/04/2024) |
| 03/05/2024 | 393 | PAPERLESS ORDER APPROVING 391 Notice of Compliance with Discovery. Signed by Judge Peter J. Messitte on 3/5/2024. (jmhs, Chambers) (Entered: 03/05/2024) |
| 03/05/2024 | 394 | QC NOTICE: 392 Motion to Unseal filed by Rock Spring Plaza II, LLC was filed incorrectly. <br> ***The following attachments or exhibits are missing - Proposed Order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 392* . (ols, Deputy Clerk) (Entered: 03/05/2024) |
| 03/05/2024 | 395 | NOTICE by Rock Spring Plaza II, LLC re 392 MOTION to Unseal *Crime-Fraud Information Proposed Order to 392* (Steinberg, Nicole) (Entered: 03/05/2024) |
| 03/25/2024 | 396 | RESPONSE to Motion re 392 MOTION to Unseal *Crime-Fraud Information by Rock Spring Plaza II, LLC* filed by Investors Warranty of America, LLC.(Davis, Rebecca) (Entered: 03/25/2024) |
| 03/25/2024 | 397 | NOTICE by Rock Spring Plaza II, LLC *Joint Proposed Scheduling Order* (Attachments: # 1 Text of Proposed Order)(Steinberg, Nicole) (Entered: 03/25/2024) |
| 04/04/2024 | 398 | REPLY to Response to Motion re 392 MOTION to Unseal *Crime-Fraud Information* filed by Rock Spring Plaza II, LLC.(Steinberg, Nicole) (Entered: 04/04/2024) |
| 04/16/2024 | 399 | ORDER Modifying Deadlines for Dispositive Motions Briefing. Signed by Judge Peter J. Messitte on 4/16/2024. (ols, Deputy Clerk) (Entered: 04/16/2024) |
| 04/22/2024 | 400 | MOTION to Strike *Defendants' Jury Demands* by Rock Spring Plaza II, LLC (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Danial, Katherine) (Entered: 04/22/2024) |
| 04/22/2024 | 401 | Correspondence re: Plaintiff's Trial Availability (Danial, Katherine) (Entered: 04/22/2024) |
| 04/23/2024 | 402 | Correspondence re: Rock Springs Drive LLC Trial Availability (Kropf, Sara) (Entered: 04/23/2024) |
| 04/23/2024 | 403 | REQUEST for Extension of Time to File - *Requests a trial start date of Wednesday, August 28, 2024* (Davis, Rebecca) (Entered: 04/23/2024) |
| 04/24/2024 | 404 | ORDER Setting Telephone Conference. Signed by Judge Peter J. Messitte on 4/24/2024. (ols, Deputy Clerk) (Entered: 04/24/2024) |
| 05/02/2024 | 405 | MEMORANDUM ORDER granting in part and denying in part 392 Plaza's Motion to Unseal Crime-Fraud Information; denying 400 Plaza's Motion to Strike Defendants' Jury Demand. Signed by Judge Peter J. Messitte on 5/1/2024. (ols, Deputy Clerk) (Entered: 05/02/2024) |
| 05/02/2024 | 406 | Telephone Conference (re status of case) held on 5/1/2024 for 1 hour before Judge Peter J. Messitte.(Court Reporter: Renee Ewing) (jmhs, Chambers) (Entered: 05/02/2024) |
| 05/02/2024 | 407 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 05/01/2024, before Judge Messitte. Court Reporter/Transcriber Renee Ewing, Telephone number 3013443227. Total number of pages filed: 44. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for |

**A38**

| | | |
|---|---|---|
| | | Release of Transcript Restriction. After that date it may be obtained from the Court Reporter or through PACER. Redaction Request due 5/23/2024. Redacted Transcript Deadline set for 6/3/2024. Release of Transcript Restriction set for 7/31/2024.(re, Court Reporter) (Entered: 05/02/2024) |
| 05/14/2024 | 408 | Request for Hearing/Trial (Bosch, William) (Entered: 05/14/2024) |
| 05/23/2024 | 409 | Joint MOTION for Summary Judgment *on Count II (fraudulent conveyance)* by Rock Springs Drive, LLC(Kropf, Sara) (Entered: 05/23/2024) |
| 05/23/2024 | 410 | MOTION for Partial Summary Judgment *and Memorandum of Law in Support* by Investors Warranty of America, LLC (Attachments: # 1 Attachment Statement of Material Facts, # 2 Affidavit Declaration of Rebecca Davis, # 3 Exhibit Objections to RSDs Third Set of Interrogatories, served on September 21, 2023, # 4 Exhibit Excerpts of the transcript for the Deposition of Plaintiffs corporate witness (Charles Camalier, III),Vol. II, # 5 Exhibit Amended and Restated Ground Lease Indenture, # 6 Exhibit Expert Opinion of Douglas M. Bregman, Esq., # 7 Exhibit Loan Management Plan dated December 19, 2011, # 8 Exhibit Excerpts of the transcript for the Deposition of Plaintiffs corporate witness (Charles Camalier, III),Vol. I, # 9 Exhibit Ground Lessor Estoppel Agreement and Non-Disturbance Agreement dated June 2, 2006, # 10 Exhibit Order Granting Verified Consent Petition of IWA for Appointment of Receiver, # 11 Exhibit Excerpts of the transcript for the Deposition of Defendant IWA corporate witness (David Feltman), Vol I, # 12 Exhibit Letter from Charles Camalier to AURA dated September 11, 2011, # 13 Exhibit Notice of Default dated October 11, 2011, # 14 Exhibit Notice of Default from Plaintiff to Original Tenant dated April 12, 2012, # 15 Exhibit Declaration of Paul Rubin dated October 12, 2021, # 16 Exhibit Declaration of David Feltman dated October 11, 2021, # 17 Exhibit Trustees Deed Assignment dated August 28, 2012, # 18 Exhibit Excerpts of the transcript for the Deposition of Defendant IWA corporate witness (David Feltman), Vol II, # 19 Exhibit Email chain ending with an email from Matt Pithan dated July 8, 2016, # 20 Exhibit Excerpts of the transcript for the Deposition of Matt Pithan, dated March 30, 2023, # 21 Exhibit Excerpts of the transcript for the Deposition of Blaine Shaefer dated, March 30, 2023, # 22 Exhibit Excerpts of the transcript for the Deposition of Plaintiffs corporate witness (Charles Camalier, III),Vol. II, # 23 Exhibit Operating Agreement of RSD, a Maryland Limited Liability Company, dated August 31, 2017, # 24 Exhibit Twentieth Amendment to the Operating Agreement for RSD, dated December 16, 2022)(Davis, Rebecca) (Entered: 05/23/2024) |
| 05/23/2024 | 411 | Notice Exhibit Part II re 410 Motion for Partial Summary Judgment by Investors Warranty of America, LLC (Attachments: # 1 Exhibit 23 - Management Agreement dated August 31, 2017, # 2 Exhibit 24 - Excerpts of the transcript for the Deposition of Robert Barron on April 14, 2023, # 3 Exhibit 25 - Transcript for the Deposition of Ro bert Barron on April 14, 2023, # 4 Exhibit 26 - Assumption and Assignment of Ground Lease dated August 31, 2017, # 5 Exhibit 27 - Excerpts of the transcript for the Deposition of RSDs corporate witness (Troy Taylor), # 6 Exhibit 28 - Excerpts of the transcript of the Deposition of Ian Ratner, dated April 6, 2023, # 7 Exhibit 29 - Notice of Assignment from IWA to Plaintiff, dated August 31, 2017, # 8 Exhibit 30 - Excerpts of the transcript of the Deposition of Paul Rubin, dated April 7, 2023, # 9 Exhibit 31 - Excerpts of the telephonic hearing held in this matter on October 13, 2022, # 10 Exhibit 32 - Declaration of Paul Rubin dated May 21, 2024, # 11 Exhibit 33 - Expert Report of Ian Ratner, # 12 Exhibit 34 - Email to Chris Camalier from Jody Rice dated January 30, 2018, # 13 Exhibit 35 - Email to Chris Camalier from Jody Rice dated February 6, 2018, # 14 Exhibit 36 - Letter from Bill Bosch dated February 22, 2018, # 15 Exhibit 37 - Letter from Robert Barron to Bill Bosch dated March 30, 2018, # 16 Exhibit 38 - Letter from Bill Bosch to Robert Barron dated April 25, 2018, # 17 Exhibit 39 - Email from Plaintiffs property manager to Paul Rubin dated April 17, 2018, # 18 Exhibit 40 - Email from Plaintiffs property manager to Paul Rubin dated September 10, 2018, # 19 Exhibit 41 - Letter from Plaintiff to Rock Springs Drive, LLC |

**A39**

| | | |
|---|---|---|
| | | dated June 6, 2019, # [20] Exhibit 42 - Letter from Robert Barron to Bill Bosch dated June 13, 2019, # [21] Exhibit 43 - Email from Robert Barron to Bill Bosch dated June 18, 2019, # [22] Exhibit 44 - Email from Bill Bosch to Robert Barron dated June 24, 2019)(Davis, Rebecca) Modified on 5/24/2024 (ols, Deputy Clerk). (Entered: 05/23/2024) |
| 05/23/2024 | [412] | -SEALED - NOTICE of Filing Under Seal Exhibits 10, 11, 13, 14, 17, and 33 to IWA, LLC and Rock Springs Drive LLC's Statement of Material Facts in Support of Their Motions For Summary Judgment by Investors Warranty of America, LLC re [410] MOTION for Partial Summary Judgment *and Memorandum of Law in Support* (Attachments: # [1] Exhibit SEALED Exhibit 10 - Letter from Charles Camalier to AURA dated September 22, 2011, # [2] Exhibit SEALED Exhibit 11 - Notice of Default dated October 11, 2011, # [3] Exhibit SEALED Exhibit 13 - Declaration of Paul Rubin dated October 12, 2021, # [4] Exhibit SEALED Exhibit 14 - Declaration of David Feltman dated October 11, 2021, # [5] Exhibit SEALED Exhibit 17 - email chain ending with an Email from Matt Pithan dated July 8, 2016, # [6] Exhibit SEALED Exhibit 33 - Expert Report of Ian Ratner)(Davis, Rebecca) (Entered: 05/23/2024) |
| 05/23/2024 | [413] | MOTION to Seal *Exhibits 10, 11, 13, 14, 17, and 33* by Investors Warranty of America, LLC (Attachments: # [1] Attachment Proposed Order)(Davis, Rebecca) (Entered: 05/23/2024) |
| 05/23/2024 | [414] | MOTION for Partial Summary Judgment *as to Certain of Defendants' Affirmative Defenses* by Rock Spring Plaza II, LLC (Attachments: # [1] Memorandum in Support, # [2] Exhibit, # [3] Exhibit, # [4] Exhibit, # [5] Exhibit, # [6] Exhibit, # [7] Exhibit, # [8] Exhibit, # [9] Exhibit, # [10] Exhibit, # [11] Exhibit, # [12] Exhibit, # [13] Exhibit, # [14] Exhibit, # [15] Exhibit, # [16] Exhibit, # [17] Exhibit, # [18] Exhibit, # [19] Exhibit, # [20] Exhibit, # [21] Exhibit, # [22] Exhibit, # [23] Exhibit, # [24] Exhibit, # [25] Exhibit, # [26] Exhibit, # [27] Exhibit, # [28] Exhibit, # [29] Exhibit, # [30] Exhibit, # [31] Exhibit, # [32] Exhibit, # [33] Exhibit, # [34] Exhibit, # [35] Exhibit, # [36] Text of Proposed Order)(Danial, Katherine) (Entered: 05/23/2024) |
| 05/23/2024 | [415] | -SEALED - NOTICE of Filing Under Seal Exhibits 4, 7, 9, 10,12,13,14, and 18 to Plaza's MPSJ as to Certain of Defendants' Affirmative Defenses by Rock Spring Plaza II, LLC (Attachments: # [1] Exhibit, # [2] Exhibit, # [3] Exhibit, # [4] Exhibit, # [5] Exhibit, # [6] Exhibit, # [7] Exhibit)(Danial, Katherine) (Entered: 05/23/2024) |
| 05/23/2024 | [416] | MOTION to Seal *Exhibits 4, 7, 9, 10, 12, 13, 14, and 18* by Rock Spring Plaza II, LLC (Attachments: # [1] Text of Proposed Order)(Danial, Katherine) (Entered: 05/23/2024) |
| 05/23/2024 | [417] | MOTION for Partial Summary Judgment *as to Defendant IWA's Release* by Rock Spring Plaza II, LLC (Attachments: # [1] Memorandum in Support, # [2] Exhibit Declaration of Katherine T. Danial, # [3] Exhibit Ground Lease, # [4] Exhibit Jan. 26, 2023 Hearing Transcript Excerpts, # [5] Exhibit Feb. 16, 2023 Hearing Transcript Excerpts, # [6] Exhibit Estoppel Agreement, # [7] Exhibit Filed under seal, # [8] Exhibit Trustees Deed of Assignment, # [9] Exhibit RSD Registration Information, # [10] Exhibit RSD Operating Agreement, # [11] Exhibit Assumption and Assignment of Ground Lease, # [12] Exhibit T. Taylor Dep. Transcript Excerpts, # [13] Exhibit D. Feltman Dep. Transcript Excerpts, # [14] Exhibit P. Rubin Dep. Transcript Excerpts)(Danial, Katherine) (Entered: 05/23/2024) |
| 05/23/2024 | [418] | -SEALED - NOTICE of Filing Under Seal Exhibit 5 to Plaza's MPSJ as to Defendant IWA's Release by Rock Spring Plaza II, LLC (Danial, Katherine) (Entered: 05/23/2024) |
| 05/23/2024 | [419] | MOTION to Seal *Exhibit 5 to Plaza's MPSJ as to Defendant IWA's Release* by Rock Spring Plaza II, LLC (Attachments: # [1] Text of Proposed Order)(Danial, Katherine) (Entered: 05/23/2024) |
| 05/24/2024 | 420 | QC NOTICE: [409] Motion for Summary Judgment filed by Rock Springs Drive, LLC was filed incorrectly.<br>***The following attachments or exhibits are missing - Proposed Order. To correct this** |

**A40**

|  |  |  |
|---|---|---|
|  |  | *problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 409* . (ols, Deputy Clerk) (Entered: 05/24/2024) |
| 05/24/2024 | 421 | QC NOTICE: 410 Motion for Partial Summary Judgment filed by Investors Warranty of America, LLC was filed incorrectly.<br>**The following attachments or exhibits are missing - Proposed Order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 410* . (ols, Deputy Clerk) (Entered: 05/24/2024) |
| 05/24/2024 | 422 | QC NOTICE: 417 Motion for Partial Summary Judgment,,, filed by Rock Spring Plaza II, LLC was filed incorrectly.<br>**The following attachments or exhibits are missing - Proposed Order. To correct this problem, file Proposed Order using the event Notice (Other) and link Proposed Order to 417* . (ols, Deputy Clerk) (Entered: 05/24/2024) |
| 05/24/2024 | 423 | NOTICE by Rock Spring Plaza II, LLC re 417 MOTION for Partial Summary Judgment *as to Defendant IWA's Release refiling Proposed Order* (Danial, Katherine) (Entered: 05/24/2024) |
| 05/24/2024 | 424 | NOTICE by Investors Warranty of America, LLC re 410 MOTION for Partial Summary Judgment *and Memorandum of Law in Support* (Davis, Rebecca) (Entered: 05/24/2024) |
| 05/24/2024 | 425 | PAPERLESS CORRESPONDENCE to counsel/parties of record SETTING the Jury Trial to begin on Wednesday, August 28, 2024 at 10:00 a.m. and continuing until September 13, 2024. (jmhs, Chambers) (Entered: 05/24/2024) |
| 05/24/2024 | 426 | NOTICE by Rock Springs Drive, LLC re 409 Joint MOTION for Summary Judgment *on Count II (fraudulent conveyance) Proposed order* (Kropf, Sara) (Entered: 05/24/2024) |
| 05/29/2024 | 427 | ORDER granting 413 IWA's Motion to Seal Exhibits. Signed by Judge Peter J. Messitte on 5/28/2024. (ols, Deputy Clerk) (Entered: 05/29/2024) |
| 05/29/2024 | 428 | ORDER granting 419 Plaintiff's Motion to Seal. Signed by Judge Peter J. Messitte on 5/28/2024. (ols, Deputy Clerk) (Entered: 05/29/2024) |
| 05/29/2024 | 429 | ORDER granting 416 Plaintiff's Motion to Seal. Signed by Judge Peter J. Messitte on 5/28/2024. (ols, Deputy Clerk) (Entered: 05/29/2024) |
| 06/03/2024 | 430 | RESPONSE to Motion re 414 MOTION for Partial Summary Judgment *as to Certain of Defendants' Affirmative Defenses* filed by Investors Warranty of America, LLC. (Attachments: # 1 Attachment Response in Opp'n to Statement of Facts, # 2 Exhibit Exhibit A - IWA Deposition Testimony, # 3 Exhibit Exhibit B - Barron Deposition Testimony, # 4 Text of Proposed Order Proposed Order)(Davis, Rebecca) (Entered: 06/03/2024) |
| 06/03/2024 | 431 | RESPONSE to Motion re 417 MOTION for Partial Summary Judgment *as to Defendant IWA's Release* filed by Investors Warranty of America, LLC. (Attachments: # 1 Attachment Resp. in Opp'n Statement of Facts, # 2 Exhibit Exhibit A - IWA Deposition, # 3 Exhibit Exhibit B - Troy Deposition, # 4 Text of Proposed Order Proposed Order)(Davis, Rebecca) (Entered: 06/03/2024) |
| 06/03/2024 | 432 | RESPONSE in Opposition re 410 MOTION for Partial Summary Judgment *and Memorandum of Law in Support* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Exhibit Declaration of Katherine T. Danial, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit Sealed Placeholder- Exhibit 7, # 9 Exhibit Sealed Placeholder- Exhibit 8, # 10 Exhibit, # 11 Exhibit Sealed Placeholder- Exhibit 10, # 12 Exhibit Sealed Placeholder- Exhibit 11, # 13 Exhibit Sealed Placeholder- Exhibit 12, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, |

**A41**

| | | |
|---|---|---|
| | | # 27 Exhibit, # 28 Exhibit, # 29 Exhibit, # 30 Exhibit, # 31 Exhibit, # 32 Exhibit, # 33 Exhibit, # 34 Exhibit, # 35 Text of Proposed Order)(Bosch, William) (Entered: 06/03/2024) |
| 06/03/2024 | 433 | -SEALED - NOTICE of Filing Under Seal Exhibits 7, 8, 10, 11, 12 to Plaza's Response in Opposition to IWA's Motion for Summary Judgment by Rock Spring Plaza II, LLC re 432 Response in Opposition to Motion,,, (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Bosch, William) (Entered: 06/03/2024) |
| 06/03/2024 | 434 | MOTION to Seal *Exhibits 7, 8, 10, 11, 12* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Bosch, William) (Entered: 06/03/2024) |
| 06/03/2024 | 435 | RESPONSE in Opposition re 409 Joint MOTION for Summary Judgment *on Count II (fraudulent conveyance)* filed by Rock Spring Plaza II, LLC. (Attachments: # 1 Attachment, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit Sealed Placeholder- Exhibit 5, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit Sealed Placeholder- Exhibit 8, # 11 Exhibit Sealed Placeholder- Exhibit 9, # 12 Exhibit Sealed Placeholder- Exhibit 10, # 13 Exhibit Sealed Placeholder- Exhibit 11, # 14 Exhibit, # 15 Exhibit Sealed Placeholder- Exhibit 13, # 16 Exhibit Sealed Placeholder- Exhibit 14, # 17 Exhibit Sealed Placeholder- Exhibit 15, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit Sealed Placeholder- Exhibit 21, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Exhibit, # 28 Exhibit, # 29 Exhibit, # 30 Exhibit, # 31 Exhibit, # 32 Exhibit, # 33 Exhibit, # 34 Exhibit, # 35 Exhibit, # 36 Exhibit, # 37 Exhibit, # 38 Exhibit, # 39 Text of Proposed Order)(Bosch, William) (Entered: 06/03/2024) |
| 06/03/2024 | 436 | -SEALED - NOTICE of Filing Under Seal Exhibits 5, 8, 9, 10, 11, 13, 14, 15, 21 by Rock Spring Plaza II, LLC re 435 Response in Opposition to Motion,,,, (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit)(Bosch, William) (Entered: 06/03/2024) |
| 06/03/2024 | 437 | MOTION to Seal *Exhibits 5, 8, 9, 10, 11, 13, 14, 15* by Rock Spring Plaza II, LLC (Attachments: # 1 Text of Proposed Order)(Bosch, William) (Entered: 06/03/2024) |
| 06/04/2024 | 438 | ORDER granting 434 437 Rock Spring Plaza II, LLC's Motions to Seal. Signed by Judge Peter J. Messitte on 6/4/2024. (ols, Deputy Clerk) (Entered: 06/04/2024) |
| 06/05/2024 | 439 | MOTION to Appear Pro Hac Vice for Jennifer Shelfer (Filing fee $100, receipt number AMDDC-11301830.) by Investors Warranty of America, LLC(Davis, Rebecca) (Entered: 06/05/2024) |
| 06/05/2024 | 440 | MOTION to Appear Pro Hac Vice for William Hill, Jr. (Filing fee $100, receipt number AMDDC-11301911.) by Investors Warranty of America, LLC(Davis, Rebecca) (Entered: 06/05/2024) |
| 06/11/2024 | 441 | QC NOTICE: 439 Motion to Appear Pro Hac Vice filed by Investors Warranty of America, LLC needs to be modified. See attachment for details and corrective actions needed regarding the signature(s) on the motion. (mh4s, Deputy Clerk) (Entered: 06/11/2024) |
| 06/11/2024 | 442 | QC NOTICE: 440 Motion to Appear Pro Hac Vice filed by Investors Warranty of America, LLC needs to be modified. See attachment for details and corrective actions needed regarding the signature(s) on the motion. (mh4s, Deputy Clerk) (Entered: 06/11/2024) |
| 06/11/2024 | 443 | CORRECTED MOTION to Appear Pro Hac Vice for William B. Hill, Jr. by Investors Warranty of America, LLC. The fee has already been paid.(Davis, Rebecca) (Entered: 06/11/2024) |
| 06/11/2024 | 444 | CORRECTED MOTION to Appear Pro Hac Vice for Jennifer L. Shelfer by Investors Warranty of America, LLC. The fee has already been paid.(Davis, Rebecca) (Entered: 06/11/2024) |

**A42**

6/13/24, 3:53 PM                                District of Maryland (CM/ECF Live NextGen 1.7.1.1)

| 06/12/2024 | 445 | PAPERLESS CORRESPONDENCE to counsel/parties of record confirming that a Pre-Trial Conference with Judge Peter J. Messitte has been scheduled for August 8, 2024 at 11:00 a.m. Pursuant to Local Rule 106.4, the parties are directed to submit a proposed Joint Pre-Trial Order to the Court seven days (7) before the Pre-Trial Conference (by August 1, 2024). (Courtroom To Be Determined).(jmhs, Chambers) (Entered: 06/12/2024) |
| 06/13/2024 | 446 | PAPERLESS ORDER granting 443 Corrected Motion to Appear Pro Hac Vice on behalf of William B. Hill, Jr. Directing attorney William B. Hill, Jr to register for pro hac vice filing in the District of Maryland through PACER at https://pacer.uscourts.gov/ if attorney has not already done so. The *Pro Hac Vice* option must be selected when registering. Signed by Clerk on 6/13/2024. (mh4s, Deputy Clerk) (Entered: 06/13/2024) |
| 06/13/2024 | 447 | PAPERLESS ORDER granting 444 Corrected Motion to Appear Pro Hac Vice on behalf of Jennifer L Shelfer. Directing attorney Jennifer L Shelfer to register for pro hac vice filing in the District of Maryland through PACER at https://pacer.uscourts.gov/ if attorney has not already done so. The *Pro Hac Vice* option must be selected when registering. Signed by Clerk on 6/13/2024. (mh4s, Deputy Clerk) (Entered: 06/13/2024) |

| **PACER Service Center** | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 06/13/2024 15:50:58 | | |
| **PACER Login:** | dcsp0016 | **Client Code:** | 064980-0000001-61561 |
| **Description:** | Docket Report | **Search Criteria:** | 8:20-cv-01502-PJM |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

**A43**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

|  |  |  |
|---|---|---|
| ROCK SPRING PLAZA II, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 20-cv-01502-PJM |
| INVESTORS WARRANTY OF AMERICA, | ) | |
| LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC'S
## MOTION TO DISMISS

Defendant Investors Warranty of America, LLC ("IWA"), by and through its undersigned counsel, respectfully files this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth herein and expounded in the Memorandum of Points and Authorities in Support hereof, this action should be dismissed, with prejudice, because even if each and every allegation asserted in the Complaint is accepted as true, Plaintiff Rock Spring Plaza II, LLC ("Landlord") fails to state a claim for which relief may be granted with respect to all Counts asserted in its Complaint.  Furthermore, the declaratory judgment sought is barred because Landlord previously released IWA for all liabilities claimed in the Complaint.

*[SIGNATURES ON FOLLOWING PAGE]*

**A44**

Dated: June 29, 2020                    Respectfully Submitted,

                                        SEYFARTH SHAW LLP


                        By:     */s/ Edward V. Arnold*
                                Edward V. Arnold, Bar No. 29401
                                earnold@seyfarth.com
                                Anthony J. LaPlaca, Bar No. 20885
                                alaplaca@seyfarth.com
                                975 F Street, NW
                                Washington, D.C. 20004
                                Telephone:  (202) 463-2400
                                Facsimile:   (202) 828-5393

                                Rebecca A. Davis (*admitted pro hac vice*)
                                (Georgia Bar No. 141711)
                                rdavis@seyfarth.com
                                1075 Peachtree Street NE, Suite 2500
                                Atlanta, Georgia 30309
                                Telephone:  (404) 885-1500
                                Facsimile:   (404) 892-7056

                                *Counsel for Defendant Investors Warranty of
                                America, LLC*

64520370v.1

**A45**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

|  |  |  |
|---|---|---|
| ROCK SPRING PLAZA II, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 20-cv-01502-PJM |
| INVESTORS WARRANTY OF AMERICA, | ) | |
| LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2020, I electronically filed the foregoing
**DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC'S MOTION TO
DISMISS** via the Court's CM/ECF system, which will automatically provide electronic
service copies to all counsel of record.

William Bosch, Esq.
Arnold & Porter LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Telephone:  (202) 942-5000
Facsimile:  (202) 942-5999
william.bosch@aporter.com
*Attorney for Rock Springs Plaza II, LLC*

By: */s/ Edward V. Arnold*
Edward V. Arnold, Bar No. 29401

Dated:  June 29, 2020

64520370v.1

**A46**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | |
|---|---|
| ROCK SPRING PLAZA II, LLC,     ) | |
|     ) | |
|    Plaintiff,     ) | |
|     ) | |
|    v.     ) | Civil Action No. 20-cv-01502-PJM |
|     ) | |
| INVESTORS WARRANTY OF AMERICA,  ) | |
| LLC, et al.,     ) | |
|     ) | |
|    Defendants.     ) | |
|     ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT**
**INVESTORS WARRANTY OF AMERICA, LLC'S**
**<u>MOTION TO DISMISS THE COMPLAINT</u>**

SEYFARTH SHAW LLP

Edward V. Arnold, Bar No. 29401
earnold@seyfarth.com
Anthony J. LaPlaca, Bar No. 20885
alaplaca@seyfarth.com
975 F Street, NW
Washington, D.C. 20004
Telephone:  (202) 463-2400
Facsimile:  (202) 828-5393

Rebecca A. Davis (*admitted pro hac vice*)
(Georgia Bar No. 141711)
rdavis@seyfarth.com
1075 Peachtree Street NE, Suite 2500
Atlanta, Georgia 30309
Telephone:  (404) 885-1500
Facsimile:   (404) 892-7056

*Counsel for Defendant Investors Warranty of*
*America, LLC*

## TABLE OF CONTENTS

MATERIAL FACTUAL ALLEGATIONS..........................................................................1

The Ground Lease ...........................................................................................................1

The Estoppel Agreement................................................................................................2

Bases for Default Alleged in the Complaint ...............................................................6

LEGAL STANDARD........................................................................................................7

ARGUMENT .....................................................................................................................8

I.      ALL COUNTS FAIL AS A MATTER OF LAW BECAUSE LANDLORD
        CONSENTED TO THE ASSIGNMENT OF THE LEASEHOLD ESTATE AND
        RELEASED IWA FROM ALL FUTURE GROUND LEASE OBLIGATIONS...........9

        A.      Landlord Expressly Consented to the Assignment. ................................10

        B.      Landlord Released IWA From All Future Obligations Under The Ground
                Lease. ..............................................................................................................12

II.     LANDLORD HAS NOT PLED, AND CANNOT MEET, THE ELEMENTS OF
        A FRAUDULENT CONVEYANCE. ......................................................................13

        A.      The Complaint Omits Any Allegation of a Conveyance of Assets. ......14

        B.      There Is No Debtor-Creditor Relationship Between Landlord And IWA.............15

        C.      Landlord Has Not Pled Any Acts Or Omissions That Hindered, Delayed,
                Or Defrauded Landlord......................................................................................16

        D.      There Is No Basis For Setting Aside The Conveyance...........................17

III.    COUNTS III AND IV OF THE COMPLAINT FAIL AS A MATTER OF LAW
        BECAUSE LANDLORD CANNOT STATE ANY UNDERLYING CAUSE OF
        ACTION COGNIZABLE UNDER MARYLAND LAW. ...............................17

CONCLUSION.................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*,
    430 Md. 197 (2013) .................................................................................11

*A Society Without a Name v. Virginia*,
    655 F.3d 342 (4th Cir. 2011) ...................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................7

*Auslander v. Helfand*,
    988 F. Supp. 576 (D. Md 1997) ..............................................................12

*Banneker Ventures, LLC v. Graham*,
    20 F. Supp. 3d 184 (D.D.C. 2013) ..........................................................8

*Bart Arconti & Sons, Inc. v. Ames–Ennis, Inc.*,
    275 Md. 295 (1975) .................................................................................17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................7

*Blankenship v. Manchin*,
    471 F.3d 523 (4th Cir. 2006) ...................................................................8

*C B Structures, Inc. v. Potomac Elec. Power Co.*,
    122 F. Supp. 3d 247 (D. Md. 2015).........................................................11

*Cozzarelli v. Inspire Pharm., Inc.*,
    549 F.3d 618 (4th Cir. 2008) ...................................................................7

*Dixon v. Bennett*,
    72 Md. App. (1987), *overruled on other grounds, BAA, PLC v. Acacia Mut.*
    *Life Ins. Co.*, 400 Md. 136 (2007)..........................................................15

*Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co.*,
    434 Md. 37 (2013) ...................................................................................11

*Dynacorp Ltd. v. Aramtel Ltd.*,
    208 Md. App. 403 (2012) ........................................................................11

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
    637 F.3d 435 (4th Cir. 2011) ...................................................................7

*Gorog v. Best Buy Co., Inc.*,
  760 F.3d 787 (8th Cir. 2014) ..................................................................8

*Greystone Operations, LLC v. Steinberg*,
  2017 WL 1365365 (Md. App. Apr. 12, 2017) ........................................13

*Hildreth v. Tidewater Equip. Co.*,
  378 Md. 724 (2003) ...............................................................................17

*Hinks v. Bd. of Ed. of Harford Cnty.*,
  Civ. No. WDQ-09-1672, 2010 WL 5087598 (D. Md. Dec. 7, 2010) ........7

*Kaye v. Wilson-Gaskins*,
  227 Md. App. 660 (2016) (citing Restat. (2d) of Contracts § 295 cmt. a)..............12

*Metro. Life Ins. Co. v. Promenade Towers Mut. Hous. Corp.*,
  84 Md. App. 702 (1990) .........................................................................12

*Painter's Mill Grille, LLC v. Brown*,
  716 F.3d 342 (4th Cir. 2013) ...................................................................7

*Philips v. Pitt Cnty. Mem. Hosp.*,
  572 F.3d 176 (4th Cir. 2009) ...............................................................1, 8

*Presley v. City of Charlottesville*,
  464 F.3d 480 (4th Cir. 2006) ...................................................................7

*Resid. Warranty Corp. v. Bancroft Homes Greenspring*,
  126 Md. App. 294 (1999) .......................................................................17

*Rockledge Associates LLC v. Transamerica Life Ins. Co.*,
  Civ. No. PWG-16-710, 2017 WL 1239182 (D. Md. Feb. 3, 2017) ............9, 10, 11

*Santana v. Cook Cnty. Bd. of Review*,
  679 F.3d 614 (7th Cir. 2012) ...................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..................................................................................8

*Whitcomb v. Nat. Exchange Bank*,
  123 Md. 612 (1914) ................................................................................12

**Statutes**

Maryland Uniform Fraudulent Conveyance Act ...................................13, 15

Md. Code Ann., Comm. Law § 15-207 .....................................................13

Md. Code Ann., Comm. Law § 15-210 .....................................................17

**Other Authorities**

11 M.L.E. Fraudulent Conveyances § 1 (*citing* 37 C.J.S., Fraudulent Conveyances § 5) ...............................................................................................................13, 16

Black's Law Dictionary 1708 (10th Ed. 2014) ...........................................................11

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 7

Fed. R. Civ. P. 12(c) ...................................................................................................9

Fed. R. Civ. P. 12(d) ..................................................................................................9

Local Civil Rule 105.1 ................................................................................................1

64520527v.4

**A51**

Pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) and Local Civil Rule 105.1, Defendant Investors Warranty of America, LLC ("IWA") submits the following arguments and authorities in support of its Motion to Dismiss the Complaint ("Motion").  For the reasons set forth herein, the Complaint filed by Plaintiff Rock Spring Plaza II, LLC ("Landlord"), and all counts asserted therein, should be dismissed, with prejudice, because even if each and every allegation asserted in the Complaint is accepted as true, Landlord fails to state a claim for which relief may be granted with respect to all Counts asserted in the Complaint.

## MATERIAL FACTUAL ALLEGATIONS

### *The Ground Lease*

As alleged in the Complaint and the documents underlying the claims asserted by Landlord therein,[1] the following factual allegations are pertinent to the Motion ("Facts"):

1.      Landlord is the landlord under an Amended and Restated Ground Lease Indenture, dated November 14, 1990 ("Ground Lease"), which was originally entered into by Landlord's predecessor-in-interest, Anne Camalier, as landlord, and Rock Spring II Limited Partnership as tenant ("Original Tenant").  ECF 1, Compl. ¶ 10.

2.      A true and correct copy of the Ground Lease, as amended by a First Amendment to Amended and Restated Ground Lease Indenture, dated September 1, 2002, is attached hereto and incorporated by reference as Exhibit 1.

3.      Rock Springs Drive, LLC ("Tenant") is the current tenant under the Ground Lease. *See* ECF 1-1, Compl. Ex. A.

---

[1] When deciding the Motion, the Court may consider any documents that form the basis for the underlying claims set forth in the Complaint, or which are necessary to determine the respective legal rights of the parties.  *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

1

4.      Under the Ground Lease, Landlord has leased its interest in the land (the "Leasehold Estate") located at 6560 Rockledge Drive, Bethesda, Montgomery County, Maryland ("Premises") to Tenant for a term of ninety-nine (99) years ("Term").  ECF 1, Compl. ¶ 12.

5.      The Ground Lease expires in November 2089.  *Id.*

6.      Under the Ground Lease, any improvements constructed on the Premises during the Term are owned by Tenant through the duration of the Term.  *Id.* ¶¶ 10-11; *see* Ex. 1 at pp. 38-39.  When the Ground Lease expires, the estates will merge, the land will revert to Landlord, and title to any improvements will also be transferred to Landlord.  Ex. 1 at pp. 38-39.

7.      Section 11.1 of the Ground Lease gives the tenant the right at any time, from time to time, to make a leasehold mortgage on the tenant's interest in the Premises.  *Id.* at p. 45.

8.      Section 5.2 of the Ground Lease also provides that any lessee may assign the Ground Lease and mortgage the Leasehold Estate without Landlord's consent.  *Id.* at p. 23.[2]

9.      Under Section 11.2 of the Ground Lease, Landlord granted to any leasehold mortgagee the right to cure any default of the tenant and, if necessary, institute foreclosure proceedings to otherwise acquire possession of the Premises.  *Id*. at p. 45-46.

10.      Section 11.3(a) provides that if the Ground Lease terminates prior to its stated expiration date: "Landlord agrees that it will enter into a new lease of the Premises with the Leasehold Mortgagee, or at the request of Leasehold Mortgagee, with a corporation or other entity formed by or on behalf of the Leasehold Mortgagee."  *Id.* at p. 47.

### *The Estoppel Agreement*

11.      As detailed in a Ground Lessor Estoppel and Non-Disturbance Agreement ("Estoppel Agreement") by and between Landlord, Original Tenant, and Monumental Life

---

[2] Section 5.2 of the Ground Lease contains certain requirements for consent in connection with a prior lien that is not relevant to the Motion or the current Leasehold Estate.

Insurance Company ("MLIC"), dated June 2, 2006, Original Tenant took out a leasehold mortgage and was indebted to MLIC for a loan made in the principal amount of $30,000,000 (the "Loan").

12.     A true and correct copy of the Estoppel Agreement is attached hereto and incorporated by reference as Exhibit 2.

13.     The Loan was secured by the Leasehold Estate as collateral, pursuant to an Amended and Restated Leasehold Deed of Trust, Security Agreement and Fixture Filing ("Deed of Trust"). *See* Ex. 2 at p. 1.

14.     Landlord expressly approved the use of the Leasehold Estate as collateral and agreed to all terms in the Estoppel Agreement. Ex. 2 at pp. 1-2, 4.

15.     Under Section 20 of the Estoppel Agreement, the parties further agreed that the Estoppel Agreement modified the Ground Lease, affirming that "all of the assurances and confirmations contained in the [Estoppel] Agreement are assignable by the Landlord and shall inure to the benefit of [and] be enforceable by any successor assignee to the Lender." Ex. 2 at p. 7.

16.     Section 12 of the Estoppel Agreement provided that MLIC, or its successors or assigns, could enforce the Deed of Trust and acquire the Leasehold Estate and, *without consent of Landlord*, then sell and assign the Leasehold Estate. Ex. 2 at p. 5 (emphasis added).

17.     Specifically, Section 12 of the Estoppel Agreement stated:

The Lender or its successors or assigns may enforce the Deed of Trust and acquire title (or any third-party purchaser may acquire title at a foreclosure sale or by deed in lieu of foreclosure) to the leasehold estate in the Premises in any lawful way and, pending foreclosure of the Deed of Trust, the Lender may take possession of and operate the Premises, or any portion thereof subject to the terms of the Lease and its Deed in Trust to the extent not in conflict with the Lease, perform all obligations performable by Tenant, and upon foreclosure of the Deed of Trust by power of sale, judicial foreclosure, or upon acquisition of the leasehold estate by a deed or other transfer in lieu of foreclosure, *Lender may, without further consent of Landlord, sell and assign the leasehold estate in the Premises. Lender shall notify Landlord*

> _in writing of such sale or assignment within ten (10) days of such sale or_
> _assignment._  Provided any defaults by the Tenant have been cured to the extent
> required by the terms of the Lease, any assignee of the leasehold estate following a
> foreclosure of the Deed of Trust by power of sale or judicial foreclosure (or transfer
> by deed in lieu thereof) shall be liable to perform the obligations imposed upon
> Tenant by this Lease only during the period such person has ownership of said such
> leasehold estate.

Ex. 2 at p. 5 (emphasis added).

18.    Section 19 of the Estoppel Agreement also expressly permitted any lender that acquired the Leasehold Estate to assign all or a portion of that interest to a third party.  Ex. 2 at p. 7.

19.    Under Section 19, Landlord further agreed that, so long as that assignee assumed all of the tenant obligations of the Ground Lease, the lender would be automatically released from all future Ground Lease obligations.  Specifically, Section 19 of the Estoppel Agreement stated:

> Except as otherwise provided in the Lease, no limitation upon or condition to any
> assignment of the Lease shall apply to any transfer of the lease by foreclosure,
> trustee's sale, sheriff's sale or an assignment in lieu thereof.  If the Lender acquires
> the Tenant's interest in the Lease or the Lender acquires a new lease pursuant to
> any provision of the Lease, the Lender shall have the absolute right to assign the
> same or sublease all or any portion of the Premises to any third party.  So long as
> such third party assumes all of the Tenant's obligation under the Lease the Lender
> shall be automatically released from any further liability thereunder following any
> such assignment except for any of the Lender's obligations or liabilities under the
> Lease arising during Lender's period of ownership.

Ex. 2 at p. 7.

20.    MLIC ultimately assigned its interest as lender of the Loan to IWA.  Original Tenant thereafter defaulted on the Loan; and by virtue of a foreclosure proceeding commenced in the Circuit Court for Montgomery County, Maryland in Civil Action No. 358310V, the Leasehold Estate was sold on February 28, 2012, to IWA.

21.     As permitted by both the Ground Lease and Estoppel Agreement, IWA assigned the Leasehold Estate to Tenant on August 25, 2017, at which time Tenant assumed all obligations under the Ground Lease.  ECF 1, Compl. ¶ 14; *see ECF 1-1,* Compl. Ex. A.

22.     Notice of the assignment was provided to Landlord by letter dated August 31, 2017, as required under Section 12 of the Estoppel Agreement.  ECF 1, Compl. ¶ 14; *see ECF 1-1,* Compl. Ex. A*; see also* Ex. 2 at p. 5.

23.     In the nearly three (3) years that Tenant has held the Leasehold Estate, Landlord has sent multiple letters requesting information about Tenant's plans for the Premises and seeking information as to the ownership and management of Tenant.  ECF 1, Compl. ¶¶ 18-25; *see* ECF 1-3 and 1-5, Compl. Exs. C & E.

24.     Landlord has further made multiple attempts to steer Tenant in the direction of certain subtenants.  ECF 1, Compl. ¶¶ 24-25.

25.     In response, Tenant has advised Landlord that, although Tenant desires to comply with the Ground Lease, Landlord's requests for information and actions are not authorized under the Ground Lease or any other authority.  *See* ECF 1-4, Compl. Ex. D.

26.     Tenant also has been forced to remind Landlord that "Landlord has covenanted and agreed in Section 9.2 of the Ground Lease that Tenant shall peaceably and quietly have, hold and enjoy the leased premises and all rights, appurtenances and privileges belonging or appertaining thereto, without hindrance or molestation."  ECF 1-4, Compl. Ex D.

27.     Tenant also has requested that Landlord notify Tenant of any non-compliance with the terms of the Ground Lease "by written notice, with reasonable specificity, in order that it may evaluate such allegations and take the appropriate action to correct any situation which may not be in compliance with the terms of the Ground Lease."  *Id.*

64520527v.4

## *Bases for Default Alleged in the Complaint*

28.     Landlord has never notified Tenant of any default of the Ground Lease, but instead has filed a Complaint alleging that IWA's assignment of the Leasehold Estate to Tenant is improper and should be voided.  To be clear, Landlord does not allege that Tenant has breached any obligations under the Ground Lease, and indeed admits that monthly rent has been paid the entire time that Tenant has held the Leasehold Estate.  ECF 1, Compl. ¶ 14.

29.     Landlord asserts that it is entitled to a declaration from this Court that the assignment was a fraudulent conveyance (ECF 1, Compl. ¶¶ 35-38) and seeks an order to set aside the assignment (ECF 1, Compl. ¶¶ 40-41) based on a litany of irrelevant allegations that, even if true, do not meet the elements necessary to show a fraudulent conveyance.  Such allegations include:

> i.      Tenant did not join Landlord's efforts to secure subleases with Marriott and the General Services Administration, ECF 1, Compl. ¶¶ 24- 25;

> ii.     Tenant did not give Landlord "a business purpose for the assignment," *Id.* ¶ 15;

> iii.    Landlord has not seen "evidence of meaningful commercial activity," *Id.* ¶ 16; and

> iv.     Tenant has declined to share what Tenant considered to be strategic and proprietary commercial activity and business plans with respect to the property. *Id.* ¶¶ 21-22.

30.     Landlord also alleges that Tenant and IWA are both affiliated with Transamerica Life Insurance Company, and therefore the Court should on that basis find that Tenant is an alter ego of IWA, and pierce the corporate veil so that Landlord may collect rent from IWA for the remainder of the Term.  ECF 1, Compl. ¶¶ 26-29, 43-45, 47-50.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure authorize the Court to dismiss any complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion pursuant to Rule 12(b)(6) is designed to "test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

When evaluating a Rule 12(b)(6) motion, the court "must accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (internal citations omitted). Dismissal of part or all of the pleadings is proper if there is no set of facts the plaintiff could present to support its claim. *Hinks v. Bd. of Ed. of Harford Cnty.*, Civ. No. WDQ-09-1672, 2010 WL 5087598 at *2 (D. Md. Dec. 7, 2010) (citing *Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008)).

While the court must accept the factual allegations in the pleadings as true, legal conclusions drawn from those facts are not to be given such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). Stated another way, in order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Iqbal*, 556 U.S. at 684. Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

When ruling on a motion to dismiss, the court may consider any document that is "incorporated into the complaint by reference" or concerns "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Philips*, 572 F.3d at 180, *citing Blankenship v. Manchin*, 471 F.3d 523, 526 n. 1 (4th Cir. 2006) (holding that district courts may also consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic). Materials referred to in a complaint, or integral to the claims set forth therein, may be considered without converting the motion into a summary judgment motion. *See Banneker Ventures, LLC v. Graham*, 20 F. Supp. 3d 184, (D.D.C. 2013); *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787 (8th Cir. 2014); *Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614 (7th Cir. 2012).

## ARGUMENT

Each count in Landlord's Complaint fails as a matter of law because IWA's conveyance of the Leasehold Estate to Tenant was expressly authorized by the terms of the Ground Lease and the Estoppel Agreement. Also, upon Tenant's assumption of the Ground Lease, IWA was released as a matter of law from all further obligations to Landlord, including the obligation to pay rent.

Each Count in the Complaint is also legally defective, as neither the assignment nor any purported affiliation between IWA and Tenant satisfies the elements of Maryland law necessary to show a fraudulent conveyance, veil-piercing, or a finding of any alter ego liability. In any event, no such claim can exist without a legally-cognizable underlying cause of action. Accordingly, IWA respectfully requests that the Court grant the Motion and dismiss the Complaint and all counts asserted therein, with prejudice.

I.     **ALL COUNTS FAIL AS A MATTER OF LAW BECAUSE LANDLORD CONSENTED TO THE ASSIGNMENT OF THE LEASEHOLD ESTATE AND RELEASED IWA FROM ALL FUTURE GROUND LEASE OBLIGATIONS.**

The Ground Lease is repeatedly referenced in the Complaint, governs the relationship between Landlord and Tenant, creates the Leasehold Estate at issue, and forms the underlying basis of all counts alleged in the Complaint. [3]   Additionally, the Estoppel Agreement (which modifies the Ground Lease) is referenced in the exhibits to the Complaint and is critical to determining the parties' respective legal rights in this declaratory judgment action.  Each of these documents, which should have been included as exhibits to the Complaint, conclusively establishes that the conveyance of the Leasehold Estate from IWA to Tenant was not only permissive, but was contemplated by Landlord and did _not_ require Landlord's consent.

The unambiguous terms of the Ground Lease and the Estoppel Agreement bar all counts set forth in the Complaint.  Notably, however, the Complaint omits any reference to the critical provision of the Ground Lease granting IWA an absolute right to assign the Ground Lease to Tenant without Landlord's consent.  Facts ¶ 8.  Indeed, requiring Landlord's consent to an assignment would contravene the very intent of Maryland's ground lease structure statute.  The recent case of *Rockledge Associates LLC v. Transamerica  Life Ins. Co.*, which was a case involving affiliates of both IWA and Landlord, and which resulted in the termination of a ground lease for a property located near the Premises, extensively explored the relationship between sophisticated ground lessors and ground lease tenants under Maryland law.  *See Rockledge Associates LLC v. Transamerica Life Ins. Co.*, Civ. No. PWG-16-710, 2017 WL 1239182, at *2-3

---

[3] Should the Court determine that this Motion depends on facts outside the pleadings, IWA respectfully requests the opportunity to file its pleadings and affidavits in support of the legal arguments raised herein.  *See* Fed. R. Civ. P. 12(c) (allowing the court to enter judgment on the pleadings where the claims fail as a matter of law); Fed. R. Civ. P. 12(d) (allowing court to treat motion based on matters outside pleadings as one for summary judgment).

9

(D. Md. Feb. 3, 2017) (internal citation omitted). Under Maryland law, a ground lease is typically a renewable 99-year lease where the fee simple owner receives ground rent and retains a real property right in the land; however, the tenant holds title to the improvements and the leaseholder's interest is governed by personalty. *Id*. In other words, a landlord under a ground lease has little to no involvement with the property during the term of the ground lease, other than to collect rent for the lease of the land.

In this case, the Ground Lease is consistent with Maryland law. The Ground Lease is a triple net lease whereby the tenant is responsible for all utilities, maintenance and repairs at the Premises, and taxes. *See generally* Ex. 1. Tenant holds title to all improvements until the Ground Lease terminates, and has an unfettered "right to use the Premises or any part thereof for any and all lawful purposes, to build and rebuild thereupon, to erect such building or buildings on the Premises as it may elect, and to make such alterations, improvements, and betterments to the Premises as it may desire." Ex. 1 at pp. 22, 38.

As detailed further below, the Ground Lease expressly permitted IWA's assignment to Tenant and, upon Tenant's assumption of the obligations of the Ground Lease, IWA was released from all further obligations of the lease, including the obligation to pay rent.

**A.    Landlord Expressly Consented to the Assignment.**

Landlord's claims are fatally flawed because Landlord expressly permitted the assignment of the Ground Lease. The Original Tenant under the Ground Lease took out the Loan and used the Leasehold Estate as collateral. Facts ¶ 11. In connection with the Loan, Landlord executed the Estoppel Agreement with Original Tenant and the lender, MLIC. Facts ¶ 12. MLIC assigned its interests in the Loan to IWA. Facts ¶ 20. Thereafter, the Original Tenant defaulted on the Loan and IWA acquired the Leasehold Estate through foreclosure. Facts ¶ 20.

10

**A61**

Under Section 12 of the Estoppel Agreement, Landlord agreed that IWA had an unbridled right, "*without further consent of the Landlord*, [to] sell and assign the leasehold estate in the Premises." Ex. 2 at p. 5 (emphasis added). Section 19 of the Estoppel Agreement expanded IWA's assignment rights and clarified that IWA may assign its interest in the Leasehold Estate to any third party. *Id.* at p. 7. Notably, there is no provision in either the Ground Lease or Estoppel Agreement that prohibits an assignment of the mortgage or the Ground Lease to an affiliate. *See* Ex. 1; *see also* Black's Law Dictionary 1708 (10th Ed. 2014) (defining the term "third party" as one "who is not a party to a lawsuit, agreement, or other transaction but who is usually somehow implicated in it; someone other than the principal parties.")

"[T]he cardinal rule of contract interpretation is to give effect to the parties' intentions." *Rockledge Associates LLC*, 2017 WL 1239182 at \*5 (*citing Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co*., 434 Md. 37, 51 (2013)). Maryland courts apply the law of objective contract interpretation, meaning that "written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding." *Id.* "When construing an unambiguous contract, courts focus on the four corners of the agreement and ascribe to the contract's language its customary, ordinary, and accepted meaning." *Id.* at \*6; *Dynacorp Ltd. v. Aramtel Ltd*., 208 Md. App. 403, 468-69 (2012) (internal citations omitted); *see C B Structures, Inc. v. Potomac Elec. Power Co*., 122 F. Supp. 3d 247, 251–52 (D. Md. 2015); *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co*., 430 Md. 197, 234 (2013). Therefore, a "contract's unambiguous language will not give way to what the parties thought the contract meant or intended it to mean at the time of execution." *Id.* (internal citations omitted).

Here, the contracts governing the Leasehold Estate and IWA's acquisition of the Premises after foreclosure confirm that it was Landlord's express intent that IWA have the unfettered right to assign the Ground Lease; and neither the language of the Ground Lease or the Estoppel Agreement exclude Tenant from such an assignment.  Accordingly, because each count of the Complaint is premised on the condition that the assignment of the Ground Lease from IWA to Tenant was impermissible or unlawful, each count fails and the Complaint must be dismissed.

**B.      Landlord Released IWA From All Future Obligations Under The Ground Lease.**

Each of Landlord's claims also fail under the Estoppel Agreement because once Tenant assumed all obligations under the Ground Lease, IWA was "automatically released from any further liability" thereunder.  Ex. 2 at p. 7.  Under Maryland law, the term "release" means a contractual abandonment of a claim or right to the person against whom the claim exists, or against whom the right could be enforced.  *Auslander v. Helfand*, 988 F. Supp. 576, 579 (D. Md 1997) (citing *Whitcomb v. Nat. Exchange Bank*, 123 Md. 612 (1914)).  A release takes effect immediately, and immediately discharges any obligation within the scope of the agreement.  *Kaye v. Wilson-Gaskins*, 227 Md. App. 660, 670-71 (2016) (citing Restat. (2d) of Contracts § 295 cmt. a).  Accordingly, because Landlord released IWA from all obligations under the Ground Lease, it follows that Landlord now is conclusively barred from seeking an order from this Court that would force IWA to pay future rent.[4]

---

[4] For the Court to hold otherwise would not only negate the express intent of Landlord in the Ground Lease, as modified by the Estoppel Agreement, but would also result in a unilateral rewriting of the operative contract.  It is a fundamental tenet of contract law that a party to a contract does not have any unilateral right to modify that contract.  *Metro. Life Ins. Co. v. Promenade Towers Mut. Hous. Corp.*, 84 Md. App. 702, 714 (1990).

12

## II.    LANDLORD HAS NOT PLED, AND CANNOT MEET, THE ELEMENTS OF A FRAUDULENT CONVEYANCE.

Landlord alleges that the conveyance by IWA to Tenant, which was permitted by the Ground Lease, was made with the intent to hinder, delay, or defraud Landlord.  ECF 1, Compl. ¶ 36.  Landlord's sole basis for asserting a fraudulent conveyance claim is speculation that Tenant is a "sham entity" that IWA may in the future use as an instrumentality to evade financial obligations under the Ground Lease.  *Id.* ¶ 37.  Landlord's claims are fundamentally flawed as to the purpose and laws relating to fraudulent conveyances, and must be dismissed as a matter of law.

A fraudulent conveyance is a transaction by which the owner of real or personal property places such assets beyond the reach of the owner's creditors, or which operates to the prejudice of their legal or equitable rights.  11 M.L.E. Fraudulent Conveyances § 1 (*citing* 37 C.J.S., Fraudulent Conveyances § 5).  Property in the hands of the grantee or transferee of a fraudulent conveyance or transfer is subject to being reached or taken by the defrauded creditors to the extent that it is necessary to satisfy their claims.  11 M.L.E. Fraudulent Conveyances § 21.  The Maryland Uniform Fraudulent Conveyance Act ("MUFCA") provides, "[e]very conveyance made . . . with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors, is fraudulent as to both present and future creditors." Md. Code Ann., Comm. Law § 15–207.[5]

Maryland courts have determined this to mean that in order for there to be a fraudulent conveyance, there must be: (1) a conveyance of assets; (2) a debtor-creditor relationship; and (3) an intent to hinder, delay or defraud present or future creditors.  *Greystone Operations, LLC v. Steinberg*, 2017 WL 1365365 *5 (Md. App. Apr. 12, 2017).  Here, even if every allegation of the

---

[5] Landlord has asserted a claim for an actual fraudulent conveyance under Md. Comm. Law 15-207, but Landlord has not asserted any claim for constructive fraudulent conveyance under other provisions of the MUFCA.

64520527v.4

Complaint is true, Landlord cannot satisfy any of the elements necessary to prove a fraudulent conveyance.

**A.      The Complaint Omits Any Allegation of a Conveyance of Assets.**

Landlord is essentially asking this Court to take an action that would rewrite the Ground Lease to add IWA as guarantor for rent payments so that Landlord can avoid the actual remedies that it originally negotiated for a default for the failure to pay rent.

Landlord's chief concern is not that Landlord cannot actually reach and recover the Leasehold Estate, which is the asset that was actually conveyed.  Instead, Landlord is concerned that sometime in the future Tenant will stop paying rent for the Leasehold Estate.  Landlord's fears do not give rise to a fraudulent conveyance under the MUFCA.  IWA did assign the Ground Lease, but Landlord's own interest, rights, and positions as to the Premises subject to the Leasehold Estate were not altered by that assignment.  Under the Ground Lease, the land comprising the Premises is still owned by the Landlord and leased to the Ground Lease tenant.  This remains true regardless of whether IWA or Tenant is the tenant.  Landlord's reversionary interest also did not change when the Ground Lease was assigned by IWA to Tenant.  The tenant under the Ground Lease still owns the improvements constructed on the land and, upon termination of the Ground Lease, title to the improvements will still then be transferred to the Landlord.  Facts ¶ 6.

Tenant's obligations under the Ground Lease, including the obligation to pay rent, remain the same as when IWA was the tenant.  Indeed, rent has been paid and there have been no defaults alleged by Landlord since Tenant was assigned the Ground Lease.  Facts ¶ 29.  In other words, all of Landlord's rights, present interests, and future reversionary interests are the same as before the assignment, and do not change regardless of whether Tenant or IWA holds the Leasehold Estate.  Landlord can still acquire the land and improvements if there is a default for the failure to pay rent, regardless of the identity of the Tenant.

14

In sum, Landlord's claim fails because it does not allege facts that give rise to a cognizable action for fraudulent conveyance, but instead indicate *concerns* as to a *potential* future default. If such default were to occur, the Ground Lease already specifies the remedies that Landlord may pursue, and Section 10.2 states that such remedies may include termination of the Ground Lease, repossession of the Leasehold Estate, and possible recovery of past due rent from Tenant. Ex. 1 at p. 41-42. Thus, the asset that was conveyed to IWA, being the property subject to the Leasehold Estate, is never out of reach of Landlord, but is immediately recoverable if rent is not timely paid.

### B.    There Is No Debtor-Creditor Relationship Between Landlord And IWA.

Landlord's fraudulent conveyance claim is, furthermore, legally deficient because there is no debtor-creditor relationship between Landlord and IWA. A plaintiff bringing a claim under the MUFCA must "allege that a creditor-debtor relationship exists and that the debtor has fraudulently transferred assets." *Dixon v. Bennett*, 72 Md. App. at 623 n. 2 (1987), *overruled on other grounds*, *BAA, PLC v. Acacia Mut. Life Ins. Co*., 400 Md. 136 (2007).

Here, IWA was the tenant under the Ground Lease by virtue of its foreclosure on the Leasehold Estate. As permitted and contemplated by the Ground Lease, as modified by the Estoppel Agreement, IWA assigned the Ground Lease and all of the obligations thereunder, including the obligation to pay rent, to Tenant. Facts ¶ 20. Upon that assignment, any landlord-tenant relationship that existed between Landlord and IWA ceased, as did any obligation that IWA had to pay rent. Accordingly, to the extent that there ever was a debtor-creditor relationship between Landlord and IWA, that relationship also terminated. Any debtor-creditor relationship is now only between Landlord and Tenant, who also is the transferee. As Tenant is the debtor, transferee and holder of the asset, there again can be no finding as to a fraudulent conveyance.

### C.     Landlord Has Not Pled Any Acts Or Omissions That Hindered, Delayed, Or Defrauded Landlord.

As to the final elements of a fraudulent conveyance, Landlord makes a threadbare allegation that the assignment of the Ground Lease by IWA to Tenant was made with the intent to hinder, delay, or defraud Landlord.  ECF 1, Compl.  ¶ 36.  Such bald assertion is meritless on its face because, as discussed in Section I, *supra*, the assignment was a lawful transfer permitted under the Ground Lease, as amended by the Estoppel Agreement.

All other allegations relating to Tenant's refusal to join Landlord's attempts to pursue subtenants and share information are spurious and irrelevant, and can be summarily dismissed because Tenant is not required to share its business plans and intentions with the Landlord.  Tenant also is not required to find sub-tenants or choose specific sub-tenants.  Rather, Tenant's obligations under the Ground Lease are to pay Annual Rent (as defined in the Ground Lease) (Section 3.1), property taxes (Section 3.5.1), utilities (Section 3.5.2), and insurance (Section 3.5.3).  The tenant under the Ground Lease also must, at its own cost and expense, perform and comply with all laws, rules, orders, ordinances, regulations, and requirements (Section 5.3), and shall at all times during the Term, at its own costs and expense, keep the Premises and all buildings and improvements hereafter located thereon, in first class operating condition and repair (Section 7.2).  *See generally* Ex. 1. There are no allegations in the Complaint that suggest that Tenant has breached these obligations, and if such obligations were breached, they would not be evidence of a fraudulent conveyance or any variety of fraud, but rather defaults to be addressed under Section 10.2 of the Ground Lease.  *See* Ex. 1 at pp. 41-42.

In sum, there simply are no allegations to support that Tenant is acting with any intent to hinder, delay, or defraud Landlord.

D.       There Is No Basis For Setting Aside The Conveyance.

As Landlord cannot maintain a claim for a declaratory judgment that there was a fraudulent conveyance, Count I of the Complaint must be dismissed with prejudice as to both IWA and Tenant. As there is no fraudulent conveyance, there is no basis for setting aside the assignment of the Ground Lease to Tenant pursuant to Md. Comm. Law § 15-210, and therefore Count II of the Complaint must also be dismissed with prejudice.

III.     **COUNTS III AND IV OF THE COMPLAINT FAIL AS A MATTER OF LAW BECAUSE LANDLORD CANNOT STATE ANY UNDERLYING CAUSE OF ACTION COGNIZABLE UNDER MARYLAND LAW.**

Landlord's veil piercing and liability under alter ego claim, which may be addressed together,[6] also fail as a matter of Maryland law. In Maryland, courts will, in a proper case, disregard the corporate entity where it is necessary to prevent fraud or enforce a paramount equity. *Resid. Warranty Corp. v. Bancroft Homes Greenspring*, 126 Md. App. 294, 306 (1999) (citing *Bart Arconti & Sons, Inc. v. Ames–Ennis, Inc*., 275 Md. 295, 311-12 (1975) (refusing to pierce the corporate veil despite conduct the trial court described as clearly designed to evade a legal obligation and create corporate insolvency). Landlord's veil piercing and alter ego counts, Counts III and IV, are wholly dependent on a finding of unlawful or inequitable conduct resulting in liability under the MUFTA; but no such conduct can be shown by Landlord. *See generally* ECF 1, Compl. As the fraudulent conveyance claims under the MUFTA fail, then so must Landlord's dependent claims for piercing and alter ego.

## CONCLUSION

For the reasons set forth in its Motion to Dismiss the Complaint and this Memorandum of Points and Authorities in Support thereof, IWA respectfully requests that the Court dismiss

---

[6] Indeed, alter ego is merely a factor in analyzing a claim to disregard the corporate veil. *See Hildreth v. Tidewater Equip. Co*., 378 Md. 724, 734-35 (2003).

17

**A68**

Landlord's Complaint and all claims asserted therein with prejudice, award it costs, and grant all other relief in its favor that the Court deems just and necessary.

Dated: June 29, 2020                 Respectfully Submitted,

SEYFARTH SHAW LLP

By: */s/ Edward V. Arnold*
Edward V. Arnold, Bar No. 29401
earnold@seyfarth.com
Anthony J. LaPlaca, Bar No. 20885
alaplaca@seyfarth.com
975 F Street, NW
Washington, D.C. 20004
Telephone: (202) 463-2400
Facsimile: (202) 828-5393

Rebecca A. Davis (*admitted pro hac vice*)
(Georgia Bar No. 141711)
rdavis@seyfarth.com
1075 Peachtree Street NE, Suite 2500
Atlanta, Georgia 30309
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

*Counsel for Defendant Investors Warranty of America, LLC*

64520527v.4

**A69**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

|  |  |  |
|---|---|---|
| ROCK SPRING PLAZA II, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 20-cv-01502-PJM |
| INVESTORS WARRANTY OF AMERICA, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2020, I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC'S MOTION TO DISMISS THE COMPLAINT** via the Court's CM/ECF system, which will automatically provide electronic service copies to all counsel of record.

> William Bosch, Esq.
> Arnold & Porter LLP
> 601 Massachusetts Ave., NW
> Washington, DC 20001
> Telephone:  (202) 942-5000
> Facsimile:   (202) 942-5999
> william.bosch@aporter.com
> *Attorney for Rock Springs Plaza II, LLC*

> By: */s/ Edward V. Arnold*
> Edward V. Arnold, Bar No. 29401

Dated:  June 29, 2020

64520527v.4

**A70**

EXHIBIT 1

558.52B

# CERTIFICATION

The undersigned hereby certifies to COMMONWEALTH LIFE INSURANCE COMPANY that the attached is a true, complete and correct copy of the Amended and Restated Ground Lease Indenture dated as of November 14, 1990, between Anne D. Camelier, as landlord, and the undersigned, as tenant, for premises located in the County of Montgomery, State of Maryland, more fully described therein. The attached agreement amends and restates in its entirety that certain Ground Lease Indenture dated November 14, 1990.

With the intent to be legally bound hereby, the undersigned has executed this Certification this November 25, 1991.

BORROWER:

ROCK SPRING II LIMITED PARTNERSHIP, a Maryland limited partnership

By:    Fernwood Two Corp., a Maryland corporation, General Partner

By: _Anne D. Camelier_

Name: ANNE D. Camelier

Title: President

(CORPORATE SEAL)

By:    Bethesda Real Property, Inc., a Delaware corporation, General Partner

By: _Raymond M Westfall_

Name: RAYMOND M. WESTFALL

Title: VICE PRESIDENT

(CORPORATE SEAL)

**A72**

<u>AMENDED AND RESTATED</u>
<u>GROUND LEASE INDENTURE</u>

ANNE D. CAMALIER,
Landlord,

and

ROCK SPRING II LIMITED PARTNERSHIP,
Tenant

Dated as of: November 14, 1990

## TABLE OF CONTENTS

Page

ARTICLE I
    PREMISES...................................................2
        1.1  Premises; Demise...............................2
ARTICLE II
    TERM OF LEASE.............................................2
        2.1  Term...........................................2
ARTICLE III
    RENT.....................................................3
        3.1  Annual Rent....................................3
        3.2  Definitions....................................3
        3.3  Fixed Rent.....................................5
        3.4  Appraisal of Fair Rental Value.................9
        3.5  Additional Rent...............................11
             3.5.1  Real Estate Impositions...............12
             3.5.2  Utilities.............................15
             3.5.3  Insurance.............................15
             3.5.4  Ride Share Program....................16
        3.6  Deferred Rent Payment.........................16
        3.7  Net Lease.....................................17
        3.8  Environmental Conditions......................17
ARTICLE IV
    INSURANCE AND INDEMNITY.................................17
        4.1  Risks to be Insured...........................17
        4.2  Policy Provisions.............................19
        4.3  Delivery of Policies..........................20
        4.4  Depositary....................................20
        4.5  Indemnity.....................................21
ARTICLE V
    USE.....................................................22
        5.1  Use...........................................22
        5.2  Assignment and Subletting.....................23
        5.3  Compliance with Law...........................24
        5.4  Mechanics' Liens..............................25
ARTICLE VI
    CASUALTY AND TAKING.....................................26
        6.1  Casualty......................................26
        6.2  Notice of Taking..............................28
        6.3  Entire Taking.................................29
        6.4  Partial Taking................................29
        6.5  Award If Lease Terminates.....................31
        6.6  Taking for Temporary Use......................33
ARTICLE VII
    IMPROVEMENTS............................................34
        7.1  Construction of New Buildings.................34
        7.2  Repairs and Alterations.......................36
        7.3  Demolition, Etc...............................37
        7.4  Title to Buildings............................38

-i-

**A74**



                                                              Page

ARTICLE VIII
        NON-DISTURBANCE...........................................40
        8.1  Non-Disturbance..................................40
ARTICLE IX
        LANDLORD'S COVENANTS......................................40
        9.1  Title...........................................40
        9.2  Quiet Enjoyment.................................41
ARTICLE X
        DEFAULTS.................................................41
        10.1  Events of Default..............................41
        10.2  Termination; Repossession......................41
        10.3  Interest; Late Fees............................42
        10.4  Escrow for Real Estate Impositions and
              Insurance......................................43
        10.5  Additional Remedies............................44
        10.6  Attorneys' Fees................................44
ARTICLE XI
        LEASEHOLD MORTGAGEE'S RIGHTS.............................45
        11.1  Right to Mortgage; Notice to Leasehold
              Mortgagee......................................45
        11.2  Leasehold Mortgagee's Opportunity to Foreclose.45
        11.3  Leasehold Mortgagee's Right to New Lease.......47
        11.4  No Modification Without Leasehold Mortgagee's
              Consent........................................48
        11.5  Notice.........................................48
ARTICLE XII
        LANDLORD'S RIGHT TO PERFORM TENANT'S COVENANTS...........49
        12.1  Landlord's Right to Perform....................49
ARTICLE XIII
        LANDLORD'S RIGHT TO SELL, ASSIGN OR MORTGAGE.............50
        13.1  Right to Sell, Assign or Mortgage..............50
        13.2  Release of Liability...........................50
        13.3  Limitations on Landlord's Liability............51
        13.4  Notice to Fee Mortgagee........................51
ARTICLE XIV
        MISCELLANEOUS...........................................51
        14.1  Construction; Governing Law....................51
        14.2  No Waiver......................................51
        14.3  Headings.......................................52
        14.4  Partial Invalidity.............................52
        14.5  Bind and Inure.................................53
        14.6  Estoppel Certificate...........................53
        14.7  Notice.........................................54
        14.8  Entire Agreement; No Oral Modifications........54
        14.9  No Merger of Title.............................54
        14.10  Force Majeure.................................55
        14.11  Payment of Landlord's Costs and Expenses......55

                                                               Page

        14.12   Litigation Expenses..........................56
        14.13   Memorandum of Lease..........................56
        14.14   Performance Under Protest....................56
        14.15   Release of Memorandum of Lease...............57
        14.16   Records, Plans, Etc..........................57
ARTICLE XV
     RIDE SHARING PROGRAM...................................57
        15.1  Compliance With Ride Sharing Agreement........57

Exhibits

A    -- Description of Landlord's Land
B    -- Description of Premises
C    -- Permitted Exceptions
D    -- Memorandum of Ground Lease Indenture

**A76**

PHASE II

AMENDED AND RESTATED
GROUND LEASE INDENTURE

This Amended and Restated Ground Lease Indenture (this
"Lease") is made as of the 14th day of November, 1990, by and
between ANNE D. CAMALIER ("Landlord") and ROCK SPRING II LIMITED
PARTNERSHIP, a Maryland limited partnership ("Tenant").

RECITALS

WHEREAS, by Ground Lease Indenture dated as of November 14,
1990 (the "Original Ground Lease"), Landlord leased to Tenant and
Tenant leased from Landlord a portion of a certain parcel of land
situated in Bethesda, Maryland and more particularly described in
Exhibit A attached hereto and made a part hereof (said land and
all easements and rights to be leased therewith being herein
referred to as "Landlord's Land"), for development by Tenant as
more fully herein set forth;

WHEREAS, the portion of Landlord's Land to be leased and
developed hereunder is described in Exhibit B hereto and is
herein referred to as the Premises, as such term is further
defined in Section 1.1;

WHEREAS, Landlord has leased the remainder of Landlord's
Land (hereinafter referred to as "Phase I") to One Fernwood Asso-
ciates Limited Partnership by a separate and distinct ground
lease indenture dated September 14, 1985, as amended (the
"Phase I Lease"); and

WHEREAS, the parties desire to amend the Original Ground
Lease and to restate in its entirety the Original Ground Lease as
amended.

NOW THEREFORE, Landlord and Tenant do hereby agree as
follows:

**A77**



ARTICLE I

PREMISES

1.1 <u>Premises; Demise</u>. In consideration of the rents
and covenants herein set forth and contained, on the part of
Tenant to be paid, performed, and observed, Landlord does hereby
demise and lease unto Tenant, and Tenant does hereby lease and
take from Landlord, for the Term (as hereinafter defined), upon
and subject to the terms and provisions of this Lease, the por-
tion of the Landlord's Land situated in Bethesda, Maryland and
more particularly described in Exhibit B attached hereto and made
a part hereof, together with certain depreciable improvements
(the "Depreciable Improvements") to be constructed on the Prem-
ises (as defined below) by Landlord on or before the Half Rent
Commencement Date (as defined in Section 3.2(g)) (which Deprecia-
ble Improvements shall be subject to Tenant's prior written
approval, which shall not be unreasonably withheld or delayed,
and shall have a value of not less than twenty thousand dollars
($20,000) and not greater than fifty thousand dollars ($50,000))
and all easements, development and other rights, and appurte-
nances belonging unto Landlord's Land (said land, Depreciable
Improvements, easements, development and other rights, and appur-
tenances being hereinafter collectively referred to as the "Prem-
ises"). The Premises are also sometimes herein referred to as
Phase II. References herein to approved development for the
Premises as shown on any site plan or preliminary plan shall be
deemed to refer only to that portion of such site plan or prelim-
inary plan for Phase I and Phase II which is applicable to
Phase II.

ARTICLE II

TERM OF LEASE

2.1 <u>Term</u>. The Premises are hereby leased unto Tenant
for a term (the "Term") beginning as of the date hereof and

-2-

**A78**

ending on the day before the date which is ninety-nine (99) years after the date of this Lease, unless sooner terminated in accordance with the provisions herein contained.

ARTICLE III

RENT

3.1  <u>Annual Rent</u>.  Tenant covenants and agrees to pay throughout the Term of this Lease, by bank wire transfer of funds or in such coin or currency of the United States of America as at the time of payment shall be legal tender for the payment of public and private debts, at the address set forth in Section 14.7, or at such other place as Landlord may from time to time designate in writing, the "Annual Rent."  The "Annual Rent" shall be the Fixed Rent, the Additional Rent, and the Deferred Rent, collectively, as such terms are hereinafter defined.

3.2  <u>Definitions</u>.  As used in this Lease:

(a)  "Anniversary Month" shall mean the penultimate calendar month in the Base Lease Year, and each successive identical month of each Lease Year thereafter during the Term.

(b)  "Base Index" shall mean the Index published for September 1990.

(c)  "Base Lease Year" shall mean September 1, 1990 through August 31, 1991.

(d)  "Index" shall mean the consumer price index now known as the Consumer Price Index for Urban Wage Earners and Clerical Workers, All Items (1982-84=100), relating to Washington, D.C., Maryland, and Virginia and issued by the Bureau of Labor Statistics of the United States Department of Labor.  In the event the Index shall hereafter be converted to a different standard reference base or otherwise revised, all calculations

-3-

**A79**

herein using the Index shall be made with the use of such conver-
sion factor, formula or table for converting the revised standard
reference base index as may be published by the Bureau of Labor
Statistics or, if said Bureau shall not publish the same, then
with the use of such conversion factor, formula or table as may
be published by Prentice Hall, Inc., or, failing such publica-
tion, by any other nationally recognized publisher of similar
statistical information.  In the event no such conversion factor,
formula or table is available, Landlord and Tenant shall agree
upon a comparable replacement or successor index, and, if they
are unable to agree within ninety (90) days after the Index
ceases to be published, such matter shall be determined in
Washington, D.C. by arbitration in accordance with the Rules of
the American Arbitration Association.

(e)  "Fee Period" shall mean the period commencing
on September 1, 1990 and continuing until the Half Rent Commence-
ment Date.

(f)  "Full Rent Commencement Date" shall mean the
earlier to occur of (i) the Lease Commencement Date, as defined
in that certain Lease Agreement (the "Office Lease") dated as of
the date hereof between Tenant, as landlord, and Communications
Satellite Corporation, as tenant, or (ii) the date that is sixty
(60) days after the date set forth as the projected date for sub-
stantial completion of the improvements in the "General Con-
tract."  The "General Contract" shall mean the contract to be
executed by Tenant and its general contractor.

(g)  "Half Rent Commencement Date" shall mean the
date on which Tenant obtains a permit from the appropriate Mont-
gomery County authorities enabling Tenant to commence excavation
on the Premises.

-4-

**A80**



(h)  "Leasehold Mortgagee" shall mean the mortgagee under any leasehold mortgage of first priority or the beneficiary of any leasehold deed of trust of first priority upon Tenant's leasehold estate hereunder.

(i)  "Lease Year" shall mean each successive twelve (12) calendar month period following the Base Lease Year or any Subsequent Base Lease Year, whichever is applicable, except that the Lease Year immediately prior to the initial Subsequent Base Lease Year shall terminate on the day before the first day of the initial Subsequent Base Lease Year and the last Lease Year shall terminate on the date on which this Lease terminates.

(j)  "Percentage Increase" shall mean the percentage increase of the Index published for the Anniversary Month in the relevant Lease Year over the Base Index.

(k)  "Subsequent Base Lease Year" shall mean (i) the twelve (12) calendar month period commencing on the first to occur of (x) the first day of the month in which occurs the tenth anniversary of the issuance of the first certificate of occupancy or non-residential use permit for the improvements to be constructed pursuant to Section 7.1, or (y) September 1, 2002; and (ii) each twelve (12) calendar month period commencing on the first day of each tenth anniversary of the initial Subsequent Base Lease Year.

3.3  <u>Fixed Rent</u>.  Tenant covenants and agrees to pay to Landlord, in advance on the first day of each calendar month, without offset, in equal monthly installments, "Fixed Rent," at the following annual rates:

(a)  The Fixed Rent for each of the Base Lease Year and the first Lease Year thereafter shall be the sum of

-5-

**A81**

(i) Three Dollars and 50/100 ($3.50) per square foot of rentable area in the initial improvements to be constructed pursuant to Section 7.1, and (ii) ten percent (10%) of the initial cost of constructing the Depreciable Improvements, provided that in no event shall this element of the Fixed Rent exceed in the aggregate the total initial cost of constructing the Depreciable Improvements. The rentable area shall be determined as provided in Section 3.3(e). Commencing with the Lease Year commencing on September 1, 1992 and for each Lease Year thereafter, until the initial Subsequent Base Lease Year, the Fixed Rent shall equal one hundred three percent (103%) of the Fixed Rent payable in the immediately preceding Lease Year. If the last Lease Year prior to the initial Subsequent Base Lease Year is less than 365 days, the Fixed Rent for such Lease Year shall be prorated by multiplying the Fixed Rent for such Lease Year by a fraction, the numerator of which is the number of days in such Lease Year and the denominator of which is 365.

(b) The Fixed Rent for the initial Subsequent Base Lease Year shall be the greater of (i) one hundred three percent (103%) of the Fixed Rent for the Lease Year immediately preceding the initial Subsequent Base Lease Year, provided that if such Lease Year is less than 365 days, for purposes of this clause (i) such Lease Year shall be deemed to contain 365 days; or (ii) the then current Fair Rental Value (as hereinafter defined) of the Premises. The Fixed Rent shall be readjusted and redetermined for each Subsequent Base Lease Year thereafter so that the Fixed Rent for each Subsequent Base Lease Year shall be the greater of (x) one hundred three percent (103%) of the Fixed Rent for the Lease Year immediately preceding such readjustment; or (y) the then current Fair Rental Value of the Premises. If the then current Fair Rental Value of the Premises has not been determined as of the first day of any Subsequent Base Lease Year, the Fixed Rent for such Subsequent Base Lease Year shall be paid

-6-

**A82**

at the rate of one hundred three percent (103%) of the Fixed Rent for the immediately preceding Lease Year until such time as the Fair Rental Value has been determined. Thereafter, if the Fair Rental Value is greater than the amount of Fixed Rent then being paid, the Fixed Rent shall be increased to equal the Fair Rental Value retroactively to the first day of such Subsequent Base Lease Year and Tenant shall deliver to Landlord, with its next monthly rental payment, the difference between the amount previously delivered to Landlord with respect to such Subsequent Base Lease Year and the amount of Tenant's actual liability for such period. For each Lease Year after a Subsequent Base Lease Year (until the next Subsequent Base Lease Year), the Fixed Rent shall equal one hundred three percent (103%) of the Fixed Rent payable in the immediately preceding Lease Year. If the Lease Year in which this Lease terminates is less than 365 days, the Fixed Rent for such Lease Year shall be prorated by multiplying the Fixed Rent for such Lease Year by a fraction, the numerator of which is the number of days in such Lease Year and the denominator of which is 365.

(c) Notwithstanding the foregoing provisions of this Section 3.3, no Fixed Rent shall be payable during the Fee Period. Instead, during the Fee Period Tenant shall pay to Landlord a fee at the annual rate of Seventy-Five Thousand Dollars ($75,000). The fee shall be payable in advance in equal monthly installments. Concurrently with the execution of this Lease, Tenant shall pay to Landlord the accrued amount due to Landlord from the first day of the Fee Period until such date of execution, together with the first monthly installment of Six Thousand Two Hundred Fifty Dollars ($6,250). The fee for any partial month shall be prorated based on the number of days in such month.

-7-

**A83**



(d)  Notwithstanding Section 3.3(a), commencing on
the Half Rent Commencement Date and continuing until the Full
Rent Commencement Date, fifty percent (50%) of the Fixed Rent
that would otherwise be payable pursuant to Section 3.3(a) above
shall be deferred.  The fifty percent (50%) of Fixed Rent not
paid during such period is hereinafter referred to as the
"Deferred Rent" and shall be paid pursuant to Section 3.6.

(e)  For purposes of calculating the Fixed Rent,
the rentable area shall be assumed initially to be one hundred
seventy-seven thousand (177,000) square feet.  After the improve-
ments to be constructed pursuant to Section 7.1 are completed,
the precise number of square feet of rentable area in such
improvements shall be determined in accordance with the
Washington, D.C. Association of Realtors Standard Method of Mea-
surement dated January 1, 1989 by an architect selected by Land-
lord and approved by Tenant.  Thereafter, if the precise measure-
ment is more or less than 177,000 square feet of rentable area,
the Fixed Rent for the Base Lease Year and all Lease Years there-
after shall be recalculated using such precise measurement and
shall be adjusted up or down, as appropriate.  If the amount of
Fixed Rent paid by Tenant prior to the date of such adjustment is
greater than Tenant's actual liability, Tenant shall deduct the
net overpayment from its next monthly rental payment.  If the
amount of Fixed Rent paid by Tenant prior to the date of such
adjustment is less than Tenant's actual liability, Tenant shall
pay the net amount of such deficiency to Landlord with its next
monthly rental payment.  Notwithstanding anything herein con-
tained to the contrary, in no event shall Fixed Rent be less than
$595,000.00.

(f)  Notwithstanding Section 2.1, this Ground
Lease shall automatically terminate upon written notice to Tenant
by American Security Bank, N.A., its successors or assigns

("ASB"), if (i) (a) the Half Rent Commencement Date has not occurred by March 31, 1993, and (b) ASB has succeeded to Landlord's interest hereunder as a result of foreclosure under the Fee Mortgage as hereinafter defined in Section 5.2(a) or a deed in lieu thereof, or (ii) ASB succeeds to Landlord's interest in such manner after March 31, 1993 and the Half Rent Commencement Date has not yet occurred, unless promptly thereafter Tenant agrees to pay and in fact pays Rent, as if such Half Rent Commencement Date had occurred as of the later of March 31, 1993 or the date ASB so succeeds Landlord's interest.

3.4  Appraisal of Fair Rental Value.  (a)  "Fair Rental Value" shall be determined as follows:  On or before the one hundred twentieth (120th) day prior to the first day of a Subsequent Base Lease Year, Landlord shall notify Tenant in writing of its determination of the Fair Rental Value for the Premises for the Subsequent Base Lease Year.  If Landlord fails to notify Tenant of its determination of the Fair Rental Value by the date set forth in the preceding sentence, Tenant shall request in writing that Landlord provide Tenant with Landlord's determination of Fair Rental Value.  If Tenant fails to so notify Landlord, then, commencing on the first day of the applicable Subsequent Base Lease Year, Tenant shall pay Fixed Rent equal to one hundred three percent (103%) of the Fixed Rent payable in the immediately preceding Lease Year, subject to adjustment retroactively at the time Fair Rental Value is determined.  If Landlord has not done so previously, Landlord shall notify Tenant of its determination of Fair Rental Value within thirty (30) days after receipt of a request from Tenant.  If Tenant does not agree with Landlord's determination, Tenant shall so notify Landlord in writing within thirty (30) days after receipt of Landlord's notice.  If Tenant does not notify Landlord that Tenant disagrees with Landlord's determination of Fair Rental Value, the Fair Rental Value shall be the amount set forth in Landlord's notice.  If Tenant timely

-9-

**A85**

notifies Landlord that Tenant disagrees with Landlord's determi-
nation, then Tenant and Landlord shall commence negotiations con-
cerning the Fair Rental Value for the Premises for such Subse-
quent Base Lease Year.  The parties shall have thirty (30) days
after the date on which Landlord receives Tenant's notice of dis-
agreement in which to agree on such Fair Rental Value for such
Subsequent Base Lease Year.  If, during such negotiation period,
the parties do not agree in writing on such Fair Rental Value,
Landlord and Tenant shall each designate in writing, within seven
(7) days after the expiration of the aforementioned thirty (30)
day period, a real estate broker or an MAI appraiser (collec-
tively, an "appraiser") experienced in the appraisal of commer-
cial real estate in the Metropolitan Washington, D.C. area, for
purposes of determining Fair Rental Value.  Within fifteen (15)
days after the designation of the appraisers, the two appraisers
so designated shall designate a third appraiser of the same qual-
ifications.  The appraisers so designated shall, within thirty
(30) days after the date the third appraiser is designated,
determine the then current Fair Rental Value of the Premises in
accordance with Section 3.4(b).  If the three appraisers are
unable to agree upon the Fair Rental Value, then the Fair Rental
Value shall be the average of the closer appraisals.  Each
appraiser shall give written notice to the parties stating his
determination, and shall furnish to each party a copy of such
determination signed by him. The determination of such apprais-
ers shall be final and binding upon the parties and a final judg-
ment thereon may be entered in a court of competent jurisdiction
on the petition of either party.  If either party, or the two
appraisers designated by the parties, fail to timely designate an
appraiser (or a replacement appraiser pursuant to the next sen-
tence), then either party may apply to a court of competent
jurisdiction to make such designation.  In the event of the fail-
ure, refusal or inability of any appraiser to act, a new
appraiser with the qualifications described above shall be

-10-

**A86**

appointed promptly in his stead. The party who designated the
appraiser so failing, refusing or unable to act shall designate
the replacement appraiser, or, if the appraiser failing, refusing
or unable to act was the appraiser designated jointly by the par-
ties' appraisers, the parties' appraisers shall jointly designate
the replacement appraiser. Landlord and Tenant shall each bear
the cost of its appraiser and shall share equally the cost of the
third appraiser. If the appraisers shall fail to make the deter-
mination herein provided, then either party shall have the right
to institute such action or proceeding in such court as shall be
appropriate in the circumstances and Landlord and Tenant shall
share equally the cost of such action.

      (b)   In determining the Fair Rental Value of the
Premises, the appraisers shall evaluate the Premises as if the
Premises were (i) vacant; (ii) unimproved; (iii) unencumbered by
any mortgages or leases of any kind; and (iv) immediately avail-
able (which shall be deemed to mean that all necessary infra-
structure improvements are available) for use and/or development
for its highest and best use in accordance with then existing
governmental regulations. Notwithstanding the preceding sen-
tence, in determining the Fair Rental Value of the Premises for
the first two (2) Subsequent Base Lease Years only, the standard
in clause (iv) of the preceding sentence shall not be applied.
Instead, the appraisers shall evaluate the Premises as if they
were immediately available for use and/or development (as such
phrase is qualified above) with a building of approximately the
same density and use as the building to be constructed on the
Premises pursuant to Section 7.1.

      3.5   Additional Rent.  In order that the Fixed Rent
shall be absolutely net to Landlord, Tenant covenants and agrees
to pay, commencing as of September 1, 1990 as additional rent
(hereinafter referred to as "Additional Rent"), all sums, costs,

-11-

**A87**

expenses, and other payments which Tenant in any of the provisions of this Lease assumes or agrees to pay or discharge, including, without limitation, taxes, betterment assessments, utilities charges, insurance premiums, and ride share costs with respect to the Premises, as set forth below in this Section 3.5, the amount of all of which items shall be prorated for any partial Lease Years. Promptly after receipt of an invoice from Landlord, Tenant shall pay to Landlord all Additional Rent that accrued from September 1, 1990 until the date of this Lease.

### 3.5.1  Real Estate Impositions.

(a)  Tenant shall pay, directly to the authority charged with the collection thereof, all taxes (whether general or special, ordinary or extraordinary, foreseen or unforeseen, of every character, including all interest and penalties thereon) and each installment of all public, special or betterment assessments and charges, vault space rents, gross receipts taxes (which are in the nature of or in substitution for real estate taxes), excise taxes or imposts, surcharges, municipal liens, levies, license and permit fees, and other governmental charges (whether general or special, ordinary or extraordinary, foreseen or unforeseen, of every character, including all interest and penalties thereon) levied or assessed by or becoming payable to the municipality or any governmental authority having jurisdiction over the Premises, for or in respect of the Premises (such taxes and installments of assessments being hereinafter together referred to as "Real Estate Impositions") for each tax or installment period wholly included in the Term, all such payments to be made not less than five (5) days prior to the last date on which the same may be paid without interest or penalty (subject to Section 3.5.1(b) below). For any Real Estate Imposition relating to any fraction of a tax or installment period included in the Term at the beginning or end thereof, Tenant

-12-

**A88**

shall pay to Landlord, within ten (10) days after receipt of
invoice therefor, the fraction of such taxes or installment which
is allocable to such included period; provided, in the case of
each respective assessment Landlord shall elect to pay such
assessment in installments over the longest period permitted by
law, or ten (10) years, if less.

(b)  If, by law, any Real Estate Imposition,
at the option of the taxpayer, may be paid in installments
(whether or not interest shall accrue on the unpaid balance of
such Real Estate Imposition), Tenant may exercise the option to
pay the same (and any accrued interest on the unpaid balance of
such Real Estate Imposition) in installments and, in such event,
shall pay such installments as may become due during the Term as
the same respectively become due.

(c)  Tenant shall, promptly after payment of
a Real Estate Imposition, furnish Landlord reasonable evidence of
such payment.  If Tenant shall deem itself aggrieved by any Real
Estate Imposition and shall elect to contest the payment thereof,
Tenant may make such payment under protest or, if postponement of
such payment will not jeopardize Landlord's title to the Prem-
ises, Tenant may postpone the same provided that it shall secure
such payment and the interest and penalties thereon and the costs
of the contest on the determination of the proceedings or suit in
which such contest may be had, by causing to be delivered to
Landlord cash or other security reasonably satisfactory to Land-
lord, or a bond of indemnity of a good and solvent surety com-
pany, in form and amount reasonably satisfactory to Landlord.
Either party paying any Real Estate Imposition shall be entitled
to recover, receive, and retain for its own benefit all abate-
ments and refunds of such Real Estate Imposition, unless it has
previously been reimbursed by the other party.  Tenant agrees to
save Landlord harmless from all costs and expenses incurred on

-13-

**A89**

account of Tenant's participation in such proceedings. Landlord, without obligating itself to incur any costs or expenses in connection with such proceedings, shall cooperate with Tenant with respect to such proceedings so far as reasonably necessary. Neither party shall discontinue any abatement proceedings begun by it without first giving the other party written notice of its intent so to do and reasonable opportunity to be substituted in such proceedings. If, pursuant to the preceding sentence, Landlord is substituted in a proceeding begun by Tenant, Landlord must continue such proceeding at its own expense and, if any Real Estate Imposition is increased as a result of continuing such proceeding, Landlord shall be solely responsible for such increase. Subject to the preceding sentence, upon the termination of any such proceedings, (i) Tenant shall pay the amount of any such Real Estate Imposition or part thereof as is finally determined in such proceedings, the payment of which, pursuant to the foregoing provisions of this Section 3.1.5(c), shall have been deferred during the prosecution of such proceedings, together with all costs, fees, interest, penalties or other liabilities in connection therewith, and (ii) any security delivered pursuant to this Section 3.1.5(c) shall be released following payment as required in clause (i).

(d)    Landlord shall promptly furnish to Tenant a copy of any notice of any Real Estate Imposition received by Landlord, but Tenant's nonreceipt thereof shall not excuse Tenant from the timely payment of any Real Estate Imposition which Tenant is obligated to pay hereunder or otherwise relieve Tenant of Tenant's liabilities and duties hereunder. Tenant, with Landlord's cooperation to the extent necessary, shall make suitable arrangements with the taxing authorities for the mailing or sending of bills and notices directly to Tenant.

-14-

**A90**

(e)  Nothing contained in this Lease shall, however, require Tenant to pay any franchise, corporate, estate, inheritance, succession, capital levy, or transfer tax on Landlord's transfer of its interest in the Premises subsequent to the recording hereof, or any net income tax upon the rent payable by Tenant under this Lease.  Tenant shall, however, pay all recording fees arising out of the recording of this Lease and transfer taxes on Landlord's transfer of its interest in the Premises by reason of the execution and delivery of this Lease.  Notwithstanding the first sentence of this Section 3.5.1(e), if, subsequent to the date hereof, any other taxes or governmental charges shall be levied or assessed against the building and/or the Land or imposed on Landlord, which are in the nature of or in substitution for real estate taxes, including any tax levied on or measured by the rents payable by Tenant or any sub-tenants, or if Landlord shall be required to pay any such additional tax with respect to Landlord's ownership of the Premises, the execution and delivery of this Lease, the use and enjoyment of the Premises, or the receipt or accrual of any Annual Rent payable to Landlord under this Lease, Landlord shall notify Tenant and the same shall be deemed to be a Real Estate Imposition payable by Tenant under this Lease.

3.5.2  _Utilities_.  Tenant shall pay or cause to be paid all charges, prorated for partial periods at the beginning and end of the Term, for water, gas, sewer, electricity, light, heat or power, telephone or other service used, rendered or supplied to Tenant in connection with the Premises, and shall not contract for the same in Landlord's name.

3.5.3  _Insurance_.  Tenant shall pay or cause to be paid all premiums, prorated for partial periods at the beginning and end of the Term, for insurance required pursuant to Article IV hereof.

-15-

**A91**



3.5.4  <u>Ride Share Program</u>.  Tenant shall pay all costs incurred in connection with the Davis Tract Ride Sharing Program (as defined in Section 15.1), prorated for partial periods at the beginning and end of the Term, as required pursuant to Article XV.

3.6  <u>Deferred Rent Payment</u>.  Tenant covenants and agrees to pay to Landlord the Deferred Rent, without interest, as follows:

(a)  Tenant shall pay to Landlord any positive difference (up to the total amount of the Deferred Rent) between (i) $30,556,000 plus any amounts that the tenant under the Office Lease expends in connection with the construction of the improvements to be constructed pursuant to Section 7.1 (through substantial completion), and (ii) the actual costs incurred in connection with the construction of the improvements, including the base building improvements, tenant improvements, and all other project related costs incurred through substantial completion. Tenant shall pay to Landlord such amount no later than twenty (20) days after substantial completion.  For purposes of this subsection, substantial completion shall have the meaning ascribed to such term in the General Contract.

(b)  To the extent that Landlord does not receive the total amount of the Deferred Rent pursuant to subsection (a), then, notwithstanding anything in the Agreement of Limited Partnership of Tenant (the "Partnership Agreement") to the contrary, whenever Tenant has any Net Cash Flow or Capital Proceeds (as defined in the Partnership Agreement) available for distribution, Tenant shall immediately pay to Landlord all such amounts until Landlord has received the total amount of the Deferred Rent. Tenant shall not make any distributions of Net Cash Flow or Capital Proceeds to the partners of Tenant until Landlord has received all Deferred Rent.

-16-

3.7 <u>Net Lease</u>. This is an absolutely net lease and Landlord shall not be required to provide any services or do any act or thing with respect to the Premises, or the buildings and improvements thereon, or the appurtenances thereto, except as may be specifically provided herein, and the rent reserved herein and any other sums payable hereunder shall be paid to Landlord without any claim on the part of Tenant for diminution, set-off or abatement, and nothing shall suspend, abate or reduce any rent or other sums to be paid hereunder, except as otherwise specifically provided in this Lease.

3.8 <u>Environmental Conditions</u>. Notwithstanding anything herein to the contrary, promptly after receipt of invoices detailing the expenses incurred, Landlord shall reimburse Tenant for the first fifty thousand dollars ($50,000.00) of expenses incurred by Tenant in connection with the construction of the initial improvements to be constructed by Tenant pursuant to Section 7.1 (or site work (e.g., excavation) in connection with such construction) to remediate any environmental conditions (but only if and to the extent such expenses would not have been incurred if such conditions had not existed).

ARTICLE IV

<u>INSURANCE AND INDEMNITY</u>

4.1 <u>Risks to be Insured</u>. At all times during the Term, Tenant shall, at Tenant's cost and expense: (a) effect and maintain all risk property insurance for all buildings which may hereafter be erected on the Premises, in the name of Landlord and Tenant, as their interests may appear, insuring against any loss or damage by fire, lightning, windstorm, hail, explosion, riot, civil commotion, smoke, hurricane, and tornado, and damage from aircraft and vehicles, and such other risks as Landlord may reasonably designate, to the extent insurance against such risks is available in Montgomery County, Maryland under an extended

-17-

**A93**

coverage endorsement, in an amount representing not less than one
hundred percent (100%) of the full insurable value (the term
"full insurable value" shall mean the actual replacement cost
(excluding foundation and excavation cost and cost of underground
flues, pipes, and drains) of any improvements on the Premises, as
such replacement cost may be reasonably estimated by Landlord)
without co-insurance, and against war risks, as, when and so long
as insurance against such risks is reasonably obtainable from the
United States of America or an agency thereof, in an amount rep-
resenting not less than one hundred percent (100%) of the full
insurable value; (b) effect and maintain boiler and machinery
equipment insurance, if the same shall be appropriate, in an
amount reasonably designated by Landlord; (c) effect and maintain
comprehensive general liability insurance, including property
damage, on the Premises for the benefit of Landlord and Tenant,
as their interests may appear, and covering any liability (sub-
ject to ordinarily accepted exclusions) that Landlord may have
with respect to the Property for injury to persons or property,
on an "occurrence" basis with a limit of not less than Three Mil-
lion Dollars ($3,000,000) per occurrence; (d) effect and maintain
insurance protecting Landlord against abatement or loss of rent
in an amount equal to at least all the Fixed Rent and the Addi-
tional Rent payable for one (1) year under Article III hereof;
(e) during the construction required pursuant to Section 7.1, and
thereafter in the event of any demolition, construction, restora-
tion, alterations or changes in the Premises that may be made by
Tenant in excess of Five Hundred Thousand Dollars ($500,000) per
job, provide and keep in force for the benefit of Landlord and
Tenant, as their interests may appear, liability and all-risk
builder's risk insurance, written on a completed value basis, for
an amount not less than one hundred percent (100%) of the insur-
able value of any improvements being constructed; (f) effect and
maintain workers' compensation insurance providing benefits for
all persons employed by Tenant at or in connection with the

-18-

**A94**

Premises; and (g) effect and maintain such other insurance as
Landlord may reasonably require insuring against such additional
hazards, risks, contingencies, and perils as are commonly insured
against by Landlord and other office building owners in Rock
Spring Park.  The form and content of each policy required pursu-
ant to this Section 4.1 shall be reasonably satisfactory to Land-
lord and shall be generally in accordance with what is customary
for similar properties located in Montgomery County, Maryland.
The limits of insurance set forth above in this Section 4.1 shall
be subject to increase from time to time, but not more often than
once in any two year period, to amounts reasonably determined by
Landlord to reflect the amounts of coverage then being obtained
to protect owners of similar buildings in Rock Spring Park.

     4.2   Policy Provisions.  All insurance policies
required to be maintained by Tenant pursuant to Section 4.1 shall
be issued by insurance companies of recognized responsibility
that are qualified to do business in Maryland and reasonably
acceptable to Landlord and shall:  (a) name Landlord, any mort-
gagee of Landlord's fee interest, Tenant, and Leasehold Mortgagee
as additional insureds, as their respective interests may appear,
and shall include an effective waiver by the issuer of all rights
of subrogation against any insured or such insured's interest in
the Premises or any income derived therefrom; (b) provide that
all claims for losses shall be adjusted by Tenant, subject to the
reasonable approval of Landlord and Leasehold Mortgagee; (c) pro-
vide that, except in the case of public liability insurance,
insurance proceeds in amounts exceeding Five Hundred Thousand
Dollars ($500,000) shall be payable to Depositary (as hereinafter
defined) to be held and disbursed as set forth in Section 6.1
hereof for the benefit of Landlord, Tenant, and Leasehold Mort-
gagee; (d) provide that any losses shall be payable notwithstand-
ing any act or failure to act or negligence of Landlord or Tenant
or any other person; and (e) provide that no cancellation,

-19-

**A95**

reduction in amount or a material change in coverage thereof with respect to the Premises shall be effective until at least thirty (30) days after receipt by Landlord, Tenant, and Leasehold Mortgagee of written notice thereof.

4.3  Delivery of Policies.

(a)  Upon the execution of this Lease and thereafter not less than sixty (60) days prior to the expiration date of any policy delivered pursuant to this Article IV, Tenant shall deliver to Landlord a copy of any policy or renewal policy, as the case may be, required by this Lease, and an original certificate thereof bearing notations evidencing the payment of premiums due thereon.

(b)  Landlord shall not be limited in the proof of any damages which Landlord may claim against Tenant arising out of or by reason of Tenant's failure to provide and keep in force general liability policies as aforesaid to the amount of the insurance premium or premiums not paid or incurred by Tenant which would have been payable upon such insurance, but shall also be entitled to recover, as damages for such breach, the uninsured amount of any loss, liability, damages, claims, costs and expenses of suit, judgments and interest, suffered or incurred by Landlord by reason of any occurrence on the Premises which was not insured because of Tenant's failure to comply with the insurance requirements hereunder.  Tenant shall not violate or permit to be violated any condition of any of said policies, and Tenant shall so perform and satisfy the requirements of the companies writing such policies.

4.4  Depositary.  As used in this Lease, "Depositary" shall be Leasehold Mortgagee, if any, or if there is no Leasehold Mortgagee, a bank or trust company designated by Tenant and reasonably acceptable to Landlord, and having its principal office

-20-

**A96**

in the Washington, D.C. area. Depositary shall be entitled to
rely upon any certificate believed by it to be genuine and to
have been signed by the proper party as conclusive evidence of
any fact or as to any matter therein set forth. Such certificate
shall be a full warrant, authority, and protection to Depositary
in acting thereon.

4.5 <u>Indemnity</u>. Tenant shall indemnify and save harm-
less Landlord from and against any and all liability, loss, dam-
ages, expenses, costs of action, suits, interest, fines, penal-
ties, claims, and judgments (to the extent that the same are not
paid out of the proceeds of any policies of insurance furnished
by Tenant to Landlord pursuant to Article IV hereof) arising from
any occurrence during the Term involving person or property of
any and every nature, and from any matter or thing, growing out
of the occupation, possession, use, management, improvement, con-
struction, alteration, repair, maintenance or control of the
Premises, the buildings and improvements hereafter located
thereon, the facilities and equipment therein, the sidewalks,
vaults, vault spaces, curbs, and gutters adjoining the Premises,
the appurtenances thereto or the franchises and privileges con-
nected therewith, or arising out of Tenant's failure to perform,
fully and promptly, or Tenant's postponement of compliance with,
each and every term, covenant, condition and agreement herein
provided to be performed by Tenant. Tenant, at Tenant's cost and
expense, shall defend by counsel reasonably acceptable to Land-
lord (provided that if the matter is covered by insurance and
Tenant's insurance carrier selects counsel, Landlord shall accept
such counsel) any and all suits that may be brought, and claims
which may be made, against Landlord, or in which Landlord may be
impleaded with others, whether Landlord shall be liable or not,
upon any liabilities, losses, damages, expenses, costs of action,
suits, interest, fines, penalties, claims, and judgments and
shall satisfy, pay, and discharge any and all judgments that may

-21-

**A97**



be imposed against Landlord in any such action or actions in which Landlord may be a party defendant, or that may be filed against the Premises, the buildings and improvements thereon or the appurtenances thereto, or any interest therein, and in the event of the failure of Tenant, within fifteen (15) days after notice from Landlord, to pay the sum or sums for which Tenant shall become liable as aforesaid, then Landlord may pay such sum or sums, with all interest and charges which may have accrued thereon, and the amount so paid by Landlord shall be payable by Tenant to Landlord upon demand; provided, however, that Tenant shall not be liable to Landlord if the loss or damage was caused by the negligent acts or omissions of Landlord, its agents or employees. Notwithstanding the preceding sentence, if within fifteen (15) days after receipt of Landlord's notice, Tenant notifies Landlord that Tenant is continuing in good faith to defend the action through an appeal or other appropriate legal process, then Landlord shall not be entitled to reimbursement for any sum or sums Landlord pays unless Landlord reasonably believes that the payment of such amount is necessary to preserve the Premises or Landlord's interest therein. In addition, Landlord shall not negotiate any settlement of any suit or claim during the pendency of Tenant's defense thereof without providing Tenant with fifteen (15) days' prior written notice and an opportunity to participate in such negotiations and settlement.

ARTICLE V

USE; ASSIGNMENT

5.1 <u>Use</u>. Except as otherwise provided in Article VII below, Tenant shall have the right to use the Premises or any part thereof for any and all lawful purposes, to build and rebuild thereupon, to erect such building or buildings on the Premises as it may elect, and to make such alterations, improve- ments, and betterments to the Premises as it may desire.

-22-

**A98**

5.2  <u>Assignment and Subletting</u>.

(a)  Tenant may assign this Lease and may mortgage
its leasehold estate.  Notwithstanding the foregoing and the pro-
visions of Section 13.1 below, so long as the lien of that cer-
tain Deed of Trust (the "Fee Mortgage") from Anne D. Camalier to
Junuis S. Morgan and Joseph B. Tockarshewsky, Trustees for the
benefit of American Security Bank, N.A. ("ASB") dated October 27,
1989 and recorded among the land records of the Circuit Court for
Montgomery County, Maryland, in Liber 9055 folio 084 remains
unreleased of record, Tenant may not assign this Lease in a man-
ner which would release Tenant from liability hereunder prior to
the substantial completion of the office building described in
Section 7.1 below; provided, however, upon completion of said
office building and for the first five years thereafter, Tenant
may assign this Lease without ASB's consent provided the Office
Lease remains in full force and effect and provided that the
tenant under the Office Lease (or a "successor corporation" to
the tenant as defined in Section 7.1(b) of the Office Lease)
remains liable thereunder for the tenant's obligation under the
Office Lease.  Thereafter Tenant may assign this Lease without
ASB's consent.  ASB's consent shall not be required for any
assignment of this Lease following foreclosure or a deed in lieu
under any Leasehold Mortgage.

(b)  Tenant shall have the right, without Land-
lord's consent (except as set forth below in this subsection), to
sublease the Premises, or any part thereof.  At Landlord's
request, Tenant shall deliver to Landlord notice of such subleas-
ing and an executed counterpart of the sublease agreement.  All
subleases shall be in writing and shall provide that (i) they are
subject and subordinate to this Lease, (ii) the subtenants will
not pay rent or other sums under the sublease for more than one
(1) month in advance, and (iii) at Landlord's option, on the

-23-

**A99**

termination of this Lease, the subtenants will attorn to, or
enter into a direct sublease on identical terms with, Landlord
for the balance of the unexpired term of the sublease.  Notwith-
standing the first sentence of this subsection (b), without Land-
lord's prior written consent, Tenant shall not sublease the Prem-
ises for a term that extends beyond the Term and, in the last ten
(10) Lease Years of the Term, Tenant shall not sublease the Prem-
ises, or any part thereof, without Landlord's prior written con-
sent, which shall not be unreasonably withheld.  Landlord agrees,
subject to the conditions set forth in Section 8.1, to enter into
non-disturbance agreements with subtenants.  Landlord hereby spe-
cifically consents to the Office Lease.

    5.3  <u>Compliance with Law</u>.  Tenant shall at all times
during the Term, at Tenant's cost and expense, perform and comply
with all laws, rules, orders, ordinances, regulations, and
requirements now or hereafter enacted or promulgated, of any gov-
ernmental agency or authority having jurisdiction over the Prem-
ises, or the buildings and improvements hereafter located
thereon, or the facilities or equipment therein, or the streets,
sidewalks, vaults and vault spaces, if any, curbs, and gutters
adjoining the Premises or the appurtenances thereto, or the fran-
chises and privileges connected therewith, whether or not such
laws, rules, orders, ordinances, regulations or requirements so
involved shall necessitate structural changes, improvements,
interference with use and enjoyment of the Premises, replacements
or repairs, extraordinary as well as ordinary, and Tenant shall
so perform and comply, whether or not such laws, rules, orders,
ordinances, regulations or requirements shall now exist or shall
hereafter be enacted or promulgated, and whether or not such
laws, rules, orders, ordinances, regulations or requirements can
be said to be within the present contemplation of the parties
hereto.  Notwithstanding the foregoing, Tenant, at Tenant's

-24-

**A100**

expense, after prior written notice to Landlord, may contest, by appropriate legal proceedings conducted in good faith and with due diligence, the application to Tenant or the Premises of any laws, rules, orders, ordinances, regulations or requirements, provided that (i) neither the Premises nor any part thereof would be in danger of being forfeited or lost, and (ii) Tenant shall have furnished such security as Landlord may reasonably require. Landlord shall, at Tenant's reasonable request and at Tenant's expense, cooperate with Tenant with respect to any contest pursuant to the preceding sentence.

5.4 <u>Mechanics' Liens</u>.

(a) Notice is hereby given that Landlord shall not be liable for any work performed or to be performed on the Premises, for Tenant or any subtenant, or for any materials furnished or to be furnished at the Premises for Tenant or any subtenant, and that no mechanic's or other lien for such work or materials shall attach to the reversionary or other interest of Landlord. If, in connection with any work being performed by Tenant or any subtenant, or in connection with any materials being furnished to Tenant or any subtenant, any mechanic's lien or other lien or charge shall be filed or made against the Premises or any part thereof, or if any such lien or charge shall be filed or made against Landlord as owner, then Tenant, at Tenant's cost and expense, within sixty (60) days after such lien or charge shall have been filed or made, shall cause the same to be cancelled and discharged of record by payment thereof or filing of a bond or otherwise, and shall also defend, at Tenant's cost and expense, any action, suit or proceeding which may be brought for the enforcement of such lien or charge, and shall pay any damages, costs, and expenses (including reasonable attorneys' fees) suffered or incurred therein by Landlord, and shall satisfy and discharge any judgment entered therein.

-25-



(b)  Notwithstanding the foregoing, Tenant, at its expense, may contest, after prior written notice to Landlord, by appropriate legal proceedings conducted in good faith and with due diligence, the amount or validity or application, in whole or in part, of any mechanics' lien or other charge of the nature referred to above, provided that (i) neither the Premises nor any part thereof would be in any danger of being forfeited or lost, and (ii) Tenant shall have furnished such security as Landlord may reasonably require.

(c)  Tenant shall not commence any work on the Premises the cost of which exceeds Five Hundred Thousand Dollars ($500,000), except the initial development and construction of improvements pursuant to Article VII and thereafter work required by fire or other casualty, which could give rise to a mechanic's lien without giving Landlord at least thirty (30) days' prior written notice so that Landlord may file, at Landlord's expense, notice of non-responsibility for such work under any applicable statute.  For every Lease Year following the first Lease Year, the aforesaid Five Hundred Thousand Dollars ($500,000) limit upon the cost of work which may be performed by Tenant without notice to Landlord shall be increased by the Percentage Increase in the Index for the relevant Lease Year over the Base Index.

ARTICLE VI

CASUALTY AND TAKING

6.1  Casualty.

(a)  If any buildings from time to time con-structed on the Premises are damaged or destroyed by fire or other casualty, this Lease shall in no way be affected and shall continue in full force and effect, provided that if during the last nine (9) years of the Term there is a total destruction of a building or such substantial damage to the Premises, that in the

-26-

**A102**

exercise of good faith Tenant determines that restoration is not economically feasible, Tenant may by written notice given to Landlord within ninety (90) days after the date of such destruction or damage terminate this Lease.

(b)  All money paid under policies of insurance referred to in Article IV of this Lease and delivered to Depositary pursuant to Section 4.2(c) shall be held by Depositary and such money, together with any and all interest thereon, shall be disposed of as follows:

(i)  If this Lease is not terminated, Tenant shall restore, or cause the restoration of, all buildings then existing on the Premises, and:

(A)  The Depositary shall pay to Tenant from such moneys such part thereof as shall equal the cost to Tenant of restoring any existing buildings, or any part thereof, or of erecting a new building.

(B)  Payments pursuant to subdivision (A) of this subparagraph (i) shall be made to Tenant from time to time as the work progresses, in amounts equal to ninety percent (90%) of the cost of the labor and materials used in connection with such work, plus builders', architects', and engineers' fees and other charges incurred in connection therewith, upon delivery to Depositary, with a copy to Landlord, of lien waivers from all mechanics and materialmen who performed work, waiving any liens to the date of the previous draw request, and a certificate of Tenant, stating:  (I) the amounts so to be paid to Tenant are properly payable hereunder, (II) such amounts are then due and payable by Tenant or have theretofore been paid by Tenant, (III) no part of such cost has previously been made the basis of any request for the withdrawal of insurance proceeds under this Article VI, (IV) the amount previously disbursed and applied to the

-27-

**A103**

cost of the restoration, and (V) that the amount required to complete such restoration is less than or equal to ninety percent (90%) of the amount which will be held by Depositary after such disbursement. If the amount then held is not sufficient to complete such restoration, Depositary shall not be obligated to disburse any payment to Tenant until Tenant has deposited such insufficiency with Depositary. All such work undertaken by Tenant shall be completed by Tenant free of all liens. After the completion of such restoration any proceeds remaining after the making of the payments to Tenant referred to in this subparagraph (B) shall be disbursed to Tenant, provided that Tenant has first delivered to Depositary, with copies to Landlord, a certificate of completion from Tenant's architect or engineer and final lien waivers from all mechanics and materialmen who performed work in connection with the restoration.

(ii) If this Lease is terminated pursuant to Section 6.1(a), then all of Tenant's rights in said insurance proceeds, plus interest, if any, shall first be paid over or assigned to Leasehold Mortgagee to the extent required under the terms of the leasehold mortgage and the balance, if any, shall be allocated to Landlord and Tenant in proportion to their relative interests in the Premises as of the date of the casualty. If Landlord and Tenant are unable to agree on such values within thirty (30) days following the distribution of insurance proceeds to Leasehold Mortgagee as stated in the preceding sentence, such values shall be determined by appraisal in the procedural manner set forth in Section 3.4 hereof.

6.2 <u>Notice of Taking</u>. Forthwith, upon receipt by either Landlord or by Tenant of notice of the institution of any proceedings for the taking of all or any part of the Premises by the exercise of any power of condemnation or eminent domain, or by agreement of Landlord, Tenant, and those authorized to

-28-

**A104**

exercise the power of eminent domain, or for any street widening
or change of grade, the party receiving such notice shall
promptly give written notice thereof to the other, and such other
party may also appear in such proceeding and be represented by
counsel, who may be counsel for the party receiving such notice.

6.3 <u>Entire Taking</u>.  If, at any time during the Term,
the whole or any significant portion (as hereinafter defined) of
the Premises shall be taken for any public or quasi-public pur-
pose by any lawful power or authority by the exercise of the
right of condemnation or eminent domain, or by agreement between
Landlord, Tenant, and those authorized to exercise such right,
this Lease and the Term shall terminate and expire on the date of
such taking and the Fixed Rent and Additional Rent and other sums
of money and other charges herein provided to be paid by Tenant
shall be apportioned and paid to the date of such taking and any
unearned charges and all deposits shall be refunded to Tenant.
For purposes of this Article VI, a "significant portion" of the
Premises shall be deemed to mean such portion of the Premises as,
when taken, would leave remaining a balance of the Premises
which, whether because of the area so taken or the location of
the part so taken in relation to the part not so taken, would be
commercially unreasonable for Tenant to use.  The determination
as to whether it would be commercially unreasonable for Tenant to
use the Premises after a condemnation shall be made by an indi-
vidual who is unrelated to either Landlord or Tenant and who is
selected in writing by Tenant and approved in writing by
Landlord.

6.4 <u>Partial Taking</u>.

(a) If twenty-five percent (25%) or more of the
total floor area of the building or buildings on the Premises,
but less than the whole or any significant portion of the Prem-
ises, shall be taken for any public or quasi-public purpose by

-29-

**A105**

any lawful power or authority by the exercise of the right of condemnation or eminent domain, or by agreement between Landlord, Tenant, and those authorized to exercise such right, then in such event Tenant shall have the right to cancel and terminate this Lease as of the date of such taking, upon giving to Landlord notice in writing of such election within ninety (90) days after receipt by Tenant from Landlord of written notice that such portion of the Premises has been taken. In the event of such cancellation, any rent theretofore paid or then payable shall be apportioned as of the date of taking, any unearned charges and all deposits shall be refunded to Tenant, and Tenant shall thereupon be released from any further liability under this Lease.

(b) If less than twenty-five percent (25%) of the total floor area of the building or buildings on the Premises shall be taken, or if twenty-five percent (25%) or more of the total floor area of the building or buildings on the Premises shall be so taken and Tenant shall not elect to so terminate this Lease, but shall remain in that portion of the Premises which shall not have been taken as herein provided, then in either such event, commencing at the date of taking, the Fixed Rent shall be reduced in the ratio that the total floor area of the part of the building or buildings which were taken bears to the total floor area of the building or buildings which were included within the Premises before such taking. The entire Award (as defined in Section 6.5(a)) received in either of the events described in the first sentence of this Section 6.5(b) shall be paid to Depositary and Depositary shall disburse the Net Award (as defined in Section 6.5(a)) in the following manner:

(i) First, for the restoration of the building or buildings as provided in the case of insurance proceeds in Section 6.1(b)(i) hereof.

-30-

**A106**

(ii)  Second, to Landlord in an amount equal to the value of the Land taken, as determined pursuant to Section 6.5(b).

(iii) Third, to the first Leasehold Mortgagee, in an amount equal to any decrease in its security resulting from the taking.

(iv)  Fourth, if any balance shall remain, Landlord and Tenant shall determine pursuant to the methods set forth in Section 6.5(b) the value of Landlord's interest in the portion of the building or buildings taken and the value of Tenant's interest in the portion of the building or buildings taken, both of which values to be determined as of the date on which title vests in the taking authority.  Depositary shall pay such balance to Landlord and Tenant in proportion to the values of Landlord's and Tenant's respective interests in the portion of the building or buildings as so determined.

6.5  <u>Award If Lease Terminates</u>.

(a)  In the event of a termination of this Lease, pursuant to either Section 6.3 or Section 6.4(a), the total proceeds of the award paid or payable in any condemnation or eminent domain proceeding or the consideration or settlement paid or payable pursuant to any agreement between Landlord, Tenant, and those authorized to exercise the right of condemnation or eminent domain (hereinafter any such award, consideration or settlement is referred to as the "Award"), shall be held by Depositary and distributed, paid, and applied as in this Section 6.5 provided. The term "Net Award" shall mean the total Award less all costs, expenses, and attorneys' fees incurred in the collection thereof. With respect to any Award, Depositary shall disburse the Net Award in the following manner:

-31-

**A107**

(i)   First, to Landlord in an amount equal to
the value of the Land, as determined pursuant to Section 6.5(b).

(ii)   Second, to the first Leasehold Mort-
gagee, up to an amount equal to the balance due it of unpaid
principal and interest under its mortgage, deed of trust or other
security instrument.

(iii)   Third, if any balance shall remain,
Landlord and Tenant shall determine pursuant to the methods set
forth in Section 6.5(b) the value of Landlord's interest in the
building or the buildings and the value of Tenant's interest in
the building or the buildings, both of which values to be deter-
mined as of the date on which title vests in the taking author-
ity.   The Depositary shall pay such balance to Landlord and
Tenant in proportion to the values of Landlord's and Tenant's
respective interests in the building or buildings as so
determined.

(b)   The parties hereto shall request that in any
condemnation proceeding there be a separate determination of:
(i) the value of the Land (or the portion of the Land that is
taken) considered as vacant, unimproved, unencumbered by any
mortgages or leases of any kind, and immediately available (which
shall be deemed to mean that all necessary infrastructure
improvements are available) for use and/or development for its
highest and best use in accordance with the existing governmental
regulations; (ii) the value of Landlord's interest in the build-
ing or buildings (or the portion thereof that is taken); and
(iii) the value of Tenant's interest in the building or buildings
(or the portion thereof that is taken).   Notwithstanding the pre-
ceding sentence, with respect to any condemnation occurring prior
to the third Subsequent Base Lease Year, in determining the value
of the Land pursuant to clause (i) above, the Land shall not be
valued as if it were immediately available for use and/or

-32-

development in accordance with its highest and best use but
rather shall be valued as if it were immediately available for
use and/or development with a building of approximately the same
density and use as the building to be constructed pursuant to
Section 7.1. Any determination made in accordance with the
preceding sentences shall be binding and conclusive upon the par-
ties. If for any reason such values are not separately deter-
mined in the proceeding, then such values shall be fixed by
agreement between Landlord and Tenant or, if the parties are
unable to agree within thirty (30) days after the proceedings
have terminated, by appraisal in the procedural manner set forth
in Section 3.4. hereof.

6.6  <u>Taking for Temporary Use</u>. If the temporary use of
the whole or any part of the Premises or any building or build-
ings thereon shall be taken at any time during the Term for any
public or quasi-public purpose by any lawful power or authority,
by the exercise of the right of condemnation or eminent domain,
or by agreement between Landlord, Tenant, and those authorized to
exercise such right, the Term shall not be reduced or affected in
any way. In such case, Tenant shall continue to pay in full the
Annual Rent, and any other sum of money herein provided to be
paid by Tenant. Tenant shall be entitled to the entire Award for
such taking (whether paid by way of damages, rent or otherwise)
unless the period of occupation and use by the condemning author-
ity shall extend beyond the date of expiration of this Lease, in
which case the Award made for such taking shall be apportioned
between Landlord and Tenant as of the date of such expiration.
In any proceeding for such taking or condemnation, the Landlord
shall have the right to intervene and participate; provided that
if such intervention shall not be permitted, Tenant shall, at
Tenant's expense, consult with Landlord, its attorneys, and
experts, and make all reasonable efforts to cooperate with Land-
lord in the prosecution or defense of such proceeding. At the

-33-

**A109**

termination of any such use or occupation of the Premises or any building or buildings thereon, Tenant shall, at its sole cost and expense, repair and restore the building or buildings and improvements then upon the Premises to the condition, as nearly as may be reasonably possible, in which such buildings and improvements were at the time of such taking.  Tenant shall not be required to make such repairs and restoration if the Term shall expire prior to the date of termination of the temporary use so taken, and in any such event Landlord shall be entitled to recover all damages and Awards arising out of the failure of the condemning authority to repair and restore the buildings and improvements at the expiration of such temporary taking.  In the event the temporary taking expires prior to the expiration of the Term, any recovery or sum received by Landlord or Tenant as an Award for physical damage to the Premises or any building or buildings thereon caused by and during the temporary taking shall be deemed a trust fund for the purpose of repairing or restoring such damage.

ARTICLE VII

IMPROVEMENTS

7.1  Construction of New Buildings.

(a)  Tenant shall at its own cost and expense construct on the Premises a first class office building substantially in accordance with preliminary plans (the "Preliminary Plans"), approved by Landlord as to location, configuration and exterior appearance of all buildings, which approval shall not be unreasonably withheld or delayed.  Within twenty (20) days after receipt by Landlord of the Preliminary Plans, Landlord shall either approve them or disapprove them and indicate with reasonable specificity the areas of such disapproval and the modifications which it proposes in order to approve the same.  If Landlord fails to so approve or disapprove the Preliminary Plans they

-34-

shall be deemed to have been approved.  If Landlord so disap-
proves the Preliminary Plans, Tenant shall cause its architects
to resubmit the same with modifications and the same procedures
for approval or disapproval and resubmission shall apply until
Landlord shall have approved the Preliminary Plans.  Landlord
agrees that the Preliminary Plan dated December 26, 1984 prepared
by Patton Harris Rust and Associates, approved by the Montgomery
County Planning Board and numbered Preliminary Plan No. 1-84285,
including all conditions imposed by the County with respect
thereto, is approved by Landlord.

    (b)  Tenant shall cause its architect to prepare
working drawings and specifications (collectively, the "Working
Drawings") for such building in a manner consistent with the Pre-
liminary Plans and to submit the Working Drawings to Landlord for
its confirmation that they are substantially consistent in terms
of location, configuration, and exterior appearance with the Pre-
liminary Plans for such buildings.  Within twenty (20) days after
receipt of the Working Drawings, Landlord shall either confirm
such consistency or disapprove them as being inconsistent and
indicate with reasonable specificity the areas of such inconsis-
tency and the modifications which it proposes in order to make
the same consistent.  If Landlord fails to so confirm or disap-
prove the Working Drawings they shall be deemed to have been
approved.  If Landlord so disapproves the Working Drawings,
Tenant shall cause its architect to resubmit the same with modi-
fications and the same procedures for confirmation or disapproval
and resubmission shall apply until Landlord shall have confirmed
the Working Drawings.  Landlord agrees not to unreasonably with-
hold or delay such confirmation.

    (c)  Tenant shall construct the building and
improvements on the Premises in accordance with the approved
Working Drawings.  Tenant shall commence such construction

-35-

**A111**

promptly following approval of the Working Drawings and shall
continue construction diligently and expeditiously until comple-
tion, subject with respect to both commencement and completion to
delays for Force Majeure, as hereinafter defined.

(d)  After completion of the building, Tenant
shall furnish Landlord with (i) a set of "as built" drawings,
(ii) a copy of the final plans and specifications for the con-
struction of the building, and (iii) a certified copy of the cer-
tificate or certificates of occupancy for the building.

(e)  Landlord hereby consents to the signage
rights granted to the tenant under the Office Lease.  Any other
exterior signs shall be subject to Landlord's approval.

7.2  Repairs and Alterations.

(a)  Except as otherwise expressly provided
herein, Tenant shall at all times during the Term, at Tenant's
cost and expense, keep the Premises and all buildings and
improvements hereafter located thereon, and all facilities and
equipment therein, and all sidewalks, curbs, vaults, and vault
spaces, if any, adjoining the Premises, and all appurtenances
thereto, in first class operating condition and repair, and in
such condition as may be required by law and by the terms of the
insurance policies furnished pursuant to this Lease, whether or
not such repair shall be interior or exterior, extraordinary as
well as ordinary, and whether or not such repair shall be of a
structural nature or can be said to be within the present contem-
plation of the parties hereto.

(b)  Tenant shall at all times during the Term, at
Tenant's cost and expense, keep the sidewalks, curbs, vaults, and
vault spaces, if any, adjoining the Premises, free from snow,
ice, and any other obstructions.

-36-

**A112**

(c)  Tenant may from time to time during the Term make alterations to the Premises, provided that said alterations shall not materially and adversely affect the value thereof and provided further that if any alteration is of a structural nature or shall cost more than Five Hundred Thousand Dollars ($500,000), then Tenant shall request in writing Landlord's prior written consent thereto, which consent shall not be unreasonably withheld, and which consent may be conditioned on the furnishing by Tenant of a bond of a surety company reasonably acceptable to Landlord assuring Landlord of the completion of such alteration and payment in full of the cost thereof.  If Landlord fails to respond to Tenant's written request for consent within ten (10) days after receipt of such request, Landlord shall be deemed to have approved Tenant's proposed alterations.  For every Lease Year following the first Lease Year, the aforesaid Five Hundred Thousand Dollar ($500,000) limit upon alterations that Tenant may make without Landlord's prior approval shall be increased by the Percentage Increase in the Index for the relevant Lease Year over the Base Index.

(d)  Notwithstanding the provisions of Section 7.3(c), Tenant shall not be required to obtain Landlord's consent for the making of decorations in or to the Premises, provided such decorations are not of a structural nature.  For purposes of this subsection (d), decorations shall include painting, carpeting, and similar improvements.

7.3  <u>Demolition, Etc</u>.  In connection with any construction activity of Tenant at any time during the Term, Tenant may destroy, demolish, and remove any buildings, fixtures or other improvements at any time placed in or upon the Premises, and may remove, regrade, and rearrange such land and the contents thereof as may be incidental to any such construction or demolition activities, and in all such activities may deal with the Premises

-37-

**A113**

as if Tenant were the sole owner thereof, provided however, that (a) in no event shall Tenant demolish all or any part of the buildings to be constructed pursuant to Section 7.1 hereof, or any replacement thereto, unless and until Tenant shall have furnished Landlord with a bond or other security reasonably adequate to assure Tenant's completion of a replacement for the building or portion to be demolished which shall have at least the same income producing value and which shall be the highest and best use of the Premises then permitted by law; and (b) in connection with the replacement of any removed or demolished building, Tenant shall again comply with all the provisions of Section 7.1. Notwithstanding clause (a) of the preceding sentence, if at the time of any demolition or reconstruction the applicable zoning regulations have changed so that the highest and best use of the Premises is inconsistent with the contractual rights of any sublessees of Tenant, the building to be reconstructed shall be of the highest and best use permitted by law which is also in accord with the contractual rights of any sublessee. All salvage from any demolition activities and all soil and earth severed from the Premises in connection therewith shall be the property of Tenant.

    7.4  _Title to Buildings_.  Tenant covenants and agrees that its title to the buildings to be constructed on the Premises and any replacement or additional buildings thereof are subject to the terms and conditions of this Lease and that all grantees or assignees of its title to such buildings or this Lease shall take subject to and be bound by the terms and conditions of this Lease, expressly including the following provisions of this Section 7.4. Any and all buildings, fixtures, and improvements placed in, on, or upon the Premises shall remain the sole and exclusive property of Tenant and its subtenants, notwithstanding their affixation to, annexation to, or incorporation into the Premises, until the termination of this Lease, at which time all right, title, and interest to any such buildings, fixtures, and

-38-

**A114**

improvements as belong to Tenant shall vest in Landlord, subject
to the rights of all subtenants to remove from the Premises such
personal property and trade fixtures as belongs to them.  Upon
termination of this Lease by expiration of the Term or prior ter-
mination by default, assignment to Landlord or otherwise, Land-
lord shall be the sole and absolute owner of such buildings free
of any right, title, interest or estate of Tenant therein.
Tenant hereby grants, releases, transfers, sets over, and assigns
and conveys to Landlord all of its right, title, and interest in
and to the buildings effective upon the termination hereof.  So
long as this Lease shall continue in force and effect and there
shall be no Event of Default hereunder, nothing herein contained
shall adversely affect any right that Tenant may have to quiet
enjoyment and possession, nor shall anything herein contained
adversely affect Tenant's right to insurance proceeds and Awards
as set forth in Article VI hereof.  Tenant covenants and agrees
that it will execute such further assurances of title and convey-
ance as may be reasonably requested by Landlord upon termination
in order to fully vest fee simple title to such buildings in
Landlord in accordance with the requirements of local law then
applicable and in such manner as to permit Landlord to obtain an
owner's full coverage title insurance policy in the standard ALTA
form then in use, fully insuring Landlord's fee simple ownership
in the land and such buildings without any exception arising out
of or by reason of the existence of this Lease, and at a premium
charge not in excess of the premium charge normally made by title
insurance companies for such owner's full coverage title insur-
ance policy.  Without limiting the generality of the foregoing,
should Landlord so request upon the termination of this Lease,
Tenant shall execute a fee simple deed in the standard form then
in use in land transactions in the State of Maryland fully suffi-
cient to convey such buildings to Landlord.

-39-

**A115**

ARTICLE VIII

NON-DISTURBANCE

8.1 <u>Non-Disturbance</u>. Landlord agrees, from time to time, to execute and deliver at Tenant's request a non-disturbance agreement, in form reasonably satisfactory to Landlord, between Landlord and sublessees of portions of the Premises for the purpose of providing that, in the event of the termination of this Lease, so long as such sublessee is not in default under its sublease beyond the period given therein to cure, Landlord shall not disturb the possession of such sublessee and shall recognize its rights under such sublease, and that notwithstanding such termination, such sublease shall continue in full force and effect, provided that (a) such sublease has been approved by an institutional lender which holds a first mortgage on Tenant's leasehold interest in the Premises, (b) such sublessee agrees to attorn to Landlord in such event, and (c) all of the conditions set forth in Section 5.2 have been satisfied.

ARTICLE IX

LANDLORD'S COVENANTS

9.1 <u>Title</u>. Landlord covenants that Landlord has full right and lawful authority to enter into this Lease in accordance with the terms hereof and to grant the estate demised hereby and that Landlord has good and clear record and marketable title to the Premises in fee simple absolute and subject to no leases, tenancies, agreements, restrictions, encumbrances, liens or defects in title other than:

(a) Zoning laws and ordinances;

(b) Unpaid real estate taxes for the current year which are not yet due and payable; and

-40-

**A116**

(c)  Easements and restrictions set forth as the permitted exceptions in Exhibit C hereof.

9.2  <u>Quiet Enjoyment</u>.  Landlord covenants and agrees with Tenant that upon Tenant paying the Annual Rent, and performing and fulfilling all covenants, agreements, and conditions herein, Tenant shall and may, at all times during the Term hereby granted, peaceably and quietly have, hold, and enjoy the Premises and all rights, appurtenances, and privileges belonging or in any way appertaining thereto without hindrance or molestation.

ARTICLE X
<u>DEFAULTS</u>

10.1  <u>Events of Default</u>.  Each of the following shall constitute an "Event of Default":  (a) if Tenant shall default in the performance of any of its obligations to pay the Annual Rent, including Fixed Rent, Additional Rent or Deferred Rent, and if such default shall continue for twenty (20) days after written notice from Landlord to Tenant designating such default, or (b) if Tenant has defaulted in performing any other of Tenant's obligations hereunder and if such default shall continue for forty five (45) days after written notice from Landlord to Tenant designating such other default or defaults, provided that if the default is of such a character as cannot reasonably be cured within said period, and if Tenant commenced diligently to correct the default or defaults so designated after receipt of such notice and thereafter diligently pursues such correction, then said forty-five (45) day period shall be extended for such further time as may be reasonably necessary to enable Tenant, by proceeding with diligence, to complete performance.

10.2  <u>Termination; Repossession</u>.  If any Event of Default occurs, Landlord, at Landlord's option, may give written notice to Tenant stating that this Lease and the Term shall

-41-

**A117**

expire and terminate, effective on the date specified in such
notice, and then this Lease and the Term and all rights of Tenant
hereunder shall expire and terminate as if the date specified in
such notice were the date herein fixed for the expiration of the
Term.  In addition, following any Event of Default, Landlord and
the agents and servants of Landlord lawfully may, in addition to
and not in derogation of any remedies for any preceding breach of
covenant, immediately or at any time thereafter and without
demand or notice and with or without process of law enter into
and upon the Premises or any part thereof and repossess the same
as of Landlord's former estate and expel Tenant and those claim-
ing through or under Tenant, subject to the rights of the tenant
under the Office Lease and the rights of any other subtenants
pursuant to any non-disturbance agreement executed by Landlord
(with or without the institution of legal proceedings to evict)
and remove its and their effects without being deemed guilty of
any manner of trespass and without prejudice to any remedies
which might otherwise be used for arrears of rent or prior breach
of covenant, and Landlord, without notice to Tenant, may store
Tenant's effects, and those of any person claiming through or
under Tenant (subject to the rights of the tenant under the
Office Lease and the rights of any other subtenants pursuant to
any non-disturbance agreements executed by Landlord) at the
expense and risk of Tenant, and, if Landlord so elects, may sell
such effects at public auction or private sale and apply the net
proceeds to the payment of all sums due to Landlord from Tenant
if any, and pay over the balance, if any, to Tenant.

10.3  Interest; Late Fees.  If Tenant fails to make any
payment of Annual Rent on or before the date such payment is due
and payable, such payment shall bear interest at the rate of two
(2) percentage points in excess of the prime or base rate (the
"Prime Rate") established from time to time by The Riggs National
Bank of Washington, D.C. (or, if such prime rate is discontinued,

-42-

**A118**

at a comparable rate selected by Landlord); provided, however, that if the default shall continue for more than ten (10) days after Tenant has received written notice thereof from Landlord, then, commencing on the eleventh (11th) day after Tenant's receipt of such notice, such payment shall bear interest at the rate of five (5) percentage points in excess of the Prime Rate. In addition, Tenant shall be liable for a late charge equal to five percent (5%) of any payment hereunder, whether it be Annual Rent or otherwise, which is not paid on its due date. Notwithstanding the foregoing provisions of this Section 10.3, twice in each Lease Year Tenant shall not be charged any interest or late fee under this Section 10.3 unless and until Tenant's failure to pay any Annual Rent becomes an Event of Default pursuant to Section 10.1.

10.4  Escrow for Real Estate Impositions and Insurance. Upon Landlord's request, following any default by Tenant in the payment of any Annual Rent payable hereunder, until such default is cured and all payments of Annual Rent have been made on or before the due date thereof for at least one (1) year, Tenant will pay to Depositary, at the same time as each monthly installment of Fixed Rent is due, an amount equal to 1/12 of the aggregate amount of (a) the Real Estate Impositions and (b) the insurance premiums referred to in Article IV, all as estimated by Landlord. Depositary shall hold such amounts in escrow and shall apply such amounts on account of the Real Estate Impositions and the insurance premiums, as and when payments therefor are due. Any amounts held by Depositary pursuant to this Section 10.4 shall bear interest or be invested in interest bearing obligations, provided that Landlord shall not be responsible for payment of any interest, and any amounts remaining in said escrow, including interest earned on such amounts, if any, shall be paid to Tenant upon termination of said escrow.

-43-

**A119**

10.5  <u>Additional Remedies</u>.

(a)  If this Lease shall terminate as a result of
or while there exists any Event of Default, any funds (including
the interest, if any, accrued thereon) in which Tenant has an
interest then held by Depositary may be applied by Landlord to
any damages payable by Tenant (whether provided for herein or by
law or in equity) as a result of such termination or Event of
Default, and the balance remaining, if any, shall be paid to
Tenant, subject to the rights of Leasehold Mortgagee, if Tenant
would be entitled to receive such funds but for such termination
or Event of Default.

(b)  Subject to Section 14.5, in addition to any
other remedies specifically provided herein, if this Lease is
terminated pursuant to Section 10.2 Landlord shall have the right
to invoke any rights or remedies allowed at law or in equity or
by statute or otherwise, including the right to seek damages in
the amount of Annual Rent that would have been payable for the
remainder of the Lease Term, as though the right of repossession
were not provided in this Lease.  In any suit for damages, it is
agreed that in calculating the amount of damages to which Land-
lord is entitled, the value, as of the date on which title to the
improvements vests in Landlord as a result of a default hereun-
der, of Tenant's interest in any improvements on the Premises
shall be subtracted from the amount of damages to which Landlord
is entitled, to the extent that Tenant is able to establish such
value in any such proceeding.

10.6  <u>Attorneys' Fees</u>.  Landlord shall be entitled to
reasonable attorneys' fees and all other costs and expenses actu-
ally incurred by Landlord in attempting to collect Annual Rent
and any interest thereon or late charges payable in connection
therewith.

-44-

**A120**

ARTICLE XI

LEASEHOLD MORTGAGEE'S RIGHTS

11.1  Right to Mortgage; Notice to Leasehold Mortgagee.
(a)  Tenant shall have the right at any time and from time to
time during the Term to make a leasehold mortgage upon Tenant's
interest in the Premises and the leasehold estate hereunder.  No
Leasehold Mortgagee, nor any entity claiming by, through or under
Leasehold Mortgagee by virtue thereof, shall acquire any greater
rights than Tenant has under this Lease, other than as expressly
set forth in this Article XI.  Tenant shall ensure that the pro-
visions of any loan documents with any leasehold mortgagee
require that such leasehold mortgagee send to Landlord copies of
all notices of default sent to Tenant in connection with any doc-
uments evidencing or securing repayment of the loan related
thereto.

(b)  So long as any leasehold mortgage shall
remain a lien on Tenant's leasehold estate hereunder, Landlord
agrees, simultaneously with the giving of each notice hereunder,
to give a duplicate copy thereof, in the manner required for
notices pursuant to Section 14.7 hereof, to Leasehold Mortgagee
and no such notice to Tenant shall be effective unless a copy of
such notice is so given to Leasehold Mortgagee.  The Leasehold
Mortgagee will have the same period after the giving of the
notice aforesaid to it for remedying the default or causing the
same to be remedied as is given Tenant after notice to it plus an
additional thirty (30) days and Landlord agrees to accept such
performance on the part of Leasehold Mortgagee as though the same
had been done or performed by Tenant.

11.2  Leasehold Mortgagee's Opportunity to Foreclose.
As to any Event of Default that may not be cured by the payment
of money and which may or may not be susceptible of curing by
entry upon the Premises, Landlord agrees to grant to Leasehold

-45-

**A121**

Mortgagee (provided that Leasehold Mortgagee has complied with the provisions of Section 11.5) the right to extend the period of time within which to cure such Event of Default for such additional period (not in excess of thirty (30) days) as, with due diligence and in good faith, will enable Leasehold Mortgagee to institute foreclosure proceedings or otherwise acquire possession of the Premises, provided that Leasehold Mortgagee shall, within the initial notice and curative period provided in Section 11.1(b):

(a)  notify Landlord in writing of its election to proceed with due diligence to foreclose or otherwise to proceed promptly to acquire possession of the Premises;

(b)  cure any Event of Default that can be cured by the payment of money by paying the sums then due and owing; and

(c)  deliver to Landlord an instrument in writing duly executed and acknowledged wherein Leasehold Mortgagee agrees that:

(i)  during the period that Leasehold Mortgagee shall be in possession of the Premises and during the pendency of any such foreclosure or other proceedings and until the interest of the then Tenant under this Lease shall terminate, as the case may be, it will pay or cause to be paid to Landlord all sums from time to time becoming due under this Lease for Annual Rent; and

(ii)  if delivery of possession of the Premises shall be made to Leasehold Mortgagee or to its nominee, whether voluntarily or pursuant to any foreclosure or other proceedings or otherwise, Leasehold Mortgagee shall, promptly following such delivery of possession, perform or cause such nominee

-46-

**A122**

to perform, as the case may be, all the covenants and agreements herein contained on Tenant's part to be performed to the extent that Tenant shall have failed to perform the same to the date of delivery of possession, as aforesaid.

### 11.3  Leasehold Mortgagee's Right to New Lease.

(a)  In the event of the termination of this Lease prior to its stated expiration date (except pursuant to Article VI hereof) Landlord agrees that it will enter into a new lease of the Premises with Leasehold Mortgagee or, at the request of Leasehold Mortgagee, with a corporation or other entity formed by or on behalf of Leasehold Mortgagee, for the remainder of the Term of this Lease effective as of the date of such termination, at the Annual Rent and upon the covenants, agreements, terms, provisions, and limitations herein contained, provided (i) Leasehold Mortgagee makes written request upon Landlord for such new lease within thirty (30) days from the date Landlord notifies Leasehold Mortgagee of such termination and such written request is accompanied by payment to Landlord of all amounts then due to Landlord but for such termination, (ii) Leasehold Mortgagee pays or causes to be paid to Landlord at the time of the execution and delivery of such new lease any and all sums which would at the time of the execution and delivery thereof be due under this Lease but for such termination and pays or causes to be paid any and all expenses, including reasonable counsel fees, court costs, and costs and disbursements incurred by Landlord in connection with any such termination and in connection with the execution and delivery of such new lease.

(b)  Any new lease made pursuant to this Section 11.3 shall have the same priority as this Lease and shall be prior to any mortgage or any lien, charge or encumbrance of the fee of the Premises created by Landlord, for a term of years

-47-

**A123**

equal to the balance of the Term of this Lease, as the same may
be extended pursuant to the provisions of this Lease.

(c) Any mortgage or deed of trust upon Landlord's
interest in the Premises and any action by such mortgagee or
trustee or beneficiary of such deed of trust by way of foreclo-
sure, exercise of power of sale, or deed in lieu thereof shall be
subject to this Lease and to the new lease to be given pursuant
to this Section 11.3 and any mortgagee or holder of such mortgage
or the beneficiary and trustee of any such deed of trust must
recognize this Lease and all rights of Tenant and Leasehold Mort-
gagee hereunder, including, without limitation, their rights with
respect to insurance proceeds and Awards.

(d) The provisions of this Section 11.3 shall be
self-operative and require no further action by the holder of any
mortgage of Landlord's interest in the Premises, but upon request
by Tenant or Leasehold Mortgagee, Landlord agrees to obtain from
such holder an instrument duly executed and acknowledged confirm-
ing the priority of such new lease.

11.4  No Modification Without Leasehold Mortgagee's
Consent.  This Lease shall not be modified or surrendered to
Landlord or cancelled by Tenant, nor shall Landlord accept a sur-
render of this Lease, without the prior written consent of Lease-
hold Mortgagee, provided that the conditions of Section 11.5
shall have previously been complied with.

11.5  Notice.  The foregoing provisions of this Article
XI shall not apply in favor of Leasehold Mortgagee unless, before
Landlord has mailed a notice of default under Article X, Lease-
hold Mortgagee has duly recorded its mortgage or notice thereof
in any public office where such recording may be required in
order to charge third persons with knowledge thereof and has
given written notice to Landlord accompanied by a certified copy

-48-

**A124**

of such mortgage and stating the name of Leasehold Mortgagee and the address to which notices to Leasehold Mortgagee are to be mailed by Landlord.

ARTICLE XII

LANDLORD'S RIGHT TO PERFORM TENANT'S COVENANTS

12.1 <u>Landlord's Right to Perform</u>. Tenant agrees that if it shall at any time fail, after such default has become an Event of Default (except it shall not be necessary for a default to become an Event of Default in case of emergency), to pay any Real Estate Imposition or utility bill in accordance with the provisions of Sections 3.5.1 or 3.5.2, or to take out, pay for, maintain or deliver any of the insurance policies provided in Article IV, or to cause any lien of the character referred to in Section 5.4 to be discharged as therein provided, or to pay the costs of the Davis Tract Ride Sharing Program, as provided in Section 15.1, or to perform any other act on its part to be performed as provided in this Lease, then, with notice to Tenant (except in the case of emergency), but without waiving or releasing Tenant from any obligations of Tenant contained in this Lease or waiving any other right or remedy of Landlord, Landlord may, but shall not be obligated to, (a) pay any Real Estate Imposition or utility bill payable by Tenant pursuant to the provisions of Sections 3.5.1 or 3.5.2; (b) take out, pay for, and maintain any of the insurance policies provided for in Article IV; (c) discharge any lien of the character referred to in Section 5.4 as therein provided; (d) pay the costs of the Davis Tract Ride Sharing Program; or (e) perform any other act on Tenant's part to be performed as provided in this Lease. All sums paid by Landlord and all reasonable incidental costs and expenses paid or incurred by Landlord in connection with Landlord's performance of any act described in the first sentence of this Section 12.1, together with all reasonable attorneys' fees and together with interest

-49-

**A125**

thereon from the date of making of such expenditures by Landlord, at the rate described in Section 10.3, shall be payable to Land- lord on demand and Tenant covenants to pay any such sum or sums with interest as aforesaid. All sums which may become payable to Landlord by Tenant as provided in this Article XII, and all sums payable by Tenant for Real Estate Impositions and utilities pur- suant to Sections 3.5.1 and 3.5.2, insurance premiums pursuant to Article IV, costs of the Davis Tract Ride Sharing Program, and all other charges and expenses of whatsoever nature which Tenant assumes or agrees to pay pursuant to this Lease, shall be deemed Additional Rent hereunder and be payable as aforesaid, and Land- lord shall have (in addition to any other right or remedy of Landlord) the same rights and remedies in the event of the non- payment of any such sums as in the case of Tenant's default in the payment of Annual Rent.

ARTICLE XIII

LANDLORD'S RIGHT TO SELL, ASSIGN OR MORTGAGE

13.1    Right to Sell, Assign or Mortgage.    Landlord shall have the right at all times to sell, assign or mortgage its fee interest under this Lease without restriction, provided that no such mortgage or deed of trust shall create any lien, charge or other encumbrance upon the improvements or the estate of Tenant or of any interest of Tenant in the Premises, but shall be subordinate to this Lease.    Landlord shall notify Tenant in writ- ing if Landlord sells, assigns or mortgages its fee interest hereunder and shall specify in such notice the name of the new landlord hereunder or the fee mortgagee.

13.2    Release of Liability.    In the event that at any time Landlord sells or transfers any of its interest in the Prem- ises or this Lease, then provided the purchaser or transferee assumes in writing the obligations of Landlord hereunder, Land- lord named herein shall not be liable to Tenant under this Lease

-50-

**A126**

for any obligations or liabilities based on or arising out of events or conditions occurring after such sale or transfer, but shall remain liable for any events or conditions occurring prior to such sale or transfer.

13.3  Limitations on Landlord's Liability.  Landlord shall be under no personal liability with respect to any of the provisions of this Lease, and if Landlord is in breach or default with respect to its or her obligations or otherwise under this Lease, Tenant shall look solely to the estate of Landlord in the Land for the satisfaction of Tenant's remedies.

13.4  Notice to Fee Mortgagee.  After Tenant receives notice from any person, firm or other entity that it holds a mortgage on Landlord's fee estate and receives the name and address of such fee mortgagee, Tenant shall, simultaneously with the giving of each notice to Landlord of any breach or default by Landlord hereunder, give a duplicate copy thereof, in the manner required for notices pursuant to Section 14.7 hereof, to the fee mortgagee.  The fee mortgagee will have a reasonable period of time after receipt of such notice during which time the fee mortgagee will have the right to cure the breach or default.

ARTICLE XIV
MISCELLANEOUS

14.1  Construction; Governing Law.  Landlord and Tenant agree that all the provisions hereof are to be construed as covenants and agreements as though the words importing such covenants and agreements were used in each separate paragraph hereof.  This Lease shall be construed according to and be governed by the laws of the State of Maryland.

14.2  No Waiver.  Failure of either party to complain of any act or omission on the part of the other party, no matter

-51-

how long the same may continue, shall not be deemed to be a waiver by said party of any of its rights hereunder. No waiver by either party at any time, express or implied, of any breach of any provision of this Lease shall be deemed a waiver of a breach of any other provision of this Lease or a consent to any subsequent breach of the same or any other provision. If any action by either party shall require the consent or approval of the other party, the other party's consent to or approval of such action on any one occasion shall not be deemed a consent to or approval of said action on any subsequent occasion or a consent to or approval of any other action on the cause of any subsequent occasion. Any and all rights and remedies which either party may have under this Lease or by operation of law, either at law or in equity, upon any breach, shall be distinct, separate, and cumulative and shall not be deemed inconsistent with each other; no one of them, whether exercised by said party or not, shall be deemed to be in exclusion of any other, and any two or more or all of such rights and remedies may be exercised at the same time.

14.3  <u>Headings</u>.  The headings used for the various articles and sections of this Lease are used only as a matter of convenience for reference, and are not to be construed as part of this Lease or to be used in determining the intent of the parties of this Lease.

14.4  <u>Partial Invalidity</u>.  If any of the terms, provisions or conditions of this Lease or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease and the application of such term, provisions or conditions to persons or circumstances other than those to which it is held invalid or unenforceable shall not be affected thereby and each of the other terms, provisions, and conditions of this Lease shall be valid and enforceable to the fullest extent permitted by law.

-52-

**A128**

14.5  <u>Bind and Inure</u>.  Unless repugnant to the context, the words "Landlord" and "Tenant" shall be construed to mean the original parties, their respective successors and assigns, and those claiming through or under them, respectively.  Subject to the provisions of the next sentence, the agreements and conditions in this Lease contained on the part of Tenant to be performed and observed shall be binding upon Tenant and its successors and assigns and shall inure to the benefit of Landlord and its successors and assigns, and the agreements and conditions in this Lease contained on the part of Landlord to be performed and observed shall be binding upon Landlord and its successors and assigns and shall inure to the benefit of Tenant and its successors and assigns.  Notwithstanding anything else contained in this Lease, Landlord agrees that Tenant and its successors and assigns shall be liable only for obligations accruing while it holds the leasehold estate created hereunder and that no partner of Tenant shall be personally liable for the performance or observance of Tenant's obligations hereunder, all such liability being limited to Tenant's partnership assets.  No Leasehold Mortgagee shall be deemed to be the holder of said leasehold estate until Leasehold Mortgagee shall have acquired indefeasible title to said leasehold estate.

14.6  <u>Estoppel Certificate</u>.  Each party agrees from time to time, upon no less than fifteen (15) days' prior written request of the other, to execute, acknowledge, and deliver to the other a statement in writing certifying that this Lease is unmodified and in full force and effect (or, if there have been any modifications, that the same is in full force and effect as modified and stating the modifications) and the dates to which the rent has been paid and whether there exists any uncured default by the other party and, if so, the nature of such default.  Any such statement delivered pursuant to this Section 14.6 may be relied upon by any prospective purchaser or mortgagee

-53-

**A129**

or any prospective holder of a sublease from Tenant or any prospective assignee of any such holder of a mortgage or sublease.

14.7  <u>Notice</u>.  Every notice and demand required or permitted to be given under this Lease shall be in writing and deemed to have been duly given (a) when mailed postage prepaid by certified or registered mail, with or without return receipt requested, or (b) when delivered, if delivered by hand or over night courier, addressed in the case of notice to or demand upon Landlord to it c/o Charles A. Camalier, Jr., Suite 1200, 1629 K Street, N.W., Washington, D.C. 20006, with copies to Anne D. Camalier, 9019 Belmart Road, Potomac, Maryland 20854, Charles A. Camalier, III, Esq., 1666 K Street, N.W., Washington, D.C. 20006, and to Martin D. Krall, Esq., 2300 N Street, N.W., Washington, D.C. 20037, and in the case of notice to or demand upon Tenant to it at Suite 1200, 1629 K Street, N.W., Washington, D.C. 20006, Attn: Anne D. Camalier and to Charles A. Camalier, III, Esq., 1666 K Street, N.W., Washington, D.C. 20006 with copies to Martin D. Krall, Esq., 2300 N Street, N.W., Washington, 20037 and, Communications Satellite Corporation, 950 L'Enfant Plaza, S.W., Washington, D.C. 20004, Attn:  Chief Financial Officer Corporate Services, General Manager, and General Counsel, or, in the case of either party, to such other address as that party shall from time to time have designated by written notice given to the other party as herein provided.

14.8  <u>Entire Agreement; No Oral Modifications</u>.  This instrument contains all the agreements made between the parties hereto and may not be modified in any other manner than by an instrument in writing executed by the parties or their respective successors in interest.

14.9  <u>No Merger of Title</u>.  There shall be no merger of the leasehold estate created by this Lease with the fee estate in the land by reason of the fact that the same person may own or

-54-

**A130**

hold (a) the leasehold estate created by this Lease or any inter-
est in such leasehold estate, and (b) any interest in the fee
estate of the land; and no such merger shall occur unless and
until all persons, including any mortgagee, having any interest
in (x) the leasehold estate created by this Lease, and (y) the
fee estate in the land, shall join in a written instrument
effecting such merger and shall duly record the same.

14.10  Force Majeure.  For purposes of this Lease,
Force Majeure shall mean acts of God, war, riot, strike, shortage
or unavailability of labor or materials, injunction or moratorium
imposed upon the issuance of necessary licenses, permits, utility
hook-ups or upon construction by any governmental or quasi-gov-
ernmental entity or body, unusually adverse weather conditions,
or if the general contractor for the improvements is delayed at
any time in the progress of its work pursuant to the general con-
tract for construction of the improvements upon the Premises by
any act or neglect of the architect for the improvements or by
any employee thereof, or by any separate contractor, or by
changes ordered in said work, or by fire, unusual delay in trans-
portation, unavoidable casualties, latent subsurface conditions,
or any causes beyond the general contractor's control or by any
other cause which the parties hereto reasonably determine may
justify the delay.

14.11  Payment of Landlord's Costs and Expenses.
Tenant shall reimburse Landlord for all costs and expenses,
including reasonable attorneys' fees, that Landlord incurs in
connection with the review of any plans and specifications, con-
tracts, drawings, agreements, policies or other items that Tenant
submits to Landlord for Landlord's approval pursuant to any pro-
vision of this Lease.  Tenant shall reimburse Landlord for such
costs and expenses upon demand, and, if such costs and expenses
are not reimbursed upon demand they shall be deemed Additional

-55-

**A131**

Rent and Landlord shall have the same rights and remedies in the event of the nonpayment of such sums as in the case of Tenant's default in the payment of Annual Rent. Notwithstanding the first sentence of this Section 14.11, Landlord shall not be entitled to reimbursement for any expenses it incurs in connection with the original preparation of this Lease or in connection with Landlord's review and approval of the plans, specifications, and drawings for the initial improvements to be constructed pursuant to Section 7.1.

14.12  _Litigation Expenses_. In the event of any litigation brought by either party to enforce any of the provisions of this Lease, the losing party shall pay the prevailing party's costs and expenses, including reasonable attorneys' fees.

14.13  _Memorandum of Lease_. Either party may record a memorandum of this Lease in the form of Exhibit D hereto. Any tax attendant upon such recordation shall be the sole expense of Tenant.

14.14  _Performance Under Protest_. In the event of a dispute or difference between Landlord and Tenant as to any obligation which either may assert the other is obligated to perform or do, then the party against whom such obligation is asserted shall have the right and privilege to carry out and perform the obligation so asserted against it without being considered a volunteer or deemed to have admitted the correctness of the claim, and shall have the right to bring an appropriate action at law, equity or otherwise against the other for the recovering of any sums expended in the performance thereof and in any such action, the successful party shall be entitled to recover, in addition to all other recoveries, such reasonable attorneys' fees as may be awarded by the court.

**A132**

14.15 <u>Release of Memorandum of Lease</u>. Landlord cove-
nants to record a release of the Memorandum of Lease between
Landlord and Two Fernwood Associates Limited Partnership, which
Memorandum is recorded among the land records of Montgomery
County, Maryland.

14.16 <u>Records, Plans, Etc.</u> Upon the termination of
this Lease, whether at the expiration of the Term or earlier,
Tenant shall provide to Landlord copies of all records, studies,
reports, plans and specifications, and other documents relating
to the development of the Property and the construction of any
improvements thereon, to the extent that Tenant has any of such
documents in its records or has access to such documents.

ARTICLE XV

<u>RIDE SHARING PROGRAM</u>

15.1 <u>Compliance With Ride Sharing Agreement</u>. Tenant
shall at Tenant's expense comply with all obligations (with
respect to the Land) pursuant to the ride sharing agreement
entered by and among Montgomery County, Maryland, the Maryland
National Capital Park and Planning Commission, and the Artery
Organization, Inc., as the same may be amended (the "Ride Sharing
Agreement"). The Ride Sharing Agreement sets forth the ride
sharing program imposed by Montgomery County, Maryland for the
Landlord's Land (such program is herein referred to as the "Davis
Tract Ride Sharing Program"). Landlord shall not agree to any
amendments to the Ride Sharing Agreement without the prior writ-
ten consent of Tenant, which consent shall not be unreasonably
withheld or delayed.

-57-

**A133**

EXECUTED as a sealed instrument on the day and year first above written.

WITNESS:                                LANDLORD:

_____               _____
                                        ANNE D. CAMALIER

                                        TENANT:

                                        ROCK SPRING II LIMITED PARTNERSHIP,
                                        a Maryland limited partnership

                                        By:  Fernwood Two Corp.,
                                             General Partner

_____               By: _____
                                            Anne D. Camalier
                                            President

                                        By:  Bethesda Real Property, Inc.,
                                             General Partner

_____               By: _____
                                        Title: Vice President


        I, being an attorney admitted to practice in the State of
Maryland, hereby certify that this Amended and Restated Ground
Lease Indenture was prepared by me or under my supervision.

                                        _____
                                        Name: Robert L Guilliam
                                        Attorney

B:1685MB8198.91


-58-


**A134**

COUNTY OF _District of Columbia_ )
                                 )  ss:
STATE OF _____ )

    I, the undersigned, a Notary Public in and for the jurisdiction aforesaid, do certify that Anne D. Camalier, whose name is signed to the Amended and Restated Ground Lease Indenture bearing date as of November 14, 1990, has acknowledged the same before me in my jurisdiction aforesaid.

    Given under my hand and seal this 25th day of _November_, 1991.


[Notarial Seal]                     _Kenny M. Turner_
                                        Notary Public

                                    My Commission expires:
                                    My Commission Expires June 14, 1992


                                -59-


**A135**

COUNTY OF ~~District of Columbia~~ )
                                   )
                                   )   ss:
STATE OF _____ )


    I, the undersigned, a Notary Public in and for the jurisdiction aforesaid, do certify that Anne D. Camalier, the President of Fernwood Two Corp., general partner of Rock Spring II Limited Partnership, a Maryland limited partnership, whose name is signed to the Amended and Restated Ground Lease Indenture bearing date as of November 14, 1990, has acknowledged the same before me in my jurisdiction aforesaid.

    Given under my hand and seal this 25th day of November, 1991.


[Notarial Seal]

                      Kerry M. Turner
                            Notary Public

                      My Commission expires:
                      My Commission Expires June 14, 1992

-60-

COUNTY OF ~~District of Columbia~~ )
                                    ) ss:
STATE OF _____ )

I, the undersigned, a Notary Public in and for the jurisdiction aforesaid, do certify that _Raymond M Westfall_ , the _Vice President_ of Bethesda Real Property, Inc., general partner of Rock Spring II Limited Partnership, a Maryland limited partnership, whose name is signed to the Amended and Restated Ground Lease Indenture bearing date as of November 14, 1990, has acknowledged the same before me in my jurisdiction aforesaid.

Given under my hand and seal this 25th day of _November_, 1991.

[Notarial Seal]

_Kerry M. Turner_
                                    Notary Public

My Commission expires:
My Commission Expires June 14, 1992

-61-

**A137**

 '6560 Rock Spring

### FIRST AMENDMENT TO AMENDED AND RESTATED
### GROUND LEASE INDENTURE

This First Amendment to Amended and Restated Ground Lease Indenture (the "Amendment Agreement") made as of this 1st day of September, 2002, by and between ROCK SPRING PLAZA II, LLC, a Maryland limited liability company, successor in interest to Anne D. Camalier ("Landlord") and ROCK SPRING II LIMITED PARTNERSHIP, a Maryland limited partnership ("Tenant").

#### W I T N E S S E T H

WHEREAS, Landlord and Tenant entered into a certain Amended and Restated Ground Lease Indenture made as of the 14th day of November, 1990 and affecting a certain parcel of land situated in Bethesda, Maryland and more particularly described therein ("Ground Lease"); and

WHEREAS, Landlord and Tenant desire to amend the Ground Lease in the manner hereinafter set forth.

NOW, THEREFORE, Landlord and Tenant hereby modify and amend the Ground Lease and otherwise agree as follows:

1.    All capitalized terms used in this Amendment Agreement that are not specifically defined herein shall have the same meanings as are ascribed to such terms in the Ground Lease.

2.    There is hereby added to the Ground Lease, immediately following Section 3.3 thereof, a new Section 3.3.1, reading as follows:

3.3.1    <u>Revaluation in First Subsequent Base Lease Year Commencing September 1, 2002</u>.    Notwithstanding the foregoing provisions of Section 3.3, commencing on September 1, 2002, the Fixed Rent shall be payable at the annual rate of $963,227.50 for the First Subsequent Base Lease Year commencing on September 1, 2002, which amount represents the parties agreement of the current Fair Rental Value of the Premises.

3.    Subject only to the addition of the foregoing Section 3.3.1, all of the terms, conditions and provisions of the Ground Lease, including without limitation the provisions regarding annual escalations contained in Section 3.3

**A138**

thereof, are hereby ratified and confirmed and shall remain in all respects in full force and effect.

IN WITNESS WHEREOF, Landlord and Tenant have executed this Agreement as of the date first above written.

LANDLORD:

ROCK SPRING PLAZA II, LLC, a Maryland limited liability company

By: _____
        Charles A. Camalier, III,
        Authorized Person

TENANT:

ROCK SPRING II LIMITED PARTNERSHIP, a Maryland limited partnership

By:  FERNWOOD TWO CORP., General Partner

By: _____
        Anne D. Camalier
        President

BETHESDA REAL PROPERTY, INC., General Partner

By: _____
      Name: James De Napoli
      Title: Assistant Secretary

253163

**A139**

EXHIBIT 2

After Recording Return To
Tri-State Commercial Closings, Inc.
1150 18th Street, N.W. Suite 575
Washington, DC 20036

3 2 4 2 7    5 2 3

mob-558

## Ground Lessor Estoppel And Non-Disturbance Agreement

This Ground Lessor Estoppel and Non-Disturbance Agreement (the "Agreement") is entered into this 2nd day of June, 2006 by and among ROCK SPRING PLAZA II, LLC, a Maryland limited liability company (the "Landlord"); ROCK SPRING II LIMITED PARTNERSHIP, a Maryland limited partnership (the "Tenant"); and MONUMENTAL LIFE INSURANCE COMPANY, a Maryland corporation (the "Lender").

### RECITALS

A.    By virtue of that certain Amended and Restated Ground Lease Indenture, dated as of November 14, 1990 between Rock Spring Plaza II, LLC (successor in interest to Anne D. Camalier), as landlord and Rock Spring II Limited Partnership, as tenant, which lease was amended by First Amendment to Amended and Restated Ground Lease Indenture dated September 1, 2002, as further evidenced by a Memorandum of Lease by and between Landlord and Tenant dated November 14, 1990 and recorded November 26, 1991 in Liber 10040 at folio 857 among the Land Records of Montgomery County, Maryland (collectively the "Lease"), Landlord demised to the Tenant that certain real property located in Montgomery County, Maryland, that is more particularly described in Exhibit "A" attached hereto and made a part hereof, on which Tenant has constructed certain improvements, together with all easements, covenants, and rights appurtenant thereto (collectively, together with the improvements now or hereafter located thereon, the "Premises").

B.    Pursuant to an Amended and Restated Secured Promissory Note of even date herewith (the "Note"), Tenant is indebted unto the Lender in the principal amount of $50,000,000 as from time to time increased, modified, replaced and refinanced (collectively the "Loan"), which Note is to be secured in part by an Amended and Restated Leasehold Deed of Trust, Security Agreement and Fixture Filing on the Tenant's interest in the Lease and the Premises (the "Deed of Trust"), and the Lender has agreed to make such Loan and accept such security upon the satisfaction of certain conditions, one of which is the execution of this Agreement by the Landlord and Tenant.

### AGREEMENT

1.    Landlord's Approval.  The Landlord has no objection to the funding of the Loan and the mortgage and encumbrance of all of the Tenant's existing and after acquired interest in the Lease and the Premises, any fee and leasehold interest of Tenant in any improvements from time to time located on the Premises, all personal property owned by the Tenant which may from time to time be situated upon the Premises, the assignment of all the Tenant's rights and rents under any subleases of the Premises, and such other liens, security interests, and assurances relating to such interests in the Lease and/or Premises of the Tenant as are from time to time required by the Lender and its participants, successors and assigns in making the Loan (collectively the "Loan Collateral").  The Loan Collateral will not include any encumbrance on the Landlord's fee interest or reversionary interest under the Lease or in the Premises.  The

-1-

Rock Spring II - Camalier / Lockheed Martin, Bethesda, Maryland
AEGON Loan No. 89758
Ground Lessor Estoppel Final 6/2/2006  9:21 AM
Based on~BALT1:4232488.v1  |3/27/06
16895-388

RECORDING FEE       75.00
IN: FD SURC         20.00
TOTAL               95.00
Rebb MUB†     Rcpt # 129
MGR      AVE    Blk # 347
Jun 02, 2006      02:00 PM

**A141**

32427 524

Landlord agrees that in making such Loan, the Lender assumes no liability regarding the application of the proceeds thereof or the performance of the Tenant's obligations under the Lease.

2.   Landlord's And Tenant's Estoppels.  The Landlord and Tenant warrant to the Lender that with respect to their respective rights, actions and obligations:

(a)   The Landlord is the sole current owner of the fee simple interest in the Premises and the sole current landlord under the Lease;

(b)   The Lease has been properly executed and delivered, is valid and binding, has not been modified and is in full force and effect;

(c)   The Lease represents the entire agreement of the Landlord and Tenant with respect to the Premises and the Tenant has no rights or obligations with respect to the Premises under any other agreement that would be binding upon Lender, its successors or assigns, in the event that it acquires all or any portion of the Loan Collateral by foreclosure or by deed or other transfer in lieu of foreclosure, except any easements or other agreements recorded among the land records of Montgomery County, Maryland which may be applicable to the Tenant;

(d)   As of the date hereof, there are no defaults under the Lease or of any circumstances which, solely as the result of the passage of time, giving of notice of expiration of any cure period, will become a default; and

(e)   All improvement to be constructed pursuant to the Lease have been satisfactorily completed and the Tenant is in possession and has accepted the condition of the Premises.

3.   Priority Of Mortgage.  The Landlord and Tenant warrant to the Lender that the Lease is and shall remain prior to any mortgage, deed of trust, lien or any other encumbrance against the fee title to the Premises.  The Landlord agrees that it shall not grant any encumbrance against the fee title to the Premises which is not subordinate to the Lease and any new lease which may be granted to the Lender or any successor or assignee of the Lender pursuant to the provisions of this Agreement and the Lease.  The Tenant covenants with the Lender that it has not granted or permitted and shall not grant or permit any encumbrance against Tenant's interest in the Lease or the Premises, nor shall Tenant have the right or ability to subordinate the Lease to any existing or future encumbrance against the fee title to the Premises without the Lender's prior written consent in each instance.  Unless such express written consent is obtained, any such subordination or impairment of the priority of the Lease shall be ineffective.

4.   Landlord's Recognition Of Lender.  If the Tenant defaults under any obligation to the Lender, the Landlord shall permit the Lender to enter on the Premises and to assemble and remove all of the Tenant's personal property which is subject to the Deed of Trust or any additions thereto.  Provided Lender has otherwise complied with the provisions of Article XI of the Lease, if the Lender notifies the Landlord of any default under any of the Deed of Trust or the note secured thereby and as a result thereof has in any manner acquired or foreclosed upon

-2-

Rock Spring II - Camalier / Lockheed Martin, Bethesda, Maryland
AEGON Loan No. 89758
Ground Lessor Estoppel Final 6/2/2006 9:21 AM
Based on~BALT1:4232488.v1 |3/27/06
16895-388

**A142**

32427   525

the Tenant's interests in the Lease and Premises, the Landlord shall recognize the Lender as the Tenant under the Lease and the successor to all rights and obligations thereunder.

5.    Lease Modifications.    The Landlord and Tenant agree with the Lender that no assignment, subletting, voluntary or involuntary transfer, mortgage, pledge, hypothecation, extension, substitution, revision, surrender, cancellation, termination or any other modification of the Lease or any of the Tenant's interests therein of any kind whatsoever, any right or obligation with respect thereto, or of any sublease, shall be entered into or agreed to between the Landlord, the Tenant, or their respective successors in interest without in each instance being first specifically and expressly approved in writing by the Lender.  The foregoing shall in no way be construed to prohibit or limit Landlord's right to assign, transfer, mortgage, pledge or hypothecate its fee simple interest in the Premises subject to the terms of the Lease or its interests in the Lease and the issues, rents and profits therefrom.  In any instance in which any of the foregoing acts or agreements requires the act or consent of Tenant, Tenant shall not take any such act or grant such consent unless the same is first specifically approved by the Lender in writing in advance.  The agreement by the Lender to any given modification of the Lease or any sublease shall not be deemed or construed as a waiver of the obligation of the Landlord and Tenant to obtain the Lender's approval for any subsequent modification, whether the same be similar or dissimilar to the one so approved, and no such consent shall operate as releasing the Landlord from any of its obligations under the Lease unless such consent expressly so provides.  The Landlord and Tenant agree that the Tenant cannot waive any obligation or any default of the Landlord under the Lease nor any notices which may be required thereunder without first obtaining the express written consent of the Lender in each instance.

6.    Insurance Proceeds And Condemnation Awards.    The Landlord, Tenant and Lender agree that so long as the Lease is in effect, all insurance proceeds and condemnation awards arising from any damage to or taking of the Premises shall, to the extent required by the Lease to be applied to the restoration of the Premises, be applied in the manner provided in the Lease but held and disbursed in accordance with the terms and conditions specified in the Deed of Trust and any excess proceeds shall be applied to the Loan.  If the Lease terms are not applicable or if the Landlord waives the same in writing, then if and to the extent that any proceeds or awards are payable to the Tenant, such proceeds and awards shall be paid and applied in the manner provided in the Deed of Trust.  The Lender shall have the right to participate in any claims, settlements, actions and adjustments pertaining to any insurance policy maintained in connection with the Premises and with respect to any condemnation award claimed by or payable to Tenant.

7.    Termination Resulting From Casualty Or Condemnation.    In no event shall the Lease be terminated as a result of damage by casualty or condemnation of less than the entire Premises without the Lender's prior written consent.

8.    Lender's Right To Cure.    The Landlord agrees with the Lender that in the event of any act or omission by the Tenant which would afford the Landlord the right, either immediately or after any lapse of time, to terminate the Lease, it shall refrain from exercising any such right

-3-

Rock Spring II - Camalier / Lockheed Martin, Bethesda, Maryland
AEGON Loan No. 89758
Ground Lessor Estoppel Final 6/2/2006  9:21 AM
Based on~BALT1:4232488.v1 |3/27/06
16895-388

**A143**

32427  526

until it has given written notification to Lender and afforded the Lender the same opportunity to cure such default that the Tenant has an additional thirty (30) days as provided in Section 11.1(b) of the Lease.  As provided in Section 11.2 of the Lease and without limiting the general terms thereof, the Landlord agrees that it shall give the Lender a reasonable period within which to exercise its rights to acquire the leasehold interest in the Premises or foreclose against the Lease if necessary for a given default to be cured by the Lender, and that it shall notify the Lender in writing if the Landlord is of the opinion that any qualification or condition exists to the Lender's right to cure.  The Tenant authorizes the Lender to effect such cure and to enter upon the Premises to the extent reasonably necessary to do so.  The foregoing shall not be interpreted or construed as imposing any duty or obligation upon the Lender to cure any default of the Tenant at any time; provided, however, the Lender recognizes that the failure to do so could result in the termination of the Lease.

9.    Waiver Of Statutory Right Of Cancellation.  The Tenant hereby waives and assigns to the Lender all rights to elect to cancel the Lease under any statute now or hereafter in effect.  This assignment and waiver applies, without limitation, to Section 365(h) of the United States Bankruptcy Code, or any other section of that statute, in the event that any voluntary or involuntary petition in bankruptcy or similar proceedings is filed by or against the Landlord.  Landlord shall, in addition, give to Lender notice of any attempted rejection of this Lease by Tenant's trustee in bankruptcy or by Tenant as debtor in possession, and no termination of this Lease or termination of Tenant's right of possession of the Premises or reletting of the Premises by Landlord predicated on the giving of any such notice shall be effective unless Landlord gives to Lender written notice of any such default or termination, as the case may be and an opportunity for Lender to enter into a new lease on the terms and conditions set forth herein.  The Lender shall not exercise such rights of Tenant as aforesaid without the Tenant's consent at any time prior to the Lender's acquisition Tenant's interest in the Lease and the Premises.  The Landlord agrees with the Lender that it shall not cancel the Lease pursuant to any right or authority contained in the Bankruptcy Code or similar legislation in the event any voluntary or involuntary petition therein is filed by or against the Tenant so long as the Lender has cured all monetary defaults under the Lease within the applicable grace periods granted to the Lender under the Lease and is pursuing its rights and remedies with diligence and without delay to acquire Tenant's interest under the Lease unless and to the extent such delay is imposed by the Bankruptcy Code.

10.    New Lease.  As provided in Section 11.3 of the Lease, so long as the Lender cures all monetary defaults under the Lease of which the Lender was timely notified by the Landlord as provided under the Lease, the Landlord agrees with the Lender that it shall grant to the Lender, its successors or assigns, a new lease on the same terms and conditions and with the same priority as the Lease, provided Lender, its successors or assigns, makes written request to Landlord for such new lease within thirty (30) days from the date of its receipt of the notice of such termination of the Lease, including notice of an actual or deemed rejection of the Lease in bankruptcy; provided, however, the term of the new lease shall coincide with the then remaining term of the Lease and shall include all existing renewal options.  The foregoing notwithstanding, the Lender shall not be required to make any payment to the holder of any lien against the Lease

-4-

**A144**

32427 527

which was junior or subordinate to the Deed of Trust as a condition to obtaining such new lease provided it forecloses under its Deed of Trust and extinguishes any such obligations. The Landlord shall give the Lender a written notice of the termination of the Lease within ten (10) days after the Lease is terminated, which notice shall include all amounts required to be paid by the Lender as a condition to obtaining such new lease. Such amount shall be reduced by any other income the Landlord receives with respect to the Premises from any person other than the Lender after such notice is given and which would otherwise be included in the Lender's payments. In the event that a new lease is granted to the Lender, the Tenant shall immediately cause title to all improvements, fixtures and personalty on the Premises owned by the Tenant to be conveyed to the Lender, which shall hold such title subject to the terms of the new lease. In accepting such new lease the Lender shall also have the right to require the Tenant to obtain attornments to the Lender from all subtenants occupying the Premises as of the date of the termination of the Lease. The parties hereto acknowledge the inadequacy of the Lender's remedies at law in the event the Lease is terminated for any reason and they intend the provisions of the Lease with respect to Landlord's obligation to enter into a new lease to be specifically enforceable.

11.     Liability Of Lender.  The Landlord agrees that in no event shall the Lender, its successors or assigns (including, without limitation, any purchaser of all or any portion of the Tenant's interest in the Lease or the Premises at a foreclosure sale or by deed or other transfer in lieu of foreclosure) be:

(a)     Personally liable for the erection, completion, restoration or repair of any improvements comprising or to comprise a part of the Premises; or

(b)     Personally liable for any act or omission of Tenant; or

(c)     Bound by any amendment, extension, renewal, or modification of the Lease made without the prior written consent of the Lender.

12.     Lender's Obligation Upon Tenant Default.  Lender or its successors or assigns may enforce the Deed of Trust and acquire title (or any third-party purchaser may acquire title at a foreclosure sale or by deed in lieu of foreclosure) to the leasehold estate in the Premises in any lawful way and, pending foreclosure of the Deed of Trust, the Lender may take possession of and operate the Premises, or any portion thereof subject to the terms of the Lease and its Deed of Trust to the extent not in conflict with the Lease, perform all obligations performable by Tenant, and upon foreclosure of the Deed of Trust by power of sale, judicial foreclosure, or upon acquisition of the leasehold estate by a deed or other transfer in lieu of foreclosure, Lender may, without further consent of Landlord, sell and assign the leasehold estate in the Premises. Lender shall notify Landlord in writing of such sale or assignment within ten (10) days of such sale or assignment. Provided any defaults by the Tenant have been cured to the extent required by the terms of the Lease, any assignee of the leasehold estate following a foreclosure of the Deed of Trust by power of sale or judicial foreclosure (or transfer by deed in lieu thereof) shall be liable

-5-

Rock Spring II - Camalier / Lockheed Martin, Bethesda, Maryland
AEGON Loan No. 89758
Ground Lessor Estoppel Final 6/2/2006  9:21 AM
Based on~BALT1:4232488.v1 |3/27/06
16895-388

A145

32427    528

to perform the obligations imposed upon Tenant by this Lease only during the period such person has ownership of said such leasehold estate.

13.    Landlord's Bankruptcy.  In the event of a bankruptcy of the Landlord, the parties agree that Lender shall have the right to receive all notices in such bankruptcy proceeding and shall have the right to the Tenant's vote in the bankruptcy court, all as more particularly provided in the Deed of Trust.

14.    Notices. In order for any demand, consent, approval or other communication to be effective under the terms of this Agreement, "Notice" must be provided under the terms of this Subsection.  All Notices must be in writing.  Notices may be (a) delivered by hand, (b) transmitted by facsimile (with a duplicate copy sent by first class mail, postage prepaid), (c) sent by certified or registered mail, postage prepaid, return receipt requested, or (d) sent by reputable overnight courier service, delivery charges prepaid.  Notices shall be addressed as set forth below:

if to the Tenant by the Landlord at its address for notices set forth in the Lease;

if to the Tenant by the Lender at its address for notices set forth in the Deed of Trust;

if to the Landlord at c/o Rock Spring Properties, 6500 Rock Spring Drive, Suite 500, Bethesda, Maryland 20817; and

if to the Lender at c/o AEGON USA Realty Advisors, Inc., 4333 Edgewood Road, N.E., Cedar Rapids, Iowa 52499-5443 Attn:  Mortgage Loan Department, Reference:  Loan #89758.

Notices delivered by hand or by overnight courier shall be deemed given when actually received or when refused by their intended recipient.  Notices sent by facsimile will be deemed delivered when a legible copy has been received (provided receipt has been verified by telephone confirmation or one of the other permitted means of giving Notices under this Subsection). Mailed Notices shall be deemed given on the date of the first attempted delivery (whether or not actually received).  Either the Lender or the Grantor may change its address for Notice by giving at least fifteen (15) Business Days' prior Notice of such change to the other party.  This Agreement meets or supersedes any conditions to the Lender's right to receive notices in the Lease.

15.    No Merger.  The parties hereto agree and intend that in the event any of the interests of the Landlord and the Tenant should be acquired by the same person, the same shall not result in a merger of the fee with the interest evidenced by the Lease in the Premises, and in particular, shall not have the effect of extinguishing the Lease.

16.    Legal Proceedings.  The Landlord and Tenant grant the Lender the right to intervene or become a party in any legal proceeding, mediation or arbitration which concerns the Lease or any party's rights or obligations thereunder.  The Lender shall not be required to submit any dispute to arbitration except as may otherwise be required pursuant to any provisions

-6-

**A146**

32427  529

therefor contained in the Lease. The Lender shall not be bound by the decision of any court, mediator or arbitrator unless it was given written notice of such proceeding.

17. <u>Attorneys' Fees</u>. The prevailing party in any arbitration or action brought to interpret or enforce the provisions of this Agreement, including any probate, bankruptcy, injunction, receivership or appeal proceedings or any petition for review, shall be reimbursed by the other party for its costs and reasonable attorney's fees incurred therein.

18. <u>Waivers</u>. No waiver shall arise or result from any act or omission on the part of any party hereto unless expressly made in each instance in writing and signed by such party.

19. <u>Assignments And Subleases</u>. Except as otherwise provided in the Lease, no limitation upon or condition to any assignment of the Lease shall apply to any transfer of the Lease by foreclosure, trustee's sale, sheriff's sale or an assignment in lieu thereof. If the Lender acquires the Tenant's interest in the Lease or the Lender acquires a new lease pursuant to any provision of the Lease, the Lender shall have the absolute right to assign the same or sublease all or any portion of the Premises to any third party. So long as such third party assumes all of the Tenant's obligation under the Lease the Lender shall be automatically released from any further liability thereunder following any such assignment except for any of Lender's obligations or liabilities under the Lease arising during Lender's period of ownership.

20. <u>Successors</u>. The Landlord and Tenant acknowledge that this Agreement is intended to benefit the Lender, its successors and assigns, including any persons who participate in or refinance the loan in whole or in part. Consequently, this Agreement shall be construed as a modification of the Lease, and all of the assurances and confirmations contained in this Agreement are assignable by the Lender and shall inure to the benefit of an be enforceable by any successor or assignee of the Lender, including any assignee of or participant in the Loan and any purchaser of the Lease or any new lease at any foreclosure or trustee's sale, and by any purchase money lender of such assignee of the Lease. The Landlord agrees to execute such further documents as are reasonably requested to confirm that the provisions hereof maybe relied upon by any such successor, participant, refinancier or purchaser. This Agreement shall bind and inure to the benefit of the parties hereto and their respective heirs, successors and assigns.

21. <u>Entire Agreement</u>. This Agreement and the Lease, comprised of the documents described herein as constituting the Lease, constitute the entire agreement among the parties hereto with respect to the rights and obligations of the Lender in connection with the Lease and supersede any oral or other written understandings relating to the Lease or the rights of the Lender, and may be modified only by written agreement executed by each of the parties hereto or their successors subsequent to the date hereof.

22. <u>Controlling Law Venue</u>. This Agreement shall be governed and construed in accordance with the laws of the State of Maryland and the venue of any action to interpret or enforce the provisions of this Agreement shall be laid in Montgomery County, Maryland.

-7-

**A147**

32427  530

23.  Counterparts.  This Agreement may be executed in five (5) or more counterparts, all of which shall constitute but one and the same contract.

THE REMAINDER OF THIS PAGE HAS BEEN LEFT INTENTIONALLY LEFT BLANK

-8-

Rock Spring II - Camalier / Lockheed Martin, Bethesda, Maryland
AEGON Loan No. 89758
Ground Lessor Estoppel Final 6/2/2006  9:21 AM
Based on~BALT1:4232488.v1  |3/27/06
16895-388

**A148**

32427 31

IN WITNESS WHEREOF, the parties hereto have caused these presents to be duly executed effective as of the day and year first above written.

LANDLORD:

ROCK SPRING PLAZA II, LLC, a Maryland limited liability company

By: _____
Name: *Charles A. Camalier, III*
Title: *Authorized Person*

TENANT:

ROCK SPRING II LIMITED PARTNERSHIP, a Maryland limited partnership
By: Fernwood Two Corp., a Maryland corporation, Managing General Partner

By: _____
Name: *Charles A. Camalier, III*
Title: *Vice President*

By: Bethesda Real Property, Inc., a Delaware corporation, General Partner

By: _____
Name:
Title:

-9-

Rock Spring II - Camalier / Lockheed Martin, Bethesda, Maryland
AEGON Loan No. 89758
Ground Lessor Estoppel Final 5/31/2006  11:31 AM
Based on ~BALT1:4232488.v1  |3/27/06
16895-388

**A149**

32427  532

IN WITNESS WHEREOF, the parties hereto have caused these presents to be duly executed effective as of the day and year first above written.

LANDLORD:

ROCK SPRING PLAZA II, LLC, a Maryland limited liability company

By:_____
Name:
Title:

TENANT:

ROCK SPRING II LIMITED PARTNERSHIP, a Maryland limited partnership
By: Fernwood Two Corp., a Maryland corporation, Managing General Partner

By:_____
Name:
Title:

By: Bethesda Real Property, Inc., a Delaware corporation, General Partner

By:_____
Name: Connie Mearkle
Title: Vice President & Treasurer

-9-

**A150**

32427  533

STATE OF _District_ )
COUNTY OF _Columbia_ )
)

On this _31st_ day of _May_, 2006, before me, _Barbara. H. Kemp_ the undersigned officer, personally appeared _Charles A. Camalier_ who acknowledged himself/herself to be the _Authorized Person_ of ROCK SPRING PLAZA II, LLC, a Maryland limited liability company and that he, as such officer, being authorized so to do, executed the foregoing instrument for the purposes therein contained, in the capacity as aforesaid.

IN WITNESS WHEREOF, I hereunto set my hand and Notarial Seal.

_____
Notary Public

My Commission expires: Barbara H. Kemp
Notary Public, District of Columbia
My Commission Expires 09-30-2006

STATE OF _District_ )
) SS:
CITY/COUNTY OF _Columbia_ )

I HEREBY CERTIFY that on this _31st_ day of _May_, 2006, before me, the undersigned officer, personally appeared _Charles A. Camalier II_ who acknowledged himself/herself to be the _Vice President_ of Fernwood Two Corp., a Maryland corporation and Managing General Partner of ROCK SPRING II LIMITED PARTNERSHIP, a Maryland limited partnership, and that (s)he, in such capacity, being authorized to do so, executed the foregoing instrument for the purposes therein contained, in such capacity.

IN WITNESS WHEREOF, I hereunto set my hand and Notarial Seal.

_____
Notary Public

My Commission expires:

Barbara H. Kemp
Notary Public, District of Columbia H. Kemp
My Commission Expires 09-30-2006 ublic, District of Columbia
Commission Expires 09-30-2006

-10-

Rock Spring II - Camalier / Lockheed Martin, Bethesda, Maryland
AEGON Loan No. 89758
Ground Lessor Estoppel Final 5/31/2006 11:31 AM
Based on -BALT1:4232488.v1  |3/27/06
16895-388

**A151**

32427  534

STATE OF _MARYLAND_          )
                                        ) SS:
~~CITY/~~COUNTY OF _MONTGOMERY_     )

    I HEREBY CERTIFY that on this _31st_ day of _MAY_, 2006, before me, the undersigned officer, personally appeared _COUNT MEINKLE_, who acknowledged himself/herself to be the _VICE PRESIDENT & Treasurer_ of Bethesda Real Property, Inc., a Delaware corporation and General Partner of ROCK SPRING II LIMITED PARTNERSHIP, a Maryland limited partnership, and that (s)he, in such capacity, being authorized to do so, executed the foregoing instrument for the purposes therein contained, in such capacity.

    IN WITNESS WHEREOF, I hereunto set my hand and Notarial Seal.

_Karen Jerome Barrett_
Notary Public

My Commission expires:

KAREN JEROME BARRETT
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires July 1, 2006

-11-

Rock Spring II - Camalier / Lockheed Martin, Bethesda, Maryland
AEGON Loan No. 89758
Ground Lessor Estoppel Final 5/31/2006  11:31 AM
Based on BALT1:4232488.v1  |3/27/06
16895-388

**A152**

32427   535

LENDER:

MONUMENTAL LIFE INSURANCE COMPANY, a
Maryland corporation

By: _____

Name: __Steve Myers__

Title: __Vice President__

STATE OF _____ )
                          )
COUNTY OF _____ )

On this _____ day of ___May___ , 2006, before me, _Cathy Harlan_ the
undersigned officer, personally appeared _Steve Myers_ who
acknowledged himself/herself to be the _Vice President_ of MONUMENTAL LIFE
INSURANCE COMPANY, a Maryland corporation and that (s)he, as such officer, being authorized so to
do, executed the foregoing instrument for the purposes therein contained, in the capacity as aforesaid.

IN WITNESS WHEREOF, I hereunto set my hand and Notarial Seal.

_Cathy S. Harlan_
Notary Public

My Commission expires:

05/21/08

CATHY S. HARLAN
Commission Number 710694
My Commission Expires
05/21/08

**List of Attachments:**
Exhibit A – Legal Description

Rock Spring II - Camalier / Lockheed Martin, Bethesda, Maryland
AEGON Loan No. 89758
Ground Lessor Estoppel Final 5/31/2006  11:31 AM
Based on BALT1.4232488.v1 |3/27/06
16895-388

**A153**

EXHIBIT A                    3 2 4 2 7    5 3 6

PROPERTY DESCRIPTION

All that certain lot or parcel of land situate and lying in Montgomery County, Maryland, and more particularly described as follows:

PARCEL I:

BEING part of Parcel 13, Rock Spring Park as recorded in Plat Book 148 as Plat No. 16968 among the Land Records of Montgomery County, Maryland and being more particularly described as follows:

BEGINNING at a point lying on the northeasterly right-of-way line of Fernwood Road as dedicated in Plat Book 88 as Plat No. 9340, said point also being a corner common to the property herein described and Parcel 14, Rock Spring Park as recorded in as Plat No. 21681; thence running with the northeasterly right-of-way line of Fernwood Road the following two (2) courses and distances:

1. 391.19 feet along the arc of a non-tangent curve to the left having a radius of 1,590.00 feet and a chord bearing and distance of North 38 degrees 29' 06" West, 390.20 feet to a point; thence

2. North 04 degrees 24' 43" West, 32.88 feet to a point of intersection with the southeasterly right-of-way line of Rock Spring Drive; thence running with the southeasterly right-of-way line of Rock Spring Drive

3. North 36 degrees 42' 33" East, 218.26 feet to a point; thence leaving said right-of-way line and running through Parcel 13, Rock Spring Park the following eight (8) courses and distances

4. 26.76 feet along the arc of a tangent curve to the right having a radius of 29.33 feet and a chord bearing and distance of South 79 degrees 25' 34" East, 25.84 feet to a point; thence

5. South 53 degrees 17' 27" East, 14.01 feet to a point; thence

6. 71.19 feet along the arc of a tangent curve to the left having a radius of 100.67 feet and a chord bearing and distance of South 73 degrees 33' 02" East, 69.72 feet to a point; thence

7. North 86 degrees 11' 23" East, 123.28 feet to a point; thence

8. North 41 degrees 11' 23" East, 55.08 feet to a point; thence

9. South 48 degrees 48' 37" East, 143.09 feet to a point; thence

10. South 41 degrees 11' 23" West, 35.53 feet to a point; thence

13

**A154**

32427    537

11. South 03 degrees 48' 38" East, 166.21 feet to a point lying on the northerly line of the aforementioned Parcel 14, Rock Spring Park; thence running with the lines of Parcel 14, Rock Spring Park the following three (3) courses and distances

12. North 87 degrees 05' 27" West, 211.25 feet to a point; thence

13 South 02 degrees 54' 33' West, 242.00 feet to a point; thence

14 South 58 degrees 33' 48" West, 23.39 feet to the point of beginning, containing 135,277 square feet or 3.10553 acres of land, more or less.

PARCEL II:

Easements granted by (i) Declaration of Covenants and Reciprocal Easement Agreements recorded in Liber 5263 at folio 351 and in Liber 8351 at folios 516, 543, 571, 602 and 626, and (ii) Sanitary Sewer Easements recorded in Liber 8351 at folio 683 and in Liber 8351 at folio 699, among the Land Records of Montgomery County, Maryland, and the reversionary interest in all improvements located on the property pursuant to the terms of the Amended and Restated Ground Lease as disclosed by Memorandum of Lease dated November 14, 1990 and recorded November 26, 1991 in Liber 10040 at folio 857.

Tax I.D. No. 4-1-2785885

AND BEING the same property in which a leasehold estate was acquired by Rock Spring II Limited Partnership, a Maryland limited partnership, by Amended and Restated Ground Lease Indenture dated as of November 14, 1990 as disclosed by memorandum of Lease by and between Anne D. Camalier, as lessor, and Rock Spring II Limited Partnership, a Maryland limited partnership, as lessee, dated as of November 14, 1990, recorded November 26, 1991 in Liber 10040 at folio 857 among the Land Records of Montgomery County, Maryland.

AND BEING the same property in which a fee simple interest was acquired by Rock Spring Plaza II, LLC, a Maryland limited liability company, by Deed from Anne D, Camalier, dated November 29, 1999 and recorded December 22, 1999 in Liber 17762 at folio 530 among the Land Records of Montgomery County, Maryland.

**A155**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **ROCK SPRING PLAZA II, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**INVESTORS WARRANTY OF AMERICA, LLC,** *et al.*,<br><br>Defendants. | Civil No. **PJM-20-1502** |

### MEMORANDUM OPINION

Rock Spring Plaza II, LLC ("Plaintiff"), the landlord of an office building located at 6560 Rock Spring Drive in Bethesda, Maryland, has filed suit against its previous tenant Investors Warranty of America, LLC ("IWA" or "Defendant"), who it alleges fraudulently conveyed a leasehold interest in a 99-year Ground Lease to Defendant Rock Springs Drive, LLC ("RSD" or "Co-Defendant") and several "Jane Does."[1]  Plaintiff has filed a Motion for Partial Summary Judgment, ECF No. 127, contending that it has a right to receive basic information from Defendants regarding RSD's origination, ownership (including the names of its principals), and its structure, to the end of determining RSD's ability to perform IWA's obligations under the

---

[1] This skirmish appears to be another battle between familiar opponents on familiar terrain in the Rockledge Drive area of Bethesda, Maryland.  In *Rockledge Associates, LLC v. Transamerica Life Insurance Company*, No. PWG-16-710, 2017 WL 1239182 (D. Md. Feb. 3, 2017), *aff'd*, 717 F.App'x 222 (4th Cir. 2018), the battlefield in question was 6610 Rockledge Drive; here it is 6560 Rock Spring Drive.  The landlord there, Rockledge Associates (which the Court judicially notices appears to have an office in the Rockledge Drive area of Bethesda) was suing Transamerica Life Insurance Company (the Court also judicially notices that Transamerica Corporation, joined as a Defendant in the current proceeding, is a holding company for various life insurance companies and investment firms, including Transamerica Life Insurance Company).  Counsel for plaintiff and counsel for defendant in the earlier litigation appear to be essentially the same counsel here.  While the core issue in the earlier case was different from the core issue here, there are a few features of the earlier case that will bear mentioning in the course of this Opinion.

1

Ground Lease and agreements appurtenant to same.  Defendants oppose the Motion.  For the reasons set forth below, Plaintiff's Motion will be **GRANTED IN PART** and **DENIED IN PART**.

### I.

### A.

On November 14, 1990, Anne Camalier (Plaintiff's predecessor-in-interest as landlord) and Rock Spring II Limited Partnership ("Original Tenant"), entered into a Ground Lease governed by Maryland law, set to expire in November 2089 (the "Ground Lease").[2]  Compl. ¶¶ 10–12.  *See also* ECF No. 136-3 ("Ground Lease").  The property covered by the Ground Lease was undeveloped land located at 6560 Rock Spring Drive, in Bethesda, Maryland (the "Property").  Compl. ¶¶ 10–12.  Original Tenant agreed to pay Camalier an escalating annual ground rent, in monthly installments.  *Id.* ¶ 13.  In addition, the Original Tenant was required to construct an office building on the Property.  *See* Ground Lease.  In fact, a 180,000 square-foot office building was completed in 1992.  *Id.*  On September 1, 2002, the Ground Lease was amended pursuant to an

---

[2] Ground leases are "still common in Maryland, although little known elsewhere in the United States." *Rockledge Assocs. LLC. v. Transamerica Life Ins. Co.*, No. PWG16-710, 2017 WL 139182, at *1 (D. Md. Feb. 3, 2017), *aff'd*, 717 F.App'x 222 (4th Cir. 2018) (citing *State v. Goldberg*, 85 A.3d 231, 234 (Md. 2014) (internal citations and quotation marks omitted).

"A ground rent lease ... is a renewable 99 year lease where the fee simple owner of a property receives an annual or semi-annual payment ('ground rent') and retains the right to re-enter the property and terminate the lease if the leaseholder fails to pay. The fee simple owner retains a real property right in the land, but the leaseholder's interest is governed by the law of personalty."  *Muskin v. State Dep't of Assessments & Taxation*, 30 A.3d 962, 965 (Md. 2011) (citing *Kolker v. Biggs*, 99 A.2d 743, 745 (Md. 1953)).

"Under this mutually beneficial scenario, the tenant "acquire[s] a perpetual interest in the leased premises, which would justify his making permanent improvements thereon, and enable him to avail himself of the value of the property thus enhanced," while the fee simple owner/landlord "secure[s] the prompt payment in perpetuity of the interest on a sum of money, equivalent to the value of the property."  *Rockledge*, 2017 WL 139182, at *2 (citing *Goldberg*, 85 A.3d at 237).

agreement entitled "First Amendment to Amended and Restated Ground Lease Indenture." ECF No. 13-2.

The terms of the Ground Lease authorized Original Tenant to assign the Lease and to mortgage its leasehold interest. Ground Lease § 5.2. In 2006, pursuant to those terms, Original Tenant took out a $30 million mortgage loan from Monumental Life Insurance Company ("MLIC" or "Lender"), secured by its leasehold interest in the Property. In connection with the mortgage loan, Plaintiff (the current landlord on the Ground Lease), Original Tenant, and MLIC entered into what they termed a "Ground Lessor Estoppel and Non-Disturbance Agreement" (the "Estoppel Agreement"). *See* 2006 Estoppel Agreement, ECF No. 13-3. Section 12 of the Estoppel Agreement provides, in relevant part:

> *Lender may, without further consent of Landlord, sell and assign the leasehold estate in the Premises. Lender shall notify Landlord in writing of such sale or assignment within ten (10) days of such sale or assignment. Provided any defaults by the Tenant have been cured to the extent required by the terms of the Lease any assignee of the leasehold estate following a foreclosure of the Deed of Trust by power of sale or judicial foreclosure (or transfer by deed in lieu thereof) shall be liable to perform the obligations imposed upon Tenant by this Lease only during the period such person has ownership of said such leasehold estate.*

MLIC subsequently assigned its interest as Lender to IWA. On August 31, 2017, IWA informed Plaintiff that it had assigned its interest as Tenant in the Ground Lease to Rock Springs Drive, LLC (again, "RSD"). Mem. in Supp. of Mot. for Summ. J., ECF No. 127-1, at 1. RSD, it appears, was formed the very day of the attempted assignment. Plaintiff states that it pressed both IWA and RSD for information regarding RSD—its origination, ownership, and structure—in order

3

**A158**

to determine whether RSD had the ability to fulfill IWA's obligations under the Ground Lease. However, says Plaintiff, it was given little to no information in response.[3]  *Id.*

From that date forward, Plaintiff says, while RSD has dutifully paid the monthly rent on the Ground Lease, Defendants and their representatives have repeatedly refused to identify the ownership and management of RSD or to share their intentions with respect to the future of the Property.  Compl. ¶¶ 18–23.  *See also* ECF Nos. 127-10, 127-11, 127-12, and 127-13.  Plaintiff alleges that since IWA's 2017 purported conveyance of the lease, the Property has "languished in vacancy," while RSD has repeatedly "refused to explore numerous opportunities to sublease the Property to commercially viable tenants." Compl. ¶¶ 24–25.

Plaintiff further states that IWA is a subsidiary of Transamerica Financial Life Insurance Company ("Transamerica"), a large, well-established insurance company.  *Id.* ¶¶ 13, 26–29.  RSD, on the other hand, is a limited liability company that was formed on August 25, 2017, as indicated, the very day that IWA attempted to make it the assignee of its interest in the lease.  *Id.* ¶ 14. Plaintiff alleges that IWA "conveyed its interest in the Ground Lease to the defendant [RSD] for the sole purpose of shielding Transamerica and [IWA] from their obligation to pay ground rent." *Id.* ¶ 17.  As of the date this suit was filed, Plaintiff also stated its belief that RSD "intends to stop paying rent after August 31, 2020, which is the date that Maryland's three-year statute of limitations for a fraudulent conveyance claim would expire." *Id.* ¶ 33.  However, as of the date of this Opinion, July 2022, RSD has apparently continued to pay the monthly rent.

---

[3] The Court has noted that counsel in the present case appear to be essentially the same counsel in the earlier Rockledge Drive litigation before Judge Grimm.  Judge Grimm went out of his way to praise counsel for their extensive cooperation in his case.  *See Rockledge Associates,* 2017 WL 1239182, at *12 (fn. 1).  One wonders – Has the Era of Good Feelings between counsel cooled this time around?

**A159**

**B.**

On June 5, 2020, Plaintiff filed this suit. ECF No. 1. On June 29 and July 6, respectively, IWA and RSD filed separate motions to dismiss. ECF Nos. 13, 20.  On December 1, 2020, following a hearing on the motions, the Court rendered an oral opinion denying both motions to dismiss. ECF Nos. 29, 30.

On February 25, 2021, the Court granted Plaintiff leave to amend its Complaint to join Transamerica as a defendant. ECF No. 58. Transamerica thereafter filed its own motion to dismiss, which the Court denied.  ECF No.  100.

On July 2, 2021, IWA submitted a letter informing the Court of a discovery dispute with Plaintiff.  ECF No. 99.  On August 6, 2021, the parties filed additional correspondence with the Court regarding the discovery dispute, ECF No. 111, and on August 12, 2021, the Court held a telephone conference with counsel pursuant to Guideline 1 of the Local Rules, ECF No. 116. Following the telephone conference, the Court issued a Memorandum Order staying all discovery and directing Plaintiff to file a Motion for Partial Summary Judgment addressing the legal issue of the entitlement *vel non* of an obligor under a contract to learn from the proposed assignor who the proposed assignee of a contract is and other relevant other information with respect to the proposed assignee.  ECF No. 117.

On September 13, 2021, Plaintiff filed the present Motion for Partial Summary Judgment. ECF No. 127.  On October 13, 2021, IWA and RSD responded, ECF Nos. 132, 136.[4] On October 28, 2021, Plaintiff replied, ECF No. 139, and on November 21, 2021, Defendants filed a joint

---

[4] Transamerica also filed a Response, ECF No. 137, stating that it "does not intend to respond substantively to Plaintiff's Motion because: (1) the Court's Order framing the issue on which it requested a motion for summary judgment does not involve any claim against Transamerica; and (2) Plaintiff's Motion does not seek any relief on its claims against Transamerica, inasmuch as Transamerica was not a party to the assignment that is the subject of the Plaintiff's Motion."

**A160**

Surreply, ECF No. 146.  On January 13, 2022, the Court held a hearing and took Plaintiff's Motion

under advisement.  The Court now rules on Plaintiff's Motion.

## II.

Under Federal Rule of Civil Procedure 56, the Court will grant a motion for summary

judgment, in whole or in part, if the moving party demonstrates that there is no genuine issue as to

any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex

Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In assessing the motion, the court is obliged to view

the facts in the light most favorable to the nonmoving party, drawing all justifiable inferences in

its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court relies only on facts

supported in the record, not merely assertions the parties make in their pleadings.  *Bouchat v. Balt.

Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is deemed "material" if it

"might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A

dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party

exists for the trier of fact to return a verdict in favor of that party.  *Id.* at 248–49.

As to summary judgment motions regarding matters of contract interpretation, the Fourth

Circuit has explained:

> A court faces a conceptually difficult task in deciding whether to grant summary
> judgment on a matter of contract interpretation. Only an unambiguous writing
> justifies summary judgment without resort to extrinsic evidence, and no writing is
> unambiguous if susceptible to two reasonable interpretations. The first step for a
> court asked to grant summary judgment based on a contract's interpretation is,
> therefore, to determine whether, as a matter of law, the contract is ambiguous or
> unambiguous on its face. If a court properly determines that the contract is
> unambiguous on the dispositive issue, it may then properly interpret the contract as
> a matter of law and grant summary judgment because no interpretive facts are in
> genuine issue.  Even where a court, however, determines as a matter of law that the
> contract is ambiguous, it may yet examine evidence extrinsic to the contract that is
> included in the summary judgment materials, and, if the evidence is, as a matter of
> law, dispositive of the interpretative issue, grant summary judgment on that basis.
> If, however, resort to extrinsic evidence in the summary judgment materials leaves

6

**A161**

> genuine issues of fact respecting the contract's proper interpretation, summary
> judgment must of course be refused and interpretation left to the trier of fact.
> *Goodman v. Resolution Trust Corp.,* 7 F.3d 1123, 1126 (4th Cir.1993) (internal
> citations and quotations omitted).

*Washington Metro. Area Transit Auth. v. Potomac Inv. Properties, Inc.*, 476 F.3d 231, 234–35

(4th Cir. 2007).

Ultimately, if "there is a *bona fide* ambiguity in the contract's language or legitimate

doubt as to its application under the circumstances ... the contract [is] submitted to the trier of the

fact for interpretation." *Bd. of Educ. of Charles Cty. v. Plymouth Rubber Co.*, 82 Md. App. 9, 25,

569 A.2d 1288, 1296 (1990). Otherwise, the Court interprets the contract as a matter of law.

### III.

In its Motion, Plaintiff asks the Court to enter partial summary judgment in its favor, (a)

declaring IWA's assignment of the Ground Lease to RSD void and setting it aside; or (b) declaring

that IWA's assignment of the Ground Lease conveyed only a possessory interest to RSD (what

Plaintiff calls "privity of estate") but that it did not establish privity of contract between Plaintiff

(the landlord) and RSD, which would presumably release IWA (the tenant) from its obligations

under the Ground Lease. Mem. in Supp. of Mot. for Partial Summ. J., ECF No. 127-1, at 4. In

the alternative, Plaintiff asks the Court to grant it partial summary judgment declaring that IWA's

assignment is voidable as a matter of law and shifting the burden to Defendants to demonstrate

that the assignment complies with the Restatement (Second) of Contracts § 317(2) or under

established Maryland law or, alternatively, whether the assignment constitutes a fraudulent

conveyance. *Id.*

Plaintiff's Motion ventures beyond the specific question posed by the Court in August

2021, which was: What is the entitlement of an obligor under a contract to know who a proposed

assignee of the other party to contract (i.e., the assignor) is and other relevant information about

the assignee?  For the reasons set forth below, the Court agrees with Plaintiff that an obligor is entitled to receive at least some cursory information regarding a proposed assignee.  The Court denies without prejudice Plaintiff's Motion in all other respects.

### A.

Since this case is based on the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, the Court considers the core issues in accordance with the substantive law of the State of Maryland.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).  Under Maryland choice of law rules, "it is generally accepted that the parties to a contract may agree as to the law which will govern their transaction, even as to issues going to the validity of the contract." *National Glass, Inc. v. J.C. Penney Properties, Inc.,* 336 Md. 606, 610, 650 A.2d 246 (1994) (quotations omitted). Here, both the Ground Lease and Estoppel Agreement contain choice of law provisions which provide that each agreement will be construed and interpreted in accordance with Maryland law.  No question, then, as to the applicability of Maryland substantive law.

In Maryland, leases are considered to be contracts and are construed according to the rules of contract interpretation. *Middlebrook Tech, LLC v. Moore*, 849 A.2d 63, 78 (Md. Ct. Spec. App. 2004).  Maryland courts apply the objective theory of contract interpretation, looking first to the language of the contract itself. *Washington Metro. Area Transit Auth. v. Potomac Inv. Properties, Inc.*, 476 F.3d 231, 235 (4th Cir. 2007) (internal citations omitted).  Thus, "a contract's unambiguous language will not give way to what the parties thought the contract meant or intended it to mean at the time of execution." *Dumbarton Improvement Ass'n v. Druid Ridge Cemetery Co.*, 73 A.3d 224, 232 (Md. 2013) (internal citations omitted).  The court must therefore seek to

"determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Id.*

IWA and RSD argue, and Plaintiff does not dispute, that the language of the lease documents govern the permissibility of assignment. *See CB Structures, Inc. v. Potomac Elec. Power Co.*, 122 F. Supp. 3d 247, 251–52 (D. Md. 2015); *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60 A.3d 1, 23 (Md. 2013).    Defendants contend that the relevant contractual language[5] clearly permits IWA's purported assignment to RSD, an entity, as it happens, is controlled by IWA.  In addition, Defendants point out that the modern approach of contract law favors a liberal assignment policy.  *See* Hunter, *Assignable property interests*, Modern Law of Contracts § 21:8.  *See also Julian v. Christopher*, 575 A.2d 735, 738 (Md. 1990) (Maryland law "favor[s] the free and unrestricted right to alienate interests in property.").

Defendants are also correct that both the Ground Lease and Estoppel Agreement in fact clearly indicate that assignment of the Ground Lease is permitted.  Section 5.2 of the Ground Lease states: "Tenant may assign this Lease and may mortgage its leasehold estate."  The Ground Lease places just one apparent limitation on assignment, which is to limit the tenant's ability to assign the Lease "prior to the substantial completion of the office building described in Section 7.1."  This restriction, however, is no longer operative since the office building has been completed for a number of years.  Nor does the Ground Lease require that the obligor has the absolute right to approve of the assignment in advance.

Similarly, the Estoppel Agreement permits assignment.  Section 19 provides: "If the Lender acquires the Tenant's [IWA's predecessor] interest in the Lease or the Lender acquires a

---

[5] *See* p. 2, *supra*.

9

**A164**

new lease pursuant to any provision of the Lease, the Lender shall have the absolute right to assign the same or sublease all or any portion of the Premises to any third party."

At first blush, the language of the agreements contemplates and permits essentially unhampered assignment by the Tenant. However, at this juncture, the issue is not whether the Ground Lease and Estoppel Agreement permit the purported assignment by IWA to RSD. The question before the Court is what information regarding RSD, if any, is Plaintiff, as party to the original contract (obligor), entitled to receive about the assignment at the time of the proposed assignment?

**B.**

To rephrase the inquiry slightly: If assignment is permitted under a contract, is the party to the original contract, against whom the assignment is made, i.e., the obligor, entitled to know the identity of a proposed assignee and at least some basic information as to the proposed assignee's ability to perform under the contract before the assignment becomes effective? This, as the Court sees it, presents a pure unambiguous legal question for the Court to decide, not an ambiguous clause in the contract deferrable for resolution to a trier of fact. The Court holds that the answer must be in the affirmative. To interpret even the most liberal assignment provision as permitting an assignor to withhold from an obligor any and all information relevant about a proposed assignee would be contrary to common sense as well as to the inherent concept of good faith and fair dealing.[6]

Defendants say that, because the language of the agreements permits assignment with virtually no restrictions, Plaintiff is not entitled to the information about RSD that it requests. *See* Defs. Joint Surreply, ECF No. 146. They insist that the Ground Lease and Estoppel Agreement

---

[6] As the Court posed the hypothetical to counsel at oral argument, without in the least intending to be invidious: Could the assignment be made to a homeless person?

**A165**

alone define their obligation to provide information to Plaintiff and that no documents require them to provide Plaintiff with anything beyond notice the assignment. *Id.* at 3. Plaintiff, on the other hand, submits that it is entitled to obtain sufficient information regarding who the proposed assignee is, to the end of verifying the assignee's ability to meet the assignor's obligations, consistent with principles outlined in the Restatement (Second) of Contracts, § 317.

The Court is unaware of, nor have the parties submitted, any Maryland law addressing the right of an obligor under a contract to receive information about an assignee in advance of the assignment. No cases from other jurisdictions, nor articles appear to address the issue. Nevertheless, Maryland courts have often applied the principles of contract law embodied in the Restatement (Second) of Contracts. *See, e.g., Pub. Serv. Comm'n of Md. v. Panda-Brandywine, L.P.*, 825 A.2d 462, 469 (Md. 2003). The Court, therefore, considers the parties' arguments within the framework of the Restatement.

Section 317(2) of the Restatement (Second) of Contracts, *Assignment of a Right*, provides:

A contractual right can be assigned unless

(a) the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him, or

(b) the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy, or

(c) assignment is validly precluded by contract.

Plaintiff argues that IWA's assignment to RSD is invalid (or perhaps just voidable) primarily based on § 317(2)(a) because, potentially at least, given Plaintiff's current lack of knowledge, the proposed assignment might change its duty as obligor, might materially increase its burden or risk, might materially impair its chance of obtaining return performance, or might

11

**A166**

materially reduce the value of the Ground Lease to it.  In short, in order to be able to determine whether an assignment is invalid, a party cannot do so without at least some knowledge of the assignee's identity and ability to perform.

Comment d to § 317 further explains, in relevant part:

> What is a material variation, an increase in burden or risk, or an impairment of the obligor's expectation of counter-performance under paragraph (2)(a) depends on the nature of the contract and on the circumstances. Both assignment of rights and delegation of performance are normal and permissible incidents of many types of contracts . . . The clause on material impairment of the chance of obtaining return performance operates primarily in cases where the assignment is accompanied by an improper delegation under § 318 or § 319: if the obligor is to perform in exchange for the promise of one person to render a return performance at a future time, substitution of the return promise of another impairs the obligor's expectation of counter-performance. ***But in cases of doubt, adequate assurance of due performance may prevent such an impairment.***

(Emphasis added).

According to Plaintiff, § 318 of the Restatement must also be considered because IWA's purported assignment to RSD seeks to delegate from IWA to RSD the contractual obligations of the Tenant under the Ground Lease.  The Court engages with § 318.

Section 318, *Delegation of Performance of Duty*, provides:

(1) An obligor[7] can properly delegate the performance of his duty to another unless the delegation is contrary to public policy or the terms of his promise.

(2) Unless otherwise agreed, a promise requires performance by a particular person only to the extent that the obligee has a substantial interest in having that person perform or control the acts promised.

(3) Unless the obligee agrees otherwise, neither delegation of performance nor a contract to assume the duty made with the obligor by the person delegated discharges any duty or liability of the delegating obligor.

---

[7] There may be some confusion over the use of the term "obligor" in § 318 of the Restatement.  In § 318, the "obligor" is actually a proposed "assignor," and the "obligee" is the other party to the original contract. In the present case, the term "obligor" has been used to refer to the party to the contract against whom the proposed assignment is made, i.e., the Plaintiff, but in the sense of § 318 Plaintiff would be the "obligee."

Thus, says Plaintiff, to give effect to §§ 317 and 318, the party to a contract against whom an assignment is proposed to be made must have some ability to obtain adequate assurances that the proposed assignee has the ability to perform. Although the Restatement does not define "adequate assurance," Plaintiff argues that knowledge of RSD's identity (its origination, ownership, and structure), as well as its intentions for the property, and ultimately its ability to perform is critical to determine whether the assignment to RSD is valid, especially given the long-term nature of the Ground Lease. ECF No. 127-1 (citing *Crane Ice Cream Co. v. Terminal Freezing & Heating Co.*, 128 A. 280 (Md. 1925). Defendants, on the other hand, argue that §§ 317 and 318 do not apply because the agreements do not require IWA to provide Plaintiff with any information about an assignment beyond giving notice to Plaintiff that an assignment has occurred. *See* Responses in Opp'n, ECF Nos. 132, 136. The Court finds Defendants' position untenable.

The gist of Defendants' position is that IWA has an unfettered right to assign the Ground Lease to any person or entity without disclosing any information regarding the assignee's identity, let alone anything about its origination, ownership, structure, capitalization, i.e., its overall ability to perform under the Ground Lease. But, as the Court sees it, Defendants' argument cuts too far. While RSD may not be the exact hypothetical analog of the homeless person that the Court mused upon at oral argument, its logic surely would apply to a homeless person as assignee.[8]

What if RSD in the present case, like Transamerica Life Insurance Company in the earlier case, simply declares that it will stop paying Plaintiff rent as of some date? RSD was apparently formed in a day. Why couldn't it declare bankruptcy in a day? Or simply dissolve itself? Legal

---

[8] There is a far more realistic and compelling example than the hypothetical homeless person as assignee that the Court mentioned and it comes from very close to home. The litigation before Judge Grimm involved a different issue between parties related if not identical to those here, but the fact is that the earlier litigation came about because the tenant there, Transamerica Life Insurance Company, simply announced that it was going to stop paying rent on the Ground Lease, asserting that any obligation it might have had to the landlord was extinguished.

principles aside, the immediate common sense inquiry of any reasonable person would most certainly be – who is RSD?  Why were they just formed?  Are they able to perform under the Ground Lease?  But then, of course, there is § 317(2) of the Restatement (Second) of Contracts, a legal principle which gives the common sense concern legal force.

The record shows that Plaintiff raised its concern with IWA regarding the apparent lack of commercial activity on the Property, as well as its concern over deferred maintenance, waste, and abandonment.  *See* ECF No. 127-13. In addition, Plaintiff expressed concern regarding RSD's ability to continue to meet its financial obligations under the Ground Lease.  *Id.*  Plaintiff accuses IWA of creating a "sham" entity in effect to shield itself from both its short and long-term obligations under the Ground Lease and Estoppel Agreement.[9]  Plaintiff further contends that information regarding RSD is necessary for Plaintiff to determine whether the assignment was valid.  In other words, Plaintiff says, if it is not able to obtain *any* information regarding RSD upon request, it has no way to determine whether an assignment was valid and/or whether there would be, among other things, a material impairment of likelihood of receiving appropriate performance by RSD.

---

[9] Defendants appear to believe that if, as and when their proposed assignment is effectuated, they will be off the hook for any and all liability under the Ground Lease.  ECF No. 132 at 26; ECF No. 136 at 20.  The Court invites Defendants' attention to Restatement (Second) of Contracts § 318(c). *See supra* text accompanying Note 7.

14

**A169**

Interestingly, IWA itself suggests that the Ground Lease would not permit an assignment to an insolvent person or entity, since such an assignment "would raise the specter of bad faith."[10] ECF No. 132 at 29. According to IWA, the assignment to RSD was made in good faith, such that IWA had no duty to provide Plaintiff with the information it demanded. *Id.* at 29–30. Trust us, say Defendants.[11]

Defendants' stance poses serious problems. Maryland courts have recognized that allowing the transfer of rights and duties under a contract can place significant burdens upon the obligor under a contract. *See, e.g., Crane Ice Cream Co. v. Terminal Freezing & Heating Co.*, 147 Md. 588 (1925). In the event of an assignment, an obligor may find itself in a situation presenting entirely different risks and costs than it initially bargained for. This is not to say that an obligor, after entering into an agreement allowing assignment, may simply block or void an assignment. But implicit in Section 317(2)(a), which prohibits assignments that "materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him," is that the obligor, <u>in good faith</u>, may seek appropriate information as to whether its duties, burdens, or risk might in fact be materially impacted by the assignment of its contract to a proposed assignee.

---

[10] Plaintiff asserts that the covenant of good faith and fair dealing requires Defendants to act reasonably and in good faith. ECF No. 139 at 12. While breach of the covenant of good faith and fair dealing is not a standalone cause of action in Maryland, it nevertheless inheres in every contract case. *See Abt Assocs., Inc. v. JHPIEGO Corp.*, 104 F. Supp. 2d 523, 534 (D. Md. 2000), *aff'd*, 9 F.App'x 172 (4th Cir. 2001) (internal citations omitted); *Abt Assocs., Inc. v. JHPIEGO Corp.*, 104 F. Supp. 2d 523, 534 (D. Md. 2000), *aff'd*, 9 F. App'x 172 (4th Cir. 2001) (internal citations omitted). *See also* 30 *Williston on Contracts* § 77:11 (4th ed.) ("A promisor may be at fault when it breaches its duty to deal in good faith with the other parties or known beneficiaries to a contract. A covenant of good faith is implied in all contracts . . . The covenant imposes on a party both the duty to refrain from rendering performance impossible, and to do everything that the contract presupposes should be done by a party to accomplish the contract's purpose."). Defendants counter that the covenant of good faith and fair dealing does not obligate a party to take any affirmative action not required under the contract. ECF No. 146. at 7–8. There may be circumstances where Defendants' point is well taken. But it is not well taken here.

[11] Worth noting is a relevant proverb popularized if not created by President Reagan: "Trust, but verify."

And the same requirement of good faith applies to the assignor under a contract. It must provide appropriate responses. The Court cannot ignore the obligation of good faith and fair dealing that Maryland courts have held inherent in all contracts, which, the Court would add, cannot simply be renounced at the whim of the parties to a contract.

Accordingly, the Court holds that an obligor under a contract—even a contract permitting assignment subject to no specific limitations—is, upon request, entitled to at least some basic information regarding a proposed assignee by the proposed assignor and proposed assignee—such as the identity of the assignee; if an entity, who the owners and principals of the assignee are; when the assignee, if an entity, was formed and for what purpose, and cursory information about an assignee entity's organization and structure. To be clear: An obligor is not entitled to whatever information it demands, nor is it necessarily entitled to block an assignment based on the information received, although it may, in good faith, delay assignment until a court, if necessary, is able to judge the impact of the proposed assignment on the obligor.

To repeat: The obligor may only seek basic information about the proposed assignee and must do so and the proposed assignor's and proposed assignee's response to its inquiry must proceed – in good faith – and without question, this should occur expeditiously, presumably in a matter of days or a few weeks at most. So, it should be clear that any overreach by the obligor in seeking the relevant information as well as any hard-nosed stonewalling on the part of the proposed assignor or assignee (or their counsel) in response, can and should be subject not only to a court order compelling or denying production of relevant information but also to possible sanctions of the sort contemplated by Federal Rule of Civil Procedure 11.

This particular dust-up in this case causes one to wonder why the issue has not come up in the case law or the legal literature in the past. The answer may well be that parties to a contract

16

**A171**

ordinarily have no reason to object to an assignment or are usually able to come to arrangements agreeable to everyone. Clearly, the concept of good faith and fair dealing inherent in all contracts and, especially in the context of commercial cases, informs the concept of "adequate assurances" when a proposed assignment raises concerns, see UCC § 2-609. But the apparent unique resistance of the assignor and, indeed, assignee (as well as their counsel) in this case have forced the issue.

**C.**

Given that the Court has determined that Plaintiff is entitled to receive basic information about RSD so that Plaintiff may determine whether RSD has the ability to satisfy IWA's ongoing obligations under the Ground Lease, the question becomes whether Defendants have in fact already satisfied that obligation. The Court finds that they have not.

Plaintiff's counsel have appended to Plaintiff's Motion a copy of their communications with RSD's counsel regarding IWA's purported assignment to RSD. *See* ECF Nos. 127-9, 127-11, 127-12, 127-13, 127-14 and 127-17. In Plaintiff's view, the responses it has received have been insufficient to provide adequate assurance that RSD can perform under the Ground Lease and Estoppel Agreement. ECF No. 127-1 at 20–21. Defendants, on the other hand, continue to emphasize that RSD is not and never has been in default of the Ground Lease and state that Plaintiff's letters were met with detailed responses. *See* ECF No. 132 at 8. Defendants insist that the notice of assignment and responsive communications have been sufficient to alleviate any concerns Plaintiff might have had about RSD's ability to perform. *See* ECF No. 136 at 8.

In a letter dated February 22, 2018 from Plaintiff's counsel to RSD's counsel, Plaintiff's counsel noted that Plaintiff had not received certain requested information and was "growing increasingly concerned about the financial and structural viability of the Property, given that there evidently is and has been no commercial activity there." ECF No. 127-9 at 1. The letter further

17

**A172**

noted that Plaintiff had received no information from IWA or RSD regarding the identity of RSD's principals or appropriate contact information. *Id.* Bottom line, however: The letter also stated that Plaintiff harbored "reasonable insecurity with respect to Assignee's ability to perform under the Ground Lease." *Id.* at 2.

RSD's counsel responded on March 30, 2018. ECF No. 127-11. RSD disagreed with the assertion that no commercial activity was taking place at the Property, stating that it had entered into various contracts with certain vendors related to the Property and that it was continuing to evaluate the rental market. *Id.* at 1–2. It further explained that RSD had continued performing its obligations under the Ground Lease, paying monthly rent obligations in a timely fashion. *Id.*

Plaintiff then took the position that the assignment to RSD was invalid. ECF No. 127-12. It explained that it had yet to receive contact information as to who the principals of RSD were. *Id.* Furthermore, says Plaintiff, it discovered through Montgomery County tax records that property tax bills on the Property were still being paid by IWA. *Id.* Plaintiff clarified that it was not seeking any strategic information but was "simply asking Assignee to provide basic identifying information, including the name of a principal of Rock Springs Drive, LLC, who understands what is happening operationally at the building." *Id.* at 3.

From all that appears, no communication occurred between Plaintiff's counsel and RSD's counsel for over a year. ECF No. 127-13. Then, on June 6, 2019, Plaintiff's counsel sent correspondence to RSD's counsel, warning RSD that if it failed to engage in communications with Plaintiff regarding the Property, Plaintiff would challenge the entire validity of the assignment. *Id.* In email correspondence sent later the same month, RSD, apparently for the first time, began to express a willingness to meet with Plaintiff. *See* ECF No. 127-17.

Defendants again asserted that Plaintiff had already received the information that Plaintiff had requested, including contact information for the entity managing the Property. ECF No. 132 at 27–28; ECF No. 136 at 32. In particular, IWA cited two communications with Plaintiff, i.e., the notice of assignment and an email chain involving Charles Camalier, who was described as a point of contact for Plaintiff. *See* ECF No. 136-3, DX-11 *and* DX-13. However, the notice of assignment provided only contact information for RSD's legal counsel, which was not the information sought by Plaintiff. ECF No. 136-3, DX-11. In addition, Charles Camalier on behalf of Plaintiff was given information for contacts with entities who were managing the Property, but not about the principals who owned and operated RSD itself. ECF No. 136-3, DX-13.

The Court returns to the guiding principle: If "the substitution of the right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his change of obtaining return performance, or materially reduce its value to him," an assignment may be at least voidable. Restatement (Second) of Contracts § 317. Clearly Plaintiff has continuously expressed its concern that the assignment by IWA to RSD would materially increase its risk and/or impair its change of obtaining return performance and/or materially reduce the value of the Ground Lease to it. That may or may not be so. But in its communications with RSD's counsel, Plaintiff's counsel has explained the circumstances that gave rise to Plaintiff's doubt. The fact that RSD may have paid the monthly rent does not suffice to provide Plaintiff with adequate assurance of due performance, especially given Plaintiff's claims that the Property continues to languish in vacancy.

In sum, Defendants have not, consistent with the requirements of § 317 of the Restatement (Second) of Contracts, met their obligation to provide information sufficient to give Plaintiff adequate assurance that RSD can fulfill IWA's obligations under the Ground Lease and Estoppel

Agreement. It is unclear to the Court why Defendants want to withhold information as seemingly straightforward as the names and contact information of the proposed assignee's principals. But, for whatever reason, they may do so no longer. Defendants and defense counsel, in particular, are therefore forewarned. The Court is not prepared to tolerate any gamesmanship that might impede the already delayed progress of this case. As the Court has indicated, depending on how discovery develops, with good faith and fair dealing always in play, the Court will not hesitate, if need be, to impose appropriate sanctions.

As RSD points out in its Opposition, certain factual issues remain to be explored in discovery. Although Plaintiff claims that the conveyance to RSD was fraudulent and improper, the parties have yet to explore what information, if any, may go to that issue. Importantly, discovery would also be appropriate to determine whether the purported assignment would materially change Plaintiff's duties or risks under the contracts, would materially impair Plaintiff's chance of obtaining return performance, or would materially reduce its value to Plaintiff.

## IV.

Accordingly, the Court **GRANTS IN PART** the Motion for Partial Summary Judgment insofar as it holds that Defendants have a duty to disclose basic information regarding RSD, consistent with the Restatement (Second) of Contracts, § 317, as set forth in this Opinion so that Plaintiff may obtain adequate assurance that RSD is able to perform IWA's obligations under the Ground Lease and Estoppel Agreements.

The Motion is **DENIED WITHOUT PREJUDICE** in all other respects.

Counsel for the parties **SHALL AGREE** upon a scheduling order within thirty (30) days.

**A175**

A separate Order will **ISSUE.**

**August 3, 2022**

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| Rock Spring Plaza II, LLC<br>6500 rock Spring Drive, Suite 5<br>Bethesda, MD 20817,<br><br>      Plaintiff<br><br>      v.<br><br>    Investors Warranty of America, LLC,<br>    4333 Edgewood Road NE<br>    Cedar Rapids, IA 52499,<br><br>Rock Springs Drive, LLC,<br>1519 York Road<br>Lutherville, MD 21093<br><br>Transamerica Corp.,<br>4333 Edgewood Road NE<br>Cedar Rapids, IA 52499,<br><br>    and<br><br>Jane Does,<br><br>      Defendants. | Case No. 8:20-cv-01502-PJM |

<u>SECOND AMENDED COMPLAINT</u>

Plaintiff Rock Spring Plaza II, LLC ("Rock Spring Plaza," "Plaintiff," or "Landlord"), by counsel, files this Second Amended Complaint[1] against Defendants Investors Warranty of America, LLC ("IWA" or "Tenant"), Rock Springs Drive, LLC ("RSD" or "Assignee"), Transamerica Corp. ("Transamerica"), and Jane Does, certain unidentified individuals and entities (collectively, with Investors Warranty of America, LLC, Rock Springs Drive, LLC, and Transamerica Corp., "Defendants"), and in support thereof alleges as follows:

---

[1] In accordance with Local Rule 103(6)(c), Plaintiff is filing with this Second Amended Complaint a copy of the amended pleading in which stricken material has been lined through and new material has been underlined.

**A177**

## NATURE OF ACTION

1. This is an action brought by the Landlord against Defendants seeking a declaratory judgment that the conveyance of a leasehold interest from Tenant to Assignee was wrongful and fraudulent, and therefore should be voided.

## PARTIES

2. Plaintiff Rock Spring Plaza is a Maryland limited liability company with an address at 6500 Rock Spring Drive, Suite 5, Bethesda, MD 20817. Plaintiff's members are citizens of the state of Maryland.

3. Defendant Investors Warranty of America, LLC, is an Iowa limited liability company with an address at 4333 Edgewood Road NE, Cedar Rapids, IA 52499. Investors Warranty's member is a citizen of Delaware and California.

4. Defendant Rock Springs Drive, LLC, is a Maryland limited liability company with an address at 1519 York Road, Lutherville, MD 21093. One of Rock Springs Drive, LLC's members is a citizen of Delaware and California. On information and belief, none of Rock Springs Drive, LLC's members are citizens of the state of Maryland.

5. Defendant Transamerica Corp. is a Delaware corporation with an address at 4333 Edgewood Road NE, Cedar Rapids, IA 52499, and a principal place of business of Cedar Rapids, IA.

6. Jane Doe Defendants are certain unknown individuals and entities who directed the actions giving rise to the fraudulent conveyance, and who personally stand to gain financially from the fraudulent conveyance.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000.

8. This Court has personal jurisdiction over Defendants because they transact business in Maryland and Plaintiff's claims arise directly out of that business.

**A178**

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Plaintiff's claim occurred in Maryland and the property at issue is located in Maryland.

10. This Court has the authority to grant declaratory relief pursuant to 28 U.S.C. § 2201.

**FACTUAL ALLEGATIONS**

## I. The Ground Lease

11. On November 14, 1990, Landlord's predecessor-in-interest, Anne Camalier, entered into an Amended and Restated Ground Lease Indenture ("Ground Lease") with Tenant's predecessor-in-interest, Rock Spring II Limited Partnership. A "ground lease" is a long-term lease of land only, as opposed to a lease of a building on land or of a unit in a building. *See* Ground Lease, BLACK'S LAW DICTIONARY (10th ed. 2014).

12. The tenant under a ground lease typically operates a business out of the property on the land in order to generate revenues that it will then use to, among other things, pay the "ground rent" to the landlord. Alternatively, the tenant may sublease the property to one or more third party sublessees, to operate a business out of the property. In that case, the tenant to the ground lease would be able to use the rent it receives from its sublessees to pay the ground rent to the landlord. If the tenant builds any improvements (i.e., buildings) on the land, those improvements usually revert to the landlord when the ground lease terminates.

13. Under the Ground Lease at issue here, Landlord leased to Tenant's predecessor-in- interest the land located at 6560 Rock Spring Drive in Bethesda, Maryland (the "Property"). The term of the Ground Lease is 99 years and expires in November 2089.

14. Tenant is a subsidiary of Transamerica, a multibillion-dollar insurance company. Under the terms of the Ground Lease, Tenant agreed to pay Landlord an escalating annual ground rent, payable in monthly one-twelfth installments due on the first of each month. The current monthly installment of ground rent is $144,980.50.

3

**A179**

## II.    Tenant Acquires the Ground Lease But Then Plans Its "Exit Strategy" To Get the Ground Lease "Off Its Books"

15. When Tenant decided to acquire the Ground Lease through foreclosure in 2012 Tenant prepared an analysis and recognized that the Ground Lease would obligate Tenant to pay Plaintiff substantial ground rent through November 2089.  A few years earlier, the primary tenant had opted not to renew, and Tenant knew it would acquire a near-vacant building.

16. After acquiring the Ground Lease, Tenant was unable to secure subtenants for the Property and was unable to sell its interest in the Ground Lease.  Year after year, Tenant wrote down the value of its interest in the Ground Lease, such that by 2017 Tenant recorded the Ground Lease on its books as a liability of $3,000,000.

17. In 2016, Tenant determined that the Ground Lease was "worthless" and designed an "exit strategy" to get the Ground Lease "off its books."

18. Tenant, as part of its "exit strategy," "engaged outside counsel to explore an exit which would stop the monthly losses and any future liability," and discussed internally the "need to be mindful of defending against the fraudulent transfer claims during negotiations [with a potential buyer]."

## III.    Tenant Conveys Its Interest in the Ground Lease to Assignee

19. On August 31, 2017, Landlord received a one-page letter from Tenant indicating that Tenant had assigned its interest in the Ground Lease to RSD, a limited liability company that was formed just six days earlier, on August 25, 2017.  *See* Exhibit A, Letter from Tenant to Landlord (Aug. 31, 2017); Exhibit B, RSD Registration Information.[2]

20. In its letter to Landlord, Tenant did not explain a business purpose for the assignment.  Nor did Tenant provide any information about the identity of Assignee aside from its name.  The letter stated only that if Landlord had any questions, it should contact Robert Barron, an attorney in Fort Lauderdale, Florida.

---

[2]  In accordance with Local Rule 103(6)(b), Plaintiff is attaching only newly added exhibits to this Second Amended Complaint.  Exhibits A through F were attached to Plaintiff's First Amended Complaint (Dkt. 59, Feb. 25, 2021).

21. RSD does not physically occupy the Property and has not generated any income since the Ground Lease was purportedly assigned from Tenant to RSD. On information and belief, RSD terminated Tenant's retention of a broker, and the Property is "off-market," meaning any potential subtenant or buyer would have no reason to believe the Property, in whole or in part, is available for rent or purchase. Tenant and RSD have not operated a business out of the Property or subleased the Property to a third party.

22. Yet, from August 2017 to October 2022, RSD has paid monthly ground rent to Landlord. All funding for the payment of monthly ground rent by RSD to Landlord has come from IWA, which has no obligation to continue to fund ground rent. On information and belief, IWA has continued to fund RSD's financial obligations under the Ground Lease, including payment of ground rent, only because this lawsuit was filed, tolling the running of the statute of limitations on a fraudulent conveyance claim.

23. On information and belief, Tenant conveyed its interest in the Ground Lease to defendant Assignee for the sole purpose of shielding Transamerica and Tenant from their obligation to pay ground rent and fulfill Tenant's other obligations under the Ground Lease. On information and belief, if Plaintiff had not timely filed suit, IWA would have stopped funding RSD, which in turn would have stopped fulfilling the financial obligations under the Ground Lease that IWA purportedly assigned to RSD.

**IV. Assignee Refuses to Provide Any Information About Its Identity or Intentions**

24. Immediately after it received Tenant's letter advising that it assigned the Ground Lease to Assignee (RSD), Landlord contacted Assignee's attorney, Mr. Barron, to inquire as to the identity and intentions of Assignee. Mr. Barron declined to provide the requested information. This was unusual, as the landlord and tenant under a ground lease typically communicate regularly about the tenant's intentions for the property given that most ground leases (including the Ground Lease between Landlord and Tenant) obligate tenant to pay real estate taxes and to

repair and maintain improvements on the property in which the landlord retains a reversionary interest.

25. While Mr. Barron initially indicated that he would contact his client about potentially brokering an introduction with Landlord, Landlord heard nothing from Assignee.

26. On February 22, 2018, Landlord wrote to Assignee again to follow up on its request for basic information about the identity and intentions of Assignee. *See* Exhibit C, Letter from Landlord to Assignee (Feb. 22, 2018). Landlord noted in the letter that it had reviewed the land records of Montgomery County and determined that Defendants had not recorded the assignment or paid recordation taxes. *Id*. at 1. Landlord also noted that there had been no business activity at the Property since notice of the assignment was provided in August 2017. *Id*. Landlord explained that the lack of communication and activity from Assignee was giving Landlord "reasonable insecurity with respect to Assignee's ability to perform under the Ground Lease, including without limitation its financial ability to pay rent, taxes, insurance, utilities, and to maintain the Property in first class operating condition and repair." *Id*. at 2. Landlord also explained that the identity of Assignee's members was essential for Landlord to comply with federal statutes and regulations that place restrictions on Landlord's dealings with certain entities. *Id*. Landlord reiterated its request for information and indicated a willingness to travel to Florida for the meeting. *Id*.

27. Over a month later, on March 30, 2018, Mr. Barron responded to Landlord but refused to provide the requested information and refused to meet with Landlord. *See* Exhibit D, Letter from Assignee to Landlord (Mar. 22, 2018). Assignee's purported reason for refusing to provide the information was that the Ground Lease did not require Assignee to "provide to Landlord any additional information regarding [Assignee's] strategic and proprietary commercial activity and business plans with respect to the property," *id*. at 3, even though Landlord had not requested any of Assignee's "strategic and proprietary" information.

28. On April 25, 2018, Landlord followed up, again by letter, explaining that it was not seeking any strategic and proprietary information and reiterating its request for basic information about

Assignee.  *See* <u>Exhibit E</u>, Letter from Landlord to Assignee (Apr.  25, 2018).  Landlord noted that Assignee's furtiveness was causing Landlord concern as to the legitimacy of the purported conveyance.  *Id*. at 1.  Landlord also noted that it was standard practice for landlords and tenants to maintain regular channels of communication and that Landlord was regularly receiving requests for proposals from potential subtenants, including subtenants who were seeking to occupy several office buildings such as the buildings on the Property, which had been vacant for several years.  *Id*. at 2.  Landlord noted that if Assignee was legitimately interested in engaging in commercial activity at the Property, it would be in both parties' interests to be able to discuss these potential opportunities as they arose.  *Id*.  Finally, Landlord explained that Assignee had a legal obligation to record the assignment of the leasehold interest under Maryland law but that Assignee had failed to do so, further calling into question whether Assignee was a legitimate entity.  *Id*. at 3.

29. Assignee did not respond to Landlord's letter.

**V.    Assignee Has Refused to Engage in Commercial Activity at the Property or Engage with Potential Subtenants**

30. Since the conveyance in August 2017, the Property has languished in vacancy, without any meaningful commercial activity at the Property.  Assignee has repeatedly refused to explore numerous opportunities to sublease the Property to commercially viable tenants.  For example, in November 2017, Landlord learned that Assignee had been approached about a potential opportunity to sublease the Property to Marriott, which was looking to lease a property just like the Property that had been conveyed to Assignee.  Assignee, however, inexplicably declined to submit a proposal for the Marriott deal.

31. Similarly, on June 6, 2019, Landlord informed Assignee that the General Services Administration ("GSA") had expressed an interest in a long-term lease at the Property.  *See* <u>Exhibit G</u>, Letter from Landlord to Assignee (June 6, 2019).[3]  Landlord offered to pursue

---

[3]  This letter was inadvertently omitted as an attachment to the original Complaint and First Amended Complaint.

**A183**

discussions with GSA jointly with the goal of potentially modifying the Ground Lease if discussions proved successful. Assignee rejected further exploration of the GSA opportunity, asserting without explanation that it was not financially viable. Landlord requested that Assignee consult with its broker to evaluate the lease rental rate by GSA's deadline for submitting the best offer lease rent. On information and belief, Assignee did not follow up with its broker or with the GSA, and thus lost the GSA sublease opportunity.

## VI.    Landlord Learns of Assignee's Relationship to Tenant and Transamerica

32. Even though Assignee refused to provide any information as to its true identity, Landlord was able to determine, through a review of Transamerica's public filings and other publicly available information, that Assignee is in fact an affiliate of Tenant and, ultimately, a subsidiary of Transamerica, confirming Landlord's suspicions that Assignee is a sham entity created for the sole purpose of shielding Transamerica and Tenant from their long term financial obligations to pay ground rent. In effect, Transamerica and Tenant retained possession and control of the property after Tenant's interest was purportedly assigned to Assignee.

33. For example, Assignee's Articles of Organization identify a "[f]iling party[] return address" of 2457 Collins Ave, PH2, Miami Beach, Florida 33140." *See* Exhibit F, Articles of Organization for Rock Springs Drive, LLC. A public-records search revealed that the resident of 2457 Collins Ave is Troy T. Taylor, President of Algon Group ("Algon"), a financial advisory firm in Atlanta. Algon has previously retained Assignee's attorney Robert Barron.

34. One of Algon's Senior Managing Directors, David C. Feltman, was formerly the Executive Vice President at Aegon Real Assets US, another Transamerica subsidiary and affiliate of Tenant. *See* Exhibit A at 3. At Aegon, Mr. Feltman was a member of the Aegon Real Estate Executive Committee, the governing approval body for all Aegon/Transamerica U.S. real-estate debt and equity investments.

35. Transamerica's public Securities and Exchange Commission filings further confirm the relationship among Assignee, Tenant, and Transamerica.

   a. According to Transamerica's SEC filings, Assignee is a "person controlled by or under common control with [Transamerica]." Those filings stated that Assignee's members are RCC North America LLC (98% voting interest) and Longshore Ventures LLC (2% voting interest). RCC North America LLC's sole member is Transamerica Corporation.

   b. According to the same public SEC filings, Tenant is also a person controlled by or under common control with Transamerica. Tenant's sole member is RCC North America LLC, the same entity that owns 98% of the voting interests in Assignee.

36. According to Assignee's responses to Plaintiff's interrogatories, however, IWA, not RCC North America LLC, has the 98% interest in Assignee: "Longshore Ventures has a 2% membership and voting interest [in Assignee]. IWA has a 98% ownership and voting interest." RSD's Responses to Plaintiff's First Set of Interrogatories.

37. On information and belief, Defendants perpetrated the fraudulent conveyance and personally stand to gain financially from the fraudulent conveyance.

38. Based on the foregoing—including the fact that Assignee (i) was formed just days before the conveyance, (ii) is a related party to Tenant and Transamerica, (iii) has refused to provide any information to Landlord about its identity and intentions, (iv) has not engaged in any commercial activity at the Property, and (v) refuses to engage with prospective subtenants— Landlord believed that Tenant conveyed its interest to Assignee for the sole purpose of avoiding its obligation to pay rent to Landlord under the Ground Lease and, as such, filed this lawsuit in June 2020.

39. On information and belief, Tenant has undercapitalized Assignee and initially planned to provide it with only enough funds to pay monthly rent through August 31, 2020, and Assignee does not have the ability on its own to raise capital, take out loans, or otherwise generate revenues to meet its obligations under the Ground Lease.

40. On information and belief, had Plaintiff not initiated this lawsuit in June 2020, Tenant would have ceased paying monthly rent after August 31, 2020, which is the date that Maryland's three-year statute of limitations for fraudulent conveyance claims would have run.

41. On information and belief, Tenant planned to contend that any action brought by Landlord after Assignee stopped paying rent would be barred by Maryland's statute of limitations. Accordingly, Landlord brings this action to declare invalid Tenant's purported assignment to Assignee.

### COUNT I
### Wrongful, Invalid Assignment (IWA)

42. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as fully set forth herein.

43. In August 2017, Tenant purported to convey by assignment its interest in the Ground Lease to Assignee.

44. Tenant intended the assignment to be an "exit strategy" to get what it deemed a "worthless" investment for which it had substantial on-going financial obligations, including the requirement to pay ground rent, taxes, insurance, and repair and maintenance expenses, "off its books."

45. Plaintiff, upon learning of the assignment, promptly and in good faith, sought information as to whether the assignment might materially increase the burden or risk imposed on Plaintiff or materially impair Plaintiff's chance of obtaining return performance, or materially reduce the Ground Lease's value to Plaintiff.

46. Tenant and Assignee did not provide adequate information to Plaintiff about Assignee, its identity, and its ability to perform.

47. Without adequate knowledge of Assignee's identity and ability to perform, Plaintiff could not confirm the validity of the assignment.

48. Tenant breached the covenant of good faith and fair dealing implied in the Ground Lease because it sought to assign the Ground Lease to a sham entity that it controlled to avoid its

long-term financial obligations under the Ground Lease, leaving Assignee without assets or business operations sufficient to fulfill its obligations.

49. The purported assignment of the Ground Lease to Assignee materially increases the burden and risk imposed on Plaintiff by the Ground Lease, materially impairs Plaintiff's chance of obtaining return performance under the Ground Lease, and/or materially reduces the Ground Lease's value to Plaintiff.

50. The purported assignment of the Ground Lease by Tenant to Assignee is contrary to public policy and the terms of Tenant's promise to Plaintiff because Tenant knows, and knew at the time of the purported assignment, that Assignee could not fulfill Tenant's obligations under the Ground Lease.

51. Tenant's purported assignment of the Ground Lease to Assignee does not discharge Tenant of its duties to Plaintiff under the Ground Lease.

52. Accordingly, the Court should enter judgment that Tenant's purported assignment to Assignee was wrongful and invalid and should void the assignment or, in the alternative, should declare that IWA remains in privity of contract with Landlord under the Ground Lease and therefore is jointly and severally liable with RSD for the satisfaction of the tenant's obligations under the Ground Lease.

**COUNT II**
**Declaratory Judgment That Assignment Was A Fraudulent Conveyance**

53. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

54. In August 2017, Tenant conveyed by assignment its interest in the Property to Assignee.

55. The conveyance was made with the intent to hinder, delay, or defraud Landlord.  Tenant conveyed its interest in the Property to avoid its obligation to pay rent under the Ground Lease to landlord.

56. By assigning its interest in the Property, Tenant and Transamerica used a sham entity, Assignee, as an instrumentality to evade their long term financial obligations under the Ground Lease

11

**A187**

and to implement their fraudulent scheme in which Assignee is left without assets sufficient to fulfill its obligations.

57. Accordingly, Plaintiff seeks a declaratory judgment that the conveyance constitutes a fraudulent conveyance.

## COUNT III
### Set Aside the Fraudulent Conveyance

58. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

59. Defendants made the conveyance with the intent to hinder, delay, or defraud Landlord.

60. Accordingly, the Court should set aside the fraudulent conveyance under Md. Comm. Law § 15-210.

## COUNT IV
### Pierce the Corporate Veil to Enter Judgment that Landlord May Collect Rent From Tenant for the Remainder of the Lease

61. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

62. Defendants made the conveyance with the intent to defraud Landlord.

63. Tenant has used Assignee merely as a shield to defraud Landlord and for the perpetration of the fraudulent conveyance.

64. Accordingly, the Court should pierce the corporate veil and enter judgment that Landlord may collect rent from Tenant for the remainder of the lease term.

## COUNT V
### Judgment That Tenant is Alter Ego of Assignee and Transamerica is the Alter Ego of Tenant

65. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

66. Assignee is an affiliate of Tenant and, ultimately, a subsidiary of Transamerica. Assignee was created for the sole purpose of shielding Transamerica and Tenant from their obligation to pay ground rent.

**A188**

67. Defendants have failed to observe the corporate entity.

68. Defendants operate the businesses or deal with the property as if they are not separate entities.

69. Accordingly, the Court should enter judgment that Tenant is the alter ego of Assignee and Transamerica is the alter ego of Tenant.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

a.    Issue a declaratory judgment that Tenant's purported assignment of its interest in the Property to Assignee was wrongful, invalid, and a fraudulent conveyance;

b.    Set aside the assignment or, in the alternative, declare that Tenant remains in privity of contract with Landlord under the Ground Lease and therefore is jointly and severally liable with Assignee for the satisfaction of Tenant's obligations under the Ground Lease;

c.    Enter judgment that Tenant is the alter ego of Assignee;

d.    Enter judgment that Transamerica is the alter ego of Tenant; and

e.    Provide such other and further relief as the Court deems just and proper.

Dated:  November 17, 2022                    Respectfully submitted,

_/s/ William M. Bosch_
William M. Bosch (D. Md. Bar No. 16017)
Alvin Dunn (D. Md. Bar No. 29068)
Katherine Danial (D. Md. Bar No. 21270)
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone: 202-663-8000
Facsimile: 202-663-8007
william.bosch@pillsburylaw.com
alvin.dunn@pillsburylaw.com
katherine.danial@pillsburylaw.com

_Attorneys for Plaintiff Rock Spring Plaza II, LLC_

13

**A189**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

"APPROVED" THIS _17_ DAY
of __JAN__ , 20_23_.

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Rock Spring Plaza II, LLC, | |
| *Plaintiff,* | |
| v. | No. 8:20-cv-01502-PJM |
| Investors Warranty of America, LLC, et al. | |
| *Defendants.* | |

### STIPULATION OF DISMISSAL WITHOUT PREJUDICE

Plaintiff Rock Spring Plaza II, LLC ("RSP") and Defendant Transamerica Corp. ("Transamerica") stipulate pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) that this action is dismissed without prejudice as to all of RSP's claims against Transamerica. This action will proceed against the remaining Defendants.

Dated: January 13, 2023

/s/ William M. Bosch
William M. Bosch (Bar No. 16017)
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, DC 20036-3006
william.bosch@pillsburylaw.com
(202) 663-9392

*Counsel for Plaintiff*
*Rock Spring Plaza II, LLC*

/s/ Anthony L. Meagher
Anthony L. Meagher (Bar No. 05710)
DLA PIPER LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, MD 21209-3600
anthony.meagher@dlapiper.com
(410) 580-3000

*Counsel for Defendant*
*Transamerica Corp.*

4894-5376-2121.v2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ROCK SPRING PLAZA II, LLC | |
| Plaintiff, | |
| v. | Civil Action No. 8:20-cv-01502-PJM |
| INVESTORS WARRANTY OF AMERICA, LLC, et al., | |
| Defendants. | |

**PLAINTIFF ROCK SPRING PLAZA II, LLC'S NOTICE OF
FILING ITS MOTION TO COMPEL**

Defendant Investors Warranty of America, LLC ("IWA") filed its Response in

Opposition to Plaintiff Rock Spring Plaza II's ("Plaintiff") Motion to Compel and Request for *In*

*Camera* Review ("Opposition") prior to Plaintiff's Motion to Compel Against IWA and Request

for *In Camera* Review ("Motion") was fully briefed, without including Plaintiff's Motion, and

without conferring with counsel required under Local Rule 104.7 and 104.8(b). It is evident that

any further efforts to compromise on the issues raised in the Motion would be futile, and that

such issues are now ripe for submission to the Court. In light of this, pursuant to such Local

Rules, Plaintiff certifies that the parties are unable to resolve their dispute and Plaintiff hereby

gives notice, pursuant to Local Rule 104.8, of the filing of the following documents:

- Plaintiff's Motion to Compel Against IWA and Request for *In Camera* Review (attached hereto as Exhibit A)
- IWA's Response in Opposition to Plaintiff's Motion to Compel and Request for *In Camera* Review (attached hereto as Exhibit B)
- Plaintiff's Reply in Support of Motion to Compel Against IWA and Request for *In Camera* Review (attached hereto as Exhibit C)
- Plaintiff's Proposed Order (attached hereto as Exhibit D)

**A191**

Dated:  January 25, 2023

Respectfully submitted,

*/s/ William M. Bosch*
William M. Bosch
Alvin Dunn
Katherine Danial
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone: 202-663-8000
Facsimile: 202-663-8007
william.bosch@pillsburylaw.com
alvin.dunn@pillsburylaw.com
katherine.danial@pillsburylaw.com

*Attorneys for Plaintiff Rock Spring Plaza II,*
*LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 25th day of January, 2023, I caused a copy of the foregoing Plaintiff Rock Spring Plaza II, LLC's Reply in Support of Its Motion to Compel Against Defendant Investors Warranty of America, LLC and Request for *In Camera* Review to be served via email on all counsel of record.

Respectfully submitted,

/s/ *Katherine T. Danial*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ROCK SPRING PLAZA II, LLC | |
| Plaintiff, | |
| v. | Civil Action No. 20-cv-01502-PJM |
| INVESTORS WARRANTY OF AMERICA, LLC, et al., | |
| Defendants. | |

**PLAINTIFF ROCK SPRING PLAZA II, LLC'S MOTION TO COMPEL AGAINST
DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC
AND REQUEST FOR *IN CAMERA* REVIEW**

Plaintiff Rock Spring Plaza II, LLC ("Plaintiff"), pursuant to Local Rule 104.8, files this

Motion to Compel against Investors Warranty of America, LLC ("IWA") and Request for *In

Camera* Review.

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

This motion concerns documents IWA is improperly withholding based on its assertion

that they are protected from discovery by the attorney-client privilege.  IWA's position is

improper in three ways.

1. Crime-fraud exception.  At its heart, this case concerns IWA's fraudulent scheme to

avoid its long-term obligations under the Ground Lease by forming a new sham entity and

purporting to transfer to that sham entity the Ground Lease, including all of IWA's obligations to

Plaintiff under the Ground Lease.  Because, on information and belief, IWA used attorneys in

order to engage in the fraud, IWA should not be permitted to hide behind the attorney-client

privilege to withhold from Plaintiff documents that will lay bare IWA's fraudulent scheme.

1

4861-3044-5373.v24

2. <u>Common interest doctrine</u>. IWA waived the protections of the attorney-client privilege when it shared privileged communications with Defendant Rock Springs Drive LLC ("RSD") and/or Defendant Transamerica Corporation ("Transamerica") because IWA has not formally asserted the common interest privilege and has not presented evidence of a common interest agreement.

3. <u>Forward date cut-off</u>. IWA's communications in furtherance of its fraudulent scheme *after* Plaintiff filed its complaint are highly relevant, and IWA should not be permitted to arbitrarily cut off its privilege log and productions as of the date Plaintiff filed the Complaint.

## II.    FACTUAL BACKGROUND

On September 21, 2022, IWA provided a 195-page privilege log for 1302 documents withheld on the grounds of privilege (the "Original Log"). After reviewing the Original Log, Plaintiff requested that IWA remediate a long list of deficiencies that prevented Plaintiff from assessing the applicability of the asserted privilege. Exhibit A, Letter from K. Danial to R. Davis, Sept. 27, 2022. In response, although IWA refused to produce documents dated after this case was initiated, IWA agreed to send an updated privilege log and did so on October 11, 2022 (the "First Amended Log"). Exhibit B, Letter from R. Davis to K. Danial, Oct. 7, 2022.

Numerous deficiencies remained in the First Amended Log, now 218 pages with 1244 entries, so Plaintiff again reached out to IWA and renewed its requests, including that IWA log responsive post-litigation documents. Exhibit C, Letter from K. Danial to R. Davis, Nov. 3, 2022. IWA again refused to provide documents created after the lawsuit was filed, claiming that pre-litigation letters exchanged between Plaintiff and IWA from 2017 until 2020 satisfy its obligation, and maintained this position during a meet and confer between the parties on the same day the letter was sent. Exhibit D, Letter from R. Davis to K. Danial, Nov. 16, 2022.

**A196**

4861-3044-5373.v24

IWA provided a second amended privilege log on November 18, 2022 (the "Second Amended Log").  The Second Amended Log is 161 pages long and contains 1192 entries, and while it represents an improvement from the Original Log, it remains deficient.  For a third time, Plaintiff outlined the remaining deficiencies and renewed its request for communications dated through IWA's discovery collection date.  Exhibit E, Email from K. Danial to R. Davis, Nov. 23, 2022; Exhibit F, Letter from K. Danial to R. Davis, Nov. 28, 2022.  IWA in response asserted that all the entries challenged by Plaintiff are proper (despite Plaintiff highlighting, for example, attachments that IWA has already produced and that Plaintiff *itself* composed) (Exhibit G, Letter from R. Davis to K. Danial, Dec. 2, 2022), and during the parties' meet and confer maintained that it is not required to produce any additional documents or to update the Second Updated Log.

## III.    ARGUMENT

As to a select group of documents (identified in Exhibit M), the Court should conduct an *in camera* review because there is a factual basis to support a good faith belief by a reasonable person that *in camera* review may demonstrate that the crime-fraud exception apples.  In addition, IWA should be ordered to produce documents that are not privileged because they are not protected by the common interest doctrine.  Finally, IWA should be ordered to supplement its privilege log and productions because IWA has not logged documents dated after September 2020 and has not produced documents dated after January 2021.

### A.    *In Camera* Review of Certain Documents Will Reveal That IWA's Alleged Privileged Communications Fall Within the Crime-Fraud Exception

The Supreme Court has long recognized that the attorney-client privilege does not apply where a client consults an attorney for advice in furtherance of a crime or fraud.  Known as the "crime-fraud exception," the attorney-client privilege "ceas[es] to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing,* but to *future wrongdoing."*

3

**A197**

*United States v. Zolin*, 491 U.S. 554, 562-63 (1989) (quoting 8 Wigmore, § 2298, p. 573) (emphasis in original). The crime-fraud exception also applies to documents withheld on work product grounds. *See, e.g., United States v. Under Seal (In re Grand Jury Proceedings),* 102 F.3d 748, 751 (4th Cir. 1996).

The crime-fraud exception was recognized under Maryland law in *Newman v. State,* where the court aligned it with the Restatement (Third) of the Law Governing Lawyers and held that the attorney-client privilege does not apply to a communication occurring when a client:

> (a) Consults a lawyer for the purpose, later accomplished, of obtaining assistance to engage in a crime or fraud or aiding a third person to do so, or

> (b) Regardless of a client's purpose at the time of consultation, uses the lawyer's advice or other services to engage in or assist a crime or fraud.

384 Md. 285, 309 (2004) (quoting Restatement (Third) of the Law Governing Lawyers § 82 (Am. Law Inst. 2000, 2004 cum. supp.)).

While not all fraudulent conveyances under the Maryland Uniform Fraudulent Conveyance Act trigger the crime-fraud exception, an alleged fraudulent conveyance under the statute *can* pierce the attorney-client privilege if the allegations "present sufficient evidence of deception, dishonesty, misrepresentation, falsification, or forgery." *United Bank v. Buckingham*, 301 F. Supp. 3d 547, 554 (D. Md. 2018) (internal quotations omitted). The requisite "actual fraud" must not just be intentional or implied by statute, it must include "wrongful intent." *Id.* at 553. The prima facie showing of actual fraud need not "conclusively prove the elements of the purported crime or fraud…but the movant must show that the client possessed the requisite intent" or that "communications were either made for an unlawful purpose or that communications reflect ongoing future unlawful activity." *Id.* at 555 (quoting *In re Andrews*, 186 B.R. 219, 222 (E.D. Va. Bankr. 1995). Here, Plaintiff meets the required showing.

4

**A198**

4861-3044-5373.v24

1.    **The Court Has Discretion to Conduct an *In Camera* Review to Determine If the Crime-Fraud Exception Applies**

The Court should exercise its discretion to conduct *in camera* review "to determine whether allegedly privileged attorney-client communications fall within the crime-fraud exception." *United States v. Zolin*, 491 U.S. 554, 574 (1989).  To determine whether *in camera* review is warranted, the Supreme Court adopted a threshold evidentiary standard less "than is required ultimately to overcome the privilege." *Id. at* 572.  The threshold "need not be a stringent one," and the party seeking *in camera* review must simply demonstrate "a factual basis adequate to support a good faith belief by a reasonable person…that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception apples." *Id; see also Koch v. Specialized Care Servs., Inc.*, 437 F. Supp. 2d 362, 378 (D. Md. 2005) ("In order for the crime-fraud exception to apply, it is not necessary, of course, for the Court to find that the 'injurious falsehood or fraud' indeed occurred.  The Court does not reach the ultimate issue at this juncture.").

2.    **There is a Strong Evidentiary Basis for the Court to Exercise Its Discretion to Conduct *In Camera* Review**

Although no depositions have been conducted to date, IWA's documents alone provide ample evidence that IWA used its attorneys to help it devise a deceptive and dishonest scheme to assign the Ground Lease to an entity that it seeks to hold out as a bona fide assignee, but that, in reality, is nothing of the sort.  As of July 2016, more than one year prior to the purported assignment to RSD, IWA determined that the Ground Lease was "worthless" and expressed the desire for an "exit strategy to this to get it off the books."  Exhibit H, Email from N. Hutchinson to D. Wirtjes, J. Gilmore, and M. Pithan, July 7, 2016.  To that end, IWA "engaged outside counsel to explore an exit which would stop the monthly losses **and any future liability.**" *Id.* (emphasis added); *see also* Exhibit I, Email from N. Koluch to D. Feltman and T. Schefter, Jan.

5

**A199**

3-4, 2017.  That outside counsel was James Swoka at Seyfarth Shaw LLP, the same firm

representing IWA in this lawsuit.  Exhibit J, Email from J. Guso to D. Feltman, R. Barron, and T.

Taylor, Feb. 9, 2017.

Initially, IWA attempted to sell the Ground Lease to an unrelated independent, bona fide

purchaser to implement its exit strategy.  Had it done so, Plaintiff never would not have been

forced to bring this lawsuit.  But IWA soon learned that a potential bona fide purchaser of its

"worthless" investment not only would decline to pay consideration to IWA for its interest, but

actually would require IWA to pay **the purchaser** tens of millions of dollars to acquire the

Ground Lease interest from IWA– with its certain long-term obligations and no realistic near-

term prospect of generating revenues.  Ex. I.  Importantly, IWA already was aware of the "need

to be mindful of defending against the fraudulent transfer claim during negotiations [with a

potential buyer]." *Id*.

Unable to sell the Ground Lease to an unrelated third party in a bona fide arms-length

transaction, IWA, using its attorneys, devised its illegitimate, fraudulent exit strategy.  IWA

created RSD as a special-purpose entity that is owned 98% by IWA and 2% by another newly

formed special-purpose entity, Longshore Ventures LLC ("Longshore"), and six days later

purportedly assigned the Ground Lease to RSD.  Exhibit K, RSD Registration Information; *see

also* Exhibit L, RSD Operating Agreement.  Confirming the sham nature of the gratuitous

"assignment," Longshore contributed no capital for its 2% interest and had no obligation to make

any capital contributions to RSD.  Ex. L. Further, IWA reserved in RSD's Operating Agreement

the option to regain full control over the Ground Lease interest at any time by re-acquiring

Longshore's 2% interest for nominal consideration (i.e., $1,000).  *Id.*

6

4861-3044-5373.v24

IWA has asserted – after the fact – that this suspicious arrangement is about IWA "trying to protect its collateral" (Hr'g Tr., 25, Jan. 13, 2022) and that RSD was formed "for the purposes of either selling or leasing the Property, or finding another long-term, but profitable, solution for the Leasehold Estate." IWA Resp. Opp'n Pl.'s Mot. Partial Summ. J., ECF No. 132 at 6. This rationalization does not comport with the reality that, prior to the sham assignment, IWA *already held the Ground Lease asset; already had attempted to sell it to a bona fide purchaser but had failed; and determined that it needed another "exit strategy to this to get it off the books."* Even if Longshore is "the best of the best" (in IWA's words), IWA more easily could have *itself* directly hired Longshore to attempt to turn around the property. It had no need to devote time and resources to attorneys and business specialists to create a new entity.

While forming a new special-purpose entity to make a *new* acquisition of a distressed property does not smell of fraud, that is not what happened here. In this case, IWA already held a distressed property that it concluded was going to require millions of dollars in ongoing ground rent payments with no near-term possibility of producing positive cash flow. IWA formed a new joint venture solely to get the Ground Lease "off the books," which was not legitimate.

While there were 69 years remaining on the Ground Lease at the time of the purported assignment, IWA only committed to make capital contributions of up to $3.9 million. Ex. L. This would only cover rent and operating expenses until August 31, 2020, not coincidentally lining up with when the statute of limitations for Plaintiff to file a fraudulent conveyance claim would expire. The inference is clear and compelling: If Plaintiff had not timely filed its complaint, RSD would have stopped paying rent, leaving Plaintiff to chase a sham entity that has no assets and that IWA never intended to support.

4861-3044-5373.v24

The undisputed facts are that IWA was contractually obligated to satisfy those long-term financial obligations before the assignment but intended to "exit" that obligation by creating a new entity that it controlled and that has no financial resources other than from IWA, and then concealed IWA's membership in and control over RSD.  *See* Defs.' Joint Resp. Pl.'s Resp. Mem. Order Dated Sept. 22, 2022, ECF No. 158; Tel. Conf. Tr., 6-9, Oct. 13, 2022.  As Defendants have confirmed on the record, RSD still has no independent ability to fulfil tenant's obligations under the Ground Lease, as capital contributions by IWA have been and continue to be optional.  Tel. Conf. Tr., 6-9, Oct. 13, 2022.  Defendants concealed all this information from Plaintiff until forced to turn it over through discovery, and "a failure to disclose…comfortably fits within the definition of misrepresentation, dishonesty, and deception."  *United Bank* 301 F. Supp. 3d at 557 (internal citation and quotations omitted).

In light of the evidence of deception, dishonesty, and misrepresentation already gathered through discovery, a reasonable person would conclude that *in camera* review of documents may demonstrate that the crime-fraud exception applies.  Given the specific fraud alleged here involving the assignment to a sham entity and Defendants' concerted efforts to conceal IWA's involvement (and intention to "exit" its "worthless" investment in the Ground Lease), Plaintiff has identified a subset of documents that IWA is withholding on privilege grounds that are tied temporally and by subject matter (based on the limited information provided on IWA's log) to the formulation of IWA's "exit strategy":  the decision to form RSD and to assign the Ground Lease to RSD; the decision not to record the deed reflecting that assignment (because the recordation would have required IWA to disclose its ownership interest) (Exhibit O, Email from P. Rubin to G. Van Gorp, T. Taylor, and B. Johnson, July 17, 2019); communications about Defendants' decision not to pursue a sublease with the GSA (because any bid would have

4861-3044-5373.v24

required IWA to disclose its ownership interest) (Exhibit P, Mem. from P. Rubin to T. Taylor, May 10, 2019); communications surrounding Defendants' non-response to Plaintiff's pre-Complaint requests for information about RSD; and communications surrounding Defendants' coordinated response once Plaintiff exposed the fraudulent conveyance by filing the initial Complaint.

After conducting an *in camera* review of this limited set of documents, Plaintiff anticipates that the Court will apply the crime-fraud exception and require IWA to produce to Plaintiff the fraud-related documents listed in Exhibit M.

### B.    IWA Should Produce All Logged Communications with RSD and/or Transamerica Because the Defendants Do Not Share a Joint Defense or Common Interest Privilege

The Court should order IWA to produce communications with RSD and/or Transamerica that it logged as privileged.  The Second Amended Log includes 148 communications that include RSD and/or Transamerica personnel (and/or counsel) listed in Exhibit N.  If any privilege applied to such documents, the privilege was waived when IWA shared the communications with RSD and/or Transamerica.  *See Hawkins v. Stables*, 148 F.3d 379, 384 (4th Cir. 1998) (noting "waiver occurs when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege").

IWA has not formally asserted the common interest privilege, let alone presented evidence of an agreement or "common legal enterprise" with RSD and/or Transamerica.[1]  In

---

[1]  The proponent of the common interest privilege has the burden of establishing it by evidencing an agreement or meeting of the minds between the parties who share the common interest. *Hempel v. Cydan Dev., Inc.*, No. PX-18-3404, 2020 WL 4933634, at *7-8 (D. Md. Aug. 24, 2020) (The common interest privilege applies "when two or more parties consult or retain an attorney concerning a legal matter in which they share a common interest.") (internal citation and quotations omitted).  While the agreement does not need to be in writing or in a particular

**A203**

addition to the existence of an agreement, a party seeking protection under the common interest

privilege "must establish that *when* communications were shared among individuals with

common legal interests, the act of sharing was part of an ongoing common legal enterprise."

*Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398,

416 (D. Md. 2005) ("In determining the applicability of the privilege, the focus is not on when

[the] documents were generated, but on the circumstances surrounding the disclosure of [the]

privileged documents to a jointly interested third party.") (internal quotations omitted).  It is

insufficient that IWA, RSD, and Transamerica are affiliated entities and co-Defendants and that

IWA attempted to assign the Ground Lease to RSD.  *See id.* at 416 (explaining "unless there is

'common ownership or control,' courts engage in a painstaking analysis to determine whether

'the third party... shares an identical, and not merely similar, legal interest as the client with

respect to the subject matter of the communication between the client and its attorney.'")

(quoting *Roberts v. Carrier Corp.*, 107 F.R.D. 678, 678-88 (N.D. Ind. 1985)).

Further, IWA, RSD, and Transamerica's interests are not completely in alignment.  For

example, RSD loses nothing if IWA remains financially obligated to Plaintiff, but IWA's exit

strategy fails.  Indeed, IWA has put as much distance between itself and RSD as possible,

arguing that RSD is "a separate legal entity from IWA" and "not the alter ego of IWA."  IWA

Resp. Opp'n Pl.'s Mot. Partial Summ. J., ECF No. 132 at 28.  IWA cannot have its cake and eat

it too: it cannot assert that RSD is a good faith assignee for value, on the one hand, while

simultaneously trying to extend the cloak of privilege over inter-company communications

(including those in furtherance of the fraud).  Accordingly, by including a third party, IWA must

---

form, "[m]ere indicia of joint strategy as of a particular point in time are insufficient to
demonstrate that a common interest agreement has been formed."  *Id.*

**A204**

produce all communications with RSD and/or Transamerica because any privilege has been

waived. *See Hawkins*, 148 F.3d at 384.

### C. IWA Must Produce or Log All Relevant Documents, Including Those Created After the Case Was Filed

The crux of Plaintiff's fraudulent conveyance claim is that IWA formed RSD and

concocted a sham assignment of the Ground Lease to RSD to perpetrate a fraud. Therefore,

documents pertaining to what IWA did and with whom it communicated ***after*** learning that

Plaintiff had accused Defendants of fraud are relevant. Based on the documents produced to date

and the responses – and nonresponses – Defendants provided to Plaintiff regarding the

assignment, Defendants' communications in furtherance of its deception and ongoing fraud after

IWA notified Plaintiff of the assignment and after Plaintiff first accused Defendants of fraud in

this lawsuit are as relevant as Defendants' communications in planning and implementing the

purported assignment.

It is axiomatic that parties are entitled to "obtain discovery regarding any nonprivileged

matter that is relevant to any party's claim or defense and proportional to the needs of the case."

Fed. R. Civ. P. 26(b); Md. R. Civ. P. 2-402(a). Federal courts recognize that "the plain language

of Rule 26(b)(5) extends to all documents withheld from production on a claim of privilege,"

regardless of whether they were created post-complaint, and "common sense dictates that even

post-filing…must be listed on the privilege log" when it is relevant to the issues in dispute.[2]

---

[2] *See, e.g., Horton v. United States*, 204 F.R.D. 670, 673 (D. Colo. 2002) (ordering production of post-complaint documents relevant to lawsuit); *Close Armstrong LLC v. Trunkline Gas Co., LLC*, No. 3:18-CV-270-PPS-MGG, 2021 WL 1207592, at *9 (N.D. Ind. Mar. 31, 2021) (ordering production of privilege log "reflecting documents or communications withheld on grounds of privilege or work product protection regardless of if they were created before or after the start of this lawsuit."); *Barker v. Kapsch Trafficcom USA, Inc.*, No. 119CV00987TWPMJD, 2020 WL 3618945, at *2 (S.D. Ind. July 1, 2020) (ordering plaintiff

**A205**

4861-3044-5373.v24

Even if a relevant document is created after the filing of a complaint, it must still be logged as privileged or produced. Indeed, "[t]iming is merely one evidentiary factor, and sometimes not the most important one," in determining whether documents should be produced. *Benson v. Rosenthal*, No. CV 15-782, 2016 WL 1046126, at *10 (E.D. La. Mar. 16, 2016) (ordering production and logging of post-complaint documents). Moreover, "the mere fact that a document concerning the litigation is created…after the lawsuit is commenced does not mean necessarily that the document is privileged and not subject to discovery." *Horton*, 204 F.R.D. at 673. Thus, even if a relevant document is created after the filing of a complaint, it must still be logged with sufficient information to substantiate the claim of privilege, or it must be produced. Accordingly, the Court should order IWA to log privileged and produce nonprivileged responsive documents post-dating the filing of the Complaint.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court (1) conduct *in camera* review of selected entries on IWA's Second Amended Log, attached hereto as Exhibit M, where the attorney-client privilege is inapplicable in the light of the crime-fraud exception; (2) order IWA to produce all documents and/or communications on its Second Amended Log between IWA and RSD, as they are not privileged; and (3) order IWA to supplement its Second Amended Log and productions with relevant documents and/or communications post-dating the filing of the Complaint.

---

to produce privilege log as to relevant post-filing documents); *BASF Aktiengesellschaft v. Reilly Indus., Inc.*, 283 F. Supp. 2d 1000, 1007 n. 3 (S.D. Ind. 2003) (ordering production of post-lawsuit log).

**A206**

4861-3044-5373.v24

Dated:  December 23, 2022

Respectfully submitted,

*/s/ William M. Bosch*
William M. Bosch
Alvin Dunn
Katherine Danial
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone:  202-663-8000
Facsimile:  202-663-8007
william.bosch@pillsburylaw.com
alvin.dunn@pillsburylaw.com
katherine.danial@pillsburylaw.com

*Attorneys for Plaintiff Rock Springs Plaza II, LLC*

13

**A207**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of December, 2022, I caused a copy of the foregoing

Rock Spring Plaza II, LLC's Notice of Rule 30(b)(6) Deposition of Investors Warranty of

America, LLC to be served via email on all counsel of record.

<i>/s/ Nicole Steinberg</i>

4861-3044-5373.v24

# EXHIBIT A



Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW | Washington, DC 20036 | tel 202.663.8000 | fax 202.663.8007

September 27, 2022

*Via Electronic Mail*

Rebecca A. Davis, Esq.
Seyfarth Shaw LLP
1075 Peachtree Street NE, Suite 2500
Atlanta, Georgia 30309

> Re: *Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC et al., No. 8:20-cv-01502-PJM* – **IWA Privilege Log Deficiencies**

Dear Ms. Davis:

We write regarding several deficiencies in IWA's privilege log.

First, IWA's privilege log is missing some of the basic information needed to demonstrate a basis for privilege. While the log includes some of the fields associated with the allegedly privileged correspondence and documents, the entries do not provide the email title/subject lines; document date; or the entry document relationship with other entries (i.e., parent emails, attachments, or standalone documents). Please provide Plaintiff with a revised privilege log that includes the missing information.

Second, the privilege log only includes documents that have been withheld entirely for privilege purposes and does not identify any redacted documents. However, there are several documents in your productions (for example IWA0014361, IWA0020819, and IWA0021208) that have been redacted and should be included in the privilege log. Please provide a supplemental privilege log that includes and identifies redacted documents, with their associated Bates numbers.

Third, the PDF of the privilege log has been ordered by IWA's internal "DOC ID" column. It is standard practice that privilege logs are ordered chronologically by date, or, at the very least, provided in a format (i.e., excel) that can be manipulated to sort by date. Please provide Plaintiff with a version of your privilege log that is, or can be, sorted by date.

Fourth, IWA has withheld a number of documents on the basis of "Work Product" where the description contains no reference to litigation or to the anticipation of litigation. (See, e.g., AEGON-0005046; AEGON-0003313; and AEGON-0004901).

Rebecca A. Davis, Esq.
September 27, 2022
Page 2

These documents should be produced, or IWA should provide a supplemental
explanation of the claimed privilege.

Fifth, the parties did not agree to truncate privilege log entries as of the filing of the
complaint in this lawsuit. Therefore, Plaintiff requests that IWA's privilege log be
supplemented with all claimed privileged correspondence and documents through
IWA's document discovery collection date.

This letter is not intended to address every issue or deficiency that Plaintiff may have
identified with IWA's privilege log and corresponding productions.  Nor should this
letter be construed as a waiver or forfeiture of Plaintiff's rights to seek or obtain
additional discoverable information in this action. Plaintiff reserves the right to
challenge the sufficiency of IWA's privilege log and productions, whether or not raised
in this letter.

We would appreciate your correction of these privilege log deficiencies by October 7,
2022

Sincerely,

*Katherine Danial*

Katherine Danial

Copied to counsel of record via email.

# EXHIBIT B



**Seyfarth Shaw LLP**

1075 Peachtree Street, N.E.

Suite 2500

Atlanta, GA  30309-3958

**T** (404) 885-1500

**F** (404) 892-7056

rdavis@seyfarth.com

T (404) 888-1874

www.seyfarth.com

October 7, 2022

Katherine Danial, Esq.
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, D.C.  20036

> **Re:**    _Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC, et al._

Dear Ms. Danial:

We write in response to your September 27th letter concerning alleged deficiencies in IWA's privilege log.

We dispute your assertion that "IWA's privilege log is missing some of the basic information needed to demonstrate a basis for privilege." As you are aware, the privilege log contains the following categories of information: document ID number, document type, sender, recipients(s), CC recipient(s), BCC recipient(s), document description, the basis for the privilege, and the number of pages in each document. Certainly there is no requirement that IWA provide any more detail than has already been included. Indeed, Maryland Rule 2-402(e)(1) requires only that "[a] party who withholds information on the ground that it is privileged or subject to protection shall describe the nature of the documents, electronically stored information, communications, or things not produced or disclosed in a manner that, without revealing the privileged or protected information, will enable other parties to assess the applicability of the privilege or protection." Similarly, Fed. R. Civ. P. Rule 26(b)(5) requires only that a party making a claim for privilege "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Moreover, Guideline 10(d)(ii)(b) of the Discovery Guidelines of the United States District Court for the District of Maryland provides that the withholding party need only provide the type of document, date of document, the "general subject matter of the document," and, where appropriate, the author(s), sender(s) and/or recipient(s) of the document. _See_ U.S. District Court of Maryland Local Rules (July 1, 2021), Appendix A. IWA has thus fulfilled its obligation under the rules of Maryland, the Federal Rules of Civil Procedure and the Discovery Guidelines of this Court. However, as a courtesy, and notwithstanding that we believe that the family groups are adequately identified, we will forward to you an updated version of the privilege log to further clarify that information.  t. Regarding your claim that documents are missing dates, please note that dates have already been provided for all emails listed on the privilege log and dates have been included in the document descriptions where known.



IWA is in the process of preparing a supplemental privilege log of all documents that have been produced to you with redactions based on privilege. This log will contain the same information as the initial privilege log but will also include, per your request, related document ID numbers. IWA will not be providing a log for information redacted because it is nonresponsive.

With regard to documents withheld or redacted on the basis of the work product doctrine, IWA asserts that these documents were all prepared, compiled or reviewed in anticipation of litigation and are appropriately privileged. As such, IWA has no present intention of producing appropriately designed work-product documents. Nevertheless, if you have specific questions regarding particular documents, we will discuss any specific concerns with you. Finally, as to documents created or received after the date of the filing of this action, we believe relevant authority weighs against your request that we include documents dated after June 5, 2020. *Glynn v. EDO Corp.*, 2010 WL 3294347, at *7 (D. Md. Aug. 20, 2010) ("The general practice in this Court is, as [plaintiffs] assert, to not require logging post-litigation documents over which the attorney-client privilege or work product doctrine has been asserted."); *see also UnitedHealthcare of Fla. v. Am. Renal Assocs. LLC*, 2017 U.S. Dist. LEXIS 201866 (S.D. Fla. Dec. 7, 2017); *Harleysville Worchester Insurance Company v. Sharma*, 2015 U.S. Dist. LEXIS 67633 (E.D.N.Y. May 26, 2015); *Charvat v. Valente*, 2015 U.S. Dist. LEXIS 25694 (N.D. Ill. March 3, 2015); *Morley v. Square, Inc.*, 2015 U.S. Dist. LEXIS 155569 (E.D. Mo. Nov. 18, 2016).

We will provide the updated privilege log of withheld documents and the supplemental privilege log of redacted documents as soon as they have been completed. We expect to have them to you on or before October 12, 2022.

Kindly let me know if you have any questions or would like to discuss any of these issues further.

Very truly yours,

SEYFARTH SHAW LLP

/s/ *Rebecca A. Davis*

Rebecca A. Davis, Esq.

# EXHIBIT C



Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW | Washington, DC 20036 | tel 202.663.8000 | fax 202.663.8007

November 3, 2022

*Via Electronic Mail*

Rebecca A. Davis, Esq.
Seyfarth Shaw LLP
1075 Peachtree Street NE, Suite 2500
Atlanta, Georgia 30309

Re:   ***Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC et
al., No. 8:20-cv-01502-PJM* – IWA's Continuing Privilege Log
Deficiencies**

Dear Ms. Davis:

We write in response to your October 7, 2022 letter, and the "updated version" of
Investors Warranty of America, LLC's ("IWA") privilege log sent on October 11,
2022, which continues to contain numerous deficiencies.

Your assertion that IWA is not required to provide additional information is refuted by
the very rules you cite to support it: both Maryland Rule 2-402(e)(1) and Fed. R. Civ.
P. Rule 26(b)(5) require you to describe withheld documents **in a manner that will
enable Plaintiff "to assess the applicability of the privilege**." IWA's latest privilege
log also fails to meet this obligation.

As initially raised in our September 27, 2022 letter, the structure of IWA's privilege log
hinders Plaintiff's ability to assess IWA's asserted privilege. Despite your agreement to
further clarify family groups, the entry document's relationship with other entries (i.e.,
parent emails, attachments, or standalone documents) remains missing. Also missing
are document dates <u>for almost 200 entries.</u> If such entries are email attachments, which
is unclear, they should include the date of the parent email so the log can be accurately
sorted, in accordance with your obligation to include document dates that are
"reasonably available" under Guideline 10(d)(ii)(b) of the Discovery Guidelines of the
United States District Court for the District of Maryland. This coupled with IWA's
choice to order entries by its own internal "DOC ID" column – which is meaningless to
Plaintiff – and to provide the privilege log in a format that cannot be manipulated
means Plaintiff is unable to review the privilege log chronologically. Please provide
Plaintiff with a version of your privilege log that is, or can be, sorted by date.

**A216**

Rebecca A. Davis, Esq.
November 3, 2022
Page 2

The substance of IWA's privilege log also falls short of providing information "sufficient to identify the document," as required by Guideline 10(d)(ii)(b). In addition to omitting the title/subject line of emails, numerous document descriptions include undefined abbreviations, for example, referencing "Rock Springs" without clarifying what Rock Springs entity and/or property is being referenced. IWA cannot, in good faith, argue that "draft of transactional document" (SS-AEGON- ECA- 1433929), "compiled documents for legal review" (SS-AEGON- ECA- 1447213), "assignment document," (SS-AEGON- ECA- 1457108), or simply "invoice" (SS-AEGON- ECA- 1459109) are descriptions that meet its discovery obligations under Maryland and Federal rules of practice. Please provide a description of each document that includes adequate information for Plaintiff to determine a basis for privilege.

Plaintiff also maintains its request regarding IWA's post-litigation documents. While the "general practice" may be to not log post-litigation documents, here with a claim that a company was formed for the purpose of perpetrating a fraud, documents pertaining to what IWA did and who it communicated with after it learned the fraud was uncovered are highly relevant. Please supplement IWA's privilege log with all claimed privileged correspondence and documents through IWA's document discovery collection date.

Most alarming is that the minimal, inadequate information that IWA has provided is sufficient to cast serious doubt on IWA's assertions of privilege. IWA claims attorney-client privilege for over 80 entries without an attorney referenced or included as an email recipient. An additional over 50 entries claim attorney-client privilege evidently on the basis that an attorney was copied on the email's "cc" or "bcc" column. IWA also claims work product protection over documents dated more than a decade before the suit at issue (e.g. SS-AEGON- ECA- 1446078, "Analysis of Operating Agreement," dated 12/31/2009). Finally, IWA even asserts privilege over documents that have already been produced to Plaintiff or *that Plaintiff composed* (e.g. SS-AEGON- ECA- 0022551, "2/22/18 Letter from W. Bosch to R. Barron re. Amended and Restated Ground Lease Indenture") and fails to include a basis for privilege on others (SS-AEGON- ECA- 1369698).

This letter is not intended to address every issue or deficiency that Plaintiff may have identified with IWA's privilege log and corresponding productions.  Nor should this letter be construed as a waiver or forfeiture of Plaintiff's rights to seek or obtain additional discoverable information in this action. Plaintiff reserves the right to challenge the sufficiency of IWA's privilege log and productions, whether or not raised in this letter.

Rebecca A. Davis, Esq.
November 3, 2022
Page 3

If IWA continues to resist remedying such deficiencies, Plaintiff may be forced to burden the court with a request for *in camera* review. In the interest of avoiding further delay, Plaintiff renews its request for IWA to correct the deficiencies in its privilege log by November 11, 2022.

Sincerely,

*Katherine Danial*

Katherine Danial

Copied to counsel of record via email.

# EXHIBIT D



**Seyfarth Shaw LLP**

1075 Peachtree Street, N.E.

Suite 2500

Atlanta, GA 30309-3958

**T** (404) 885-1500

**F** (404) 892-7056

rdavis@seyfarth.com

T (404) 888-1874

www.seyfarth.com

November 16, 2022

<u>Via Email</u>

Katherine Danial, Esq.
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, D.C. 20036

> Re:  ___Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC, et al., In the United States District Court for the District Court of Maryland, Civil Action No. 8:20-cv-01502-PJM___

Dear Ms. Danial:

I write in response to your letters dated November 2, 2022, and November 3, 2022, regarding Investors Warranty of America, LLC's ("IWA") obligations under Fed. R. Civ. P. Rule 26(e) and IWA's privilege log. I further identify herein significant deficiencies in the privilege log submitted by Plaintiff Rock Spring Plaza II, LLC (""Plaintiff").

First, I am confirming that IWA has again reviewed Plaintiff's First Set of Requests for Production, and IWA's responses to same, including its responses to Document Requests Nos. 10-21. IWA believes that it has met its obligations pursuant to Fed. R. Civ. P. Rules 26(e) and that there is no "additional or corrective information [that] has not otherwise been made known" to IWA. Moreover, IWA believes that this information was previously addressed through Defendants' Joint Response to Plaintiff's Response to Memorandum Order Dated September 22, 2022 (Dkt. 158).

Also, relevant to the Document Requests you identified, IWA is not the tenant under the Ground Lease, and therefore any requests for the specific supplemental information you may be seeking are better directed to Rock Springs Drive LLC ("RSD"). Further to that point, IWA understands that RSD has recently produced documents potentially relevant the categories of documents you listed in your November 2, 2022, letter (which categories are not necessarily consistent with Document Requests Nos. 10-21). To the extent that IWA would even have any responsive documents, it would be duplicative of RSD's information.

89176210v.1

**A220**



Katherine Danial, Esq.
November 16, 2022
Page 2

Nevertheless, and notwithstanding the forgoing, and as we have invited in the past (see, e.g., IWA's correspondence to Plaintiff dated August, 23, 2022), if Plaintiff feels that any documents were omitted from production, please identify the specific documents and contact me so that I may evaluate those concerns.

Turning next to IWA's privilege log, and its amended privilege log, IWA disagrees that it is required to provide any additional information beyond what it has already provided pursuant to Maryland Rule 2-402(e)(1) and Fed. R. Civ. P. Rule 26(b)(5).  Furthermore, IWA disagrees that the subject line of an email is required to be included in a privilege log, and further disagrees that the original privilege log and revised log did not provide information "sufficient to identify the document."  However, IWA will accommodate your request to reorganize the document.  Accordingly, the privilege log will be reorganized according to the date of the parent email, and the attachments have been specifically identified.  This second amended privilege log will be provided no later than tomorrow, November 17, 2022.  Also, and for the express purpose of avoiding any further delay and disputes on this issue, IWA has revised certain descriptions and further identified documents in order to address certain concerns raised by Plaintiff.

As to post-litigation documents, Plaintiff acknowledges that including such documents is not "general practice."  However, Plaintiff has a special need for these documents because it alleges that RSD was created to perpetrate a fraud, and Plaintiff should be able to determine who IWA "communicated with after it learned the [alleged] fraud was uncovered."  First, there is no fraud and RSD was not created to perpetrate a fraud.  Second, Plaintiff's statement that it should be able to explore communications that may have occurred after the alleged fraud was uncovered is nonsensical.  Plaintiff began sending letters to Rock Springs Drive LLC in 2017, and did not file a lawsuit until 2020.  Those pre-litigation letters drafted by Plaintiff, more than two years before the lawsuit was filed, clearly alleged fraud and concerns of a fraudulent conveyance. Documents created and communications sent from 2017, to the date that the lawsuit was filed have already been produced or are included on IWA's privilege log, and thus there is no special reason to ignore the "general rule" regarding post-litigation documents.

As to other concerns raised in your letter of November 3, IWA sees no merit in Plaintiff's contentions that it is improperly withholding any documents, including attachments.  However, in an attempt to avoid further delay and dispute as to the privilege log, IWA will be producing a small set of additional documents.  The documents to be produced are documents that IWA contends have been properly withheld as privileged, but they are either nearly duplicative of documents that have been produced, or that are quite frankly, not worth spending valuable resources fighting over (e.g., an opinion letter from 2006 that may have been previously distributed in a closing binder).  These documents will be produced no later than tomorrow, November 17, 2022.  Under no circumstances should the production of these documents be deemed as a waiver with respect to a claim of privilege or work product as to other documents, including as to subject matter.

Regarding Plaintiff's own privilege log, there are a number of deficiencies that must be addressed.  First, as noted above, many of Plaintiff's privilege descriptions are insufficient, as they do not "describe the nature of the documents [or] communications . . . in a manner that . . . will enable other parties to assess the applicability of the privilege or protection." See Fed. R. Civ. P. Rule 26(b)(5); see also Guideline 10(d)(ii)(b) of U.S. District Court of Maryland Local Rules (July 1, 2021) at Appendix A (requiring the withholding party need to provide the type of document and the "general subject matter of the document" of the documents). Indeed, many of Plaintiff's purported descriptions contain no description at all.  For example, Plaintiff describes attachments



Katherine Danial, Esq.
November 16, 2022
Page 3

to emails, regardless of the type and subject matter of the documents, only as "attachment[s] to communication from counsel . . ." In many instances, even the document type is listed as "attachment," rather than PDF, Word, Excel, or other document type. As an example, the description provided by Plaintiff for Item No. 12 merely states "[C]ommunication from counsel providing legal advice regarding contract," even where the document referenced relates to only "FW: Revised Correspondence to Lockheed." The attachment referenced, Item No. 13, is identified only as "4923943_1.DOC" and the description is only "Attachment to communication from counsel providing legal advice regarding contract." There is no indication as to what "contract" is referenced, and there is no way to determine any information whatsoever about the attachment. No purported deficiency that Plaintiff has identified in IWA's privilege log comes even close to the deficiencies that are prevalent in Plaintiff's own privilege log.

Again, as Plaintiff itself has noted, descriptions of withheld and redacted documents are required to provide at least enough detail about the attachment that would enable the other party to have some understanding of what the document is. Accordingly, IWA requests that Plaintiff amend its privilege log to address these deficiencies.

Moreover, Plaintiff has improperly withheld, as attorney-client privileged, several communications between "between client and broker providing legal advice" or "regarding legal advice for contract." See, e.g., Item Nos. 78, 79, 96-98. In some instances it appears that Plaintiff is even attempting to substitute a broker for an attorney with respect to the rendering of legal advice, as indicated by several documents in Plaintiff's privilege log that are communications between the broker and client only (with no attorney included). There are no grounds for Plaintiff's claim of attorney-client privilege with respect to documents that include brokers, and these documents should be removed from the privilege log and produced.

In the interest of avoiding further delay, IWA requests that Plaintiff correct the deficiencies in its privilege log by November 22, 2022. I am happy to discuss any concerns.

Very truly yours,

SEYFARTH SHAW LLP

/s/ *Rebecca A. Davis*

Rebecca A. Davis, Esq.

cc:    William Bosch
       Alvin Dunn

# EXHIBIT E

| From: | Danial, Katherine T. |
|---|---|
| To: | Davis, Rebecca |
| Cc: | Bosch, William M.; Dunn, Alvin; Steinberg, Nicole; Baum, Erica N. |
| Subject: | Rock Spring Plaza v. Investors Warranty - IWA Privilege Log Deficiencies |
| Date: | Wednesday, November 23, 2022 12:33:15 PM |

Hi Rebecca,

Thank you providing IWA's Second Amended Privilege Log (SAPL) last Thursday, November 17. While we acknowledge that the new log represents a significant improvement from the last two, outstanding deficiencies still remain, including:

- Entries claiming attorney-client privilege without an attorney referenced or included as an email recipient (e.g. Doc. Nos. 3, 405, 862);
- Entries claiming attorney-client privilege on the basis that an attorney was copied on the email's "cc" or "bcc" column (e.g. Doc. Nos. 690)
- Entries claiming work product protection prior to Plaintiff receiving notice of the purported assignment (e.g. Doc. No. 91)
- Entries claiming attorney-client privilege over email attachments (including those that are definitively not privileged) solely on the basis of their attachment to a privileged parent email (e.g. Doc. No. 39)
- Entries with descriptions insufficient to determine a basis for privilege (e.g. Doc. No. 447)

Further, Plaintiff continues to maintain its request regarding IWA's post-litigation documents, which are highly relevant in this matter, as further evidenced by an attachment that is listed as Doc. No. 1090 on the SAPL.

We intend to follow-up with a letter early next week providing more substantive detail on the remaining deficiencies. **In the meantime, please advise of your availability for a meet and confer the week of November 28th – December 2nd.**

Sincerely,
Katherine
**Katherine T. Danial** | Senior Associate
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW | Washington, DC 20036-3006
t +1.202.663.8105 | f +1.202.354.5220
katherine.danial@pillsburylaw.com | website bio

**A224**

# EXHIBIT F



Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW  |  Washington, DC 20036  |  tel 202.663.8000  |  fax 202.663.8007

November 28, 2022

*Via Electronic Mail*

Rebecca A. Davis, Esq.
Seyfarth Shaw LLP
1075 Peachtree Street NE, Suite 2500
Atlanta, Georgia 30309

Re:   *Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC et al., No.*
      *8:20-cv-01502-PJM* – **IWA's Continuing Privilege Log Deficiencies**

Dear Rebecca:

We write to respond to your November 16, 2022, letter regarding Investors Warranty of America,
LLC's ("IWA") privilege log deficiencies.  We are in receipt of the second updated privilege log
you sent on November 17, 2022 ("Second Log") but must note that the Second Log remains
deficient for many of the same reasons stated in our prior correspondence.

First, the following 71 families over which IWA claims attorney-client privilege and/or work
product protection do not include an attorney as a recipient.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2 | 90 | 189 | 512 | 566 | 749 | 887 | 981 |
| 3 | 137 | 196 | 515 | 573 | 753 | 891 | 1008 |
| 4 | 140 | 207 | 521 | 668 | 782 | 892 | 1009 |
| 10 | 143 | 213 | 551 | 696 | 783 | 893 | 1010 |
| 11 | 164 | 219 | 555 | 710 | 795 | 912 | 1075 |
| 12 | 169 | 305 | 557 | 712 | 802 | 924 | 1122 |
| 18 | 171 | 309 | 559 | 713 | 860 | 956 | 1163 |
| 37 | 176 | 368 | 561 | 742 | 862 | 972 | 1172 |
| 78 | 188 | 405 | 564 | 743 | 873 | 973 | |

Further, the following 64 families over which IWA claims attorney-client privilege and/or work
product protection only include an attorney copied on the email's "cc" or "bcc" column.

Page 2

| 9 | 487 | 501 | 513 | 691 | 874 | 982 | 1095 |
|---|-----|-----|-----|-----|-----|-----|------|
| 34 | 488 | 502 | 514 | 692 | 875 | 988 | 1096 |
| 82 | 489 | 503 | 516 | 693 | 876 | 989 | 1101 |
| 195 | 493 | 504 | 517 | 694 | 877 | 990 | 1103 |
| 385 | 494 | 505 | 552 | 695 | 944 | 992 | 1144 |
| 386 | 498 | 506 | 613 | 711 | 946 | 993 | 1181 |
| 387 | 499 | 507 | 635 | 733 | 975 | 994 | 1183 |
| 389 | 500 | 508 | 690 | 856 | 980 | 1072 | 1185 |

While communications by non-attorneys may still be privileged and/or protected, such privilege and/or protection is narrow and must be used precisely. *See In re New York Renu with Moistureloc Prod. Liab. Litig.,* No. CA 2:06-MN-77777-DCN, 2008 WL 2338552, at *16 (D.S.C. May 8, 2008) (finding that "simply copying the email to the lawyer does not gain a privilege"). Each part – e.g. reply, forward, etc. – of an email must be analyzed for privilege individually. *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 503 (4th Cir. 2011) (stating, "[g]enerally, each e-mail within a particular line of discussion must be analyzed separately for privilege purposes"). **Please produce any non-privileged and/or non-protected portions of the above communications.**

Third, although we appreciate that the Second Log now identifies entries that are attachments, the act of attaching a document to a privileged email does not automatically classify the attachment as privileged. *See Khoshmukhamedov v. Potomac Elec. Power Co.*, No. AW–11–449, 2012 WL 1357705 at *6 (D. Md. Apr. 17, 2012) (stating that "Plaintiffs are required to redact portions of the e-mail that are privileged, log those redacted portions, and produce any non-privileged portions and attachments"); *In re Marriott Int'l, Inc.*, No. 19-MD-2879, 2021 WL 2222715, at *3 (D. Md. June 2, 2021*) (noting that "[a] client cannot shield a document from discovery by including it in a request for legal advice.") (citation omitted). **Please produce any non-privileged and/or non-protected attachments and/or portions of attachments.**

Fourth, IWA claims work product protection over the following 81 entries dated prior to Plaintiff receiving notice of the assignment at issue in this litigation or responding to the notice. It is unclear how or why IWA would have anticipated litigation prior to Plaintiff's response were this a run of the mill notice of assignment. **Please produce the below documents or provide additional information on why IWA anticipated litigation prior to the purported assignment at issue in this case.**

| 9 | 91 | 172 | 208 | 257 | 310 | 396 | 490 | 554 |
|---|-----|-----|-----|-----|-----|-----|-----|-----|
| 19 | 99 | 180 | 211 | 258 | 311 | 398 | 492 | 564 |
| 20 | 146 | 181 | 214 | 259 | 312 | 399 | 495 | 566 |
| 43 | 147 | 184 | 220 | 260 | 361 | 400 | 496 | 571 |
| 60 | 149 | 185 | 222 | 291 | 388 | 402 | 497 | 572 |
| 61 | 151 | 196 | 229 | 292 | 391 | 403 | 509 | 574 |
| 62 | 152 | 197 | 244 | 293 | 392 | 404 | 510 | 575 |
| 63 | 154 | 198 | 251 | 306 | 394 | 427 | 511 | 613 |
| 64 | 165 | 202 | 256 | 308 | 395 | 462 | 552 | 619 |

Page 3

Fifth, while we acknowledge that the descriptions in the Second Log are a marked improvement, many still fall short of providing information "sufficient to identify the document," as required by Guideline 10(d)(ii)(b).  For example, Document No. 642 is described only as "Organizational documents," Document No. 447 as "Assignment," and Document No. 610 as "Notice." These single-word descriptions contain far less information than descriptions IWA has identified as deficient in Plaintiff's privilege log. To use IWA's words "there is no way to determine any information whatsoever about the attachment." Further, when entries are described as a "draft," "redline," or "with comments," it is unclear whether such descriptions indicate the involvement of an attorney.  **Please provide a description of each document that includes adequate information for Plaintiff to determine a basis for privilege.**

Sixth, the Second Log also does not provide for communications dated through IWA's document discovery collection date.  As Plaintiff noted in its prior letter, the crux of the instant suit is that a company was formed for the purpose of perpetrating a fraud.  Therefore, post-complaint communications here bear directly on the issues at hand.  Rather, post-complaint communications pertaining to what IWA did and who it communicated with after it learned Plaintiff discovered the fraud are therefore highly relevant **Please supplement IWA's privilege log with all claimed privileged correspondence and documents through IWA's document discovery collection date.**

This letter is not intended to address every issue or deficiency that Plaintiff may have identified with the Second Log and corresponding productions.  Nor should this letter be construed as a waiver or forfeiture of Plaintiff's rights to seek or obtain additional discoverable information in this action.  Plaintiff reserves the right to challenge the sufficiency of the Second Log and productions, whether or not raised in this letter. Moreover, Plaintiff's examples above are by no means exhaustive.

If IWA continues to resist remedying such deficiencies, Plaintiff may be forced to burden the court with a request for *in camera* review.  In the interest of avoiding further delay, Plaintiff renews its request for IWA to correct the deficiencies in its privilege log by December 5, 2022, and per Plaintiff's November 23, 2022 email, requests that IWA provide availability for a meet and confer.

Sincerely,

*Katherine Danial*

Katherine Danial


Copied to counsel of record via email.

# EXHIBIT G

**Seyfarth Shaw LLP**

1075 Peachtree Street, N.E.

Suite 2500

Atlanta, Georgia  30309-3958

**T** (404) 885-1500

**F** (404) 892-7056

rdavis@seyfarth.com

T (404) 888-1874

www.seyfarth.com

December 2, 2022

**VIA E-MAIL**

Katherine Danial
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, D.C. 20036
Katherine.Danial@Pillsburylaw.com

Re:    Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC, et al., No. 8:20-cv-
01502-PJM - Plaintiff's November 28, 2022, Letter Regarding IWA's Second Privilege
Log and IWA's Second Letter to Plaintiff Regarding Plaintiff's Privilege Log Deficiencies

Dear Katherine:

We write in response to your November 28, 2022, letter regarding Investors Warranty of America, LLC's ("IWA") second amended privilege log submitted to you on November 17, 2022 (the "IWA's Second Log").  This letter further serves as a response to your November 30, 2022, letter and constitutes IWA's second letter to Plaintiff regarding the deficiencies in Plaintiff's privilege log ("Plaintiff's Log"). Addressing first IWA's Second Log, although we will meet and confer to further discuss your concerns in an effort to reach a consensus regarding the IWA's Second Log, we maintain that we have fully complied with the Federal Rules of Civil Procedure and the Local Rules, as well as relevant Maryland law regarding privilege logs and attorney-client privilege. Accordingly, we disagree with any assertion that IWA's Second Log is in any way deficient. Moreover, as you have noted, we have acted reasonably by revising IWA's privilege log twice now to allay your initial concerns, even though we were under no obligation to do so. Your continued complaints regarding IWA's Second Log are unfounded, are creating undue burden, and are disproportionate to your discovery needs in this case. Indeed, your November 28, 2022, letter makes clear that Plaintiff's repeated demands are nothing more than an impermissible fishing expedition to obtain privileged information that is not discoverable. Accordingly, we ask that you withdraw your frivolous request for IWA to yet again revise its log.  In support of such request, we again address each of your concerns below:

A.  **IWA's Privilege Log**

1.  **IWA Produced a Proper and Sufficient Privilege Log**.

First, as you know, a proper privilege log need only "…contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, or for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met

**A230**

for that document."[1] "The standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed."[2] Here, that is exactly what each version of IWA's privilege log, including IWA's Second Log, has accomplished. IWA's Second Log is a 161-page privilege log containing 1,191 entries, which includes, among other things, the document date, document type, thorough document descriptions, to/from and cc categories and the privilege basis. Each entry within IWA's privilege log contains facts sufficient to establish the asserted privilege. We do not have to produce any additional information beyond what has already been provided to you. In short, Plaintiff is not entitled to know the contents of privileged communications or work product, it is merely entitled to know what was withheld and why. IWA has provided that information.

## 2. All Emails, Communications, and Attachments Listed on IWA's Second Log are Privileged.

In addition, contrary to your assertions, all documents, emails and communications listed in IWA's Second Log are privileged and fall within one or more categories of recognized immunity exempting them from disclosure.

### (a) An Attorney Does Not Need to Be a Recipient of a Document In Order for a Party to Assert the Attorney-Client Privilege and/or Work Product Doctrine.

First, you assert that "71 families over which IWA claims attorney-client privilege and/or work product protection do not include any attorney as a recipient," implying that an attorney must be listed as an addressee in order for the attorney-client privilege or work product doctrine to apply. This position is incorrect and is even contradicted by the very case, *In re New York Renu with Moistureloc Prod. Liab. Litig.*, No. CA 2:06-MN-77777-DCN, 2008 WL 2338552 (D.S.C. May 8, 2008), that you cite in your November 28, 2022, letter. Indeed, *In re New York Renu* holds that an attorney need not be a sender or recipient of a document in order for these immunities to apply, and recognizes that there are numerous instances in the corporate context where these privileges and protections will apply without the attorney involved, such as where a client internally forwards an attorney's email or recounts the attorney's advice.[3] *In re New York Renu* even references multiple cases within the 4th Circuit and elsewhere which hold that correspondence does not need

---

[1] *See e.g., Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 264–65 (D. Md. 2008).

[2] *Lord & Taylor, LLC v. White Flint, L.P.*, No. CV RWT 13-1912, 2015 WL 13309999, at *2 (D. Md. Mar. 23, 2015) (quoting *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 406 (D. Md. 2005)).

[3] *See e.g., Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 202–03 (E.D.N.Y.1988)(discussing privileged materials exchanged between employees of a corporation and stating, "Where documents were held privileged in this grouping, it was apparent that the communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice."); *see also Eutectic Corp. v. Metco*, Inc., 61 F.R.D. 35, 38 (E.D.N.Y.1973)(generally holding that documents subject to the privilege may be transmitted between non-attorneys (especially individuals involved in corporate decision-making) so that the corporation may be properly informed of legal advice and act appropriately).

to be sent to or from an attorney in order to be privileged.[4] In other words, it is not the recipient/sender that establishes immunity, but is rather the whether the contents of the document or correspondence relates to or expresses intent for legal advice.[5]

Here, IWA is a limited liability company, and exists within the corporate context contemplated by *In re New York Renu* (again, the very case you cite), and courts have recognized that legal advice will be conveyed and discussed within a corporate organization. That is clearly what has transpired, and what is conveyed in the Second Privilege Log. To be clear, we have reviewed the 71 families you have identified as not including an attorney, and maintain that all of these documents are protected by the attorney-client privilege and/or work product doctrine. All such documents and records contain or relate to legal advice sought from or provided by legal counsel, including but not limited to documents prepared by counsel and the thought processes and directions of counsel. With respect to these 71 families, we are not required to produce any additional documents or information. The same is true of the 64 families you identified where an attorney is copied on the "cc" or "bcc" column.

### (b) The Documents Attached to IWA's Privileged Emails are Also Privileged.

In your letter, you also assert that "the act of attaching a document to a privileged email does not automatically classify the attachment as privileged" and in support cite to *In re Marriott Int'l, Inc.*, No. 19-MD-2879, 2021 WL 2222715 (D. Md. June 2, 2021). Here, however, all documents identified on IWA's Second Log as attachments to privileged emails are also privileged because such attachments were sent to obtain, relay, or give legal advice, whether it be to or from in-house or outside counsel or other non-lawyers. IWA is not shielding any non-privileged attachments.

Moreover, the case you cite does not support the proposition for which it was offered. In *In re Marriot Int'l, Inc.*, the court, considering the issue of attachments to emails, specifically held that, "a document transmitted by the client maintains its protection if the client transmits the document intending that the lawyer consider it in providing legal services or legal advice to the client."[6] Importantly, the court further found that attachments to emails sent to and from the client and attorney are privileged, even if the attachment was created by a third party.[7] Attachments are considered communications which are protected by attorney client privilege.[8]

Here, all attachments included on IWA's privilege log are documents circulated either to give or seek legal advice, provide IWA's in-house and outside counsel factual information regarding this case and its components, and/or relay legal and factual information to IWA's

---

[4] *See Id.* at *10 (quoting *Santrade, LTD. v. General Electric Co.*, 150 F.R.D. 539, 543 (E.D.N.C.1993) ("A document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds.").

[5] *Id.* at *18.

[6] 2021 WL 2222715 at *3.

[7] *Id.* at *3.

[8] *Id.*

personnel. As the attorney-client privilege and work product protections extend to email attachments sent to obtain or give legal advice, IWA is properly withholding such attachments and they are immune from production.

In addition, we note that Plaintiff already understands this rule and that IWA's withholding of attachments is proper, given that Plaintiff, in Plaintiff's Log, identifies 107 documents that were withheld solely because they are attachments to what Plaintiff identifies as a privileged email. However, unlike IWA's Second Log, Plaintiff's Log make no attempt to identify these documents or provide any privilege description for them.

### (c) The Alleged 81 Entries Identified Prior to Plaintiff Receiving the Assignment Notice are Privileged.

You also assert that there are 81 entries "dated prior to Plaintiff receiving notice of the assignment at issue in this litigation or responding to the notice" and assert that solely on that basis such entries cannot be privileged. IWA disagrees. Your position wholly ignores that a client can seek or receive legal advice for a transaction like the assignment in question, and that documents and records surrounding such legal advice related to the transaction are privileged. Moreover, your latest position contradicts Plaintiff's own motion for summary judgment, which points to discussions of potential litigation in 2016 (*see* Pl's Mot. for Sum. J at p. 2) and Plaintiff's Complaint, which points to litigation between Plaintiff's and IWA's affiliates, stemming from disputes relating back to 2014.  Moreover, Plaintiff's contention that IWA is not entitled to assert privilege over documents created before August 31, 2017, the date of the assignment, is belied by Plaintiff's own privilege log, which includes 224 documents dated on or before August 31, 2017.

### 3. IWA is Not Required to Produce or List Post-Lawsuit Communications on its Privilege Log.

We are also not aware of any requirement or rule that IWA produce and/or list documents or communications on its privilege log that were created and/or sent following the filing of the Complaint. To the contrary, courts have held that post-lawsuit communications are excluded from discovery.[9]  Plaintiff's contention that its fraud claim somehow places a new or heightened burden on IWA to share information that is otherwise shielded from discovery is spurious and unsupported by any legal authority. Moreover, any such contrived burden is not supported by the facts.  First, no documents exist relating to what IWA did relating to any discovery of a fraud for the simple reason that IWA was not a party to any fraud. Second, Plaintiff began to send letters from its litigation counsel within weeks of the assignment at issue, and documents created for almost three years after Plaintiff began to allege potential fraud have been included on the privilege log. Thus, Plaintiff has already seen the record of communications that it seeks after it began to make its false fraud claims.

---

[9] *See e.g.*, *Johnston v. Aetna Life Insurance Company*, 282 F. Supp. 3d 1303, 63 Employee Benefits Cas. (BNA) 1845 (S.D. Fla. 2017) (holding that work product doctrine excluded discovery of post-lawsuit communications between ERISA plan administrator and its outside counsel regarding termination of participant's benefits.); *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, No. C 06-3219 JWRS, 2009 WL 5114077, at *3 (N.D. Cal. Dec. 18, 2009) (ruling that communications between counsel and client once litigation has begun is presumptively privileged and not to be included in the privilege log.)

Katherine Danial
December 2, 2022
Page 5

In sum, IWA has complied with its discovery obligations and has produced a privilege log in full compliance with the Federal Rules of Civil Procedure and the rules of this Court. IWA is not required to produce any additional documents or update IWA's Second Log.

**B.  IWA's Second Communication to Plaintiff Regarding Plaintiff's Privilege Log Deficiencies.**

Turning to the concerns raised by IWA in its November 16, 2022, letter with respect to Plaintiff's Log, we find Plaintiff's November 30, 2022, letter to be completely nonresponsive to the issues raised.  First, the majority of Plaintiff's Log is devoid of any reasonable explanation as to any supposed "Privilege Description," and most of Plaintiff's Log fails to give any explanation as to the basis for any privilege.  Even the two examples offered Plaintiff in its letter dated November 30, 2022, highlight the pervasive deficiencies.  For example, Document 12, which notably was sent in 2007 (ten years before Plaintiff argues that privilege would apply), supposedly refers to an email with "legal advice regarding a contract."  The "contract" is not identified, and it is not clear as to whether the contract would relate to a lease with Lockheed, the ground lease or some other document. The description does not, as your November 30, 2022, letter suggests, make clear that the correspondence is about a specific lease with Lockheed.  The attachment, which is attached to the email, is identified only as "4923943_1.Doc" and is not otherwise described in the privilege log entry. As Plaintiff is aware, Plaintiff's Log is replete with similar deficiencies that require revision, and we request for the second time that Plaintiff review Plaintiff's Log in its entirety and correct all deficiencies.

As to Plaintiff's refusal to produce the documents on Plaintiff's Log that include communications with real estate brokers and agents, Plaintiff has had more than two weeks to review and produce the documents. In the event that Plaintiff contends that there is some basis to continue to withhold these documents, we look forward to discussing that contention during our meet and confer later today.

Finally, in response to Plaintiff's inquiry about IWA's obligations to supplement information pursuant to Fed. R. Civ. P. Rule 26(e), for the reasons already discussed in IWA's letter dated November 16, 2022, IWA believes that it has met its obligation pursuant to Fed. R. Civ. P. Rule 26(e) and that there is no "additional or corrective information [that] has not otherwise been made known" to IWA. IWA once again asks that if there is specific information that you would like to discuss, that you identify that information. To the extent that Plaintiff believes it is for some reason entitled to any information as to IWA's finances, updated or otherwise, such information is not relevant and not proportional to the needs of this case.  IWA obtained the leasehold interest at issue in this litigation through a judicial foreclosure, and there was a final order entered in that case confirming the sale to IWA.  Even if IWA was still the tenant under the ground lease at issue, and it is not, IWA would not have any obligation to show any information as to its finances and would only own the leasehold interest because the Camalier family defaulted on a $30 Million loan.

Katherine Danial
December 2, 2022
Page 6

We look forward to meeting with you later today, but again maintain that we have complied in all respects.

Very truly yours,

SEYFARTH SHAW LLP


Rebecca A. Davis


cc:    William Bosch
       Alvin Dunn

# EXHIBIT K

ROCK SPRINGS DRIVE, LLC: W18227132

---

 **Notice** 

**Coronavirus (COVID-19) resources for businesses:** https://businessexpress.maryland.gov/coronavirus

On March 12th, Governor Hogan issued and executive order, which requires that the Maryland State Department of Assessments and Taxation (SDAT) to extend all expiration and renewal dates to the 30th day after the date by which the state of emergency is terminated. SDAT is automatically extending the Annual Report Filing and/or Personal Property Return **filing date from April 15 to July 15th** for all entities.

**Department ID Number:**

W18227132

**Business Name:**

ROCK SPRINGS DRIVE, LLC

**Principal Office:**

1519 YORK ROAD
LUTHERVILLE MD 21093

**Resident Agent:**

COGENCY GLOBAL INC.

1519 YORK ROAD

LUTHERVILLE MD 21093

**Status:**

ACTIVE

**Good Standing:**

THIS BUSINESS IS IN GOOD STANDING

**Business Type:**

DOMESTIC LLC

**Business Code:**

20 ENTITIES OTHER THAN CORPORATIONS

**Date of Formation/ Registration:**

08/25/2017

**State of Formation:**

MD

**Stock Status:**

N/A

**Close Status:**

N/A

# EXHIBIT M

# INVESTORS WARRANTY AMERICA, LLC SECOND AMENDED PRIVILEGE LOG

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 27 | Outlook Email | 5/20/2016 | 5/20/2016 | Legal counsel re. Assignment and Term Sheet | Snitker, Gregg<gsnitker@aegonusa.com> | Evans, Gale<gevans@seyfarth.com>; Davis, Rebecca<rdavis@seyfarth.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 34 | Outlook Email | 6/7/2016 | 6/7/2016 | Email exchange re. appraisal for Property | Wirtjes, Dale<dwirtjes@aegonusa.com> | Feltman, David<dfeltman@aegonusa.com>; Schefter, Tom<tschefte@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 35 | Outlook Email | 6/30/2016 | 6/30/2016 | Email exchange re. advice from outside counsel re. Ground Lease | Snitker, Gregg<gsnitker@aegonusa.com> | Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client |
| 36 | Outlook Email | 6/30/2016 | 6/30/2016 | Email re. advice from outside counsel re. Ground Lease | Feltman, David<dfeltman@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client |
| 37 | Outlook Email | 6/30/2016 | 6/30/2016 | Email forwarding advise from outside counsel re. Ground Lease | Feltman, David<dfeltman@aegonusa.com> | Schefter, Tom<tschefte@aegonusa.com> | | | Attorney-Client |
| 38 | Outlook Email | 7/8/2016 | 7/8/2016 | Email exchange re. Ground Lease for discussion with counsel | Snitker, Gregg<gsnitker@aegonusa.com> | Feltman, David<dfeltman@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 42 | Outlook Email | 8/10/2016 | 8/10/2016 | Email from counsel provide advice as to Ground Lease | Snitker, Gregg<gsnitker@aegonusa.com> | Feltman, David<dfeltman@aegonusa.com>; Schefter, Tom<tschefte@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 43 | Microsoft Word 2010/2011 | 8/10/2016 | 8/10/2016 | Memorandum from DLA Piper to Aegon USA Realty Advisors provide advice as to Ground Lease - attachment to privileged email | | | | | Work Product |
| 44 | Outlook Email | 8/11/2016 | 8/11/2016 | Email exchange re legal advice as to Ground Lease | Schefter, Tom<tschefte@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client; Work Product |
| 45 | Outlook Email | 8/11/2016 | 8/11/2016 | Email exchange re legal advice as to Ground Lease | Schefter, Tom<tschefte@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client; Work Product |
| 46 | Outlook Email | 8/11/2016 | 8/11/2016 | Email exchange re legal advice as to Ground Lease | Schefter, Tom<tschefte@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client |

USCA4 Appeal: 24-1434      Doc: 26-1      Filed: 06/18/2024      Pg: 245 of 271

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 47 | Outlook Email | 8/16/2016 | 8/16/2016 | Email discussing legal advice from outside counsel as to Ground Lease | Snitker, Gregg<gsnitker@aegonusa.com> | Schefter, Tom<tschefte@aegonusa.com>; Feltman, David<dfeltman@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 48 | Microsoft Word 2003/2004 | 8/16/2016 | | Memo from outside counsel providing legal advice as to Ground Lease - attachment to privileged email | Evans, Gale<gevans@seyfarth.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client; Work Product |
| 50 | Outlook Appointment | 8/29/2016 | 8/29/2016 | Email exchange re. discussing legal counsel for asset management for Property | Schefter, Tom<tschefte@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client |
| 51 | Outlook Appointment | 9/9/2016 | 9/9/2016 | Email re scheduling meeting to discuss asset management | Feltman, David<dfeltman@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client |
| 53 | Outlook Email | 9/23/2016 | 9/23/2016 | Email forwarding legal advice from outside counsel regarding Ground Lease review | Feltman, David<dfeltman@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client |
| 55 | Outlook Email | 10/13/2016 | 10/13/2016 | Email exchange re. call to discuss Real Estate Research Corporation | Sowka, James B<jsowka@seyfarth.com> | Feltman, David<dfeltman@aegonusa.com> | Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | | Attorney-Client; Work Product |
| 56 | Outlook Email | 10/13/2016 | 10/13/2016 | Email exchange re. Rock Springs and Real Estate Research Corporation | Feltman, David<dfeltman@aegonusa.com> | Sowka, James B<jsowka@seyfarth.com> | | | Attorney-Client |
| 57 | Outlook Email | 10/13/2016 | 10/13/2016 | Email exchange re. Real Estate Research Corporation | Feltman, David<dfeltman@aegonusa.com> | Sowka, James B<jsowka@seyfarth.com> | | | Attorney-Client; Work Product |
| 58 | Outlook Email | 10/13/2016 | 10/13/2016 | Email exchange re. Real Estate Research Corporation | Feltman, David<dfeltman@aegonusa.com> | Sowka, James B<jsowka@seyfarth.com> | | | Attorney-Client |
| 59 | Outlook Email | 11/23/2016 | 11/23/2016 | Email exchange seeking legal counsel regarding Ground Lease | Wirtjes, Dale<dwirtjes@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Wirtjes, Dale<dwirtjes@aegonusa.com>; Koluch, Nick<nkoluch@aegonusa.com>; Feltman, David<dfeltman@aegonusa.com> | | Attorney-Client |

USCA4 Appeal: 24-1434      Doc: 26-1      Filed: 06/18/2024      Pg: 246 of 271

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 65 | Outlook Email | 11/23/2016 | 11/23/2016 | Email exchange seeking legal review for mortgage, ground lease and budget for the Property | Wirtjes, Dale<dwirtjes@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client |
| 66 | Outlook Email | 12/23/2016 | 12/23/2016 | Correspondence regarding legal invoices from outside counsel | Snitker, Gregg<gsnitker@aegonusa.com> | Frazier, Tami<tfrazier@aegonusa.com> | | | Attorney-Client |
| 67 | Adobe Acrobat (PDF) | 12/23/2016 | | Legal invoices from outside counsel - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 68 | Outlook Email | 12/23/2016 | 12/23/2016 | Legal counsel regarding Assignment and Term Sheet | Evans, Gale<gevans@seyfarth.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client |
| 69 | Adobe Acrobat (PDF) | 12/23/2016 | | Legal counsel invoices - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 70 | Outlook Email | 12/27/2016 | 12/27/2016 | Email re: litigation reserve | Snitker, Gregg<gsnitker@aegonusa.com> | Donner, John<jdonner@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 71 | Outlook Email | 12/27/2016 | 12/27/2016 | Email re. legal review of accounting for Property | Pithan, Matt<mpithan@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Pithan, Matt<mpithan@aegonusa.com> | | Attorney-Client |
| 72 | Outlook Email | 1/3/2017 | 1/3/2017 | Email exchange re. legal review for asset management | Donner, John<jdonner@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Donner, John<jdonner@aegonusa.com> | | Attorney-Client |
| 73 | Outlook Email | 1/17/2017 | 1/17/2017 | Email exchange re. call to discuss sale of Property | Sowka, James B<jsowka@seyfarth.com> | Feltman, David<dfeltman@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 74 | Outlook Email | 1/17/2017 | 1/17/2017 | Email exchange re. call to discuss Property valuation | Feltman, David<dfeltman@aegonusa.com> | James B. Sowka (jsowka@seyfarth.com)<jsowka@seyfarth.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 76 | Outlook Email | 1/17/2017 | 1/17/2017 | Email exchange re. call to discuss sale of Property | Sowka, James B<jsowka@seyfarth.com> | Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client |
| 77 | Outlook Email | 1/17/2017 | 1/17/2017 | Email exchange re. call to discuss sale of Property | Feltman, David<dfeltman@aegonusa.com> | Sowka, James B<jsowka@seyfarth.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 78 | Outlook Email | 1/17/2017 | 1/17/2017 | Forward of email exchange re. call to discuss sale of Property by D. Feltman to assistant | Feltman, David<dfeltman@aegonusa.com> | Martin, Lon<lon.martin@transamerica.com> | | | Attorney-Client |
| 81 | Outlook Email | 1/21/2017 | 1/21/2017 | Email exchange re. call to discuss sale of Property | Snitker, Gregg<gsnitker@aegonusa.com> | Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client |

USCA4 Appeal: 24-1434      Doc: 26-1        Filed: 06/18/2024      Pg: 247 of 271

USCA4 Appeal: 24-1434      Doc: 26-1      Filed: 06/18/2024      Pg: 248 of 271

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 82 | Outlook Email | 2/9/2017 | 2/9/2017 | Correspondence seeking legal review for accounting for Property | Horner, Ann<ahorner@aegonusa.com> | Armstrong, Barbie<barmstrong@aegonusa.com> | Schefter, Tom<tschefte@aegonusa.com>; Snitker, Gregg<gsnitker@aegonusa.com>; Horner, Ann<ahorner@aegonusa.com> | | Attorney-Client |
| 83 | Adobe Acrobat (PDF) | 2/9/2017 | 4/13/2016 | Accounting documents for legal review - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 84 | Adobe Acrobat (PDF) | 2/9/2017 | 4/13/2016 | Accounting documents for legal review - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 85 | Outlook Email | 2/16/2017 | 2/16/2017 | Email re. legal review of construction contract for property | Frazier, Tami<tfrazier@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Armstrong, Barbie<barmstrong@aegonusa.com>; Frazier, Tami<tfrazier@aegonusa.com> | | Attorney-Client |
| 86 | Outlook Email | 2/16/2017 | 2/16/2017 | Email re. legal counsel regarding Assignment | Snitker, Gregg<gsnitker@aegonusa.com> | Frazier, Tami<tfrazier@aegonusa.com> | Armstrong, Barbie<barmstrong@aegonusa.com> | | Attorney-Client |
| 87 | Outlook Email | 2/17/2017 | 2/17/2017 | Email re. legal advice by outside counsel regarding Assignment | Feltman, David<dfeltman@aegonusa.com> | Sowka, James B.<jsowka@seyfarth.com> | | | Attorney-Client |
| 88 | Outlook Email | 2/17/2017 | 2/17/2017 | Email exchange re. call to discuss sale of Property | Sowka, James B<jsowka@seyfarth.com> | Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client |
| 89 | Outlook Email | 2/21/2017 | 2/21/2017 | Email exchange re. call to discuss sale of Property | Sowka, James B<jsowka@seyfarth.com> | Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client |
| 127 | Outlook Email | 3/29/2017 | 3/29/2017 | Email among counsel discussing Assignment | Snitker, Gregg<gsnitker@aegonusa.com> | Sowka, James B<jsowka@seyfarth.com> | | | Attorney-Client |
| 128 | Microsoft Word 2003/2004 | 3/29/2017 | | Draft term sheet - attachment to privileged email | | | | | Attorney-Client; Work Product |

USCA4 Appeal: 24-1434      Doc: 26-1      Filed: 06/18/2024      Pg: 249 of 271

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 130 | Outlook Appointment | 3/31/2017 | 3/31/2017 | Email among counsel discussing Assignment | Snitker, Gregg<gsnitker@aegonusa.com> | Sowka, James B<jsowka@seyfarth.com> | | | Attorney-Client |
| 137 | Outlook Email | 4/5/2017 | 4/5/2017 | Email forwarding legal advice withing organization regarding funding of contracts and advice regarding contract termination | Koluch, Nick<nkoluch@aegonusa.com> | Armstrong, Barbie<barmstrong@aegonusa.com> | | | Attorney-Client; Work Product |
| 138 | Outlook Email | 4/5/2017 | 4/5/2017 | Email re. legal advice for funding of contracts and advice regarding contract termination | Koluch, Nick<nkoluch@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client |
| 139 | Outlook Email | 4/5/2017 | 4/5/2017 | Email re. legal advice for funding of contracts and advice regarding contract termination | Koluch, Nick<nkoluch@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client |
| 140 | Outlook Email | 4/5/2017 | 4/5/2017 | Email forwarding legal advice withing organization regarding funding of contracts and advice regarding contract termination | Armstrong, Barbie<barmstrong@aegonusa.com> | Koluch, Nick<nkoluch@aegonusa.com> | | | Attorney-Client |
| 141 | Outlook Email | 4/5/2017 | 4/5/2017 | Email re. legal advice for funding of contracts and advice regarding contract termination | Koluch, Nick<nkoluch@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Armstrong, Barbie<barmstrong@aegonusa.com> | Koluch, Nick<nkoluch@aegonusa.com> | Attorney-Client |
| 142 | Microsoft Excel 2016 Workbook | 4/5/2017 | 4/5/2017 | Aegon Transfer of Funds Report - attachment to privileged email | | | | | Attorney-Client |
| 143 | Outlook Email | 4/5/2017 | 4/5/2017 | Email forwarding legal advice from G. Snitker re. JV funding | Koluch, Nick<nkoluch@aegonusa.com> | Armstrong, Barbie<barmstrong@aegonusa.com> | | | Attorney-Client |
| 144 | Outlook Email | 4/5/2017 | 4/5/2017 | Email re. JV funding legal advice | Snitker, Gregg<gsnitker@aegonusa.com> | Koluch, Nick<nkoluch@aegonusa.com> | | | Attorney-Client |

# EXHIBIT N

# INVESTORS WARRANTY AMERICA, LLC SECOND AMENDED PRIVILEGE LOG

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 78 | Outlook Email | 1/17/2017 | 1/17/2017 | Forward of email exchange re. call to discuss sale of Property by D. Feltman to assistant | Feltman, David<dfeltman@aegonusa.com> | Martin, Lon<lon.martin@transamerica.com> | | | Attorney-Client |
| 108 | Outlook Appointment | 3/20/2017 | 3/20/2017 | Outlook calendar invite for call to discuss Term Sheet | Snitker, Gregg<gsnitker@aegonusa.com> | Martin, Lon<lon.martin@transamerica.com> | | | Attorney-Client |
| 117 | Outlook Appointment | 3/21/2017 | 3/21/2017 | Outlook calendar invite for call to discuss Term Sheet | Snitker, Gregg<gsnitker@aegonusa.com> | Feltman, David<dfeltman@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | Martin, Lon<lon.martin@transamerica.com> | | Attorney-Client |
| 118 | Outlook Appointment | 3/21/2017 | 3/21/2017 | Outlook calendar invite re. to discuss asset management with legal counsel | Martin, Lon<lon.martin@transamerica.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client |
| 283 | Outlook Appointment | 7/16/2017 | 7/16/2017 | Calendar appointment between counsel and accountant to discuss Assignment | Snitker, Gregg<gsnitker@aegonusa.com> | Werkman, Gary<gary.werkman@transamerica.com> | | | Attorney-Client |
| 284 | Outlook Appointment | 7/16/2017 | 7/16/2017 | Email re. inhouse review of Operating Agreement | Werkman, Gary<gary.werkman@transamerica.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client |
| 286 | Outlook Email | 7/21/2017 | 7/21/2017 | Email re. inhouse review of Operating Agreement | Snitker, Gregg<gsnitker@aegonusa.com> | Werkman, Gary<gary.werkman@transamerica.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 301 | Outlook Email | 7/27/2017 | 7/27/2017 | Email re. inhouse review of Operating Agreement | Werkman, Gary<gary.werkman@transamerica.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | | Attorney-Client; WorkProduct |
| 327 | Outlook Appointment | 8/1/2017 | 8/1/2017 | Email among legal counsel regarding Operating Agreement | Snitker, Gregg<gsnitker@aegonusa.com> | Koewler, Jeffrey M.<jkoewler@delfinomadden.com>; Barron, Robert<rbarron@bergersingerman.com> | | | Attorney-Client |
| 551 | Outlook Email | 8/27/2017 | 8/27/2017 | Email exchange re. management fees for Property in response to inquiry from JV legal counsel and discussion of legal advice | Feltman, David<dfeltman@aegonusa.com> | Rubin, Paul<prubin@algongroup.com> | Taylor, Troy<troy@algongroup.com> | | Attorney-Client |
| 552 | Outlook Email | 8/27/2017 | 8/27/2017 | Email with JV counsel regarding Operating Agreement for RSD | Taylor, Troy<troy@algongroup.com> | Feltman, David<dfeltman@aegonusa.com> | Rubin, Paul<prubin@algongroup.com>; Barron, Robert<rbarron@bergersingerman.com> | Feltman, David<us_dfeltman@aegon.mail.onmicrosoft.com> | Work Product |
| 561 | Outlook Email | 8/27/2017 | 8/27/2017 | Email exchange re. Property Operating Budget, forwarding internal legal counsel from JV attorney | Feltman, David<dfeltman@aegonusa.com> | Rubin, Paul<prubin@algongroup.com> | Taylor, Troy<troy@algongroup.com> | | Attorney-Client |
| 609 | Outlook Email | 8/30/2017 | 8/30/2017 | Correspondence to JV counsel regarding Assignment documents | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 610 | Adobe Acrobat (PDF) | 8/30/2017 | | Notice - attachment to privileged email | | | | | Attorney-Client; WorkProduct |
| 611 | Adobe Acrobat (PDF) | 8/30/2017 | | Assignment - attachment to privileged email | | | | | Attorney-Client; WorkProduct |

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 612 | Outlook Email | 8/30/2017 | 8/30/2017 | Email re. legal counsel as to initial capital contribution | Feltman, David<dfeltman@aegonusa.com> | Rubin, Paul<prubin@algongroup.com>; Snitker, Gregg<gsnitker@aegonusa.com> | Steenhoek, Brenda<bdsteenhoek@aegonusa.com>; Van Gorp, Greg<gvangorp@aegonusa.com>; Taylor, Troy<troy@algongroup.com> | | Attorney-Client |
| 613 | Outlook Email | 8/31/2017 | 8/31/2017 | Email re. legal review of Consulting Agreement, including JV counsel. | Taylor, Troy<troy@algongroup.com> | Feltman, David<dfeltman@aegonusa.com> | Rubin, Paul<prubin@algongroup.com>; Barron, Robert<rbarron@bergersingerman.com> | Feltman, David<us_dfeltman@aegon.mail.onmicrosoft.com> | Work Product |
| 620 | Outlook Email | 8/31/2017 | 8/31/2017 | Email among counsel and represented parties re. Rock Springs Drive, LLC - Executed Operating Agreement | Barron, Robert<rbarron@bergersingerman.com> | Taylor, Troy<troy@algongroup.com>; Rubin, Paul<prubin@algongroup.com>; Snitker, Gregg<gsnitker@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<us_gsnitker@aegon.mail.onmicrosoft.com> | Attorney-Client |
| 621 | Adobe Acrobat (PDF) | 8/31/2017 | | Executed Operating Agreement - attachment to privileged email | | | | | Attorney-Client; WorkProduct |
| 622 | Adobe Acrobat (PDF) | 8/31/2017 | 8/28/2017 | State of Maryland's Acceptance of Filing of Articles of Organization - attachment to privilege document | | | | | Attorney-Client; Work Product |
| 634 | Outlook Email | 8/31/2017 | 8/31/2017 | Email among legal counsel regarding Operating Agreement | Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | Barron<rbarron@bergersingerman.com>; Snitker, Gregg<gsnitker@aegonusa.com> | Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | | Attorney-Client |
| 635 | Microsoft Word 2013 | 8/31/2017 | | Operating Agreement - attachment to privileged email | | | | Snitker, Gregg<us_gsnitker@aegon.mail.onmicrosoft.com> | Attorney-Client; Work Product |
| 636 | Outlook Email | 8/31/2017 | 8/31/2017 | Email among legal counsel regarding notice letters, including counsel to JV | Snitker, Gregg<gsnitker@aegonusa.com> | Barron<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Frazier, Tami<tfrazier@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | | Attorney-Client |
| 637 | Adobe Acrobat (PDF) | 8/31/2017 | | Compiled notice under Estoppel Agreement of Assignment - attachment to privileged email | | | | | Attorney-Client; WorkProduct |
| 638 | Outlook Email | 8/31/2017 | 8/31/2017 | Legal counsel discussion regarding Algon engagement letter | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Koewler, Jeffrey M.<jkoewler@delfinomadden.com>; Frazier, Tami<tfrazier@aegonusa.com>; Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 639 | Adobe Acrobat (PDF) | 8/31/2017 | 8/31/2017 | Draft of engagement letter - attachment to privileged email | | | | | Attorney-Client; WorkProduct |
| 640 | Adobe Acrobat (PDF) | 8/31/2017 | 8/31/2017 | Draft of engagement letter - attachment to privileged email | | | | | Attorney-Client; WorkProduct |
| 643 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence among counsel regarding Algon Consulting Agreement | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | Barron, Robert<rbarron@bergersingerman.com>; Taylor, Troy<troy@algongroup.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 644 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence among counsel and JV members regarding Algon Consulting Letter | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Taylor, Troy<troy@algongroup.com>; Rubin, Paul<prubin@algongroup.com>; jkoewler@delfinomadden.com; Snitker, Gregg<gsnitker@aegonusa.com>; Frazier, Tami<tfrazier@aegonusa.com> | | Attorney-Client |
| 645 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence from JV counsel regarding required notice of assignment. | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 651 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence from JV counsel regarding Assignment | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Koewler, Jeffrey M.<jkoewler@delfinomadden.com>; Frazier, Tami<tfrazier@aegonusa.com>; Taylor, Troy<troy@algongroup.com>; Rubin, Paul<prubin@algongroup.com>; Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 652 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence with JV counsel regarding Assignment | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | Snitker, Gregg<us_gsnitker@aegon.mail.onmicrosoft.com> | Attorney-Client; Work Product |
| 653 | Adobe Acrobat (PDF) | 8/31/2017 | | Operating Agreement - attachment to privileged document | | | | | Attorney-Client; WorkProduct |

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 654 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence JV counsel regarding proposed Consulting Agreement | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | Taylor, Troy<troy@algongroup.com>; Rubin, Paul<prubin@algongroup.com>; Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<us_gsnitker@aegon.mail.onmicrosoft.com> | Attorney-Client |
| 655 | Microsoft Word 2007/2008 | 8/31/2017 | 8/31/2017 | Proposed Consulting Agreement | | | | | Attorney-Client; WorkProduct |
| 656 | Outlook Email | 8/31/2017 | 8/31/2017 | Discussion between counsel regarding closing on Assignment | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Koewler, Jeffrey M.<jkoewler@delfinomadden.com>; Frazier, Tami<tfrazier@aegonusa.com>; Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 657 | Adobe Acrobat (PDF) | 8/31/2017 | 8/31/2017 | Consulting Agreement - attachment to privileged document | | | | | Attorney-Client; WorkProduct |
| 658 | Adobe Acrobat (PDF) | 8/31/2017 | 8/31/2017 | Assignment Agreement - attachment to privileged document | | | | | Attorney-Client; WorkProduct |
| 659 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence among counsel regarding Assignment | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Frazier, Tami<tfrazier@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | | Attorney-Client |
| 660 | Adobe Acrobat (PDF) | 8/31/2017 | | Notice of Assignment - attachment to privileged email | | | | | Attorney-Client |
| 661 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence among counsel regarding Management Agreement | Barron, Robert<rbarron@bergersingerman.com> | Koewler, Jeffrey M.<jkoewler@delfinomadden.com>; Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<us_gsnitker@aegon.mail.onmicrosoft.com> | Attorney-Client |
| 662 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence among counsel regarding payment of September rent | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 663 | Adobe Acrobat (PDF) | 8/31/2017 | | Correspondence regarding payment of September rent - attachment to privileged email | | | | | Attorney-Client; WorkProduct |
| 664 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence among counsel regarding Operating Agreement | Barron, Robert<rbarron@bergersingerman.com> | Koewler, Jeffrey M.<jkoewler@delfinomadden.com>; Snitker, Gregg<gsnitker@aegonusa.com> | Taylor, Troy<troy@algongroup.com>; Rubin, Paul<prubin@algongroup.com>; Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<us_gsnitker@aegon.mail.onmicrosoft.com> | Attorney-Client |

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 665 | Outlook Email | 8/31/2017 | 8/31/2017 | Correspondence among counsel regarding JV formation | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | Barron, Robert<rbarron@bergersingerman.com>; Taylor, Troy<troy@algongroup.com>; Rubin, Paul<prubin@algongroup.com> | Snitker, Gregg<us_gsnitker@aegon.mail.onmicrosoft.com> | Attorney-Client |
| 666 | Adobe Acrobat (PDF) | 8/31/2017 | 8/28/2017 | Documents regarding JV formation - attachment to privileged email | | | | | Attorney-Client |
| 672 | Outlook Email | 9/1/2017 | 9/1/2017 | Correspondence among legal counsel re. engagement letters, including, counsel for JV | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 673 | Microsoft Word 2003/2004 | 9/1/2017 | 9/1/2017 | Draft Algon engagement letter - attachment to privileged email | | | | | Attorney-Client; WorkProduct |
| 674 | Microsoft Word 2003/2004 | 9/1/2017 | 9/1/2017 | Draft Algon engagement letter - attachment to privileged email | | | | | Attorney-Client; WorkProduct |
| 675 | Outlook Email | 9/1/2017 | 9/1/2017 | Correspondence among legal counsel re. engagement letters, including, counsel for JV | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | Barron, Robert<rbarron@bergersingerman.com>; Taylor, Troy<troy@algongroup.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 676 | Adobe Acrobat (PDF) | 9/1/2017 | | Compiled notice under Estoppel Agreement of Assignment - attachment to privileged email | | | | Snitker, Gregg<us_gsnitker@aegon.mail.onmicrosoft.com> | Work Product |
| 677 | Outlook Email | 9/1/2017 | 9/1/2017 | Correspondence among legal counsel re. engagement letters, including, counsel for JV | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 678 | Microsoft Word 2003/2004 | 9/1/2017 | 9/1/2017 | Draft Algon engagement letter - attachment to privileged email | | | | | Work Product |
| 679 | Microsoft Word 2003/2004 | 9/1/2017 | 9/1/2017 | Draft Algon engagement letter - attachment to privileged email | | | | | Work Product |
| 680 | Outlook Email | 9/1/2017 | 9/1/2017 | Correspondence among legal counsel re. engagement letters, including, counsel for JV | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koewler, Jeffrey M.<jkoewler@delfinomadden.com> | Barron, Robert<rbarron@bergersingerman.com>; Taylor, Troy<troy@algongroup.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 681 | Adobe Acrobat (PDF) | 9/1/2017 | | Draft of engagement letter - attachment to privileged email | | | | Snitker, Gregg<us_gsnitker@aegon.mail.onmicrosoft.com> | Attorney-Client; Work Product |

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 682 | Outlook Email | 9/1/2017 | 9/1/2017 | Correspondence among counsel regarding Consulting Agreement | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<us_gsnitker@aegon.mail.onmicrosoft.com> | Attorney-Client |
| 685 | Outlook Email | 9/5/2017 | 9/5/2017 | Email re. legal counsel for Consulting Agreement f | Martin, Lon<lon.martin@transamerica.com> | Frazier, Tami<tfrazier@aegonusa.com> | Feltman, David<dfeltman@aegonusa.com> | | Attorney-Client |
| 696 | Outlook Email | 9/7/2017 | 9/7/2017 | Email re. legal counsel as to initial capital contribution | Rubin, Paul<prubin@algongroup.com> | Feltman, David<dfeltman@aegonusa.com> | Taylor, Troy, Troy<troy@algongroup.com> | | Attorney-Client; WorkProduct |
| 697 | Adobe Acrobat (PDF) | 9/7/2017 | 9/6/2017 | Document outlining Rock Springs Drive, LLC Initial Cash Requirement for September 2017- attachment to privileged email | | | | | Attorney-Client; Work Product |
| 707 | Outlook Email | 10/8/2017 | 10/8/2017 | Legal review of Assignment requirements and post-closing matters | Snitker, Gregg<gsnitker@aegonusa.com> | Schmitt, Bob<bob.schmitt@transamerica.com>; Bean, Joshua<jbbean@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 726 | Outlook Email | 12/7/2017 | 12/7/2017 | Email regarding compilation of JV documents and legal analysis of same | Van Gorp, Greg<gvangorp@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Smith, Elizabeth<elizabeth.smith@transamerica.com> | Pithan, Matt<mpithan@aegonusa.com>; Bean, Joshua<jbbean@aegonusa.com>; Recker, Nick<nick.recker@transamerica.com> | | Attorney-Client |
| 728 | Outlook Email | 12/7/2017 | 12/7/2017 | Email from legal counsel regarding analysis of Assignment matters | Snitker, Gregg<gsnitker@aegonusa.com> | Van Gorp, Greg<gvangorp@aegonusa.com>; Smith, Elizabeth<elizabeth.smith@transamerica.com>; Schmitt, Bob<bob.schmitt@transamerica.com> | Pithan, Matt<mpithan@aegonusa.com>; Bean, Joshua<jbbean@aegonusa.com>; Recker, Nick<nick.recker@transamerica.com> | | Attorney-Client |
| 729 | Outlook Email | 12/8/2017 | 12/8/2017 | Email from legal counsel regarding analysis of Assignment matters | Schmitt, Bob<bob.schmitt@transamerica.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Van Gorp, Greg<gvangorp@aegonusa.com>; Smith, Elizabeth<elizabeth.smith@transamerica.com> | Pithan, Matt<mpithan@aegonusa.com>; Bean, Joshua<jbbean@aegonusa.com>; Recker, Nick<nick.recker@transamerica.com>; Gauld, Jonathan<jonathan.gauld@transamerica.com> | | Attorney-Client |
| 733 | Outlook Email | 12/15/2017 | 12/15/2017 | Email proving information to legal counsel as to consent re. membership interests being moved from IWA | Smith, Elizabeth<elizabeth.smith@transamerica.com> | Bean, Joshua<jbbean@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 738 | Outlook Email | 1/12/2018 | 1/12/2018 | Correspondence regarding time entries for legal work of P. Rubin and T. Taylor, proving information to JV counsel | Rubin, Paul<prubin@algongroup.com> | Barron, Robert<rbarron@bergersingerman.com>; Snitker, Gregg<gsnitker@aegonusa.com> | Feltman, David<dfeltman@aegonusa.com>; Van Gorp, Greg<gvangorp@aegonusa.com>; Taylor, Troy<troy@algongroup.com> | | Attorney-Client |

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 739 | Outlook Email | 1/12/2018 | 1/12/2018 | Email seeking advise from JV counsel regarding Assignment documents | Rubin, Paul<prubin@algongroup.com> | Barron, Robert<rbarron@bergersingerman.com>; Snitker, Gregg<gsnitker@aegonusa.com> | Feltman, David<dfeltman@aegonusa.com>; Van Gorp, Greg<gvangorp@aegonusa.com>; Taylor, Troy<troy@algongroup.com> | | Attorney-Client |
| 742 | Outlook Email | 2/6/2018 | 2/6/2018 | Correspondence forwarding advice from tax appeal attorney | Feltman, David<dfeltman@aegonusa.com> | Rubin, Paul<prubin@algongroup.com> | Taylor, Troy<troy@algongroup.com> | | Attorney-Client |
| 743 | Outlook Email | 2/7/2018 | 2/7/2018 | Correspondence forwarding advice from tax appeal attorney | Rubin, Paul<prubin@algongroup.com> | Feltman, David<dfeltman@aegonusa.com> | Taylor, Troy<troy@algongroup.com> | | Attorney-Client |
| 746 | Outlook Email | 2/16/2018 | 2/16/2018 | Email exchange re. email from P. Rubin, JV counsel, re. Rock Springs Drive, LLC | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 749 | Outlook Email | 2/23/2018 | 2/23/2018 | Email exchange attaching letter from W. Bosch to R. Barron, originally provided by JV counsel to members | Rubin, Paul<prubin@algongroup.com> | Feltman, David<dfeltman@aegonusa.com> | Taylor, Troy<troy@algongroup.com> | | Attorney-Client; WorkProduct |
| 750 | Adobe Acrobat (PDF) | 2/23/2018 | | 2/22/18 Letter from W. Bosch to R. Barron re. Amended and Restated Ground Lease Indenture - attachment to correspondence from counsel. | | | | | Work Product |
| 753 | Outlook Email | 2/23/2018 | 2/23/2018 | Email providing JV member with advice given to JV member as to Landlord demand letter | Feltman, David<dfeltman@aegonusa.com> | Rubin, Paul<prubin@algongroup.com> | | | Attorney-Client; WorkProduct |
| 757 | Outlook Email | 3/14/2018 | 3/14/2018 | Email exchange with JV (Longshore and IWA) counsel regarding response to Arnold & Porter Feb 22 2018 Letter | Rubin, Paul<prubin@algongroup.com> | Feltman, David<dfeltman@aegonusa.com>; Snitker, Gregg<gsnitker@aegonusa.com> | Taylor, Troy<troy@algongroup.com>; Barron, Robert<rbarron@bergersingerman> | | Attorney-Client |
| 758 | Microsoft Word 2010/2011 | 3/14/2018 | 3/14/2018 | Draft correspondence from R. Barron toW. Bosch re. amended and restated ground lease - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 759 | Adobe Acrobat (PDF) | 3/14/2018 | 2/22/2018 | Correspondence from R. Barron to W. Bosch re. amended and restated ground lease - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 760 | Outlook Email | 3/14/2018 | 3/14/2018 | Email exchange with JV (Longshore and IWA) counsel regarding response to Arnold & Porter Feb 22 2018 Letter | Rubin, Paul<prubin@algongroup.com> | Feltman, David<dfeltman@aegonusa.com>; Snitker, Gregg<gsnitker@aegonusa.com> | Taylor, Troy<troy@algongroup.com>; Barron, Robert<rbarron@bergersingerman> | | Attorney-Client |
| 761 | Microsoft Word 2010/2011 | 3/14/2018 | 3/14/2018 | Draft Letter from R. Barron to W. Bosch re. Amended and Restated Ground Lease Indenture - attachment to privileged email | | | | | Work Product |
| 774 | Outlook Email | 3/27/2018 | 3/27/2018 | Email among counsel re. Management Agreement | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | | |
| 775 | Microsoft Word 2013 | 3/27/2018 | | Algon Management Agreement - attachment to privileged email | | | | | Work Product |
| 776 | Outlook Email | 3/27/2018 | 3/27/2018 | Email among counsel re. Management Agreement | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 777 | Outlook Email | 3/29/2018 | 3/29/2018 | Email among counsel re. Management Agreement | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | | | Attorney-Client |
| 779 | Outlook Email | 4/5/2018 | 4/5/2018 | Email among counsel re. Management Agreement | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 780 | Microsoft Word 2013 | 4/5/2018 | | Management Agreement - attachment to privileged email | | | | | Attorney-Client; WorkProduct |
| 781 | Outlook Email | 4/6/2018 | 4/6/2018 | Email exchange re. Rock Springs Drive Operating Agreement, conveying legal advice from G. Snitker | Feltman, David<dfeltman@aegonusa.com> | Van Gorp, Greg<gvangorp@aegonusa.com>; Snitker, Gregg<gsnitker@aegonusa.com> | Johnson, Brenda<bdjohnson@aegonusa.com>; Johansen, Derek C.<derek.johansen@transamerica.com>; Hutchinson, Neal<neal.hutchinson@transamerica.com> | | Attorney-Client; Work Product |
| 782 | Outlook Email | 4/25/2018 | 4/25/2018 | Email exchange from JV member conveying counsel from JV (Longshore and IWA) counsel re. letter from Landlord's counsel re. Ground Lease | Taylor, Troy<troy@algongroup.com> | Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client; Work Product |
| 783 | Outlook Email | 4/25/2018 | 4/25/2018 | Email exchange from JV member conveying counsel from JV (Longshore and IWA) counsel re. letter from Landlord's counsel re. Ground Lease | Taylor, Troy<troy@algongroup.com> | Feltman, David<dfeltman@aegonusa.com> | | | Attorney-Client |
| 784 | Adobe Acrobat (PDF) | 4/25/2018 | | 4/25/18 Correspondence from W. Bosch to R. Barron re. Amended and Restated Ground Lease Indenture - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 792 | Outlook Email | 9/7/2018 | 9/7/2018 | Email exchange re. call with JV attorney to discuss Property | Feltman, David<dfeltman@aegonusa.com> | Guso, Jordi<JGuso@bergersingerman.com>; Taylor, Troy<troy@algongroup.com> | Barron, Robert<rbarron@bergersingerman.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 828 | Outlook Email | 12/14/2018 | 12/14/2018 | Email re. call with JV attorney to discuss Property matters | Taylor, Troy<troy@algongroup.com> | Barron, Robert<rbarron@bergersingerman.com>; Guso, Jordi<JGuso@bergersingerman.com> | Feltman, David<dfeltman@aegonusa.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 829 | Outlook Email | 12/16/2018 | 12/16/2018 | Email exchange with JV counsel re. revised and redlined versions of indemnification agreements | Taylor, Troy<troy@algongroup.com> | Barron, Robert<rbarron@bergersingerman.com>; Guso, Jordi<JGuso@bergersingerman.com> | Feltman, David<dfeltman@aegonusa.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 830 | Outlook Email | 12/16/2018 | 12/16/2018 | Email exchange re. scheduling of call with JV attorney to discuss Property | Guso, Jordi<JGuso@bergersingerman.com> | Taylor, Troy<troy@algongroup.com> | Barron, Robert<rbarron@bergersingerman.com>; Feltman, David<dfeltman@aegonusa.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 831 | Outlook Email | 12/16/2018 | 12/16/2018 | Email exchange re. scheduling of call with JV attorney to discuss Property | Taylor, Troy<troy@algongroup.com> | Guso, Jordi<JGuso@bergersingerman.com> | Barron, Robert<rbarron@bergersingerman.com>; Feltman, David<dfeltman@aegonusa.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 835 | Outlook Email | 12/17/2018 | 12/17/2018 | Calendar invite for call with JV attorney to discuss Property | Rubin, Paul<prubin@algongroup.com> | Taylor, Troy<troy@algongroup.com>; Guso, Jordi<JGuso@bergersingerman.com> | Barron, Robert<rbarron@bergersingerman.com>; Feltman, David<dfeltman@aegonusa.com> | | Attorney-Client |
| 836 | Outlook Email | 12/17/2018 | 12/17/2018 | Email re. calendar invite for call with JV attorney to discuss Property | Guso, Jordi<JGuso@bergersingerman.com> | Rubin, Paul<prubin@algongroup.com> | Taylor, Troy<troy@algongroup.com>; Barron, Robert<rbarron@bergersingerman.com>; Feltman, David<dfeltman@aegonusa.com> | | Attorney-Client |
| 837 | Outlook Email | 12/17/2018 | 12/17/2018 | Email exchange with JV attorney regarding legal department contacts at Aegon | Guso, Jordi<JGuso@bergersingerman.com> | Feltman, David<dfeltman@aegonusa.com>; Barron, Robert<rbarron@bergersingerman.com> | | | Attorney-Client |
| 848 | Outlook Appointment | 12/18/2018 | 12/18/2018 | Outlook calendar appointment re scheduling JV call, with JV counsel | Guso, Jordi<JGuso@bergersingerman.com> | Hansen, Aron<ahansen@aegonusa.com>; Snitker, Gregg<gsnitker@aegonusa.com>; Barron, Robert<rbarron@bergersingerman.com> | | | Attorney-Client |
| 858 | Outlook Email | 12/27/2018 | 12/27/2018 | Email from legal counsel re. amendment to Operating Agreement | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com>; Koluch, Nick<nkoluch@aegonusa.com>; Johnson, Brenda<bdjohnson@aegonusa.com> | | Attorney-Client |
| 859 | Adobe Acrobat (PDF) | 12/27/2018 | | First Amendment to Operating Agreement - attachment to privileged email | | | | | Work Product |
| 863 | Outlook Email | 12/27/2018 | 12/27/2018 | Email exchange between inhouse counsel and JV counsel re. amendment to Operating Agreement | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 864 | JPEG File Interchange | 12/27/2018 | | 6560 First Amendment to Operating Agreement - attachment to privileged email - attachment to privileged email | | | | | Attorney-Client; Work Product |
| 867 | Outlook Email | 12/28/2018 | 12/28/2018 | Email exchange re. CREF-C Conference in Miami and introduction | Sowka, James B<jsowka@seyfarth.com> | Osterhaus, Lara<losterha@aegonusa.com>; Feltman, David<dfeltman@aegonusa.com> | | svcppsdeduplication<svcppsdeduplication@transamerica.com> | Attorney-Client |

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 878 | Outlook Email | 1/24/2019 | 1/24/2019 | Legal counsel discussion regarding Management Agreement | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 879 | Adobe Acrobat (PDF) | 1/24/2019 | | Management Agreement - attachment to privilege email | | | | | Attorney-Client |
| 887 | Outlook Email | 3/12/2019 | 3/12/2019 | Scan of draft Operating Amendment provided by counsel | xerox7845@transamerica.com | Koluch, Nick<nkoluch@aegonusa.com> | | | Attorney-Client; WorkProduct |
| 889 | Outlook Email | 3/12/2019 | 3/12/2019 | Email re. legal review of Operating Agreement Amendment | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koluch, Nick<nkoluch@aegonusa.com>; Young, Anita L.<alyoung@aegonusa.com> | | Attorney-Client |
| 890 | Adobe Acrobat (PDF) | 3/12/2019 | | Operating Agreement Amendment - attachment to privileged email | | | | | Work Product |
| 894 | Outlook Email | 3/12/2019 | 3/12/2019 | Email re. legal review of Operating Agreement Amendment | Barron, Robert<rbarron@bergersingerman.com> | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koluch, Nick<nkoluch@aegonusa.com>; Young, Anita L.<alyoung@aegonusa.com>; Taylor, Troy<troy@algongroup.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 895 | Outlook Email | 3/12/2019 | 3/12/2019 | Email re. legal review of Operating Agreement Amendment | Taylor, Troy<troy@algongroup.com> | Barron, Robert<rbarron@bergersingerman.com> | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com>; Snitker, Gregg<gsnitker@aegonusa.com>; Koluch, Nick<nkoluch@aegonusa.com>; Young, Anita L.<alyoung@aegonusa.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 896 | Outlook Email | 3/12/2019 | 3/12/2019 | Email re. legal review of Operating Agreement Amendment | Barron, Robert<rbarron@bergersingerman.com> | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koluch, Nick<nkoluch@aegonusa.com>; Young, Anita L.<alyoung@aegonusa.com>; Taylor, Troy<troy@algongroup.com>; Rubin, Paul<prubin@algongroup.com>; Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 897 | Outlook Email | 3/12/2019 | 3/12/2019 | Correspondence regarding Second Amendment to Operating Agreement | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koluch, Nick<nkoluch@aegonusa.com>; Young, Anita L.<alyoung@aegonusa.com>; Taylor, Troy<troy@algongroup.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 898 | Outlook Email | 3/12/2019 | 3/12/2019 | Email re. legal review of Operating Agreement Amendment | Barron, Robert<rbarron@bergersingerman.com> | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koluch, Nick<nkoluch@aegonusa.com>; Young, Anita L.<alyoung@aegonusa.com>; Taylor, Troy<troy@algongroup.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 899 | Outlook Email | 3/12/2019 | 3/12/2019 | Email re. legal review of Operating Agreement Amendment | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com>; Koluch, Nick<nkoluch@aegonusa.com>; Young, Anita L.<alyoung@aegonusa.com>; Taylor, Troy<troy@algongroup.com>; Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |
| 924 | Outlook Email | 4/12/2019 | 4/12/2019 | Email form legal counsel re. Federal and State Contract Audit | Hansen, Aron<ahansen@aegonusa.com> | Sidwell, Sara<sara.sidwell@transamerica.com> | | | Attorney-Client; WorkProduct |
| 931 | Outlook Email | 5/3/2019 | 5/3/2019 | Email among legal counsel re. proposed tenants for Rock Springs Drive | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com>; Guso, Jordi<JGuso@bergersingerman.com> | | Attorney-Client |
| 939 | Outlook Email | 5/10/2019 | 5/10/2019 | Legal communication regarding audit of various properties | Snitker, Gregg<gsnitker@aegonusa.com> | Sidwell, Sara<sara.sidwell@transamerica.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 946 | Outlook Email | 5/13/2019 | 5/13/2019 | Email re. legal review of Operating Agreement Amendment and funding request | Taylor, Troy<troy@algongroup.com> | Koluch, Nick<nkoluch@aegonusa.com>; Rubin, Paul<prubin@algongroup.com> | Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 947 | Outlook Email | 5/13/2019 | 5/13/2019 | Discussion between counsel regarding amendment to Operating Agreement | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 948 | Outlook Email | 5/13/2019 | 5/13/2019 | Discussion between legal counsel regarding amendment to Operating Agreement | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |

11

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 949 | Adobe Acrobat (PDF) | 5/13/2019 | | Draft Amendment to Operating Agreement | | | | | Attorney-Client; WorkProduct |
| 952 | Outlook Email | 5/16/2019 | 5/16/2019 | Discussion between legal counsel regarding amendment to Operating Agreement | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 953 | Adobe Acrobat (PDF) | 5/16/2019 | | Draft Amendment to Operating Agreement  - attachment to privileged email | | | | | Attorney-Client; WorkProduct |
| 955 | Outlook Email | 5/16/2019 | 5/16/2019 | Discussion between legal counsel regarding amendment to Operating Agreement | Barron, Robert<rbarron@bergersingerman.com> | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | | Attorney-Client |
| 958 | Outlook Email | 5/20/2019 | 5/20/2019 | Discussion between legal counsel regarding amendment to Operating Agreement | Barron, Robert<rbarron@bergersingerman.com> | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com>; Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 959 | Adobe Acrobat (PDF) | 5/20/2019 | 5/20/2019 | Draft Amendment to Operating Agreement | | | | | Attorney-Client; WorkProduct |
| 968 | Outlook Email | 6/12/2019 | 6/12/2019 | Correspondence from JV counsel regarding letter from landlord litigation counsel | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com>; Guso, Jordi<JGuso@bergersingerman.com> | | Attorney-Client |
| 969 | Microsoft Word 2007/2008 | 6/12/2019 | 6/12/2019 | Draft of Dispute Communication Prepared by Joint Venture Counsel, attachment to privileged email | | | | | Attorney-Client; Work Product |
| 972 | Outlook Email | 6/17/2019 | 6/17/2019 | Email re Rock Springs Drive letter from landlord's attorney forwarded to JV partners in email by JV counsel | Rubin, Paul<prubin@algongroup.com> | Koluch, Nick<nkoluch@aegonusa.com> | Taylor, Troy<troy@algongroup.com> | | Attorney-Client |
| 973 | Outlook Email | 6/17/2019 | 6/17/2019 | Email regarding call for GSA Request for lease proposal, forwarding communication from JV counsel | Rubin, Paul<prubin@algongroup.com> | Koluch, Nick<nkoluch@aegonusa.com> | Taylor, Troy<troy@algongroup.com> | | Attorney-Client |
| 979 | Outlook Email | 6/18/2019 | 6/18/2019 | Personal Time Off of in-house counsel team | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com>; Guso, Jordi<JGuso@bergersingerman.com> | | Attorney-Client |
| 980 | Outlook Email | 6/19/2019 | 6/19/2019 | Email re. legal review of Operating Agreement Amendment and funding request | Koluch, Nick<nkoluch@aegonusa.com> | Taylor, Troy<troy@algongroup.com> | Rubin, Paul<prubin@algongroup.com>; Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 982 | Outlook Email | 6/19/2019 | 6/19/2019 | Email re fifth amendment to operating agreement for Rock Springs LLC, including counsel for JV | Taylor, Troy<troy@algongroup.com> | Koluch, Nick<nkoluch@aegonusa.com> | Rubin, Paul<prubin@algongroup.com>; Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 987 | Outlook Email | 6/26/2019 | 6/26/2019 | Correspondence from JV counsel regarding communication from landlord | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |

12

**A256**

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 995 | Outlook Email | 7/3/2019 | 7/3/2019 | Correspondence with JV counsel regarding scheduling of meeting to discuss operations | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Sellers, Fleeta<fsellers@bergersingerman.com>; Barron, Robert<rbarron@bergersingerman.com>; Guso, Jordi<JGuso@bergersingerman.com> | | Attorney-Client |
| 996 | Outlook Email | 7/3/2019 | 7/3/2019 | Correspondence with JV counsel regarding scheduling of meeting to discuss operations | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | | | Attorney-Client |
| 997 | Outlook Email | 7/3/2019 | 7/3/2019 | Correspondence with JV counsel regarding scheduling of meeting to discuss operations | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Guso, Jordi<JGuso@bergersingerman.com> | | Attorney-Client |
| 998 | Outlook Email | 7/3/2019 | 7/3/2019 | Correspondence with JV counsel regarding scheduling of meeting to discuss operations | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Guso, Jordi<JGuso@bergersingerman.com> | | Attorney-Client |
| 999 | Outlook Email | 7/11/2019 | 7/11/2019 | Correspondence with JV counsel regarding scheduling of meeting to discuss operations | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com>; Guso, Jordi<JGuso@bergersingerman.com> | | Attorney-Client |
| 1003 | Outlook Email | 7/19/2019 | 7/19/2019 | Legal counsel regarding Assignment and Letter from Landlord | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 1060 | Outlook Email | 9/18/2019 | 9/18/2019 | Email re. legal review of Operating Agreement Amendment and funding request | Sowka, James B<jsowka@seyfarth.com> | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com>; Snitker, Gregg<gsnitker@aegonusa.com> | | svcppsdeduplication<svcppsdeduplication@transamerica.com> | Attorney-Client |
| 1069 | Outlook Email | 9/20/2019 | 9/20/2019 | Email re. legal review of Operating Agreement Amendment and written consent | Sowka, James B<jsowka@seyfarth.com> | Minzenmeyer, Peggy<pminzenmeyer@aegonusa.com> | Snitker, Gregg<gsnitker@aegonusa.com> | svcppsdeduplication<svcppsdeduplication@transamerica.com> | Attorney-Client |
| 1081 | Outlook Email | 10/21/2019 | 10/21/2019 | Legal counsel from JV counsel regarding issues raised by Landlord's counsel | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com>; Guso, Jordi<JGuso@bergersingerman.com> | | Attorney-Client |
| 1082 | Adobe Acrobat (PDF) | 10/21/2019 | 10/17/2019 | Summary of Algon Group Fees as examples from prior engagements - attachment to privileged email | | | | | Attorney-Client; WorkProduct |
| 1083 | Outlook Email | 10/22/2019 | 10/22/2019 | Email exchange among counsel regarding and attaching Summary of Algon Group Fees | Barron, Robert<rbarron@bergersingerman.com> | Snitker, Gregg<gsnitker@aegonusa.com> | Barron, Robert<rbarron@bergersingerman.com>; Guso, Jordi<JGuso@bergersingerman.com> | | Attorney-Client |
| 1084 | Adobe Acrobat (PDF) | 10/22/2019 | 10/18/2019 | Summary of Algon Group Fees as examples from prior engagements - attachment to privileged email | | | | | Attorney-Client |
| 1095 | Outlook Email | 12/20/2019 | 12/20/2019 | Email re. legal review of Operating Agreement Amendment and funding request | Taylor, Troy<troy@algongroup.com> | Koluch, Nick<nkoluch@aegonusa.com> | Rubin, Paul<prubin@algongroup.com>; Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |

| DOC NUMBER | NATIVE TYPE | PARENT DATE | DOCUMENT DATE | DOCUMENT DESCRIPTION | FROM | TO | CC | BCC | PRIVILEGE BASIS |
|---|---|---|---|---|---|---|---|---|---|
| 1096 | Outlook Email | 12/20/2019 | 12/20/2019 | Email re. legal review of Operating Agreement Amendment and funding request | Koluch, Nick<nkoluch@aegonusa.com> | Taylor, Troy<troy@algongroup.com> | Rubin, Paul<prubin@algongroup.com>; Barron, Robert<rbarron@bergersingerman.com> | | Attorney-Client |
| 1097 | Outlook Email | 12/20/2019 | 12/20/2019 | Email re seventh amendment to operating agreement for Rock Springs Drive LLC, including JV counsel | Barron, Robert<rbarron@bergersingerman.com> | Taylor, Troy<troy@algongroup.com>; Koluch, Nick<nkoluch@aegonusa.com> | Rubin, Paul<prubin@algongroup.com> | | Attorney-Client |

# EXHIBIT O

| Date: | Wed, 17 Jul 2019 7:20:30 AM -0400 |
|---|---|
| Sent: | Wed, 17 Jul 2019 7:20:28 AM -0400 |
| Subject: | RE: MD property tax |
| From: | prubin@algongroup.com |
| To: | 'Van Gorp, Greg' <gvangorp@Aegonusa.com>; 'Troy Taylor' <troy@algongroup.com>; |
| CC: | 'Johnson, Brenda' <bdjohnson@Aegonusa.com>; |

All,

FYI, the Tax bill will continue to come to IWA because Dave, with attorney's blessing, preferred to not have the transfer of ownership recorded in County records. I have spoken to the County, who will not change the address without a recorded document.

Paul F. Rubin
Longshore Ventures LLC
Cell: 215-570-8716

**From:** Van Gorp, Greg <gvangorp@Aegonusa.com>
**Sent:** Tuesday, July 16, 2019 4:55 PM
**To:** prubin@algongroup.com; 'Troy Taylor' <troy@algongroup.com>
**Cc:** Johnson, Brenda <bdjohnson@Aegonusa.com>
**Subject:** FW: MD property tax

Attached is a 7/1/2019-6/30/2020 property tax bill from Montgomery County for the property at 6560 Rock Springs Drive.

**Greg Van Gorp**
Realty Accounting
T 319 355 8661

**From:** Jordan, William
**Sent:** Tuesday, July 16, 2019 11:30 AM
**To:** Van Gorp, Greg <gvangorp@Aegonusa.com>
**Subject:** MD property tax

Greg – would this be for you? Thanks, Bill

William R Jordan | Senior Accountant - Tax | CFO Tax
o: 319-355-7051
e: william.jordan@transamerica.com  | w: www.transamerica.com

Transamerica
6400 C Street SW Mail Stop 2H Cedar Rapids, IA 52499-3210

CONFIDENTIALITY: This message and accompanying documents are intended only for use by the individual or entity to which they are addressed and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If the reader of this document is not the intended recipient, you are hereby notified you are strictly prohibited from reading, disseminating, distributing, or copying this communication. If you have received this document in error, please notify sender immediately and destroy the original transmission.

Archiving Notice: Recipients should be aware that all emails exchanged with sender are automatically archived and may be accessed at any time by duly authorized persons and may be produced to other parties, including public authorities, in compliance with applicable laws.

RSD-014780

# EXHIBIT P

**Longshore Ventures LLC**
**2457 Collins Avenue – PH2**
**Miami Beach, FL 33140**

**Memorandum**

To: Troy Taylor

CC: Files

From: Paul Rubin

Date: 5.10.19

Re: GSA RFP Update

Paul Hood, CBRE, called last week to tell us of his conversation with GSA's brokers. He learned that Rock Springs Drive, LLC  proposed pricing was "in the range" of other proposals for the first round and that we would be receiving our deficiency letter shortly. The deficiency letter outlines all of those uncompleted items and contingencies needed to be resolved to proceed to the next round of negotiations.

On May 2 I received the Deficiency letter from CBRE and shared it with both Troy Taylor and Nick Koluch for review.

Today I spoke with Nick Koluch again, who informed me that IWA and affiliates would not be willing to finance or provide credit enhancement for the approximately $17 million financing that would be needed to advance the GSA proposal. Without IWA financing or credit enhancement Longshore believes that the proposal is not financeable from a third party, due to the amount of the ground lease payments.

Additionally, Nick told me that IWA and affiliates will not register as a "government contractor". The GSA proposal process requires lessors to register on the GSA's "System for Award Management" site. One requirement for registration is that all principal owners of an entity must also register (to avoid contractors using shell entities to hide their identity).

Due to IWA's refusal to register with GSA and the financing issues, we informed CBRE today that Rock Springs Drive, LLC would not be proceeding with the GSA proposal, answering the deficiency letter or spending any more funds on this effort.

RSD-002884

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**6500 CHERRYWOOD LANE**
**GREENBELT, MARYLAND 20770**
**301-344-0632**

### MEMORANDUM

To:  Counsel of Record

From:  Judge Peter J. Messitte

Re:  Rock Spring Plaza II, LLC v. Investors Warranty of Am., LLC
     Civil No. 20-1502 PJM

Date:  March 15, 2023

********

Plaintiff Rock Spring Plaza II, landlord on a ground lease in Montgomery County, has sued Defendant Investors Warranty of America ("IWA") as tenant under the ground lease, alleging among other things that IWA has attempted to break the lease by assigning it to Defendant Rock Springs Drive ("RSD"), who Plaintiff suggests is essentially a sham entity. Plaintiff has argued, for example, that the purported assignment was made in secret; that the proposed assignee RSD only came into existence at virtually the same time the assignment to it was made; that RSD refused to provide basic information to Plaintiff, such as who its principals were and what its capitalization was; and that no deed of assignment was ever filed in the land records of the County.

Plaintiff contends that IWA's actions suggest that it has acted fraudulently in the transaction.

As part of the discovery in the case, Plaintiff, invoking the crime-fraud exception to the rule of attorney-client privilege, is seeking to discover correspondence between IWA and its attorneys that might buttress its claim of fraud (the Court does not understand that Plaintiff is alleging any crime on IWA's part).

The parties have already briefed, to a fair extent, the issue of the crime – fraud exception. At an oral hearing held on February 16, 2023, the Court ordered IWA's counsel submit to chambers for *in camera* review approximately 190 attorney-client exchanges. Upon review of the documents, the Court identified three (3) exchanges that it determined might be relevant to Plaintiff's fraud theory. However, before ordering release of the documents, the Court gave IWA's counsel ten (10) days to respond to the Court's tentative view by filing an appropriate *ex parte* pleading.

IWA's counsel did so, in the form of an eight-page single-spaced letter.

In their response, IWA's counsel went well beyond what the Court had in mind. In a form which was as much a stern lecture to the Court as conventional argument, IWA's counsel in effect re-argued the law of the crime – fraud exception and suggested that the Court could not "release" the documents but that it could only order counsel to "produce" the documents, which IWA's

1

**A263**

counsel would only do in accord with what they took to be their client's rights under certain case law. Further, IWA's counsel made mention of seeking "mandamus" review if the Court failed to act in accordance with their wishes.

Importantly, IWA's counsel devoted only a small section of their submission to the actual documents the Court determined might be relevant. The vast bulk of the submission was, and is, exclusively legal in nature. Counsel to IWA's argument, in essence, urges the Court to reconsider the crime-fraud exception issue. But counsel to IWA's view of the law is no more than that – their view. In fairness, Plaintiff's counsel are entitled to respond to and, to the extent they wish or are able to do so, to rebut counsel to IWA's legal submissions.

The Court will <u>not</u> consider counsel for IWA's arguments on an *ex parte* basis.

That leaves IWA's counsel with but a few options. Allowing that IWA's counsel were told they might proceed *ex parte* they can:

1. Agree that the Court, after redacting the small section of their submission discussing the questioned documents, may deliver the full contents of their submission to Plaintiff's counsel;

2. Withdraw the submission and file a more conventional legal brief, seeking reconsideration of the crime-fraud exception, copy to Plaintiff's counsel, setting forth the legal argument they have sought to make *ex parte*;

3. Proceed, as in Item 2, but agree to have their original submission remain under seal.

IWA's counsel shall have five (5) days from the date of this Order to choose which option they wish to pursue. They shall make their decision in writing, copy to Plaintiff's counsel.

Despite the informal nature of this ruling, it shall constitute an Order of the Court and the Clerk is directed to docket it accordingly.


Peter J. Messitte
United States District Judge


CC:     Court File


2

**A264**



**Seyfarth Shaw LLP**

1075 Peachtree Street, N.E.

Suite 2500

Atlanta, Georgia  30309-3958

**T** (404) 885-1500

**F** (404) 892-7056

rdavis@seyfarth.com

T (404) 888-1874

www.seyfarth.com

<u>**FILED VIA ECF**</u>

March 20, 2023

Hon. Peter J. Messitte
U.S. District Court for the District of Maryland
6500 Cherrywood Lane
Greenbelt, MD 20770

      Re:    *Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC*, No. 20-cv-1502 PJM

Dear Judge Messitte:

      Defendant Investors Warranty of America, LLC ("IWA") has reviewed the Court's Memorandum Order dated March 15, 2023 (the "Order"), in which the Court directed IWA to elect, within five (5) days of the Order, one of three options under which IWA will proceed.  IWA has chosen Option 3, and thus elects to allow its original submission to remain under seal and IWA will file a legal brief setting forth the legal argument made in its original submission.

      Plaintiff Rock Spring Plaza II, LLC ("Plaintiff") took the deposition of IWA's corporate witness pursuant to Fed. R. Civ. P. 30(b)(6) on March 16 and 17, 2023.  Since Plaintiff's corporate witness is being deposed on March 21 and 22, 2023, for purposes of a briefing schedule, unless the Court directs otherwise, IWA proposes to file its brief on Monday, March 27, 2023.

Respectfully,

SEYFARTH SHAW LLP

/s/ *Rebecca A. Davis*

Rebecca A. Davis

cc:     Counsel of Record

**A265**