NO. 24-1434

# United States Court of Appeals

*for the*

# Fourth Circuit

———————

In re: INVESTORS WARRANTY OF AMERICA, LLC,

*Petitioner*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT GREENBELT

## RESPONDENT ROCK SPRING PLAZA II, LLC'S ANSWER IN RESPONSE TO INVESTORS WARRANTY OF AMERICA, LLC'S PETITION FOR WRIT OF MANDAMUS (SEALED)

WILLIAM M. BOSCH
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington DC 20036
(202) 663-8000
william.bosch@pillsburylaw.com

JEFFREY P. METZLER
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019
(212) 858-1000
jeffrey.metzler@pillsburylaw.com

*Attorneys for Respondent*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-1434__     Caption: __In re: Investors Warranty of America LLC__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Rock Spring Plaza, II, LLC__
(name of party/amicus)

_____

who is _____ __Respondent__ _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO

2.   Does party/amicus have any parent corporations?     ☐YES ☑NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     ☐YES ☑NO
     If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ William M. Bosch          Date:      June 14, 2024

Counsel for: Respondent Rock Spring Plaza, II, LLC

Print to PDF for Filing

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................1

II.   STATEMENT OF THE ISSUES ...........................................................7

III.  STATEMENT OF THE CASE ...............................................................7

    A.   Factual Background ......................................................................7

    B.   Procedural History .......................................................................9

IV.   ARGUMENT .......................................................................................13

    A.   Defendants Can No Longer Deny that the Assignment was
        Structured to Avoid a Fraudulent Conveyance Claim. ............13

    B.   Plaza is Entitled to the Filings in this Case. ............................17

        1.   After this Court Ordered IWA to Produce the Memorandum
            Opinion, No Reason Remains to Keep IWA's *Ex Parte*
            Submissions Under Seal. ...................................................18

        2.   The Hearing Transcript and the *Ex Parte* Brief May Be
            Provided to Plaza While the Three Documents Remain
            Privileged. .........................................................................19

    C.   The District Court Correctly Applied the Crime-Fraud Exception
        in the First Instance, and this Court Did Not Have and Still Does
        Not Have the Full Record. ........................................................20

    D.   This Court Should Decline to Issue an Advisory Opinion on
        Evidentiary Questions That Have Not Been Presented to or
        Decided by the District Court....................................................22

    E.   There Is No Basis for Reassignment. .......................................24

        1.   There Is No Indication that the District Court Would Have
            Difficulty Following a Mandate on Remand...................24

        2.   There Is No Appearance of Injustice................................27

        3.   After More Than Four Years of Fact-Intensive Litigation, the
            District Court is Prepared to Fairly Try This Case...........29

V.    CONCLUSION ...................................................................................29

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abourezk v. Reagan*,
785 F.2d 1043 (D.C. Cir. 1986), *aff'd*, 484 U.S. 1 (1987) ................................17

*Allied Chem. Corp. v. Daiflon, Inc.*,
449 U.S. 33 (1980)................................................................................22, 23

*Armstrong v. Executive Office of the President*,
97 F.3d 575 (D.C. Cir. 1996)...............................................................18

*Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*,
964 F.2d 159 (2d Cir. 1992) ................................................................19

*Cheney v. U.S. Dist. Ct.*,
542 U.S. 367 (2004)...............................................................................22

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994)...............................................................................23

*Doe v. Sidar*,
93 F.4th 241 (4th Cir. 2024) ................................................................23

*G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*,
822 F.3d 709 (4th Cir. 2016), *vacated and remanded on other grounds,*
580 U.S. 1168 (2017)............................................................................27

*Harris v. Rivera*,
454 U.S. 339 (1981)...............................................................................25

*In re Apex Oil Co.*,
884 F.2d 343 (8th Cir. 1989) ...............................................................21

*In re Grand Jury Proceedings*,
674 F.2d 309 (4th Cir. 1982) ...............................................................21

*In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991,*
33 F.3d 342 (4th Cir.1994) ...................................................................21

ii

*In re Investors Warranty of America, LLC*,
    No. 23-1928 (4th Cir., Sept. 6, 2023) ..................................................3

*In re Investors Warranty of America, LLC*,
    No. 24-1434 (4th Cir., May 13, 2024) ...............................................3

*In re Paradyne Corp.*,
    803 F.2d 604 (11th Cir. 1986) ...........................................................18

*In re Ralston Purina Co.*,
    726 F.2d 1002 (4th Cir. 1984) ...........................................................22

*Kerr v. U.S. Dist. Ct.*,
    426 U.S. 394 (1976)......................................................................18, 22

*Lewis v. Bloomsburg Mills, Inc.*,
    608 F.2d 971 (4th Cir. 1979) .............................................................18

*Lykins v. DOJ*,
    725 F.2d 1455 (D.C. Cir. 1984) .........................................................18

*MDK, Inc. v. Mike's Train House, Inc.*,
    27 F.3d 116 (4th Cir. 1994) ...............................................................23

*Morgan v. United States*,
    304 U.S. 1 (1938)................................................................................17

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
    988 F.3d 690 (4th Cir. 2021) .......................................................24, 25

*United States v. Galecki*,
    932 F.3d 176 (4th Cir. 2019) .............................................................25

*United States v. North Carolina*,
    180 F.3d 574 (4th Cir. 1999) .............................................................24

