# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

———————————————

No. 24-1434 (8:20-cv-01502-PJM)

———————————————

In re: INVESTORS WARRANTY OF AMERICA, LLC,

Petitioner

———————————————

**RESPONDENT ROCK SPRING PLAZA II, LLC'S RESPONSE TO INVESTORS WARRANTY OF AMERICA, LLC'S MOTION FOR LEAVE TO FILE REPLY BRIEF IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS AND MOTION TO SUPPLEMENT THE RECORD**

———————————————

Plaza opposes IWA's Motion for Leave to File a Reply Brief in Support of its Petition for Writ of Mandamus (the "Motion") and moves to supplement the record.[1]

IWA's Motion and proposed reply brief are not only procedurally improper, but IWA doubles down on factual assertions that are plainly contradicted by the record and lards its arguments with inapposite caselaw from different jurisdictions in an effort to confuse what is actually at stake. And not content with maligning the

---

[1] In addition to terms defined herein, Plaza uses the terms and citation conventions defined in Respondent Rock Spring Plaza II, LLC's Answer in Response to Investors Warranty of America, LLC's Petition for Writ of Mandamus (Second Dkt. No. 14).

integrity of an experienced and distinguished district court judge, IWA vents its frustration that its fraud scheme did not work by accusing Plaza of a "fabrication." As with IWA's assertions regarding its own conduct, its latest accusations are belied by the actual record.

IWA's proposed reply brief should not be considered, and the Court should deny IWA's Second Mandamus Petition.

* * * *

This Court should disregard IWA's continued attempts to misrepresent facts that are no longer subject to reasonable dispute, particularly in light of the Memorandum Opinion. IWA still refuses to acknowledge what the evidence shows and what its witnesses have already confirmed: RSD is a sham entity that was conceived, owned, and controlled by IWA to strategically default on the Ground Lease after Plaza could no longer pursue a fraudulent conveyance claim. RSD generates no revenue and is entirely dependent on IWA's voluntary contributions to meet its financial obligations under the Ground Lease, including rent, taxes, insurance, and building maintenance. RSD has no prospects for generating income because it is not even attempting to lease the property, nor did it ever intend to do so. The only reason IWA continues to fund RSD is because Plaza timely filed this lawsuit before the statute of limitations expired. Had Plaza not done so, IWA

would have carried out the fraudulent "exit strategy" conceived by its attorneys and likely would have succeeded in evading liability.

This Court likewise should disregard IWA's legal authority because it is inapplicable and distorts what this case is actually about: a fraudulent conveyance prohibited by Maryland law. *See* Md. Comm. Law Code § 15-207. That courts outside of Maryland have permitted assignments under the terms of certain leases and contracts has no bearing on whether IWA's "exit strategy" for avoiding its long-term financial obligations to Plaza under the Ground Lease – through assignment to a related party that could not independently perform without IWA's continued funding, with the actual intent to "walk away" from the Ground Lease once the statute of limitations on a fraudulent conveyance claim ran – is permissible under Maryland law. IWA's persistence in contending that the Assignment was permitted by the Ground Lease, which by its express terms requires compliance with the law, and which under Maryland law includes an implied covenant of good faith and fair dealing, misapprehends the law and is predicated on a false narrative.

IWA's attorneys, including Seyfarth Shaw LLP ("Seyfarth") attorney Gale Evans, provided instructions to IWA about how it could ***evade liability***, not about how it could ***legally assign*** the Ground Lease to a third party. These instructions were not ordinary course legal advice entitled to the protection of privilege.

Indeed, such instructions are not permissible under Maryland's rules for professional ethics, as Maryland courts have made abundantly clear. And yet IWA seeks the extraordinary remedy of mandamus for a second time, not for the purpose of protecting privilege, but rather to hide evidence of fraudulent intent and to hide IWA's own legal arguments on the crime-fraud exception. Even after Plaza pointed out IWA's failure to provide this Court with the full record of the district court's review of these issues, IWA again asks this Court to make interlocutory and extraordinary rulings on a partial record. IWA's proposed reply brief offers no valid reason why this Court should decide the crime-fraud question on an interlocutory basis or conduct an interlocutory review of evidentiary rulings that have not yet occurred.