*United States v. Zolin*,
    491 U.S. 554 (1989)..............................................................20, 21, 24

*Will v. United States*,
    389 U.S. 90 (1967).............................................................................23

<u>Statutes and Codes</u>

Maryland Common Law Code
    Section 15-207 (2022) ........................................................................15

Maryland Uniform Fraudulent Conveyance Act (Md. Comm. Law Code
    §15-201 *et seq*.)..............................................................................2

## I.    INTRODUCTION

Five years after it made an investment decision to acquire a leasehold estate through foreclosure and become the tenant under a 99-year ground lease (the "Ground Lease"), petitioner-defendant Investors Warranty of America, LLC ("IWA") determined that its property interest had become "worthless" and that it needed an "exit strategy" to escape its long-term financial liabilities to the landlord, respondent-plaintiff Rock Spring Plaza II, LLC ("Plaza").

After more than four years of proceedings, including multiple motions and evidentiary hearings, the district court succinctly explained the "exit strategy" IWA came up with:



A871.[1]

_____

[1] Citations in the form "A_____" are citations to the accompanying Appendix.

In other words, IWA assigned its interest under the Ground Lease (the "Leasehold Estate") to a sham entity, Rock Springs Drive LLC ("RSD," and together with IWA, "Defendants"), which IWA conceived and formed to allow it to walk away from the Ground Lease scot-free after the three-year statute of limitations for fraudulent conveyance claims had run. As RSD's outside counsel Robert Barron testified, IWA's intention was always to "turn over the keys" after the statute of limitations elapsed. A345 (Barron Dep. 219:14-20).

Before the statute of limitations ran, however, Plaza sued to invalidate the sham Assignment, alleging that it was a fraudulent conveyance (Count II) and, in the alternative, that it should be voided under contract theories (including breach of the implied duties of good faith and fair dealing (Count I)). *See* A186-188. IWA asserts that the Assignment was simply a "lawful transfer permitted under the Ground Lease." A67.

The real issue in dispute is not whether the underlying agreements permit assignment to third parties; they clearly do. Rather, the issue is whether IWA could lawfully assign its interest in the Ground Lease to a sham entity with the intention of having that entity default once the statute of limitations for a fraudulent conveyance claim expired, leaving Plaza with no recourse.

Plaza contends that IWA's Assignment scheme constitutes a fraudulent conveyance under the Maryland Uniform Fraudulent Conveyance Act, whereas

2

IWA argues its right to assign the Ground Lease was unfettered. The goal of IWA's petition is to prevent the facts surrounding the Assignment – as undisputedly articulated in the memorandum opinion – from being properly considered, in the hopes of creating uncertainty in the record.

IWA previously petitioned this Court for a writ of mandamus to avoid disclosure of three documents outlining its "exit strategy" that the district court ordered it to produce under the crime-fraud exception (A485-486, the "Production Order"), to "maintain under seal all information supplied to or generated by the district court relating to IWA's privileged documents," and for reassignment. *See* First Dkt. No. 1[2] at 4-5 (the "First Mandamus Petition").

This Court first ordered (over IWA's objection) that IWA produce to Plaza an unredacted copy of the district court's Aug. 17, 2023, memorandum opinion (A863-876, the "Memorandum Opinion") which detailed its crime-fraud findings and explained how IWA structured the Assignment at the direction of legal counsel with the express purpose of obscuring its fraudulent nature. *See* First Dkt. No. 23 (ordering production of the Memorandum Opinion); *see also* First Dkt. No. 25 (denying motion for reconsideration). This Court next granted the First Mandamus

---

[2] Citations in the form "First Dkt. No. ___" are citations to this Court's docket for the First Mandamus Petition, *In re Investors Warranty of America, LLC,* No. 23-1928 (4th Cir., Sept. 6, 2023). Citations in the form "Second Dkt. No. ____" are citations to this Court's docket for the Second Mandamus Petition, *In re Investors Warranty of America, LLC,* No. 24-1434 (4th Cir., May 13, 2024).

Petition in part and denied it in part. First Dkt. No. 34 (the "First Mandamus Order"). Specifically, the First Mandamus Order granted IWA's request to vacate the Production Order and denied IWA's "request for an order directing the district court to maintain certain information under seal and to reassign the case upon remand." *Id.*

On remand, the district court followed the First Mandamus Order by vacating the Production Order pertaining to the three IWA documents (*i.e.*, keeping those documents sealed) but ordering that certain *other* information relating to the district court's *in camera* review – namely the *ex parte* brief IWA filed addressing the crime-fraud question (ECF No. 289, the "*Ex Parte* Brief") and the transcript of an *in camera* hearing conducted on the issue (the "Hearing Transcript") – be produced to Plaza. IWA refused and filed this second petition for writ of mandamus (the "Second Mandamus Petition").[3]

IWA's Second Mandamus Petition is its latest attempt to hide evidence of the fraudulent intent behind its Assignment and preserve the option of presenting a false narrative at trial. But after this Court ordered IWA to produce the Memorandum Opinion, IWA can no longer reasonably claim that the Assignment was an innocent transaction. ████████████████████████████████

---

[3] Despite asking this Court to rule that these documents should not be produced, IWA has not included them in the record submitted in connection with either of its mandamus petitions.