## I.    IWA Disregards This Court's Procedural Rules.

IWA's Motion and proposed reply brief flaunt established rules of appellate procedure. Its Motion should be denied as a result.

### A.    IWA's Motion and Proposed Reply Brief Are Procedurally Improper.

 Rule 21 of the Federal Rules of Appellate Procedure does not permit IWA to file a reply brief in support of its Second Mandamus Petition, and IWA has no legitimate basis for deviating from this rule. IWA's proposed reply brief not only makes arguments that distract from the key issues at stake in the Second Mandamus Petition but would be the Defendants' *third* substantive filing in

support of the Second Mandamus Petition because RSD, which is controlled by and indemnified by IWA, already filed its own "Answer" in support of the Second Mandamus Petition. Indeed, RSD and IWA are more than mere related parties; RSD is a sham entity that is completely aligned with IWA, its putative 98% owner. This Court should not allow IWA to pile on with yet another brief.

IWA also asks this Court to consider evidence that was not before the district court when the district court made its crime-fraud determination, without moving to supplement the record in this Court. *See* Fed. R. App. P. 10(e). Much of IWA's proposed reply brief relies on IWA and RSD's Joint Statement of Material Facts in Support of their Motion for Partial Summary Judgment ("Joint Statement"),[2] which had not yet been filed at the time the district court made its original crime-fraud determination or when it ordered IWA to provide to Plaza the Hearing Transcript and the *Ex Parte* Brief.[3] Because the Joint Statement was not

---

[2] *Rock Spring Plaza II, LLC v. Investors Warranty of Amer., LLC*, No. 8:20-cv-01502-PJM (D. Md. May 23, 2024) ("D. Ct. Dkt.") No. 410.

[3] The district court's consideration of the crime-fraud issue began in January 2023 with Plaza's Motion to Compel and Request for In Camera Review (D. Ct. Dkt. No. 238). After several rounds of briefing (as set forth in Plaza's Answer in Response to the First Mandamus Petition (*In re Investors Warranty of Amer., LLC*, No. 23-1928 (4th Cir. Jan. 11, 2024), First Dkt. No. 27), the district court issued the Memorandum Opinion and Production Order on August 17, 2023, and, following the First Mandamus Order, issued the Case Filings Production Order on May 2, 2024. IWA and RSD did not file their Joint Statement until May 23, 2024, ten days after IWA filed its Second Mandamus Petition on May 13, 2024.

part of the record considered by the district court in making the rulings challenged by the Second Mandamus Petition, it (and the proposed reply brief's references to it) should be disregarded by this Court. *See Pace v. Air & Liquid Sys. Corp.*, 642 F. App'x 244, 248 (4th Cir. 2016) (declining under Fed. R. App. P. 10(e) to consider evidence not "originally before the district court"); *In re GHR Energy Corp.*, 791 F.2d 1200, 1201 (5th Cir. 1986) (noting that the court of appeals could not consider a filing that "was not in the record on appeal at the time the district court entered its ruling" without supplementing the record).

For reasons expressed more fully below, *see* Section II.B., *infra*, IWA's portrayal of the factual record, based on the Joint Statement, is misleading. IWA also neglected to include Plaza's Response to Defendants' Joint Statement of Material Facts ("Counter-Statement of Facts," D. Ct. Dkt. No. 435-1, attached as Ex. A), which identifies testimony from IWA's own witnesses that belies IWA's assertions. Plaza therefore moves to supplement the record to include: (1) Plaza's Counter-Statement of Facts, and (2) additional deposition excerpts that Plaza has cited in this Opposition to correct misleading factual assertions IWA includes in its proposed reply brief.

Finally, IWA made no effort to comply with Local Rule 27(a), which requires IWA to inform all parties of its intent to file a motion and include a statement indicating whether the other parties consent to the relief it seeks or

intend to file responses. IWA indicated that RSD, which IWA owns and controls, consented to the Motion, but IWA never contacted Plaza regarding the Motion.[4]

## II.     IWA's Proposed Reply Brief Presents a False Factual Narrative.

The Court should not allow IWA to file a brief that so brazenly misrepresents the facts and the import of the materials it asks this Court to withhold from Plaza and, ultimately, from the trier of fact.