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████

This Court should not countenance IWA's attempts to hide behind privilege and present an inaccurate, incomplete factual record that contradicts the truth that is articulated in the Memorandum Opinion. IWA's claim that the First Mandamus Order "effectively reversed the district court's decision that the crime-fraud exception applied" (Second Pet. at 1) is incorrect. Had this Court concluded on the previous mandamus review that it is appropriate for lawyers to provide advice on how to avoid getting caught engaging in fraud, it presumably would have said so, rather than partially denying the petition.  Indeed, because IWA has not submitted the Hearing Transcript or the *Ex Parte* Brief in connection with either mandamus petition, this Court has never had the opportunity to review the full record of the district court's consideration of the crime-fraud issue and cannot properly determine whether the crime-fraud exception applies.

Furthermore, IWA's Second Mandamus Petition is premature because it effectively requests an advisory opinion on evidentiary questions that have not yet been ruled on by the district court.  On remand, the district court was well within its

discretion to determine that the Hearing Transcript and the *Ex Parte* Brief – civil case filings that contain evidence and argument relevant to the claims and defenses in this case – should be provided to Plaza. Beyond that, the district court has made no rulings on the admissibility of any evidence. IWA's speculation "that the district court has already decided that [Plaza] *can* use this information at trial, although it has not decided exactly *how*" (Second Pet. at 3), distorts the district court's order, which expressly reserved any ruling on the admissibility of evidence.

Ultimately, IWA's Second Mandamus Petition is a premature attempt to secure an appellate opinion on evidentiary questions before the district court has even ruled on them, and without the benefit of the full record, let alone a final judgment.

Finally, there is no basis for reassignment. IWA's charge that the district court has willfully flouted this Court's mandate and predetermined the merits distorts the record to create a false narrative of prejudice and bias. In reality, the district court acted well within its discretion to manage discovery and determine which filings are permitted to remain under seal. After four years of fact-intensive litigation, the district court, which has extensive experience and knows well its duty of impartiality, is prepared to try this case fairly.

## II.    STATEMENT OF THE ISSUES

(1)    Can IWA hide behind the shield of attorney-client privilege to falsely claim that it did not structure its Assignment of the Ground Lease to a sham entity to avoid liability for a fraudulent conveyance and misrepresent the Assignment as a perfectly innocent transaction, after the First Mandamus Order expressly denied IWA's request for an order directing the district court to maintain under seal documents submitted to the district court in connection with its *in camera* review?

(2)    Should this case be reassigned on remand?

## III.    STATEMENT OF THE CASE

### A.    Factual Background

On November 14, 1990, Plaza's predecessor-in-interest entered into a 99-year ground lease with Rock Spring II LP ("Original Tenant"). A71-139. A few years later, Original Tenant took out a loan using the Leasehold Estate as collateral. After Original Tenant defaulted on its loan, IWA acquired the loan by assignment and made an investment decision to take title to the Leasehold Estate through a deed-in-lieu of foreclosure. A476-483; *see also* A140-155. IWA was aware that the office building on the property was not generating income and that, as tenant, it would be responsible for the financial obligations (*e.g.*, ground rent payments) for the remaining 77 years on the Ground Lease. A734-774. ████████████████████

████████████████████████████████████████ A770.

██████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████  A776. IWA's asset management team, led by IWA's corporate representative, David Feltman, "engaged outside counsel to explore an exit which would stop the monthly losses and any future liability." *Id.* The legal advice that IWA received did not advise IWA as to how it could lawfully assign its Leasehold Estate. Rather, IWA's attorneys helped create a plan for IWA to exit its long-term financial obligations to Plaza without getting caught. *See* A871-873.

The "exit strategy" they devised "to stop future liability under the ground lease" (A309 (Feltman Dep. 247:8-10)) was to assign the Ground Lease to RSD, a sham entity that IWA would create and control and which would strategically default on the Ground Lease in three years, just after the statute of limitations for fraudulent conveyance claims would have expired. A467, A309, A311-314, (Feltman Dep. 186; 247:8-10, 360:16-363:15); A330-332 (Barron Dep. 64:2-66:12).

During the three-year statute of limitations period, IWA hid both RSD's design and the fact that IWA remained the real interested party. IWA appointed outside counsel, Robert Barron, to serve as the mouthpiece for RSD (A732) and decided not to record the Assignment or pay recordation taxes. A260; A404 (Rubin Dep. 265:4-16). Feltman directed Longshore to make no attempt to sell the property

for three years (A471 (Feltman Dep. 406:7-22); A360-A367 (Taylor Dep. 177-180; 281-284)) and directed RSD not to communicate with Plaza for three years (A317-320 (Feltman Dep. 384:15-387:20)). Once the statute of limitations had run, IWA and the assignee it created and controlled "would be turning the keys over to the landlord," leaving Plaza to chase an empty shell. A345 (Barron Dep. 219:14-20); *see also* A315-316 (Feltman 373:21-374:6). At the time of RSD's formation, the parties not only planned to leave Plaza high and dry after the statute of limitations ran, but also contracted to dissolve RSD by no later than August 1, 2026, with more than sixty years left on the Ground Lease. A818 (at Sec. 10.1.1).