### A.     IWA's Proposed Reply Brief Misrepresents the Interests it Seeks to Protect.

IWA uses its proposed reply brief to reiterate its claim that "IWA assigned the Ground Lease in strict compliance with the explicit contractual assignment right to which Plaza agreed nearly two decades ago—not through an orchestrated fraudulent scheme that Plaza describes." Proposed Reply at 2-3. In making this assertion, IWA asks this Court to ignore the Seyfarth Memorandum and the legal instructions that Seyfarth provided prior to the Assignment. The Memorandum Opinion, which this Court ordered IWA to disclose to Plaza, confirms that the Assignment instead was part of an orchestrated scheme to defraud Plaza and flatly contradicts any innocent meaning IWA attempts to ascribe to the phrase "exit strategy."

---

[4] Counsel for Plaza informed Counsel for IWA that Plaza intended to file a motion to supplement the record. IWA has not provided a clear response to this narrow request.

Here, Seyfarth's instructions, as reported in the Memorandum Opinion, are clear evidence of IWA's actual intent "to hinder, delay, or defraud present or future creditors," which is prohibited by the Maryland Uniform Fraudulent Conveyance Act ("MUFCA"), Md. Comm. Law Code § 15-207. As the district court correctly noted, ██████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ █████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ ████████████████ A387 (Memorandum Opinion at 9).

IWA cannot hide this evidence behind claims of privilege. Rule 19-301.2 of the Maryland Attorneys' Rules of Professional Conduct prohibits an attorney from knowingly counseling or assisting a client to commit a crime or fraud.[5] In *Attorney Grievance Commission of Maryland v. Culver*, the Supreme Court of Maryland

---

[5] IWA's proposed reply brief is signed by Seyfarth attorney William B. Hill Jr., who entered an appearance in the district court on June 13, 2024 (D. Ct. Dkt. No. 446) and in this Court on June 20, 2024 (Second Dkt. No. 29). Seyfarth is the same firm that provided the instructions at issue in the Second Mandamus Petition. Attorneys from Seyfarth cannot discharge their duties as officers of the court when a Seyfarth attorney provided to IWA the roadmap for the fraudulent exit strategy, which makes at least one Seyfarth attorney a potential witness at trial. Plaza has filed a motion in the district court to disqualify Seyfarth attorneys from representing IWA at trial, but Plaza is not seeking to bar Seyfarth attorneys from continuing to represent IWA on pretrial matters (D. Ct. Dkt. No. 454).

found that an attorney violated Rule 19-301.2 by instructing his client how to "obtain loans with the intention of having the debts discharged in bankruptcy" by opening new credit cards to obtain cash advances. 849 A.2d 423, 434 (Md. 2004). Such a strategy was fraudulent under Section 15-206 of MUFCA, a different provision in the same statute at issue in this case. *See* Md. Comm. Law Code § 15-206 (making it fraudulent to enter into an obligation with the intent or belief that the debt will be beyond one's ability to pay when it matures). The attorney in *Culver* did not provide advice "concerning the scope of the bankruptcy laws and in advising a client regarding lawful means to obtain money." *Culver*, 381 Md. at 275. Rather, because the attorney counseled the client to engage in a fraudulent act, his advice "d[id] not fall within the permissive scope of" assisting a client to determine the "validity, scope, meaning or application of the law." *Id*.

Like the attorney in *Culver*, Seyfarth was not advising its client on the contours of the law or on how to avoid breaking the law, which would qualify as exceptions to Rule 19-301.2. Instead, Seyfarth provided IWA instructions for how to reduce the risk of getting caught engaging in a fraudulent conveyance, which is precisely the "exit strategy" that IWA implemented. As the Seyfarth attorney explained, she was instructing IWA on how to ███████████████████ ████████████████████████████████████████ ██████████████ A866 (Memorandum Opinion at 4). Those instructions were

the roadmap for IWA's exit strategy: ████████████████

████████████████████████████████████████

████████████████████████████████████████

██████  A866 (Memorandum Opinion at 4).