### B.    Procedural History

Discovery in this case produced significant evidence showing that counsel advised IWA that it could escape its obligations under the Ground Lease by transferring it to a sham entity that would "walk away" after the statute of limitations had run. In fact, RSD's litigation counsel admitted that "there obviously was a contemplation and consideration, for example, of the statute of limitations. So, I think that evidence is there." A539 (Hr'g. Tr. 13:18-20). Considering this evidence, the district court conducted an *in camera* review of documents IWA withheld under an assertion of privilege to determine if they were subject to the crime-fraud exception. A263. IWA submitted the *Ex Parte* Brief arguing that the crime-fraud exception did not apply (A30, ECF No. 289). On June 20, 2023, the district court

conducted an *ex parte* hearing without Plaza, ███████████████████████████

███████████████████████████████████████████████████████████████

███████ *See* A484; A867 (at n. 5). Plaza has still not seen the transcript of this hearing (the "Hearing Transcript").

The district court concluded that three IWA documents were subject to the crime-fraud exception and ordered IWA to produce them to Plaza. *See* A485-486. The district court's findings in support of its crime-fraud determination were contained in the separate Memorandum Opinion, which also contained excerpts of the documents themselves. At the time, the Memorandum Opinion remained under seal and was not provided to Plaza.

Rather than produce the documents, IWA petitioned this Court for a writ of mandamus, which it filed *ex parte* and under seal. *See* First Dkt. No. 4-1. IWA refused to provide copies of both the Memorandum Opinion and the petition itself. *See* First Dkt. No. 19, Ex. A. As a result, Plaza requested that this Court order production of the First Mandamus Petition and the Memorandum Opinion. *See* First Dkt. No. 19.

Over IWA's opposition, *see* First Dkt. No. 20 at 4-5, this Court ordered IWA to serve Plaza with both the First Mandamus Petition and the Memorandum Opinion. First Dkt. No. 23. IWA filed a motion for clarification, requesting permission to serve only a redacted version of the Memorandum Opinion. *See* First Dkt. No. 24.

On December 18, 2023, this Court denied IWA's motion for clarification (*See* First Dkt. No. 25), and IWA finally served the unredacted version of the Memorandum Opinion.

On February 21, 2024, this Court granted in part and denied in part IWA's First Mandamus Petition. The relevant portion of the First Mandamus Order reads: "The court directs the district court to vacate its Production Order and denies petitioner's request for an order directing the district court to maintain certain information under seal and to reassign the case upon remand." First Mandamus Order at 1.

The district court promptly acknowledged that the Production Order had been vacated and sought the parties' input on what additional steps should be taken in response to the First Mandamus Order. *See* A489; *see also* A493, A500 (Hr'g Tr. 4:24-25, 11:13-17).

Consistent with that portion of the First Mandamus Order that denied IWA's request for an order directing the district court to maintain certain information under seal, Plaza requested that the district court unseal "'all information supplied to or generated by the district court relating to IWA's privileged documents' and make such information available for use by Plaza." A517 (quoting First Pet. at 4-5). Plaza *did not* request that IWA produce the three IWA documents that were the subject of the Production Order or argue that they can be used at trial. Nor did Plaza propose

any particular evidentiary use for the Memorandum Opinion, the Hearing Transcript, or the *Ex Parte* Brief. Indeed, it would be impossible for Plaza to propose an evidentiary use for the Hearing Transcript or the *Ex Parte* Brief because Plaza has not seen these records and does not know what they contain. A536 (Hr'g Tr. 10:5-16).

On May 1, 2024, the district court heard arguments regarding Plaza's Motion to Unseal Crime-Fraud Information. *See* A527-570. Counsel for Plaza indicated that it did not intend to "publish the [Memorandum Opinion] to the jury or extract the actual excerpts from counsel's letter to the defendant." A530 (Hr'g Tr. 4:12-13). Counsel added that Plaza would consider using the excerpts for the purpose of impeachment and reiterated that Plaza could not contemplate any possible uses for the Hearing Transcript or the *Ex Parte* Brief without knowing what they contain. A530-532 (Hr'g Tr. 4:20-5:2, 5:14-6:7).

Following the hearing, the district court ordered that the Hearing Transcript and the *Ex Parte* Brief be produced to Plaza:

    a.  The Court **WILL NOT** unseal any documents at this juncture;

    b.  Subject to the limitation set forth below, however, the Clerk of Court (or defense counsel) **SHALL** promptly make available to Plaza's counsel (for counsel's eyes only) ECF No. 289, which is IWA's *ex parte* letter-brief opposing the Court's preliminary determination that the three documents fell within the crime-fraud exception, and the transcript of the *ex parte* hearing on June 20, 2023, at which IWA presented evidence on the issue of the crime-fraud exception;

. . .

   d. The Court **RESERVES,** for the time being, any decision with respect to the extent to which, if at all, the contents or gist of certain communications between Defendants and their counsel may be introduced as evidence at trial. That decision will depend on the manner in which Plaza seeks to use such evidence (for example, by way of impeachment).

A572 (the "Case Filings Production Order").

IWA's Second Mandamus Petition followed, seeking "a writ of mandamus (i) vacating the [Case Filings Production Order] requiring the production of the *ex parte* materials to [Plaza]; (ii) directing that [Plaza] is not entitled to receive IWA's privileged information, directly or indirectly, in any manner and is not entitled to use IWA's privileged information, directly or indirectly, in any way, including in briefing, argument to the court or to the jury, or trial, and (iii) to reassign the case upon remand to the district court." Second Pet. at 4.