Because the information contained in the Memorandum Opinion is not

properly shielded by privilege, the Hearing Transcript, which includes the

testimony of the Seyfarth attorney who provided the roadmap to avoid getting

caught engaging in a fraudulent conveyance, also is not subject to a blanket

assertion of privilege. Nor should the Hearing Transcript be withheld from Plaza;

this Court has already denied IWA's request to maintain the Hearing Transcript

under seal. *See* First Mandamus Order at 1 (denying "petitioner's request for an

order directing the district court to maintain certain information under seal").

Similarly, IWA's arguments on the crime-fraud issue reflected in its *Ex Parte* Brief

cannot be withheld on a blanket assertion of privilege because each party's legal

arguments should be included in the record and available to all parties. On these

central issues, IWA's proposed reply adds nothing of substance.

Moreover, IWA's proposed reply brief conflates privileged *information* and

privileged *documents*. Had this Court intended to deny Plaza access to the

privileged information in the Memorandum Opinion, it would not have ordered

IWA to provide to Plaza the unredacted Memorandum Opinion, which undeniably includes excerpts from documents that include legal advice.

**B.    IWA Grounds its Proposed Reply Brief in Unsupported, False Factual Assertions.**

At the same time that IWA withholds from the Court the parts of the record that specifically pertain to the crime-fraud issue that is the subject of both of IWA's petitions (including the Hearing Transcript and the *Ex Parte* Brief), IWA in its proposed reply looks outside the record that is before this Court and cites to its Joint Statement to support its false narrative that it made an innocent assignment to a bona fide third party. If the Court considers IWA's proposed reply, the Court should be aware that the arguments IWA asserts are "supported" by reference to the Joint Statement are in fact not supported by evidence; they are merely narrative statements that are squarely contradicted by actual evidence that includes extensive deposition testimony of IWA and RSD witnesses.

For example, when IWA asserts that RSD is a "joint venture managed by sophisticated real estate professionals who specialize in distressed and underperforming properties" (Proposed Reply at 1-2), IWA fails to point out that those purported *restructuring* professionals from Algon[6] were brought in by IWA to lend cover to the sham Assignment, as confirmed by the fact that Algon

---

[6] ALGON GROUP, https://algongroup.com/ (last visited May 23, 2024), attached as Ex. E.

conducted absolutely no due diligence of the property or the market *before* the Assignment. A360 (Taylor Dep. Tr. 177:3-8); *see also* Ex. B (Taylor Dep. Tr. 166:6-20). The "professionals" from Algon were informed by David Feltman, IWA's corporate representative responsible for the property, that "at some point in time down the road that [their] restructuring experience would be an important component to facilitating whatever the outcome was, and there would be some of [*sic*] period of time while we sat and watched things and then at some point in time our restructuring expertise would be very valuable and that was probably one of my early questions to him as part of my due diligence." A362-A363 (Taylor Dep. Tr. 179:6-180:2).

Mr. Feltman's testimony confirms the scheme was to have Algon stand by silently for three years while the statute of limitations ran, at which point Algon might put on its "restructuring" hat and actually get to work marketing the property. Mr. Feltman recalls "probably" discussing the three-year statute of limitations with Mr. Taylor, which not coincidentally is the same length of time Mr. Feltman proposed the new entity would need to remain in existence. After the statute of limitations ran (*i.e.*, after three years), IWA would "either force the sale of the property or find some other exit plan for the property." A311-A316 (Feltman Dep. Tr. 360:3-363:15; 374:4-6).

Until this exit strategy played out, however, the Algon team that IWA brought in as the putative 2% member of RSD (a share for which it provided absolutely no consideration and that IWA could take back at its option at any time) was not permitted to discuss anything with Plaza. S*ee* Pl's. Resp. to Joint Mot. Summ. J. on Plaza's Fraudulent Conveyance Claim, D. Ct. Dkt. No. 435, Ex. 16 (Taylor Dep. Tr. 331:13-332:6), attached as Ex. C. In executing on Seyfarth's instructions for how to try to avoid getting caught engaging in a fraudulent conveyance, Mr. Feltman told Algon to hide basic information about RSD, including IWA's continued membership and voluntary short-term funding, because he "was concerned that Algon might disclose things to the landlord that we didn't think the landlord needed" because they could give rise to a fraudulent transfer claim, including "IWA's interest in the partnership" and IWA's "short capitalization" of RSD. A317-A320 (Feltman Dep. Tr. 384:15-387:20).