## IV.   ARGUMENT

### A.   Defendants Can No Longer Deny that the Assignment was Structured to Avoid a Fraudulent Conveyance Claim.

Defendants have insisted from the beginning of this case that the Assignment was a good faith exercise of their rights under the Ground Lease. When asked at an early hearing – before Defendants had produced any documents – whether IWA made the Assignment to an insolvent entity to avoid its liabilities, IWA's counsel insisted "that didn't happen. I mean, there was a lawful entity that was assigned the lease, and that lawful entity has continued to pay rent to the tune of millions of

dollars a year since it was assigned that lease. And in the event that there's a default later on, sometime in the next 69 years, then the landlord has the opportunity to pursue the tenant for that default." A632 (Hr'g Tr. 23:14-20).

But the evidence discovered since shows this claim to be false. The Assignment was not done in the ordinary course to a *bona fide* third party. Rather, it was to a related party that Defendants expected to walk away from the Ground Lease once the statute of limitations ran. IWA's Assignment to RSD occurred five years after it invested in the Leasehold Estate, at which point IWA had determined that its investment was "worthless," and that IWA needed an "exit strategy" to escape its long-term financial liabilities to Plaza.

These terms are how IWA itself characterized the genesis of what eventually became the scheme by which IWA secretly formed, secretly controlled, and temporarily funded RSD and then assigned the Leasehold Estate to that sham entity. Robert Barron testified that IWA's objective in forming RSD and assigning the Ground Lease to it was to "get IWA off the hook." A330 (Barron Dep. Tr. 64:2-20). Barron made clear that IWA and RSD planned on "walking away" from the Ground Lease by "turning the keys over to the landlord" after the statute of limitations expired and never intended that RSD would continue to operate for the remaining term of the Ground Lease. A333-336, A345 (Barron Dep. Tr. 79:21-82:9, 219:14-20). █████████████████████████████████████████████

███████████████████████████████████████████

A818 (at Sec. 10.1.1); A340-343 (Barron Dep. Tr. 212:4-213:1, 215:4-216:17).

The Ground Lease and related documents do not authorize IWA to violate Maryland law. *See* Md. Comm. Law Code § 15-207 (2022) ("Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors, is fraudulent as to both present and future creditors."). The evidence confirms that IWA knew that the Assignment could be challenged as a fraudulent conveyance and therefore did everything possible to obscure from Plaza information about RSD and its purpose until after the statute of limitations had run. A458-459, 311-314, 471 (Feltman Dep. Tr., 290:14-291:18, 360-363, 406:15-22); A330-332 (Barron Dep. 64:2-66:12). For example, IWA required that Longshore not even communicate with Plaza for a period of 38 months following the Assignment. A853 (at Sec. 6); A364 (Taylor Dep. Tr. 281). The objective was to get past the statute of limitations, so that Plaza could not challenge the fraudulent conveyance. A330-332 (Barron Dep. 64:2-66:12).

RSD refused to provide Plaza with even basic information about RSD, its plans for the Leasehold Estate, or its financial ability to perform tenant's obligations until it was ordered to do so by the district court. *See* A172. In fact, ███████████

███████████████████████████████████████████

██████████████████████████████████████████████

████████████████ A791-792; A851-852.

Evidence now confirms that IWA's exit plan to avoid its long-term obligations to Plaza was based on advice received from counsel about how to evade liability for a fraudulent conveyance. *See* First Dkt. Nos. 23, 24, 25.

The upshot is that we now know that RSD was created to default soon after the statute of limitations had run. █████████████████████████████████████

██████████████████████████████████████████████

███████████████████████. A866. ████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████.

Importantly, ██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████

At stake in IWA's petition, therefore, is the extent to which it can hide evidence of this fact behind the shield of attorney-client privilege and misrepresent

its Assignment to RSD as a perfectly innocent transaction. This Court should not bless IWA's efforts to introduce this false narrative at trial any more than it should conclude that lawyers may provide advice on how to avoid getting caught engaging in fraud without running afoul of the crime-fraud exception to the privilege.

### B.    Plaza is Entitled to the Filings in this Case.

This Court expressly denied IWA's previous request for an order directing the district court to maintain the Hearing Transcript and the *Ex Parte* Brief under seal. *See* First Mandamus Order. Plaza is entitled to these documents because they are filings in a case to which Plaza is a party. They contain evidence and argument relevant to the claims and defenses in this case, and after this Court ordered IWA to produce the Memorandum Opinion, which contains much of the same information, there remains no justification for keeping these filings from Plaza simply because they were originally *ex parte*.

Party access to evidence "is a hallmark of our adversary system" that "serves to preserve both the appearance and the reality of fairness." *Abourezk v. Reagan*, 785 F.2d 1043, 1060 (D.C. Cir. 1986), *aff'd*, 484 U.S. 1 (1987). Due process requires that parties receive notice of, and access to, any submissions by their adversaries so that they may have an "opportunity to know the claims of the opposing party and to meet them." *Morgan v. United States*, 304 U.S. 1, 18 (1938).

The district court acted well within its discretion to manage discovery when it ordered IWA to produce the Hearing Transcript and the *Ex Parte* Brief. *See Lewis v. Bloomsburg Mills, Inc.*, 608 F.2d 971, 973 (4th Cir. 1979) (The "scope and conduct of discovery are within the sound discretion of the district court.").

Indeed, the district court was simply following the First Mandamus Order which "denie[d] petitioner's request for an order directing the district court to maintain certain information under seal." First Mandamus Order. IWA's request that all documents related to the Memorandum Opinion remain under seal ignores that this Court expressly denied IWA that relief in the First Mandamus Order.