As such, IWA's assertion that "RSD has met every obligation under the Ground Lease" (Proposed Reply at 2) is both misleading and irrelevant because RSD's ability to continue paying ground rent depends entirely on voluntary contributions from IWA (A791-A792 (RSD Operating Agreement §3.2)), which IWA continues to make only because its fraudulent exit strategy did not work; Plaza filed suit *before* the statute of limitations ran. We know this because their witnesses have told us so. A344-A345 (Barron Dep. Tr. 217:8-17; 219:14-20);

A315-A316 (Feltman Dep. Tr. 373:21-374:6) *see also* Ex. D (Barron Dep. Tr. 217:18-218:3; 220:20-222:16).

IWA is fighting so hard to hide the evidence of its fraudulent intention because it knows that if it is successful in advancing its false narrative, "Plaza could have zero." Ex. B (Taylor Dep. Tr. 401:18-403:12). In short, IWA's intention was always to stop funding RSD so that it would default and walk away from the Ground Lease once the statute of limitations expired, as Seyfarth laid out in its roadmap. IWA's averments that Plaza misinterprets this testimony are of no moment; the testimony speaks for itself.

So too does IWA's conduct in this litigation. Plaza has offered an easy off-ramp for IWA to avoid a finding of fraud by agreeing that it remains obligated to fulfil tenant's obligations to Plaza under the Ground Lease until RSD can legitimately do so on its own (s*ee* Pl's. Mot. Summ. J. as to Def. IWA's Release, D. Ct. Dkt. No. 417). In other words, now that IWA's secret ownership and control of RSD has been exposed through Plaza's lawsuit, if its intention was truly innocent, IWA could avoid a fraud claim merely by agreeing to fund its related party assignee until it can truly perform tenant's obligations to Plaza *without* IWA. And yet IWA has refused and is opposing Plaza's proposed alternative relief. *See* D. Ct. Dkt. No. 431. The reason for that is transparent; IWA never intended to

fund RSD for as long as it takes to lease up the property and invites this Court to bless its exit strategy before trial and based on misleading and incomplete record.

IWA's proposed reply confirms why interlocutory appeals are rare and why mandamus petitions are considered extraordinary relief. This Court should not be baited into an imprudent ruling on an incomplete record by IWA's demonstrably false factual assertions. This is especially paramount here where the relief that IWA seeks would unduly prejudice Plaza, which bears the evidentiary burden of establishing fraudulent intent. This evidence cannot be hidden behind privilege given the facts in the Memorandum Opinion that this Court already has ruled Plaza is entitled to see.

## III.    IWA's Proposed Reply Brief Relies on Inapposite Case Law.

The legal arguments that IWA puts forth in its proposed reply brief are wholly inapplicable to this case because they do not address the obligations imposed on IWA under Maryland law by the Restatement or the implied covenant of good faith and fair dealing and because they do not consider fraudulent conveyance claims.

The documents permit assignment. They do not, however, permit IWA to violate Maryland law. Indeed, the Ground Lease expressly requires IWA to adhere to Maryland law, A100-A101 (Ground Lease § Sec. 5.3), which provides that "[e]very conveyance made . . . with actual intent . . . to hinder, delay, or defraud

15

present or future creditors, is fraudulent as to both present and future creditors."

Md. Comm. Law Code § 15-207.

The vast majority of the cases that IWA cites in its proposed reply brief consider whether, under the laws of jurisdictions outside of Maryland, particular leases or contracts permit assignment under certain circumstances. *See, e.g.*, *Ramey v. Koons*, 230 F.2d 802, 805 (5th Cir. 1956) (under Florida law, considering whether parole evidence that assignment would be limited to a responsible party could be considered); *Shadeland Dev. Corp. v. Meek*, 489 N.E.2d 1192, 1201-02 (Ind. App. 1986) (under Indiana law, considering whether lease gave the right to assign); *1165 Fifth Ave. Corp. v. Alger*, 288 N.Y. 67, 72-73 (1942) (under New York law, did the terms of a lease permit assignment to the trustee of assignor's grandson, in a case where the court did not see "any need to go outside the contract itself"); *Franchise Stores Realty Corp. v. Dakri*, 721 S.W.2d 397, 399 (Tex. App. 1986) (under Texas law, considering whether the assignor "ha[d] a contractual duty to pay [the plaintiff] rent"); *Alexander v. Theatre Realty Corp.*, 70 S.W.2d 380, 382-87 (Ky. App. 1934) (under Kentucky law, considering whether under the terms of a lease, assignment was an effective release of the transferor's obligations); *Crawl v. Experian Info. Sol., Inc*., 2016 WL 8716597, at *5 (D. Md. Jan. 29, 2016) (under Illinois law, considering whether the transfer of credit card issuer rights affected the enforceability of an arbitration provision in a cardholder