> ### 1. After this Court Ordered IWA to Produce the Memorandum Opinion, No Reason Remains to Keep IWA's *Ex Parte* Submissions Under Seal.

Plaza does not dispute that *in camera* proceedings are an appropriate means to resolve disputed issues of privilege. *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 406-407 (1976). But when the trial court makes use of *in camera* review, it must "make as much as possible of the *in camera* submission available to the opposing party." *Armstrong v. Executive Office of the President*, 97 F.3d 575, 580 (D.C. Cir. 1996) (citing *Lykins v. DOJ*, 725 F.2d 1455, 1465 (D.C. Cir. 1984)); *see also In re Paradyne Corp.*, 803 F.2d 604, 612 (11th Cir. 1986) (recognizing that there are circumstances under which, in the interest of fairness, the other party should be

provided with a transcript or other records of proceedings originally conducted *ex parte*).

According to IWA, there is "no logical reason for the district court to allow opposing counsel access to the *in camera* proceedings" largely because "a pertinent aspect of confidentiality will be lost." Second Pet. at 17-18 (quoting *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 165 (2d Cir. 1992)). But the Memorandum Opinion, which this Court ordered to be produced unredacted, includes quotations from the three documents that were the subject of the Production Order. As a result, none of the traditional concerns over confidentiality that might otherwise preclude disclosure of a trial court's *in camera* review of potentially privileged evidence are implicated here, and therefore pose no barrier to disclosure of the Hearing Transcript and the *Ex Parte* Brief.

> **2.    The Hearing Transcript and the *Ex Parte* Brief May Be Provided to Plaza While the Three Documents Remain Privileged.**

IWA also claims that the district court "ordered IWA to produce the same privileged information a second time." Second Pet. at 1.  That is simply not true. The documents at issue in this Petition are the Hearing Transcript and the *Ex Parte* Brief, neither of which were the subject of the Production Order or are attorney-client communications. Arguments of counsel, of course, are not privileged.

### C.   The District Court Correctly Applied the Crime-Fraud Exception in the First Instance, and this Court Did Not Have and Still Does Not Have the Full Record.

The district court correctly applied the crime-fraud exception in the first instance, and the First Mandamus Order – even in vacating the Production Order – did not hold otherwise. Indeed, this Court could not have made any such determination, and should not do so now, without the full record that was before the district court.

The district court determined that the evidence presented by Plaza, including witness testimony outlining IWA's exit strategy and intention to "turn[] over the keys" once the statute of limitations ran on a fraudulent conveyance claim "met the [threshold] standard for the Court to conduct an *in camera* review of a subset of those documents so that the Court might determine whether any should be disclosed pursuant to the crime-fraud exception." A866. After conducting its *in camera* review, the district court determined Plaza had made the *prima facie* showing required to apply the crime-fraud exception. The court made detailed factual findings in support of its conclusion. A871-872. The district court made these findings in full view of the evidence presented, including the putatively privileged documents themselves.

In conducting its crime-fraud analysis, the district court followed the framework set forth in *United States v. Zolin*, 491 U.S. 554, 574-75 (1989), and applied the correct standard, which requires only a *prima facie* showing of fraud to

establish the exception, not conclusive evidence of actual fraud. 491 U.S. 554, 574-75 (1989); *see also In re Grand Jury Proceedings,* 674 F.2d 309, 310 (4th Cir. 1982).[4]  The court distinguished its holding from the cases cited by IWA. *See* A873 (at 10 n.7).

IWA claims that the First Mandamus Order "effectively reversed the district court's decision that the crime-fraud exception applied," Second Pet. at 1. However, the First Mandamus Order only vacated the district court's Production Order. It says nothing about this Court's own view of whether the crime-fraud exception applies.

Indeed, as explained above, this Court was not and is not in a position to make its own decision about whether the crime-fraud exception applies here without the full record that was before the district court. Among other things missing from the record before this Court are IWA's *Ex Parte* Brief and Hearing Transcript, even though both are squarely at issue in IWA's petitions for mandamus. *See In re Apex Oil Co.*, 884 F.2d 343, 348 (8th Cir. 1989) (declining to engage in appellate review when the "case is not complete and we are unable effectively to review the factual

---

[4] Plaza does not allege, and need not show, that IWA's conduct was criminal for the crime-fraud exception to apply.  *See e.g.*, *In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 348 (4th Cir.1994) ("The crime-fraud exception to the attorney-client privilege provides that a client's communications with an attorney will not be privileged if made for the purpose of committing or furthering a crime *or* fraud…." (emphasis added) (internal quotation marks and citation omitted)).

findings of the bankruptcy court without more information. The record does not contain a transcript of the proceedings below").

The linchpin of the district court's finding was 

A872. This fact alone is sufficient to sustain the application of the crime-fraud exception and exposes as false IWA's claim that the Assignment was legitimate and to a bona fide third party.

### D. This Court Should Decline to Issue an Advisory Opinion on Evidentiary Questions That Have Not Been Presented to or Decided by the District Court.