agreement); *Pravin Banker Ass'ns, Ltd. v. Banco Popular Del Peru*, 109 F. 3d 850, 852 (2d Cir. 1997) (under New York law, considering whether an assignment was valid under contract terms that permitted assignment but did not limit it to financial institutions); *Tiernan v. Sheldon*, 191 So. 2d 87, 89-90 (Fla. 4th DCA 1966) (under Florida law, considering whether the corporate veil between transferor and transferee should be pierced); *Cole v. Ignatius*, 114 Ill. App. 3d 66, 70 (1983) (under Illinois law, rejecting the argument that assignment of a lease without notification was fraudulent *only because the terms of the lease did not require notification*).[7] These cases do not deal with questions of Maryland law and are plainly inapplicable to the merits of this case, much less to this Court's evaluation of the Second Mandamus Petition. The Court should not consider them.

## IV.    IWA's Proposed Reply Brief Falsely Accuses Plaza of "Fabricating" References to the Record in the District Court.

In the final portion of its proposed reply brief, IWA without basis asserts that Plaza "fabricated" a quote that appears in the transcript of the district court's

---

[7] Only a single case cited by IWA involves Maryland law. *Duncan Services, Inc. v. ExxonMobil Oil Corp.*, 722 F. Supp. 2d 640, 644 (D. Md. 2010), involved a question about whether franchise agreement rights could be assigned under the terms of the agreement. Although the court held that the assignment in question did not violate Maryland Commercial Law § 2–210(2) because a "free assignment" provision in the agreement controlled, that statutory provision deals with the performance and assignment of contracts for the sale of goods, not the fraudulent conveyance of property that is at issue in this case. *See* Md. Code, Com. Law § 2–210(2) (2010).

May 1, 2024, hearing and that Plaza's counsel in fact stated the opposite during the hearing. Proposed Reply at 8-9. IWA should know better.

Plaza wrote in its Response in Opposition to the Second Mandamus Petition that "Counsel indicated that it did not intend to 'publish the [Memorandum Opinion] to the jury or extract the actual excerpts from counsel's letter to the defendant.'" *See* Plaza's Resp. to Second Mandamus Petition at 12 (alterations in original). To argue that Plaza "fabricated" this quote, IWA in its proposed reply brief enlarged a portion of the actual transcript so that the enlarged text ***covered up*** the words from the transcript that Plaza actually quoted in its brief, which are in the transcript, on page 4 at lines 7-8:

4

```
 1   this issue before us I have got to deal with, candidly, what I
 2   have characterized, and I don't think counsel disagree, a murky
 3   Fourth Circuit decision on the -- on the appeal.
 4        Let me spell out for you some of my concerns as I sort of
 5   think through all this.  And, Mr. Bosch, let me start I guess
 6   by asking you a question.  Is it your intention to, well,
 7   publish the Court's opinion to the jury or extract the actual
 8   excerpts from counsel's letter to the defendant?  What do you
 9   want to do with this situation as far as trial is concerned
10   now?  How would you use it?
11          MR. BOSCH:  Your Honor, this is Bill Bosch.
12        I do not anticipate publishing the memorandum opinion
13   itself, which I, frankly, don't think would be appropriate.
14   But there is evidence recited in the memorandum opinion that
15   may be introduced, and, of course, it's hard for me to figure
16   out, in a vacuum, the context.  So there is the -- the
17   memorandum opinion are just one of the three pieces of
18   information that we believe the Fourth Circuit ruled to not be
19   maintained under seal.
20        As far as the transcript goes, not having seen that, nor
21   having seen the letter submission, I presently don't have any
22   contemplated use because I don't know what it says.  The
23   transcript, like any other transcript, may be admissible
24   depending on the circumstances.
25        The letter opinion -- the letter submission, again, I
```

A530 (Hr'g Tr., May 1, 2024, at 4:7-8).[8]

---

[8] Plaza regrets misciting the portion of the transcript quoted as being from lines 12-13 when it was from lines 7-8, but Plaza is confident that that minor error did not confuse IWA, and it for certain is not grounds for IWA to accuse Plaza of fabricating a quote from a court transcript.