"The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr*, 426 U.S. at 402. A party seeking mandamus must show not only a "clear and indisputable right" to relief but also that there is 'no other adequate means to attain [it]." *In re Ralston Purina Co*., 726 F.2d 1002, 1004 (4th Cir. 1984) (quoting *Allied Chem. Corp. v. Daiflon, Inc*., 449 U.S. 33, 35 (1980)). Even if these two requirements are satisfied, the issuing court further "must be satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist.*

*Ct.*, 542 U.S. 367, 381 (2004). Otherwise, mandamus "would undermine the settled limitations upon the power of an appellate court to review interlocutory orders." *Allied Chem.*, 449 U.S. at 35 (*quoting Will v. United States*, 389 U.S. 90, 98 n.6 (1967)).

IWA's argument that the district court has already determined that the Hearing Transcript and the *Ex Parte* Brief are admissible – and the district court will make such determinations without proper regard to questions of privilege (*see* Second Pet. at 3) – is a straw man designed to make the Case Filings Production Order appear erroneous. At this juncture, no evidentiary question has been presented to the district court, nor has the district court made any evidentiary determinations related to the documents it ordered IWA to produce. In fact, the district court expressly reserved these issues.

Furthermore, "[a] party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) The Supreme Court has accordingly recognized "stringent" limits on the appeal of collateral orders. *Id.*  This applies *a fortiari* to discovery orders, which are generally not subject to appellate review.  *See Doe v. Sidar*, 93 F.4th 241, 245 (4th Cir. 2024); *MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116, 119-20 (4th Cir. 1994).

### E.    There Is No Basis for Reassignment.

"Absent a claim of bias," which IWA does not explicitly make here,

reassignment is appropriate in unusual circumstances where both for the judge's sake and the appearance of justice an assignment to a different judge is salutary and in the public interest, especially as it minimizes even a suspicion of partiality. In determining whether such circumstances exist, a court should consider:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected,

> (2) whether reassignment is advisable to preserve the appearance of justice, and

> (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 728–29 (4th Cir. 2021)

(quoting *United States v. North Carolina*, 180 F.3d 574, 582–83 (4th Cir. 1999)).

IWA's arguments fail on all three prongs of the reassignment analysis.

### 1.    There Is No Indication that the District Court Would Have Difficulty Following a Mandate on Remand

Judge Messitte conducted an *in camera* review of potentially privileged documents according to the well-established procedures governing the application of the crime-fraud doctrine. *See* A863-876; *Zolin*, 491 U.S. at 574-75. In a thoughtful and well-reasoned opinion, the district court concluded that the crime-fraud

24

exception applied and ordered that three documents be produced. This Court then vacated the Production Order that accompanied the Memorandum Opinion but denied IWA's request for an order directing the district court to maintain certain information under seal and for reassignment on remand. *See Steves & Sons*, 988 F.3d at 729 (declining to reassign despite erroneous award of damages and judgment in favor of intervenor against whom no claims were brought, noting that "[w]hile we disagree with some of the judge's rulings, they nonetheless reflect thoughtful analysis."). District court judges routinely undertake *in camera* review of potentially privileged materials and doing so does not render a judge incapable of being impartial. *See Harris v. Rivera*, 454 U.S. 339, 347 (1981) ("In the course of a trial, as well as at pre-trial suppression hearings or during discovery, a judge may inspect documents or evidence that go to the heart of a party's case but are ultimately determined to be inadmissible."). And this Court has declined requests for reassignment even in situations where the trial judge has been reversed on closely related evidentiary questions multiple times. *See, e.g.*, *United States v. Galecki*, 932 F.3d 176, 184 (4th Cir. 2019) (refusing request for reassignment, even after twice reversing the district court's decision to deny a criminal defendant compulsory process for an expert witness).

On remand, the district court promptly took steps to enforce this Court's mandate, including vacating the Production Order. IWA's argument that the district

court somehow flouted the First Mandamus Order ignores the fact that the district court complied with its terms. The steps taken by the district court were not foreclosed by the First Mandamus Order; in fact, as described above, they were entirely appropriate.

IWA then skews the district court's comments at the hearing on Plaza's post-remand Motion to Unseal Crime-Fraud Information in an attempt to claim that "rather than confirming that it could put IWA's privileged information out of its mind when acting as the factfinder on the merits of this case, the district court could only say that it would "try and give [IWA] a fair trial" and would do "the best [it could] to be impartial." Second Pet. 4 (quoting A555-556 (Hr'g Tr. 29:8-30:18)). This is not a fair characterization of Judge Messitte's comments on remand.

To begin with, the district court's comments came in the context of discussing whether the parties could proceed with briefing summary judgment motions while IWA sought mandamus a second time to address the questions raised by this petition. Judge Messitte assured the parties that the district court would resolve this case in light of what the admissible evidence shows, rather than any predetermined assessment of the parties' claims. *See* A556 (Hr'g Tr. 30) ("to say that somehow my thinking is already tainted, the evidence is and will be what it is, and I will make the judgment."). While IWA takes issue with how the judge phrased his comments in response to baited questioning of the court by Defendants' counsel, the district court

26

gave adequate assurances that it would provide all parties with a fair trial. A555-556 (Hr'g Tr. 29:8-30:18) (promising to "give a fair trial" and to be "impartial"). There is no reason not to take the trial judge at his word.

### 2.    There Is No Appearance of Injustice.

There is no appearance that justice is not being served in this case. The district court has given no indication it has pre-judged this case.