Moreover, as IWA also surely knows, Plaza's counsel responded to the district court's question by stating that Plaza does "not anticipate publishing the memorandum opinion itself, which [Plaza], frankly, [does not] think would be appropriate." A530 (Hr'g Tr., May 1, 2024, at 4:12-13). It is now apparent that *IWA* is the party attempting to mislead the Court with its false accusation that Plaza "fabricated" a quote from the hearing transcript.

A fair and accurate reading of the transcript indicates that Plaza's counsel responded to the district court honestly and prudently that Plaza simply cannot state at this juncture whether it will seek to use at trial statements from the Memorandum Opinion and/or statements from IWA's *Ex Parte* Brief or from the *in camera* hearing, particularly given that Plaza still has not seen the *Ex Parte* Brief or the Hearing Transcript, even though this Court without question denied IWA's request that each should remain under seal. As Plaza explained in its Answer to the Second Mandamus Petition, the Court should dismiss out of hand any suggestion by IWA that it issue an advisory opinion on evidentiary issues that have not been presented to or decided by the district court. *See* Plaza's Resp. to Second Mandamus Petition at 22-23.

## V.     Conclusion

The Court should promptly deny both IWA's Leave to File a Reply Brief in Support of its Petition for Writ of Mandamus and the Second Mandamus Petition, and the Court should grant Plaza's Motion to Supplement the Record.

 Dated:  July 1, 2024                              Respectfully submitted,

                                                   */s/William M. Bosch*
                                                   William M. Bosch
                                                   PILLSBURY WINTHROP SHAW PITTMAN LLP
                                                   1200 Seventeenth Street NW
                                                   Washington, DC 20036
                                                   Telephone:  202-663-8000
                                                   Facsimile:  202-663-8007
                                                   william.bosch@pillsburylaw.com

                                                   Jeffrey P. Metzler
                                                   PILLSBURY WINTHROP SHAW PITTMAN LLP
                                                   31 West 52nd Street
                                                   New York, NY 10019
                                                   Telephone:  212-858-1000
                                                   Facsimile:  212-858-1500
                                                   jeffrey.metzler@pillsburylaw.com

                                                   *Attorneys for Respondent Rock Spring*
                                                   *Plaza II, LLC*

## CERTIFICATE OF COMPLIANCE

This Response to Investor Warranty of America, LLC's Motion for Leave to File Reply in Support of Petition for Writ of Mandamus and Motion to Supplement the Record complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman Font and contains 4,517 words.

Dated:  July 1, 2024

*/s/ William M. Bosch*
William Bosch
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone:  202-663-8000
Facsimile:  202-663-8007
william.bosch@pillsburylaw.com

*Attorney for Respondent Rock Springs Plaza II, LLC*

## CERTIFICATE OF SERVICE

I certify that on July 1, 2024, a copy of the foregoing Response to Investor Warranty of America, LLC's Motion for Leave to File Reply in Support of Petition for Writ of Mandamus and Motion to Supplement the Record was served via ECF and e-mail on all counsel of record.

I further certify that on July 1, 2024, a copy of the foregoing Response to Investor Warranty of America, LLC's Motion for Leave to File Reply in Support of Petition for Writ of Mandamus and Motion to Supplement the Record was served by third party commercial carrier (FedEx) and scheduled for overnight delivery on the following persons at the address below:

> The Honorable Peter J. Messitte
> United States District Court for the District of Maryland
> 6500 Cherrywood Lane, Suite 475
> Greenbelt, MD 20770

Dated:  July 1, 2024                    Respectfully submitted,

*/s/ William M. Bosch*
William M. Bosch
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone:  202-663-8000
Facsimile:  202-663-8007
william.bosch@pillsburylaw.com

*Attorney for Respondent Rock Spring Plaza II, LLC*