IWA has based its entire case on an unsupportable narrative of an unfettered "absolute" right to assign its interest under the Ground Lease, even to a sham entity that has no independent ability to perform tenant's financial obligations and that planned to default by walking away from the Ground Lease once it cleared the statute of limitations for a fraudulent conveyance claim. That the district court has expressed some skepticism of IWA's purported right to freely assign its interest under the Ground Lease does not mean the judge has pre-decided this case, or that he is incapable of providing a fair trial. It is a normal part of litigation for a district judge to express his or her view of the evidence and the applicable legal standard – in fact it is required in order to rule on many pretrial motions – and doing so does not normally suggest a lack of impartiality. *See G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 727 (4th Cir. 2016), *vacated and remanded on other grounds,* 580 U.S. 1168 (2017) ("Although the district court did express . . .

27

skepticism of G.G.'s claims, the record does not clearly indicate that the district judge would refuse to consider and credit sound contrary evidence.)

Here, the trial judge initially expressed skepticism about Plaza's fraud theories. A626 (Hr'g Tr. 17:16-10). And the trial court's approach to the crime-fraud review has been quite solicitous of IWA's interests. The district court afforded IWA no fewer than six opportunities to submit arguments and evidence that the crime-fraud exception did not apply. *See* First Dkt. No. 27 at 6-8, 20. And each time the district court has ordered IWA to produce documents over which it claims privilege, the court allowed IWA ample time in which to assess its options and decide what course to take before the court's orders to produce certain documents became effective. *See* A485 (allowing IWA 10 days to produce documents); A488 (granting IWA a 10-day extension to comply with the Production Order to allow IWA to file a mandamus petition); A35, ECF No. 350, Order, Sept. 4, 2023 (staying the effect of the Production Order until resolution of the First Mandamus Petition); A572 (allowing IWA ten days to comply, and staying effect in the event of a mandamus petition).

It should come as no surprise that over the course of dozens of discovery motions and hearings on a multitude of dispositive motions, the district court has developed a healthy skepticism towards IWA counsel's repeated assertions that the Assignment was done entirely in good faith to a bona fide third party, and that there

28

was never any contemplation of walking away from the Ground Lease at the time of the Assignment. That does not even begin to establish grounds for reassignment to a new judge.

### 3. After More Than Four Years of Fact-Intensive Litigation, the District Court is Prepared to Fairly Try This Case.

Finally, reassignment would be counter-productive at this late stage in the litigation. The parties have engaged in four years of fact-intensive litigation, including multiple rounds of merits briefing, extensive discovery, and hours of hearings before the district court. Summary judgment has recently been fully briefed and is ripe for a ruling. The parties and the court are busy at work preparing for trial, which is scheduled to begin on August 28, 2024, with the pretrial conference set for August 8, 2024. On the eve of trial, reassignment would cause an immense waste of judicial resources far out of proportion to IWA's perceptions of unfairness.

## V.    CONCLUSION

IWA's Second Mandamus Petition should be denied in its entirety.

Dated:  June 17, 2024

Respectfully submitted,

_William M. Bosch_____
William M. Bosch
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone:  202-663-8000
Facsimile:  202-663-8007
william.bosch@pillsburylaw.com

Jeffrey P. Metzler
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019
Telephone:  212-858-1000
Facsimile:  212-858-1500
jeffrey.metzler@pillsburylaw.com

*Attorneys for Respondent Rock Spring Plaza II, LLC*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. __24-1434__    **Caption:** In re: Investors Warranty of America, LLC

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains ____7036____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
MS Word _____ [*identify word processing program*] in
Times New Roman, 14 pt. _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) William M. Bosch _____

Party Name Rock Spring Plaza II, LLC _____

Dated: 6/17/2024 _____

## CERTIFICATE OF SERVICE

I certify that on June 17, 2024, a copy of the foregoing sealed Respondent Rock Spring Plaza II, LLC's Answer in Response to Investors Warranty of America, LLC's Petition for Writ of Mandamus and its accompanying Appendix Volume One, Appendix Volume Two, and sealed Appendix Volume Three were served by third party commercial carrier (FedEx) and scheduled for overnight delivery on the following persons at the address below:

The Honorable Peter J. Messitte
United States District Court for the District of Maryland
6500 Cherrywood Lane, Suite 475
Greenbelt, MD 20770

I further certify that on January 17, 2024, a copy of Appendix Volume One and Appendix Volume Two were served electronically via ECF and a copy of the foregoing sealed Respondent Rock Spring Plaza II, LLC's Answer in Response to Investors Warranty of America, LLC's Petition for Writ of Mandamus and sealed Appendix Volume Three were served by email and on June 17, 2024, by third party commercial carrier (FedEx) and scheduled for overnight delivery on the following counsel of record:

Rebecca Allison Davis
ARNALL, GOLDEN & GREGORY LLLP
171 17th Street NW, Suite 2100
Atlanta, GA 30363-1031
rebecca.davis@agg.com
*Attorney for Petitioner Investors*
*Warranty of America, LLC*

Sara Elizabeth Kropf
Rebecca Guiterman
KROPF MOSELEY PLLC
1100 H Street NW #1220
Washington, DC 20005
sara@kmlawfirm.com
rebecca@kmlawfirm.com
*Attorneys for Rock Springs Drive, LLC*

Dated:  June 17, 2024

Respectfully submitted,

*William M. Bosch*
William M. Bosch
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone:  202-663-8000
Facsimile:  202-663-8007
william.bosch@pillsburylaw.com

*Attorney for Respondent Rock Spring*
*Plaza II, LLC*